1   PILLSBURY WINTHROP SHAW PITTMAN LLP
    VERNON H. GRANNEMAN (SBN 083532)
2     vernon.granneman@pillsburylaw.com
    DIANNE L. SWEENEY (SBN 187198)
3     dianne.sweeney@pillsburylaw.com
    2475 Hanover Street
4   Palo Alto, CA  94304
    Telephone: (650) 233-4500
5   Facsimile: (650) 233-4545

6   OPPENHEIMER WOLFF & DONNELLY LLP
    ANDREW S. HANSEN (admitted *Pro Hac Vice*)
7     ahansen@oppenheimer.com
    HEIDI A. O. FISHER (admitted *Pro Hac Vice*)
8     hfisher@oppenheimer.com
    MEGHAN M. ANZELC (admitted *Pro Hac Vice*)
9     manzelc@oppenheimer.com
    Plaza VII, Suite 3300
10  45 South Seventh Street
    Minneapolis, MN  55402
11  Telephone: (612) 607-7000
    Facsimile: (612) 607-7100
12
    Attorneys for Defendants
13  SELECT COMFORT RETAIL CORPORATION
    and BED BATH & BEYOND INC.
14
                    UNITED STATES DISTRICT COURT
15
                    NORTHERN DISTRICT OF CALIFORNIA
16
                         SAN JOSE DIVISION
17  _____
                                          )
18  MOLLY STEARNS,                        )   Case No. C 08 02746 JF
                                          )
19                       Plaintiff,       )   **NOTICE OF MOTION AND**
                                          )   **MOTION OF DEFENDANTS TO**
20        vs.                             )   **DISMISS AND TO STRIKE**
                                          )
21  SELECT COMFORT RETAIL                 )   **[PROPOSED] CLASS ACTION**
    CORPORATION, a Minnesota Corporation; )
22  BED BATH & BEYOND INC., a New York    )   Date: September 5, 2008
    Corporation,                          )   Time: 9:00 a.m.
23                                        )   Dept: Courtroom 3, 5th Floor
                         Defendants.      )   Judge: The Honorable Jeremy Fogel
24  _____)

25

26

27

28

1

# TABLE OF CONTENTS

2

Page

3 MOTION AND NOTICE OF MOTION........................................................................1

4 MEMORANDUM OF POINTS AND AUTHORITIES............................................1

5 I.    INTRODUCTION ...........................................................................................1

6 II.   STATEMENT OF ISSUES .............................................................................2

7 III.  STATEMENT OF FACTS ..............................................................................3

8 IV.   ARGUMENT ...................................................................................................5

9     A.   All But Plaintiff's Personal Injury Claim Must Be Dismissed Pursuant
           to Rule 12(b)(6) and Rule 9(b). ..............................................................5

10        1.   Pleading Standards ...........................................................................5

11             a.   Rule 12(b)(6). ...........................................................................5

12             b.   Rule 9(b). ..................................................................................6

13        2.   Fraud Claims .....................................................................................7

14             a.   Intentional Misrepresentations (Claim 5)................................7

15             b.   Negligent Misrepresentation (Claim 6). ..................................8

16             c.   Concealment (Claim 4)............................................................9

17        3.   Warranty Claims ..............................................................................11

18             a.   Breach of Express Warranty (Claim 2). ................................11

19             b.   Breach of Implied Warranty (Claim 3). .................................13

20    B.   The Court Should Strike and Dismiss Class Claims From This Action..........14

21        1.   Legal Standard................................................................................15

22        2.   Economic Injury Class Allegations Are Improper Because There Is
               No Possible Injury .........................................................................16

23             a.   Claims of Purported Class Members Whose Products Have Not
                    Suffered A Defect Cannot Go Forward................................16

24             b.   There Is No Legally Cognizable Economic Injury Because
                    Stearns Acknowledges that Select Comfort Offers A Full Refund .....18

25        3.   Stearns May Not Base a Nationwide Class Action on Individual
               Personal Injury Claims ...................................................................19

26

27

28

1

a.    Individual Issues Predominate.............................................................20

2

b.    State Laws Differ, Multiplying the Individual Issues ........................21

3

4.    The Elements of Proof Necessary To Prove Fraud and Warranty
Claims Implicate Too Many Individual Issues..........................................22

4

5

CONCLUSION ..........................................................................................................24

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

# TABLE OF AUTHORITIES

2

### Cases

3

Am. Suzuki Motor Corp. v. Super. Ct.,
   44 Cal. Rptr. 2d 526 (Cal. Ct. App. 1995) .................................................................. 13

4

Andrade v. Pangborn Corp.,
   No. C 02-3771 PVT, 2004 WL 2480708 (N.D. Cal. Oct. 22, 2004) ........................... 13

5

Andrews v. Am. Tel. & Tel. Co.,
   95 F.3d 1014 (11th Cir. 1996) .................................................................................... 23

6

7

Angus v. Shiley Inc.,
   989 F.2d 142 (3rd Cir. 1993) ...................................................................................... 17

8

Ardoin v. Stine Lumber Co.,
   220 F.R.D. 459 (W.D. La. 2004) ................................................................................. 14

9

10

Atherley v. MacDonald, Young & Nelson, Inc.,
   298 P.2d 700 (Cal. Ct. App. 1956) ............................................................................. 18

11

Balistreri v. Pacifica Police Dep't,
   901 F.2d 696 (9th Cir. 1990) ......................................................................................... 5

12

13

Bell Atl. Corp. v. Twombly,
   127 S. Ct. 1955 (2007) .................................................................................................. 5

14

Bennett v. Nucor Corp.,
   No. 3:04CV00291SWW, 2005 WL 1773948, (E.D. Ark. July 6, 2005) ..................... 14

15

16

Blue Chip Stamps v. Manor Drug Stores,
   421 U.S. 723 (1975) .................................................................................................... 17

17

Briehl v. Gen. Motors Corp.,
   172 F.3d 623 (8th Cir. 1999) ...................................................................................... 17

18

19

Byrum v. Brand,
   268 Cal. Rptr. 609 (Cal. Ct. App. 1990) ....................................................................... 9

20

Cahill v. Liberty Mut. Ins. Co.,
   80 F.3d 336 (9th Cir. 1996) ........................................................................................... 6

21

22

California ex rel. Mueller v. Walgreen Corp.,
   175 F.R.D. 631 (N.D. Cal. 1997) .................................................................................. 6

23

Castano v. Am. Tobacco Co.,
   84 F.3d 734 (5th Cir. 1996) ........................................................................................ 23

24

25

Century Sur. Co. v. Crosby Ins., Inc.,
   21 Cal. Rptr. 3d 115 (Cal. Ct. App. 2004) .................................................................... 9

26

Chin v. Chrysler Corp.,
   182 F.R.D. 448 (D. N.J. 1998) ....................................................................... 12, 18, 19

27

28

Cipollone v. Liggett Group, Inc.,
    505 U.S. 504 (1992) ................................................................................ 11, 12

Clegg v. Cult Awareness Network,
    18 F.3d 752 (9th Cir. 1994) ............................................................................ 6

Cole v. Gen. Motors Corp.,
    484 F.3d 717 (5th Cir. 2007) ........................................................... 22, 23, 24

Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Servs., Inc.,
    911 F.2d 242 (9th Cir. 1990) ......................................................................... 8

Dura Pharms, Inc. v. Broudo,
    544 U.S. 336 (2005) ..................................................................................... 17

Earnest v. Gen. Motors Corp.,
    923 F.Supp. 1469 (N.D. Ala. 1996) ............................................................ 14

Fed. Savings and Loan Ins. Corp. v. Musacchio,
    695 F. Supp. 1053, 1063 (N.D. Cal. 1988) ................................................... 7

Federal Rules of Civil Procedure Rule 23(b)(a)(3) ............................................ 18

Ford Motor Co. v. Rice,
    726 So. 2d 626 (Ala. 1998) .......................................................................... 18

Frank v. DaimlerChrysler Corp.,
    741 N.Y.S.2d 9 (N.Y. App. Div. 2002) ....................................................... 17

Gen. Tel. Co. v. Falcon,
    457 U.S. 147 (1982) ..................................................................................... 14

Hahn v. Mirda,
    54 Cal. Rptr. 3d 527 (Cal. Ct. App. 2007) ..................................................... 9

Hartog v. Jot's, Inc.,
    No. C 03-2986 SBA, 2005 WL 2333799 (N.D. Cal. Sept. 22, 2005) ............ 6

Holstein v. City of Chicago,
    149 F.R.D. 147 (N.D. Ill. 1993) ............................................................ 13, 18

In re Bridgestone/Firestone, Inc. Tires Prod. Liab. Litig.,
    288 F.3d 1012 (7th Cir. 2002) ............................................................... 16, 19

In re GlenFed, Inc. Sec. Litig.,
    42 F.3d 1541 (9th Cir. 1994) *superseded by statute on other grounds* .......... 6

In re N. Dist. of Cal., Dalkon Shield IUD Prod. Liab. Litig.,
    693 F.2d 847 (9th Cir. 1982) ....................................................................... 22

In re Old Kent Mortgage Co. Yield Spread Premium Litig.,
    191 F.R.D. 155 (D. Minn. 2000) ................................................................. 14

Jarman v. United Indus. Corp.,
    98 F. Supp. 2d 757 (S.D. Miss. 2000) ......................................................... 17

Jolly v. Eli Lilly and Co.,
    751 P.2d 923 (Cal. 1988)...................................................................................... 19

Kaplan v. Rose,
    49 F.3d 1363 (9th Cir. 1994), *cert. denied*, 516 U.S. 810 (1995) ............................. 6, 7

Kennedy v. Baxter Healthcare Corp.,
    50 Cal. Rptr. 2d 736 (Cal. Ct. App. 1996)......................................................... 15, 19, 21

Khan v. Shiley Inc.,
    266 Cal. Rptr. 106 (Cal. Ct. App. 1990)..................................................................... 16

Lee v. Gen. Motors Corp.,
    950 F. Supp. 170 (S.D. Miss. 1996) ........................................................................... 16

Long v. Hewlett-Packard Co.,
    No. C 06-02816 JW, 2006 WL 4877691 (N.D. Cal. Dec. 24, 2006) ........................... 11

Manderville v. PCG & S Group, Inc.,
    55 Cal. Rptr. 3d 59 (Cal. Ct. App. 2007)...................................................................... 7

Meridian Project Sys., Inc. v. Hardin Constr. Co.,
    404 F. Supp. 2d 1214 (E.D. Cal. 2005) ........................................................................ 7

Nodine v. Shiley Inc.,
    240 F.3d 1149 (9th Cir. 2001) .................................................................................... 20

Oestreicher v. Alienware Corp.,
    No. C 07-00512 MHP, 2008 WL 906550 (N.D. Cal. April 1, 2008)............... 6, 7, 8, 11

Osborne v. Subaru of Am., Inc.,
    243 Cal Rptr. 815 (Cal. Ct. App. 1988).......................................................... 19, 21, 22

Oshana v. Coca-Cola Bottling Co.,
    225 F.R.D. 575 (N.D. Ill. 2005) ................................................................................ 23

Owen v. Gen. Motors. Corp.,
    --F.3d.--, 2008 WL 2756547 (8th Cir. July 17, 2008).................................................. 10

Patterson v. Mobile Oil Co.,
    241 F.3d 417 (5th Cir. 2001) ..................................................................................... 23

Pollard v. Saxe & Yolles Dev. Co.,
    525 P.2d 88 (Cal. 1974).............................................................................................. 12

Potter v. Firestone Tire and Rubber Co.,
    863 P.2d 795 (Cal. 1993)............................................................................................ 20

*Regents of the Univ. of Cal. v. Principal Fin. Group,*
    412 F. Supp. 2d 1037 (N.D. Cal. 2006)........................................................................ 9

Rose v. Medtronics, Inc.,
    166 Cal. Rptr. 16 (Cal. Ct. App. 1980)........................................................................ 15

Ross-Randolph v. Allstate Ins. Co.,
   No. DKC 99-3344, 2001 WL 36042162 (D. Md. May 11, 2001) ................................. 14

See In re Phenylpropanolamine (PPA) Prods. Liab. Litig.,
   214 F.R.D. 614 (W.D. Wash. 2003) ........................................................................ passim

Shamsian v. Atl. Richfield Co.,
   132 Cal. Rptr. 2d 635 (Cal. Ct. App. 2003) ..................................................................... 9

Silicon Knights, Inc. v. Crystal Dynamics, Inc.,
   983 F. Supp. 1303 (N.D. Cal. 1997) ................................................................................ 7

Sonic Auto., Inc. v. Galura,
   961 So. 2d 961 (Fla. Ct. App. 2007) ........................................................................ 13, 18

Sprewell v. Golden State Warriors,
   266 F.3d 979 (9th Cir. 2001) .................................................................................... 6, 10

Thiedemann v. Mercedes-Benz USA,
   872 A.2d 783 (N.J. 2005) ............................................................................................... 19

Thornton v. State Farm Mut. Auto Ins. Co., Inc.,
   No. 1:06-cv-00018, 2006 WL 3359482 (N.D. Ohio Nov. 17, 2006) ........................... 14

Valentino v. Carter-Wallace, Inc.,
   97 F.3d 1227 (9th Cir. 1996) ......................................................................................... 20

Vess v. Ciba-Geigy Corp.,
   317 F.3d 1097 (9th Cir. 2003) ..................................................................................... 6, 7

Walsh v. Ford Motor Co.,
   807 F.2d 1000, 1016–17 (D.C. Cir. 1986) .................................................................... 24

Weaver v. Chrysler Corp.,
   172 F.R.D. 96 (S.D.N.Y. 1997) ..................................................................................... 17

Weinberg v. Sun Co.,
   777 A. 2d 442 (Pa. 2001) ............................................................................................... 23

Yost v. Gen. Motors Corp.,
   651 F. Supp. 656 (D. N.J. 1986) ................................................................................... 17

Yu v. Int'l Bus. Mach. Corp.,
   732 N.E.2d 1173 (Ill. App. Ct. 2000) ........................................................................... 17

Zamora v. Shell Oil Co.,
   63 Cal. Rptr. 2d 762 (Cal. Ct. App. 1997) .................................................................... 19

Ziegelmann v. Daimler Chrysler Corp.,
   649 N.W.2d 556 (N.D. 2002) ........................................................................................ 17

Zinser v. Accufix Research Inst.,
   253 F.3d 1180 (9th Cir. 2001) ........................................................................... 19, 20, 23

1

Statutes and Codes

2    California Uniform Commercial Code. § 2607 ........................................................ 11

3    Magnuson-Moss Act 15 U.S.C. § 2304(b)(2) (2008)............................................... 10

4

Rules and Regulations

5    Federal Rules of Civil Procedure Rule 9(b) .......................................... 2, 5, 6, 10

6    Federal Rules of Civil Procedure Rule 12 ...................................................... 16, 17

7    Federal Rules of Civil Procedure Rule 12(b)(6).................................................... 5

8    Federal Rules of Civil Procedure Rule 23(a) ...................................................... 15

9    Federal Rules of Civil Procedure Rule 23(b) ...................................................... 15

10    Federal Rules of Civil Procedure Rule 23(b)(3)............................................ 15, 16

11    Federal Rules of Civil Procedure Rule 23(b)(a)(4) ............................................. 18

12    Federal Rules of Civil Procedure Rule 407 ....................................................... 11

13

Other Authorities

14    Moore's Federal Practice, § 23.60 (Matthew Bender 3d ed. 1997) ......................... 14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    **MOTION AND NOTICE OF MOTION**

2    PLEASE TAKE NOTICE that on September 5, 2008 at 9:00 a.m. or as soon thereafter

3    as the matter may be heard in the courtroom of the Honorable Jeremy Fogel of the above-

4    entitled Court, located at 280 South First Street, San Jose, California, Defendants Select

5    Comfort Retail Corporation ("Select Comfort" or the "Company") and Bed, Bath & Beyond

6    Inc. ("Bed Bath & Beyond") shall move, and do move, the Court for the following relief.

7    Defendants move for an order granting dismissal in its favor and against plaintiff Molly

8    Stearns ("Stearns") on claims 2–6 in the Complaint, and Defendants further move this Court for

9    an Order striking all purported class claims brought by Stearns.  This motion is made under

10   Rules 12(b)(6), 9(b), and 23 of the Federal Rules of Civil Procedure on the grounds Stearns

11   fails to state claims upon which relief can be granted, fails to plead fraud with particularity, and

12   fails to plead facts on which a class action can be based.  This motion will be based on this

13   Notice of Motion, the Memorandum of Points and Authorities contained herein, all records and

14   files in this action, and all additional matters of which the Court may take judicial notice.

15   **MEMORANDUM OF POINTS AND AUTHORITIES**

16   **I.    INTRODUCTION.**

17   Plaintiff Molly Stearns alleges that eight years ago she bought a Select Comfort bed

18   through Bed, Bath & Beyond, that mold grew on the bed, and that she consequently suffered

19   personal and economic injuries.  Stearns alleges that she discovered mold on her bed on April

20   22, 2008.   She then learned that Select Comfort would replace any mold-contaminated parts, or

21   would provide a full refund for her bed.  Stearns nonetheless raced to the courthouse on April

22   25, 2008 and filed this purported nationwide class action demanding punitive damages and

23   asserting claims of fraud, breach of warranty, and strict liability.  Stearns thereafter accepted a

24   full refund for her bed.

25   Plaintiff's factual allegations present nothing more than a personal strict liability claim.

26   Nothing in Stearns' Complaint properly supports a class action or the wide-ranging claims she

27   alleges.  Specifically, Stearns' warranty and fraud claims fail because Select Comfort offers a

28   full refund of the purchase price if a customer has any problems with mold—a refund that

1    Stearns accepted.  Therefore, any warranty obligations have been fulfilled and Stearns has not

2    and cannot incur any economic damage.  Moreover, Stearns' entire fraud theory is pled on

3    "information and belief," which does not satisfy Rule 9(b)'s heightened pleading standard.

4         Stearns' class allegations are similarly defective.  Stearns seeks to represent a

5    nationwide class of all purchasers and users of Select Comfort beds manufactured from 1987 to

6    2005.  The overwhelming majority of such persons have not experienced mold and, therefore,

7    have no damages.  Such "propensity to fail" cases are routinely dismissed.  Further, such

8    persons would have no economic damage claim even if they did experience mold because

9    Select Comfort offers a full refund.  Finally, Stearns seeks a class based on personal injury—a

10   theory packed with so many individual issues that, as other courts have recognized, it is

11   properly stricken at the outset of litigation.

12        Reducing this case to Stearns' individual strict liability claim is not only proper under

13   the governing rules and case law, but it will also help the parties resolve this dispute without

14   unnecessarily devoting substantial time and resources to a fatally flawed nationwide class

15   action.

16   **II.**    **STATEMENT OF ISSUES.**

17        1.    Does Plaintiff's Complaint state a claim for which relief can be granted for

18        breach of express warranty, breach of implied warranty, concealment, intentional

19        misrepresentation, and negligent misrepresentation?

20        2.    Does Plaintiff's Complaint meet the pleading standards of Federal Rule of Civil

21        Procedure 9(b) on her claims of concealment, intentional misrepresentation, and

22        negligent misrepresentation?

23        3.    May Plaintiff bring nationwide class action claims on behalf of purported class

24        members who have no product defect or any legally cognizable injury?

25        4.    May Plaintiff bring nationwide class action claims for fraud and warranty claims

26        when Plaintiff concedes that the different laws of each state would apply and fraud and

27        warranty claims require individualized proof of reliance?

28

III.    **STATEMENT OF FACTS.**

Select Comfort is a Minnesota corporation that designs, manufactures, and sells the Sleep Number® bed. (Compl. ¶¶ 8, 15.) It has been in business since 1987. (Compl. ¶ 15.) Bed Bath & Beyond is a New York corporation which, at one time, leased retail space in certain of its stores to Select Comfort for the sale of the Sleep Number® bed. (Compl. ¶ 10.)

Plaintiff Molly Stearns alleges that she is the owner of a Sleep Number® bed that she purchased in 2000 at Bed Bath & Beyond. (Compl. ¶ 24.) Stearns generally alleges that Select Comfort advertises that the Sleep Number® bed relieves back pain and improves sleep quality to facilitate a more satisfactory quality of life. (Compl. ¶ 18.) Stearns cites only one specific example of Select Comfort's advertising. She alleges that Select Comfort represents: "With your new SELECT COMFORT® sleep system, a *perfect* night's sleep is not only possible, it can be yours forever. Starting tonight." (Compl. ¶ 18, Exhibit A.) This statement appears in the product manual that Stearns received with her bed, <u>after</u> her purchase. (*Id.*) Stearns makes no allegations regarding what specific advertising she reviewed, considered, or relied upon when deciding to purchase her bed. Similarly, there are no allegations regarding any oral or written representations made to Stearns when she purchased her bed.

Stearns alleges, without any factual support, that she is "informed and believes" that "at some point in time … defendants became aware that the Sleep Number® bed was inherently defective in that it had a propensity to develop and incubate mold." (Compl. ¶ 26.) Stearns asserts that Select Comfort then failed to warn her of this alleged inherent defect and "the potential for adverse health consequences." (Compl. ¶ 27.) She does not allege or specify what the supposed inherent defect is, what part of the bed design it involves, or how this alleged defect results in a "propensity" for mold—a pervasive, naturally occurring organism—to develop in Sleep Number® beds. Stearns does not allege that it would be impossible, or even improbable, for mold to grow on her bed absent a design defect. Likewise, there is no allegation that mold does not grow on other upholstered products, including mattresses and bedding. Nor does Stearns even plead that there is a higher incidence of mold growth in a Sleep Number® bed than in other types or brands of beds. In short, Stearns pleads no basis

1   whatsoever for her "belief" that her Select Comfort bed has a "propensity" to grow mold.

2       Stearns appears to base her "information and belief" that the Sleep Number® bed was

3   defectively designed on her "information and belief" that Select Comfort "redesigned" its

4   product in 2005.  (Compl. ¶ 30.)  However, Stearns does not allege how the bed was

5   "redesigned."  She does not plead any facts or any other information upon which she bases her

6   "information and belief" that any part of the bed was changed "to specifically address the

7   continuing problems associated with the development of mold growth … within the Sleep

8   Number® bed"  (Compl. ¶ 30), as opposed to Select Comfort's continuous efforts to improve

9   and enhance its product in the normal course of business by incorporating new ideas and the

10   latest technology.[1]

11       Stearns alleges that she suffered "personal injury" described as "severe pulmonary

12   distress" as a result of alleged mold growth in her bed.  (Compl. ¶¶ 31, 36.)  She seeks to

13   represent a class of "All original purchasers and users of a Select Number® [sic] bed

14   manufactured by SELECT COMFORT between January 1, 1987 and December 31, 2005."

15   (Compl. ¶ 34.)  Stearns purports to represent a broad class of bed owners—regardless of

16   whether their beds have actually experienced mold growth or not—under a theory of potential

17   future damage because, Stearns alleges, they "will all be damaged," because they "will need to

18   purchase new mattresses, pay the cost of disposal of a potentially hazardous material, and seek

19   medical treatment for allergic reactions."  (Compl. ¶ 37.)

20       Stearns concedes that Select Comfort provides an express Limited Warranty that

21   provides for repair or replacement of defective products.  (Compl. ¶ 61, Exhibit A.)  Stearns

22   also concedes that when a customer reports an incident of mold in his or her bed to Select

23   Comfort, the Company provides a full refund of the purchase price and requests the customer

24   return the allegedly defective product to Select Comfort.  (Compl. ¶¶ 29, 77.)

25

---

[1]  Plaintiff alleges that she discovered mold in her bed on April 22, 2008 (Compl. ¶ 52), and then she sprinted to the courthouse and filed this action on April 25, 2008—conceding that she could receive a full refund from Select Comfort.  This rapid filing of the nationwide class action, combined with the "information and belief"-based Complaint suggest that virtually no investigation was performed prior to filing this Complaint.

1    **IV.    ARGUMENT.**

2        This case should be reduced to Stearns' individual claim for strict products liability

3    based on her alleged personal injury.  This Court should reject Stearns' attempt to bootstrap her

4    personal injury claim into a massive, multi-claim, nationwide class action.  Stearns fails to state

5    a claim for relief under claims 2–6.  She fails to adequately plead fraud, and she concedes in

6    her Complaint that she has no economic injury because Select Comfort provides full purchase

7    price refunds and disposal of allegedly defective products for customers who complain of mold.

8    Therefore, Stearns cannot prove economic damages on either her fraud claims or her warranty

9    claims.  Stearns is left with her personal claim for strict products liability based solely on her

10   alleged personal injury.

11       Because claims 2–6 are ripe for dismissal, the class claims with respect to them must

12   also be dismissed.  Even if Stearns did state a claim on her fraud and warranty causes of action,

13   she cannot maintain a class action filled with purported class members with no legally

14   cognizable injuries.  Moreover, neither fraud nor nationwide warranty claims are generally

15   amenable to class treatment, and this case is no exception.  Finally, while left with her personal

16   strict products liability claim, Stearns cannot maintain a class of others who claim to have been

17   personally injured by mold growing on the Sleep Number® bed because individual issues

18   would swallow any common issues, making class treatment impossible.

19

20       **A.    All But Plaintiff's Personal Injury Claim Must Be Dismissed Pursuant to
         Rule 12(b)(6) and Rule 9(b).**

21           **1.    Pleading Standards.**

22               **a.    Rule 12(b)(6).**

23       A motion to dismiss should be granted if the plaintiff fails to proffer "enough facts to

24   state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955,

25   1974 (2007).  Dismissal can be based on the lack of a cognizable legal theory or the absence of

26   sufficient facts alleged under a cognizable legal theory.  *Balistreri v. Pacifica Police Dep't*, 901

27   F.2d 696, 699 (9th Cir. 1990).  While allegations of material fact are taken as true and

28   construed in the light most favorable to the nonmoving party, *Cahill v. Liberty Mut. Ins. Co.*, 80

1   F.3d 336, 337–38 (9th Cir. 1996), the court need not accept as true allegations that are

2   conclusory, legal conclusions, unwarranted deductions of fact or unreasonable inferences.  *See*

3   *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); *Clegg v. Cult Awareness*

4   *Network*, 18 F.3d 752, 754–55 (9th Cir. 1994).

5            **b.      Rule 9(b).**

6            A plaintiff alleging fraud must satisfy a heightened pleading standard requiring

7   circumstances constituting fraud be pled with particularity.  Fed. R. Civ. P. 9(b).  Specifically,

8   "[t]he pleadings must state precisely the time, place, and nature of the misleading statements,

9   misrepresentations, and specific acts of fraud."  *Kaplan v. Rose*, 49 F.3d 1363, 1370 (9th Cir.

10  1994), *cert. denied*, 516 U.S. 810 (1995).  In addition, plaintiffs seeking to satisfy Rule 9(b)

11  must "set forth an explanation as to why the statement or omission complained of was false and

12  misleading."  *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994) *superseded by*

13  *statute on other grounds*.  The pleading must be "specific enough to give defendants notice of

14  the particular misconduct ... so that they can defend against the charge and not just deny that

15  they have done anything wrong."  *Vess v. Ciba-Geigy Corp.*, 317 F.3d 1097, 1106 (9th Cir.

16  2003) (internal quotation omitted).

17           A plaintiff seeking to state a claim for fraud must also plead knowledge of falsity, or

18  scienter.  *See Oestreicher v. Alienware Corp.*, No. C 07-00512 MHP, 2008 WL 906550, at *3

19  (N.D. Cal. April 1, 2008) (citation omitted).  She must "set forth <u>facts</u> from which an inference

20  of scienter could be drawn."  *Id.* (emphasis added).  Finally, "information and belief" pleading

21  does not satisfy Rule 9(b).  *Hartog v. Jot's, Inc.*, No. C 03-2986 SBA, 2005 WL 2333799, at *3

22  (N.D. Cal. Sept. 22, 2005) ("[a]llegations of fraud based on information and belief usually do

23  not satisfy the particularity requirements of Rule 9(b) . . .").  "Information and belief" pleading

24  is permitted only as to matters peculiarly within the opposing party's knowledge and control,

25  and in that case only where the complaint specifically alleges that the necessary information

26  lies within the defendant's control and states the facts upon which the belief is founded.

27  *California ex rel. Mueller v. Walgreen Corp.*, 175 F.R.D. 631, 635 (N.D. Cal. 1997).

28           This heightened pleading standard applies to allegations of fraud and allegations that

1   sound in fraud, including false misrepresentations, concealment, and negligent

2   misrepresentation.  *Vess*, 317 F.3d at 1106–07; *Meridian Project Sys., Inc. v. Hardin Constr.*

3   *Co.*, 404 F. Supp. 2d 1214, 1219 (E.D. Cal. 2005); *Oestreicher*, 2008 WL 906550, at \*8;

4   *Silicon Knights, Inc. v. Crystal Dynamics, Inc.*, 983 F. Supp. 1303, 1315 (N.D. Cal. 1997); *Fed.*

5   *Savings and Loan Ins. Corp. v. Musacchio*, 695 F. Supp. 1053, 1063 (N.D. Cal. 1988).

6               **2.    Fraud Claims.**

7                    **a.    Intentional Misrepresentations (Claim 5).**

8        To plead intentional misrepresentation under California law, Stearns was required to

9   adequately plead seven essential elements:

10       (1) the defendant represented to the plaintiff that an important fact was true;
         (2) that representation was false; (3) the defendant knew that the representation
11       was false when the defendant made it, or the defendant made the
         representation recklessly and without regard for its truth; (4) the defendant
12       intended that the plaintiff rely on the representation; (5) the plaintiff
         reasonably relied on the representation; (6) the plaintiff was harmed; and (7)
13       the plaintiff's reliance on the defendant's representation was a substantial
         factor in causing that harm to the plaintiff.
14
    *Manderville v. PCG & S Group, Inc.*, 55 Cal. Rptr. 3d 59, 68 (Cal. Ct. App. 2007) (citation
15
    omitted).  Stearns' claims fails.
16
             Stearns was required to "state precisely the time, place, and nature of the misleading
17
    statements, misrepresentations, and specific acts of fraud."  *Kaplan*, 49 F.3d at 1370.  She fails
18
    to do so.  Instead, Stearns generally alleges that "Defendants' advertising and promotional
19
    materials represented that the Sleep Number® bed relieves back pain and improves sleep
20
    quality to facilitate a more satisfactory quality of life."  (Compl. ¶ 18.)  Rather, this generalized
21
    statement provides no indication <u>where</u> Defendants made these general representations, <u>to</u>
22
    <u>whom</u> they were made, <u>by whom</u>, <u>when</u>, or <u>how</u> they were false.  Indeed, the only specific
23
    alleged misrepresentation in the Complaint is:  "With your new SELECT COMFORT® sleep
24
    system, a *perfect* night's sleep is not only possible, it can be yours forever.  Starting tonight."
25
    (Compl. ¶ 18)  Stearns quotes this statement from the Sleep Number® bed product manual, "A
26
    Sleeper's Guide," which she received with delivery of her bed, and which is attached to the
27
    Complaint as Exhibit A.
28

1    Neither of these attempts describes an actionable misrepresentation.  A statement is not

2  actionable if it is a "puffing" statement.  "'Puffing' has been described by most courts as

3  involving outrageous generalized statements, not making specific claims, that are so

4  exaggerated as to preclude reliance by consumers."  *Cook, Perkiss & Liehe, Inc. v. N. Cal.*

5  *Collection Servs., Inc.*, 911 F.2d 242, 246 (9th Cir. 1990) (citation omitted); *see also*

6  *Oestreicher*, 2008 WL 906550, at *7 ("Generalized, vague, and unspecified assertions

7  constitute 'mere puffery' upon which a reasonable consumer could not rely, and hence are not

8  actionable.")  Puffery is recognized by claims that "are either vague or highly subjective."  *Id.*

9  (citation omitted).  District courts often resolve whether a statement is puffery as a matter of

10  law when considering a motion to dismiss pursuant to Rule 12(b)(6).  *Cook*, 911 F.2d at 245.

11  Here, the only specific statement that Stearns attributes to Defendants—"...a *perfect* night's

12  sleep is not only possible, it can be yours forever.  Starting tonight."— is obvious puffing.  To

13  the extent it is not clear from the excerpt quoted in Stearns' Complaint, this phrase, as it

14  appears in context, signals that it is a puffing statement:

15    <u>At the risk of being overly dramatic,</u> this little brochure could change your life.
      Look at it this way.  You spend at least a third of your life in bed.  And the
16    way you sleep often affects all of your waking hours.  With your New
      SELECT COMFORT® sleep system, a *perfect* night's sleep can be yours
17    forever. Starting tonight.

18  (Compl. Ex. A) (underline emphasis added).

19    Moreover, Stearns failed to plead how she relied on this or any of Defendants'

20  representations.  Indeed, Stearns received her Sleeper's Guide product manual with the delivery

21  of her bed, after she had already made the decision to purchase, negating any possible reliance.

22  Because Stearns has failed to plead the who, what, when, where, and how of fraud, and also

23  failed to plead any actionable misrepresentation, her intentional misrepresentation claim must

24  be dismissed.

25              **b.    Negligent Misrepresentation (Claim 6).**

26    To plead negligent misrepresentation, Stearns was required to adequately plead:  (1) the

27  misrepresentation of a past or existing material fact; (2) without reasonable ground for

28  believing it to be true; (3) with intent to induce another's reliance on the fact misrepresented;

1  (4) justifiable reliance on the misrepresentation; and (5) resulting damage. *Century Sur. Co. v.*

2  *Crosby Ins., Inc.*, 21 Cal. Rptr. 3d 115, 125 (Cal. Ct. App. 2004); *Shamsian v. Atl. Richfield*

3  *Co.*, 132 Cal. Rptr. 2d 635, 648 (Cal. Ct. App. 2003).  A negligent representation claim must be

4  based on an actual representation, not on an alleged omission. *Regents of the Univ. of Cal. v.*

5  *Principal Fin. Group*, 412 F. Supp. 2d 1037, 1045 (N.D. Cal. 2006); *Byrum v. Brand*, 268 Cal.

6  Rptr. 609, 619–20 (Cal. Ct. App. 1990).

7         Stearns bases her claim of negligent misrepresentation on Select Comfort's advertising

8  that "…a *perfect* night's sleep is not only possible, it can be yours forever.  Starting tonight."

9  (Compl. ¶ 92.)  For the same reasons as discussed, *supra*, for intentional representation, this

10  statement cannot form the basis of a negligent misrepresentation claim and also fails.

11                    **c.    Concealment (Claim 4).**

12         Stearns fares no better on her claim for concealment.  Under California law:

13         [T]he elements of an action for fraud and deceit based on concealment are: (1)
           the defendant must have concealed or suppressed a material fact, (2) the

14         defendant must have been under a duty to disclose the fact to the plaintiff, (3)
           the defendant must have intentionally concealed or suppressed the fact with

15         the intent to defraud the plaintiff, (4) the plaintiff must have been unaware of
           the fact and would not have acted as he did if he had known of the concealed

16         or suppressed fact, and (5) as a result of the concealment or suppression of the
           fact, the plaintiff must have sustained damage.

17  *Hahn v. Mirda*, 54 Cal. Rptr. 3d 527, 532 (Cal. Ct. App. 2007).  Stearns appears to allege that

18  Defendants concealed that Sleep Number® beds have an alleged "propensity" to grow mold.

19  However, Stearns' theory is based on "information and belief," and it predictably results in an

20  improper and circular wag-the-dog method of pleading.

21         First, Stearns alleged that she "is informed and believes…that at some point in

22  time…defendants became aware that the Sleep Number® bed was inherently defective in that it

23  has a propensity to develop and incubate mold." (Compl. ¶ 26.)  Contrary to the required

24  pleading standards, Stearns fails to plead any facts upon which this "information and belief" is

25  based, including but not limited to:  (1) any facts to suggest the Sleep Number® bed is

26  inherently defective; (2) any facts regarding the design of the bed itself or how the design is

27  inherently defective; (3) any facts to suggest that Defendants were aware of, and concealed, this

28

1  alleged information.  Indeed, Stearns appears to suggest that because she alleges that <u>her</u> bed

2  "is infested by mold growth" (Compl. ¶ 36), it <u>must</u> be because the bed is defective, and

3  Defendants <u>must</u> have intentionally concealed this fact from her.  This speculative pleading is

4  based purely on "unwarranted deduction of fact," *Sprewell*, 266 F.3d at 988, and does not

5  satisfy the heightened pleading standards of Rule 9(b).

6      Stearns further asserts that she "is informed and believes" that Defendants actively

7  concealed the alleged defect by offering full refunds to its consumers.  This "information and

8  belief" theory is wholly conclusory and is entirely unfounded.  Stearns contends that because

9  Select Comfort is willing to, and does, go above and beyond what is legally required under its

10  Limited Warranty in order to satisfy its customers, it should be subjected to a nationwide class

11  action based on fraud.  There is absolutely no support for Stearns' theory.  *See Owen v. Gen.*

12  *Motors. Corp.*, --F.3d.--, 2008 WL 2756547, at *4 (8th Cir. July 17, 2008) (finding GM's

13  "Special Policy" relating to certain defects is "nothing more" than a voluntary offer to pay for

14  repairs beyond warranty requirements).  Moreover, return of allegedly defective products

15  serves several legitimate business purposes, including ensuring that the customer is not simply

16  asking for a refund of a perfectly functioning product because of buyer's remorse, changed

17  economic circumstances, or simply to defraud the manufacturer.  Indeed, return of a defective

18  product has been recognized by courts as a standard business practice.  *See In re*

19  *Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 214 F.R.D. 614, 622 (W.D. Wash. 2003)

20  (finding requirements such as return of the unused portion of an allegedly defective product "an

21  extraordinarily commonplace practice amongst retailers").  Moreover, the United States

22  Congress has recognized and codified in the *Magnuson-Moss Act* the right of manufacturers to

23  require the return of an allegedly defective product before replacing it or providing a refund

24  under a warranty program.  15 U.S.C. § 2304(b)(2) (2008) (applying only to full warranties).

25  Such a policy does not suggest fraudulent intent on the part of the manufacturer or form the

26  basis for a lawsuit.

27      Stearns also pleads her belief that an alleged "redesign" of the Sleep Number® bed in

28  2005 suggests that its previous design was defective.  However, this theory has been expressly

1  and universally rejected by the courts and is the basis of Federal Rule of Evidence 407 which

2  states that such measures are "not admissible to prove negligence, culpable conduct, a defect in

3  a product, a defect in a product's design, or a need for a warning or instructions."  Fed. R. Civ.

4  P. 407.  The Advisory Committee Notes to this rule state that such conduct is "not in fact an

5  admission" and recognizes that manufacturers continuously improve their products, resting this

6  rule on a "social policy of encouraging people to take, or at least not discourage them from

7  taking, steps in furtherance of added safety."  Fed. R. Civ. P. 407 advisory committee notes.

8        Ultimately, Stearns fails to plead any specific facts, but rather relies on speculation,

9  conclusion, and generalized theories to suggest the existence of an inherent product defect, and

10  then tacks on a concealment claim because Defendants allegedly failed to disclose it.  Such

11  generalized allegations could be made against virtually any product or manufacturer.  As this

12  district recently noted, "allegations of this nature … could be made about any alleged design

13  defect in any manufactured product.  The heightened pleading requirements of Rule 9(b) were

14  designed to avoid exactly this situation."  *Oestreicher*, 2008 WL 906550, at *8.

15        **3.        Warranty Claims.**

16              **a.        Breach of Express Warranty (Claim 2).**

17        Stearns also fails to state a claim for breach of express warranty.  An express warranty

18  is contractual in nature.  *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 525 (1992); *see also*

19  *Long v. Hewlett-Packard Co.*, No. C 06-02816 JW, 2006 WL 4877691, at *4 (N.D. Cal. Dec.

20  24, 2006).  To plead a *prima facie* case for breach of express warranty under California law,

21  Stearns must allege (1) the exact terms of the warranty; (2) reasonable reliance; and (3) a

22  breach of warranty which proximately causes the plaintiff's injury.  *Long*, at *4.  Stearns must

23  also plead that she provided pre-suit notice to Select Comfort of the alleged breach.  Cal. U.

24  Com. Code § 2607.  Here, Stearns merely alleges that her Limited Warranty provides that her

25  bed "will be free from defects in material and workmanship for a period of twenty years from

26  the original purchase date." (Compl. ¶ 61.)  She alleges that Defendants have breached the

27  Limited Warranty because she concludes that the "materials and workmanship of the Sleep

28  Number® bed are inherently defective…."  (Compl. ¶ 62.)  Stearns fails to plead that she relied

1    on the warranty, she fails to plead that she provided pre-suit notice, and she fails to plead that

2    Select Comfort actually breached the terms of the warranty, thereby causing her damage. As

3    such, this claim fails.

4        Stearns theorizes that her bed has a defect and, therefore, that Select Comfort breached

5    its Limited Warranty. But this is a simplistic, and incorrect, view of the law. "A manufacture's

6    liability for breach of an express warranty derives from, and is measured by, the terms of that

7    warranty." *Cipollone*, 505 U.S. at 525. Therefore, as a matter of law, Select Comfort does not

8    breach its Limited Warranty until it <u>refuses</u> to perform its legal obligations under the contract.

9    *See also Pollard v. Saxe & Yolles Dev. Co.*, 525 P.2d 88, 92 (Cal. 1974) (stating that breach of

10   warranty claim requires notice, the purpose of which is to allow the defendant opportunity to

11   repair the defective item, reduce damages, avoid defective products in the future, and negotiate

12   settlements). Stearns erroneously interprets Select Comfort's Limited Warranty as an absolute

13   guarantee that a "defect" will never arise in her bed. On the contrary, the Limited Warranty

14   specifically addresses the possibility that "warranty service <u>resulting from a defect</u> [may be]

15   required," and Select Comfort makes certain promises to remedy defects that may arise.

16   (Compl. Ex. A. at 12.) Stearns may not bring a breach of express warranty claim unless and

17   until Select Comfort fails to fulfill these obligations.

18       Here, Stearns does not allege, as she must, that she has attempted to invoke her Limited

19   Warranty and that Select Comfort has refused to remedy any alleged product defect she might

20   have pursuant to the Limited Warranty terms. On the contrary, Stearns pleads that it is her

21   belief that when a customer contacts Select Comfort complaining of a mold issue, Select

22   Comfort goes above and beyond the Limited Warranty and offers a full purchase price refund

23   and disposal of the allegedly moldy product. (Compl. ¶ 29.) This and other districts hold that

24   when a customer is offered or has received a full purchase price refund, or even an offer to

25   remedy a product defect according to warranty terms, there is no injury and therefore no claim

26   for breach of warranty. *See In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 214 F.R.D.

27   at 622–23 (denying class certification because remedy already existed through manufacturer's

28   refund program); *Chin v. Chrysler Corp.*, 182 F.R.D. 448, 463 (D. N.J. 1998) (denying class

1    certification in part because there was no useful remedy the court could fashion since

2    individuals could receive refunds through manufacturer); *Sonic Auto., Inc. v. Galura*, 961 So.

3    2d 961, 965–66 (Fla. Ct. App. 2007) (requiring modification of class to explicitly exclude

4    individuals who received a refund); *Holstein v. City of Chicago*, 149 F.R.D. 147, 148–49 (N.D.

5    Ill. 1993) (dismissing challenge to constitutionality of towing ordinance because plaintiff had

6    no injury and was made whole by refund of towing fees).  Accordingly, to the extent that

7    Stearns has failed to notify Select Comfort of her warranty claim, or to the extent that she has

8    been offered or already accepted a refund check for her bed, this claims fails and must be

9    dismissed.

10                          **b.       Breach of Implied Warranty (Claim 3).**

11           Plaintiff alleges Select Comfort breached the implied warranty of fitness and

12   merchantability. (Compl. ¶¶ 66–68.)  To plead a breach of the implied warranty of fitness and

13   merchantability, a plaintiff must adequately allege that:

14           (1) at the time of the purchase, the defendant was in the business of selling the
             product; (2) the product was not of the same quality as those generally
15           acceptable in the trade, or was not fit for the ordinary purposes for which the
             product is used, or did not conform to the quality established by the parties'
16           prior dealings or by usage of trade; (3) the plaintiff took reasonable steps to
             notify the defendant within a reasonable time that the product did not have the
17           expected quality; (4) the plaintiff was harmed; and (5) the failure of the
             product to have the expected quality was a substantial factor in causing the
18           plaintiff's harm.

19   *Andrade v. Pangborn Corp.*, No. C 02-3771 PVT, 2004 WL 2480708, at *23 (N.D. Cal. Oct.

20   22, 2004) (citing CACI No. 1231; Cal. Comm. Code § 2314). "The implied warranty of

21   merchantability does not impose a general requirement that goods precisely fulfill the

22   expectation of the buyer.  Instead it provides for a minimum level of quality." *Id.* (citing *Am.*

23   *Suzuki Motor Corp. v. Super. Ct.*, 44 Cal. Rptr. 2d 526 (Cal. Ct. App. 1995)).

24           Stearns fails to plead that her bed was not fit for use as a bed, or that she was unable to

25   use it as a bed, throughout the eight years since its purchase in 2000.  Stearns also fails to allege

26   that she took reasonable steps to notify Select Comfort that the product was not "suitable" or

27   that it did not have the quality she expected in the years since its purchase.  Finally, Stearns

28   fails to allege, and cannot allege, that she was harmed by her inability to use her bed because

13

1    she could receive a refund to purchase a new bed.  Plaintiff has therefore failed to allege a

2    claim for breach of the implied warranties.

3        **B.    The Court Should Strike and Dismiss Class Claims From This Action.**

4        Stearns' nationwide class claims should also be dismissed.  "There is no presumption

5    that class action should be allowed," *Ross-Randolph v. Allstate Ins. Co*., No. DKC 99-3344,

6    2001 WL 36042162, at *4 (D. Md. May 11, 2001), and any party may move for a class

7    determination. *In re Old Kent Mortgage Co. Yield Spread Premium Litig*., 191 F.R.D. 155, 162

8    (D. Minn. 2000) (striking class claims as part of MDL litigation prior to discovery because it

9    was plain that the claims could not be maintained as a class action).  "If a plaintiff fails to

10    allege sufficient facts to show the requirements under Rule 23 have been met, then pursuant to

11    Rule 23(c)(4), the court can order that 'the pleadings be amended to eliminate allegations

12    regarding the representation of absent persons….'" *Ross-Randolf*, 2001 WL 36042162, at *4

13    (citing Moore's Federal Practice, § 23.60 (Matthew Bender 3d ed. 1997)).  The United States

14    Supreme Court has noted that "[s]ometimes the issues are plain enough from the pleadings to

15    determine whether the interests of the absent parties are fairly encompassed within the named

16    plaintiff's claim…." *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 160 (1982).  Accordingly, the

17    Court should strike class allegations if it is plain on the face of the pleadings that no class

18    certification is possible.

19        Striking futile class claims at the outset of litigation preserves the Court's and parties'

20    time and resources, rather than wasting such resources on a massive class action and needless

21    class discovery. *See Thornton v. State Farm Mut. Auto Ins. Co., Inc.,* No. 1:06-cv-00018, 2006

22    WL 3359482, at *5 (N.D. Ohio Nov. 17, 2006); *Bennett v. Nucor Corp.,* No.

23    3:04CV00291SWW, 2005 WL 1773948, at *2 (E.D. Ark. July 6, 2005); *Ardoin v. Stine*

24    *Lumber Co.,* 220 F.R.D. 459, 467 (W.D. La. 2004); *In re Phenylpropanoamine (PPA) Prods.*

25    *Liab. Litig.,* 208 F.R.D. 625, 634 (W.D. Wash. 2002); *Ross-Randolph,* 2001 WL 36042162, at

26    *9; *In re Old Kent Mortg. Co. Yield Spread Premium Litig.,* 191 F.R.D. at 164; *Earnest v. Gen.*

27    *Motors Corp.,* 923 F.Supp. 1469, 1474 (N.D. Ala. 1996); *Kennedy v. Baxter Healthcare Corp.,*

28

1  50 Cal. Rptr. 2d 736, 744 (Cal. Ct. App. 1996); *Rose v. Medtronics, Inc.,* 166 Cal. Rptr. 16, 20

2  (Cal. Ct. App. 1980).  The parties can then focus on Stearns' personal strict liability claim.

3        Stearns brings claims under various legal theories to recover two types of damages:  (1)

4  purely economic damages arising from damage to her bed ("purchase new mattresses" and

5  "pay the cost of disposal"); and (2) damages based on her personal injury ("seek medical

6  treatment").  (Compl. ¶ 37.)  Stearns cannot maintain a class action for economic injuries for

7  two reasons.  First, she purports to represent a class of people which include those whose

8  products have not failed in any way and who therefore have no injury.  Second, if a class

9  member did experience mold, Stearns acknowledges that Select Comfort offers a full refund

10  and disposes of the allegedly defective product, leaving Stearns and other similar class

11  members without an economic injury.  Further, Stearns cannot maintain a class action based on

12  personal injuries because the individual issues of proof of injury, proximate causation and

13  damages for each class member would swamp any commonalities, a holding virtually

14  unanimously recognized by courts.  Finally, Stearns' fraud and warranty theories of recovery

15  are not amenable to class treatment.  Therefore, the class claims in Stearns' Complaint should

16  be struck and dismissed from this lawsuit.

17        **1.    Legal Standard.**

18        A plaintiff seeking to bring a class action must satisfy both Rules 23(a) and 23(b).

19  Under Rule 23(a), the party seeking class certification must show:  (1) the class is so numerous

20  that joinder of all members is impracticable, (2) there are questions of law or fact common to

21  the class, (3) the claims or defenses of the representative parties are typical of the claims or

22  defenses of the class, and (4) the representative parties will fairly and adequately protect the

23  interests of the class.  Fed. R. Civ. P. 23(a).  In addition, the party seeking certification must

24  demonstrate that one of the requirements of Rule 23(b) is met.  Stearns seeks primarily

25  monetary damages.  (Compl. ¶ 2) ("Plaintiff seeks damages on behalf of herself and all other

26  similarly situated …,")  Therefore, Stearns will have to satisfy the requirements of Rule

27  23(b)(3), which requires a finding that questions of law or fact common to purported class

28  members predominate over any questions affecting only individual members, and that a class

1  action is superior to other available methods for fairly and efficiently adjudicating the

2  controversy.  Fed. R. Civ. P. 23(b)(3).  The matters pertinent to this analysis include:  (a) the

3  class members' interests in individually controlling the prosecution or defense of separate

4  actions; (b) the extent and nature of any litigation concerning the controversy already begun by

5  or against class members; (c) the desirability or undesirability of concentrating the litigation of

6  the claims in the particular forum; and (d) the likely difficulties in managing a class action.  *Id.*

7  **2.**  **Economic Injury Class Allegations Are Improper Because There Is No Possible Injury.**

8  **a.**  **Claims of Purported Class Members Whose Products Have**

9  **Not Suffered A Defect Cannot Go Forward.**

10  The Court must strike and dismiss Stearns' class claims to the extent she purports to

11  represent people whose beds have not experienced mold growth.  "No injury" putative class

12  action lawsuits are often dismissed at the Rule 12 stage.  Such claims are not entertained

13  because "any recoveries by those whose products function properly mean excess

14  compensation."  *In re Bridgestone/Firestone, Inc. Tires Prod. Liab. Litig.,* 288 F.3d 1012, 1017

15  (7th Cir. 2002); *see also Lee v. Gen. Motors Corp.*, 950 F. Supp. 170, 175 (S.D. Miss. 1996)

16  (finding if such cases are not dismissed, "the costs of doing business would be so burdensome

17  and so expensive that suppliers, manufacturers, and most consumers would suffer greatly").

18  California law also recognizes that "no injury" or "propensity to fail" cases must be

19  dismissed, and that means that purported class claims premised on a "propensity to fail" must

20  be struck:

21  Products liability is the name currently given to the area of law involving the
liability of those who supply goods or products for the use others to

22  purchasers, users, and bystanders for losses of various kinds *resulting from so-called defects in those products.*  Possible theories of recovery include strict

23  liability in tort, negligence (i.e., in creating or failing to discover a flaw, in
failing to warn or failing adequately to warn, or in the sale of a defectively

24  designed product), and breach of warranty (express and implied).  No matter
which theory is utilized, however, where a plaintiff alleges a product is

25  defective, proof that the product has malfunctioned is essential to establish
liability for an injury *caused by the defect.*

26  *Khan v. Shiley Inc.*, 266 Cal. Rptr. 106, 110 (Cal. Ct. App. 1990) (emphasis in original)

27  (citations omitted).  Moreover, the United States Supreme Court has confirmed that a legally

28

1    cognizable injury is required to sufficiently plead a fraud case, *Dura Pharms, Inc. v. Broudo*,

2    544 U.S. 336, 343 (2005), and it specifically recognized the danger of not dismissing such

3    cases at the Rule 12 stage, stating that "[i]t would permit a plaintiff 'with a largely groundless

4    claim to simply take up the time of a number of other people, with the right to do so

5    representing an *in terrorem* increment of the settlement value, rather than a reasonably founded

6    hope that the [discovery] process will reveal relevant evidence.'" *Id.* at 1634 (quoting *Blue*

7    *Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 741 (1975)).

8        The weight of authority nationwide confirms that, regardless of the label, there is no

9    cause of action when a product has not failed or there is otherwise no legally cognizable injury.

10   *See Angus v. Shiley Inc.*, 989 F.2d 142, 147–48 (3rd Cir. 1993) (dismissing plaintiff's claims

11   because his allegedly defective heart valve was functioning properly); *Briehl v. Gen. Motors*

12   *Corp.*, 172 F.3d 623, 627–28 (8th Cir. 1999) ("[w]here, as in this case, a product performs

13   satisfactorily and never exhibits an alleged defect, no cause of action lies"); *Jarman v. United*

14   *Indus. Corp.*, 98 F. Supp. 2d 757, 767 (S.D. Miss. 2000) (dismissing fraud, warranty, and

15   various statutory claims because there was no allegation of product failure); *Weaver v. Chrysler*

16   *Corp.*, 172 F.R.D. 96, 99–100 (S.D.N.Y. 1997) (dismissing class action fraud and warranty

17   lawsuit for allegedly defective integrated child seats where plaintiff's seat had not

18   malfunctioned); *Yost v. Gen. Motors Corp.*, 651 F. Supp. 656, 657–58 (D. N.J. 1986)

19   (dismissing fraud and warranty claims for alleged engine defect where plaintiff's engine had

20   not malfunctioned and only damages were for diminished value of product); *Ziegelmann v.*

21   *Daimler Chrysler Corp.,* 649 N.W.2d 556, 559–65 (N.D. 2002) (dismissing class action fraud

22   and negligence claims for alleged brake system defect where damage claim was only for

23   diminished value of product); *Frank v. DaimlerChrysler Corp.*, 741 N.Y.S.2d 9, 13–17 (N.Y.

24   App. Div. 2002) (dismissing class action fraud, negligence and products liability claims for

25   alleged seat defect in the absence of allegation of plaintiff's seat failing); *Yu v. Int'l Bus. Mach.*

26   *Corp.*, 732 N.E.2d 1173, 1177–78 (Ill. App. Ct. 2000) (affirming dismissal of class action

27   fraud, negligence and deceptive trade practices lawsuit for defective computer software where

28   there was no allegation plaintiff's system failing); *Ford Motor Co. v. Rice*, 726 So. 2d 626,

1    628–31 (Ala. 1998) (affirming dismissal of class action fraud claim for SUV design defect that

2    caused rollover tendency because defect did not manifest itself in plaintiff's vehicle).

3        Here, Stearns purports to represent the following class:

4        **All original purchasers and users of a Select Number® [sic] bed**
     **manufactured by SELECT COMFORT between January 1, 1987 and**
5        **December 31, 2005.**

6    (Compl. ¶ 34.)  This purported class includes purchasers and mere "users" of the Sleep

7    Number® bed <u>regardless</u> of whether their beds have manifested any defect whatsoever, and if it

8    did, regardless of whether Select Comfort has already remedied the issue—that is, regardless of

9    injury to a purported class member.  Stearns seeks a path around this reality by pleading her

10   "belief" that Sleep Number® beds have a "propensity" to fail.  However, the law does not

11   allow claims for remote, conjectural, or speculative damages.  *See Atherley v. MacDonald,*

12   *Young & Nelson, Inc.*, 298 P.2d 700, 709 (Cal. Ct. App. 1956).  And the cases cited above

13   explicitly reject such a  "propensity to fail" theory.  Accordingly, on the face of the Complaint,

14   there is no economic injury or damage to the class of people Stearns purports to represent.  This

15   also makes Stearns an inadequate class representative pursuant to Rule 23(b)(a)(3) and (4).

16       **b.    There Is No Legally Cognizable Economic Injury Because**
             **Stearns Acknowledges that Select Comfort Offers A Full**
17            **Refund.**

18   Stearns claims that she and others have suffered an economic injury because they will

19   have to replace their beds and dispose of "potentially hazardous" materials.  But Stearns pleads

20   that a customer who reports mold to Select Comfort is both offered a full refund and requested

21   to return the bed to Select Comfort, thereby neutralizing any potential economic harm.

22       There is no legally cognizable injury when a manufacturer fulfills its warranty

23   obligations and repairs or replaces the product or offers a full refund.  *See In re*

24   *Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 214 F.R.D. at 622–23; *Chin*, 182 F.R.D. at

25   463; *Sonic Auto.*, 961 So. 2d at 965–66; *Holstein*, 149 F.R.D. at 148–49.  Stearns' theory

26   ignores an important principle of efficient commerce—that all manufacturers have some

27   product failures, which is why warranties are part of the parties' bargain.  As Judge

28   Easterbrook went to great lengths to explain, allowing such claims to proceed would actually

1  injure consumers because it would "induce manufacturers to spend inefficiently much to reduce

2  the risks of defects." *In re Bridgestone/Firestone, Inc.*, 288 F.3d at 1017 n.1. These costs

3  would be passed on to consumers. *Id*; *see also Thiedemann v. Mercedes-Benz USA*, 872 A.2d

4  783, 789 (N.J. 2005) (explaining plaintiffs not entitled to perfect product but rather must work

5  within warranty program that was part of their bargain).

6      Moreover, class treatment makes no sense in a case in which the manufacturer is

7  offering a remedy for the alleged product failure. *Chin*, 182 F.R.D. at 463 (denying class

8  certification in part because there was no useful remedy the court could fashion since

9  individuals could receive refunds already offered by the manufacturer). Select Comfort should

10  not have to defend an economic injury class action where no potential damage exists.

11

12        **3.    Stearns May Not Base a Nationwide Class Action on Individual Personal Injury Claims.**

13      To state a claim for strict products liability, a plaintiff must assert a personal injury or

14  an economic injury other than to the product itself. *Zamora v. Shell Oil Co*., 63 Cal. Rptr. 2d

15  762, 764–67 (Cal. Ct. App. 1997) (finding certain plaintiffs had suffered no injury giving rise

16  to cognizable action); *Osborne v. Subaru of Am., Inc.*, 243 Cal Rptr. 815, 821 (Cal. Ct. App.

17  1988). These types of claims, as well as all products liability-based claims, are notoriously

18  inappropriate for class treatment because "each individual's right to recovery depends on facts

19  peculiar to that individual." *Kennedy v. Baxter Healthcare Corp*., 50 Cal. Rptr. 2d at 743–44;

20  ("As the California Supreme Court has observed class actions for personal injuries in mass tort

21  litigation present a multitude of problems."); *see, e.g.*, *Zinser v. Accufix Research Inst.*, 253

22  F.3d 1180, 1186 (9th Cir. 2001) ("Our circuit has recognized the potential difficulties of

23  'commonality' and 'management' inherent in certifying products liability class actions."); *In re

24  (PPA) Prod. Liab. Litig.*, 208 F.R.D. at 630–31 ("Indeed, a substantial number of courts have

25  declined to certify putative products liability cases.") (collecting cases); *Jolly v. Eli Lilly and

26  Co.*, 751 P.2d 923, 936 (Cal. 1988) (holding that personal injury claims are not appropriate for

27  class action certification); Fed. R. Civ. P. 23 advisory committee notes.

28      Moreover, Stearns brings this case as a purported <u>nationwide</u> class action, conceding

1  that different states' laws will apply (Compl. ¶ 2), which only exacerbates the difficulties,

2  multiplying the individual issues several times over.  *See also Zinser,* 253 F.3d at 1187 (finding

3  that California law cannot be constitutionally applied to all putative class members).  The Ninth

4  Circuit has stated that while there is no absolute bar to class actions in this type of case, it is the

5  extremely rare case that would qualify.  *Valentino v. Carter-Wallace, Inc.,* 97 F.3d 1227, 1230–

6  31 (9th Cir. 1996) (citing specific examples).  This is not the case, as it is clear from the

7  Complaint.

8                              **a.    Individual Issues Predominate.**

9          Personal injury claims must be individually tried because proving injury, causation and

10  damages requires a detailed examination of each purported class member's individual

11  circumstances.  For example, for Stearns to prevail on her claim, she must prove that her bed

12  has mold growth, that it was caused by a product defect and not some other reason, that the

13  mold growth proximately caused her alleged personal injuries, and what alleged damages can

14  be traced to those injuries.  Additionally, under comparative fault principles, damages are

15  apportioned based upon the various causes contributing to a plaintiff's harm, as opposed to a

16  particular defendant's negligence.  *Potter v. Firestone Tire and Rubber Co.,* 863 P.2d 795, 826

17  (Cal. 1993).

18          Further, Stearns purports to represent a class going back over twenty years.  In

19  California, the statute of limitation on personal injury claims is one year.  *Nodine v. Shiley Inc.,*

20  240 F.3d 1149, 1153 (9th Cir. 2001).  California applies the "discovery rule" to determine

21  when a claim accrues, and the statute of limitation begins to run when the plaintiff suspects or

22  should suspect that her injury was caused by wrongdoing.  *Id.*  Stearns alleges that she

23  purchased her bed in 2000, and we may very well discover that she was put on notice of her

24  claim more than a year before she brought her lawsuit, barring this action.  Indeed, an

25  individual inquiry will have to be made of every single class member to find out when their

26  own statute of limitations began to run—going back over twenty years of customers and users

27

28

1  of Sleep Number® beds.[2]

2      To determine each class member's right to bring a claim, proof of injury, and proximate

3  causation and damages relative to the injuries claimed by class members, the Court will have to

4  examine a myriad of distinct issues of each class member relative to, *inter alia*: (1) whether

5  each class member's bed even had mold; (2) what caused the mold growth; (3) what type of

6  mold is growing; (4) environmental factors that may affect whether mold grows, such as

7  climate, humidity, and the presence or absence of air conditioning; (5) condition of the home

8  the bed is kept in; (6) medical history of each class member including allergies and pre-existing

9  health conditions; (7) use factors, such as whether pets sleep on the bed or users wet the bed;

10  (8) whether class members are smokers or use alcohol, tobacco, and other legal or illegal drugs;

11  (9) whether they followed product instructions; (10) whether a defect was caused by negligent

12  manufacture, or negligent shipping and handling or some combination of other factors; (11)

13  amount and duration of potential exposure to mold; (12) mold or other allergen exposure from

14  other sources including inside of and outside of the home; (13) when he or she first discovered

15  mold growth; (14) whether and when he or she viewed any press related to mold in beds; and

16  (15) whether he or she previously contacted Select Comfort customer service and the topic of

17  that call.  *See, e.g.*, *In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*,, 208 F.R.D. at 631–

18  32 (describing individual causation factors in medication suit); *Kennedy*, 43 Cal. App. 4th at

19  810–12 ("Defenses [in allergic reaction case] will require individual litigation of claims.")

20          **b.    State Laws Differ, Multiplying the Individual Issues.**

21      Because Stearns purports to bring a nationwide class action, these individual inquiries

22  are multiplied.  The states differ with respect to the effect of contributory negligence on a

23  plaintiff's strict liability and negligence-based causes of action.  Some states have applied

24  comparative negligence principles to strict liability actions.  *Osborne*, 143 Cal. Rptr. at 819–20.

25  However, there is a wide divergence in the systems of comparative negligence that have been

26  adopted by individual states.  *Id.* at 820.  Some states, like California, follow a theory of pure

27  _____

[2] This same issue will be implicated for each of Stearns' claims.

28

1    comparative negligence, while others permit recovery only when the fault attributable to the

2    plaintiff is less than or equal to that of the defendants.  *Id.*  Of the states adopting this method,

3    variations exist with respect to the point at which a plaintiff's contributory negligence

4    extinguishes the right to recover at all.  *Id.*  Further, differences also exist when, as here,

5    multiple defendants are involved; some allow recovery against all defendants, whereas others

6    permit recovery against only those defendants more negligent than plaintiff.  *Id.*

7         States are also divided on whether economic losses are even recoverable in a products

8    liability action.  *Id.*  In California, such recovery is unavailable.  *Id.*  While most states apply

9    the California rule, a significant minority apply the opposing view.  *Id.* (collecting cases).

10   Thus, for each state the Court would have to determine whether the state allowed damages for

11   economic loss, and then the damage claim would have to be analyzed to determine whether he

12   or she was seeking a legally appropriate measure of damages, individually proving his or her

13   claim.  *Id.*  "We dare say this would be a monumental task."  *Id.*

14        Plaintiff also seeks punitive damages. (Compl. ¶¶ 58, 83, 90, 98, prayer for relief at ¶

15   3.)  The availability of punitive damages varies from state to state.  "There is no uniform

16   method to determine such damages."  *Osborne*, 143 Cal. Rptr. at 821.  "Punitive damages

17   standards can range from gross negligence to reckless disregard to various levels of willfulness

18   and wantonness."  *In re N. Dist. of Cal., Dalkon Shield IUD Prod. Liab. Litig.*, 693 F.2d 847,

19   850 (9th Cir. 1982).  Therefore, the Court would be required to analyze Defendants' conduct

20   pursuant to a variety of legal standards that vary from state to state.

21

            **4.    The Elements of Proof Necessary To Prove Fraud and Warranty**
22          **Claims Implicate Too Many Individual Issues.**

23        Both fraud and warranty claims are recognized nationwide as generally improper for

24   class treatment.  *See Cole v. Gen. Motors Corp.*, 484 F.3d 717, 724–30 (5th Cir. 2007)

25   (discussing at length why warranty claims are inappropriate for class treatment); Fed. R. Civ. P.

26   23, Advisory Committee Notes to the 1966 Amendment, Subd. (b)(3).  That is because the

27   elements necessary to prove these claims are individual to each purported class member,

28   complicating the litigation and making managing a class action impossible.  "If each class

1   member has to litigate numerous and substantial separate issues to establish his or her right to

2   recovery individually, a class action is not 'superior.'" *Zinser*, 253 F.3d at 1192.

3       For example, Stearns' fraud and warranty claims require proof of reliance. When

4   reliance is part of a claim for relief, class status generally cannot be granted. *See Castano v.*

5   *Am. Tobacco Co.*, 84 F.3d 734, 745 (5th Cir. 1996) ("a fraud class action cannot be certified

6   when individual reliance is an issue."); Fed. R. Civ. P. 23, Advisory Committee Notes to the

7   1966 Amendment, Subd. (b)(3). The "requirement that plaintiffs show reliance as a condition

8   for recovery greatly impacts the predominance inquiry: 'the economies ordinarily associated

9   with the class action device' are defeated where plaintiffs are required to bring forth individual

10  proof of reliance." *Cole*, 484 F.3d at 727 (*quoting Patterson v. Mobile Oil Co.*, 241 F.3d 417,

11  419 (5th Cir. 2001)).

12      The Court would have to conduct an individualized inquiry for each class member into

13  reliance and materiality and the parties will have to conduct corresponding discovery for each

14  class member. Indeed, many consumers may have purchased their bed based not on reliance on

15  Defendants' representations but rather based upon "brand loyalty, convenience, perception of

16  quality, or as a reflection of social status." *Weinberg v. Sun Co.*, 777 A. 2d 442, 444 (Pa.

17  2001); *see also Oshana v. Coca-Cola Bottling Co.*, 225 F.R.D. 575, 582 (N.D. Ill. 2005)

18  (finding that "marketing may be just one of many reasons for an individual's decision to

19  purchase the product."). For these reasons, courts have routinely refused to certify class action

20  fraud claims. *See Andrews v. Am. Tel. & Tel. Co.*, 95 F.3d 1014, 1025 (11th Cir. 1996).

21      The purported class would face similar difficulties with respect to warranty claims.

22  Moreover, different jurisdictions have different requirements with respect to reliance in

23  warranty claims. *See Cole*, 484 F.3d at 726 ("There is a clear split of authority among the

24  jurisdictions as to whether a buyer must show reliance on a statement or representation for it to

25  be considered part of the "basis of the bargain.")(collecting cases). California law, as

26  discussed, requires a showing of reliance for warranty claims. Some jurisdictions require a

27  strict showing of reliance, others have no reliance requirement, and still others have applied a

28  rebuttable presumption of reliance. *Id.* (collecting cases for each approach).

DEFENDANTS' MOTION TO DISMISS
AND TO STRIKE CLASS CLAIMS
Case No. C 08 02746JF

1   The warranty claims would face additional hurdles.  Over the past twenty years, the

2   language in Select Comfort's warranties has changed.  Therefore, there is no uniform contract

3   that purported class members may base claims upon.  The Court will have to inquire into each

4   class member's Limited Warranty to determine what was promised and whether the warranty

5   was breached.  Further, the laws of the states differ with respect to warranty law, both express

6   and implied.  The Limited Warranty expressly contemplates that the law of the state of the

7   consumer's residence will apply.  (Compl. Ex. A.)  Although most states have adopted some

8   form of the Uniform Commercial Code, "[t]he Uniform Commercial Code is not uniform."

9   *Walsh v. Ford Motor Co.*, 807 F.2d 1000, 1016–17 (D.C. Cir. 1986) (Ruth Bader Ginsburg, J.).

10  In the recent case of *Cole*, 484 F.3d at 726, the Fifth Circuit undertook an extensive analysis of

11  the differences between states' express and implied warranty laws.  The Fifth Circuit noted:

12      [M]any of the variations in state law raise the potential for the application of
        multiple and diverse legal standards and a related need for multiple jury
13      instructions.  For some issues, variations in state law also multiply the
        individualized factual determinations that the court would be required to
14      undertake in individualized hearings.  Specifically, the laws of the
        jurisdictions vary with regards to (1) whether plaintiffs must demonstrate
15      reliance, (2) whether plaintiffs must provide notice of breach, (3) whether
        there must be a privity of contract, (4) whether plaintiffs may recover for
16      unmanifested … defects, (5) whether merchantability may be presumed and
        (6) whether warranty protections extent to used [products].

17

18  *Id.*  Accordingly, class treatment is inappropriate, and discovery will not change these facts.

19                                      **<u>CONCLUSION</u>**

20      Plaintiff fails to state a claim for relief on any of her claims other than her strict

21  products liability claim based on her alleged personal injuries.  She fails to plead any fraudulent

22  conduct, she utterly fails to meet applicable pleading standards, and she fails to allege any

23  economic injury distinct from her personal injury claim.  Accordingly, her claims 2–6 must be

24  dismissed as well as the class claims based on them.  Likewise, the Court should deny

25  Plaintiff's attempt to overreach and manufacture a nationwide class action out of her personal

26  injury allegations.  Personal injury, fraud, and warranty claims are inappropriate for class

27  treatment except in very narrow circumstances.  From the face of the Complaint, it is apparent

28  that these circumstances are not present here, providing an independent reason why all of the

1    class claims must be struck.  No class discovery is needed to make that determination.  Striking

2    the class claims will avoid lengthy and costly class discovery and motion practice and

3    appropriately streamline this litigation.

4    Dated:  August 1, 2008.

5                                    PILLSBURY WINTHROP SHAW PITTMAN LLP

6

7                                    By  /s/ Dianne L. Sweeney
                                         Dianne L. Sweeney
8                                        Attorneys for Defendants
                                         SELECT COMFORT RETAIL CORPORATION
9                                        AND BED BATH & BEYOND, INC.

10   Dated:  August 1, 2008.
                                    OPPENHEIMER WOLFF & DONNELLY LLP
11

12                                   By  /s/ Andrew S. Hansen
                                         Andrew S. Hansen
13                                       Attorneys for Defendants
                                         SELECT COMFORT RETAIL CORPORATION
14                                       AND BED BATH & BEYOND, INC.

15

16         I hereby attest that I have the concurrence of Andrew Hansen to file this document.

17

18                                       /s/ Dianne L. Sweeney
                                         Dianne L. Sweeney
19

20

21

22

23

24

25

26

27

28