PILLSBURY WINTHROP SHAW PITTMAN LLP
VERNON H. GRANNEMAN (SBN 083532)
  vernon.granneman@pillsburylaw.com
DIANNE L. SWEENEY (SBN 187198)
  dianne.sweeney@pillsburylaw.com
2475 Hanover Street
Palo Alto, CA  94304-1114
Telephone: (650) 233-4500
Facsimile: (650) 233-4545

OPPENHEIMER WOLFF & DONNELLY LLP
ANDREW S. HANSEN (admitted *Pro Hac Vice*)
  ahansen@oppenheimer.com
HEIDI A. O. FISHER (admitted *Pro Hac Vice*)
  hfisher@oppenheimer.com
MEGHAN M. ANZELC (admitted *Pro Hac Vice*)
  manzelc@oppenheimer.com
Plaza VII, Suite 3300
45 South Seventh Street
Minneapolis, MN  55402
Telephone: (612) 607-7000
Facsimile: (612) 607-7100

Attorneys for Defendants
SELECT COMFORT RETAIL CORPORATION
and BED BATH & BEYOND INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MOLLY STEARNS, | Case No. C 08 02746 JF |
| Plaintiff, | **REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' TO DISMISS AND TO STRIKE** |
| vs. | |
| SELECT COMFORT RETAIL CORPORATION, a Minnesota Corporation; BED BATH & BEYOND INC., a New York Corporation, | **[PROPOSED] CLASS ACTION** |
| | Date: September 5, 2008 |
| | Time: 9:00 a.m. |
| | Dept: Courtroom 3, 5th Floor |
| Defendants. | Judge: The Honorable Jeremy Fogel |

TABLE OF CONTENTS

Page

I. INTRODUCTION ................................................................................................... 1

II. ARGUMENT .......................................................................................................... 1

    A. FEDERAL PROCEDURAL RULES APPLY TO THIS MOTION ......................... 1

    B. STEARNS HAS FAILED TO MEET THE MINIMUM THRESHOLD FOR HER CLAIMS TO GO FORWARD ................................................................ 3

    C. THIS CASE CANNOT PROCEED AS A PURPORTED CLASS ACTION .......... 8

III. CONCLUSION ..................................................................................................... 10

I. **INTRODUCTION**

Plaintiff Molly Stearns' response to Defendants' motion to dismiss and strike further highlights her failure to meet her pleading burden. Having been appraised in detail of that burden in Defendants' memorandum, Stearns' response fails to put forth any coherent argument. She fails to distinguish any of Defendants' cited case law and fails to even attempt to explain how her complaint meets the minimum pleading standards under Rule 8 and the heightened pleading standards under Rule 9(b). Instead, Stearns boldly takes the position that because she "showed up at the lake" she gets to go on a "fishing expedition." While Sterns' complaint is inadequate under any circumstances, it is especially important for her to meet the minimum pleading standards because she seeks to bring a massive, nationwide class action requiring expensive and time-consuming discovery and which implicates over twenty years of sold products.

II. **ARGUMENT**

    A.     **FEDERAL PROCEDURAL RULES APPLY TO THIS MOTION.**

Stearns attempts to avoid dismissal by making the puzzling argument that her complaint is sufficient under California state procedural law pleading standards. Not only is does Stearns' complaint fail to meets California pleading standards,[1] but federal, not state, procedural law applies here.

---

[1] Under California pleading standards, "[f]raud actions . . . are subject to strict requirements of particularity in pleading. The idea seems to be that allegations of fraud involve a serious attack on character, and fairness to the defendant demands that he should receive the fullest possible details of the charge in order to prepare his defense. Accordingly the rule is everywhere followed that fraud must be specifically pleaded. The effect of this rule is twofold: (a) General pleading of the legal conclusion of 'fraud' is insufficient; the facts constituting the fraud must be alleged. (b) Every element of the cause of action for fraud must be alleged in the proper manner (i.e., factually and specifically), and the policy of liberal construction of the pleadings . . . will not ordinarily be invoked to sustain a pleading defective in any material respect." *Comm. on Children's Television, Inc. v. Gen. Foods Corp.*, 35 Cal. 3d 197, 216 (1983). Likewise, pleading upon information and belief requires more than mere recitation under California law. *Doe v. City of Los Angeles*, 169 P.3d 559, 571 n.5 (Cal. 2007) ("Thus, a pleading that did no more than assert boilerplate allegations . . . would not be sufficient nor would allegations of "information and belief" that merely asserted the facts so alleged without alleging such information that 'lead[s] [the plaintiff] to believe the allegations are true.'")

1        This matter was properly removed to this Court on June 2, 2008 pursuant to the Class Action Fairness Act ("CAFA").  28 U.S.C. §§ 1332(d), 1453.  (Docket Entry 1.)  Rule 81(c)(1) of the Federal Rules of Civil Procedure instructs that "[t]hese rules apply to a civil action after it is removed from a state court."  Stearns' own cited case law confirms this point: "The Federal Rules of Civil Procedure, like other provisions of federal law, govern the mode of proceedings in federal court after removal."  *Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers Local No. 70 of Almeda Cty.*, 415 U.S. 423, 437 (1974).  California federal courts apply Federal Rule 9(b) to original complaints that have been removed from state court. *See, e.g., Lopez v. GMAC Mortgage Corp.*, No. C 07-3911 CW, 2007 WL 3232448, at *4 (N.D. Cal. Nov. 1. 2007) ("In a case removed to federal court, the pleading requirements for a claim of fraud are analyzed under Federal Rule of Civil Procedure 9(b)"); *Duvall v. Galt Med. Corp.*, No. C-07-03714 JCS, 2007 WL 4207792, at *11 (N.D. Cal. Nov. 7, 2007) (applying Rule 9(b) to fraud claims in original complaint removed from state court).  Indeed, this is logically true as the present case, a single strict liability claim masquerading as a nationwide class action, is exactly the type of case that the CAFA was meant to curb.  *See* S. 2062-The Class Action Fairness Act, Legis. Notice 42B (U.S. Senate Republican Policy Comm., Washington D.C.) July 7, 2004 at 4–5 (discussing the "lawyer-driven class action industry" and the costs of "runaway litigation" to the national economy).

         Additionally, Stearns had ample notice that her complaint would be subject to the Federal Rules of Civil Procedure.  When brought, this case was clearly removable under CAFA, which Stearns' counsel, who describes themselves as having "substantial experience in litigating class action cases" (Compl. ¶ 41) surely recognized.  Moreover, in late May 2008, Stearns' counsel knew that Defendants were bringing a motion to dismiss and the parties even participated in a "meet and confer" in early July 2008—almost a month before this motion was filed—in which Defendants informed Stearns of the basis of this motion.  Nonetheless, Stearns failed to file an amended complaint complying with the relevant pleading standards, which Stearns appears to concede this complaint fails to do.

**B.    STEARNS HAS FAILED TO MEET THE MINIMUM THRESHOLD FOR HER CLAIMS TO GO FORWARD.**

Stearns' responsive brief fails to explain why her complaint should be saved, fails to cite any case law beyond pleading standards, and fails to distinguish even one of Defendants' cases. However, it makes one thing clear: Stearns believes that if she is able to set forth a "conceivable" theory of recovery, she is entitled to thrust Defendants into protracted and expensive discovery in an attempt to find a lawsuit. The United States Supreme Court recently slammed the door on such speculative pleading, holding that if the plaintiff has not stated "enough facts" to "nudge[] [her] claims across the line from conceivable to plausible, [her] complaint must be dismissed." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007) (emphasis added). Indeed, *Bell Atlantic* decried Stearns' method of pleading on "legal conclusions couched as factual allegation," which must be given no weight. *Id*. at 1965 (citing *Papasan v. Allain*, 478 U.S. 265 (1986)). She must present more than "a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Id*. (citation omitted).

Contrary to Stearns' presumption, there is a "practical significance" to Rule 8's minimum pleading requirements. *Id*. at 1966. First alluded to in *Dura Pharmaceuticals Inc. v. Broudo*, 544 U.S. 336, 347 (2005), the Supreme Court explained that "something beyond the mere possibility of loss causation must be alleged, lest a plaintiff with 'a largely groundless claim be allowed to take up the time of a number of other people, with the right to do so representing an *in terrorem* increment of the settlement value.'" *Bell Atlantic*, at 1966 (citing *Dura*). "So, when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *Id*. (citations omitted). Indeed, the Supreme Court explained that in a potentially massive class action, such as this, "the threat of discovery expense will push cost-conscious defendants to settle even anemic cases before reaching those proceedings" and therefore "a district court must retain the power to insist upon some specificity in pleading before allowing a potentially massive factual controversy to proceed." *Id.* at 1967 (citations omitted). Consequently,

> the price of entry, even to discovery, is for the plaintiff to allege a factual predicate concrete enough to warrant further proceedings, which may be costly and burdensome. <u>Conclusory allegations</u> in a complaint, if they stand alone, are a danger sign that the plaintiff is engaged in a <u>fishing expedition</u>.

*DM Research, Inc. v. College of Am. Pathologists*, 170 F.3d 53, 55 (1st Cir. 1999) (emphasis added); *see, e.g. Coalition for ICANN Transparency Inc. v. Verisign, Inc.*, 452 F. Supp. 924, 935 (N.D. Cal. 2006) (quoting *DM Research* with approval); *Grosz v. Lassen Cmty. Coll. Dist.*, No 2:07-cv-0697 FCD/CMK, 2007 WL 4356624, at *2 (E.D. Cal. Dec. 11, 2007) (same).

Here, Stearns' entire pleading is based on a few innocuous facts and plenty of "unwarranted deductions of fact" and "unreasonable inferences" which must disregarded by the court. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

Moreover, Stearns bases several of her claims on fraud, which requires an even higher level of specificity—one that she utterly fails to acknowledge. Indeed, "[a]ccusations of fraud can do serious damage to the goodwill of a business firm or a professional person. People should be discouraged from tossing such accusations into complaints in order to induce advantageous settlement or for other ulterior purposes." *Bankers Trust Co. v. Old Republic Ins. Co.*, 959 F.2d 677, 683 (7th Cir. 1992) (Posner, J.). Therefore, pleading such allegations on "information and belief" is "a clearly improper locution under the current federal rules which impose . . . a duty of reasonable precomplaint inquiry not satisfied by rumor or hunch." *Id.*; *see also Bell Atlantic*, 127 S. Ct. at 1962–63 (rejecting pleading "upon information and belief" on a Rule 8 standard).

Here, Stearns makes very few <u>factual</u> allegations. She alleges that Select Comfort manufactures, promotes and sells the Sleep Number® bed, but she alleges nothing about its manufacture, promotion or sales practices beyond general statements. She alleges that she purchased a Sleep Number® bed in 2000 at Bed Bath and Beyond (Compl. ¶ 24), but she alleges nothing about the purchasing experience itself, such as what advertising she viewed that caused her purchase, representations or discussions with a salesperson, special inquiries made, etc. Indeed, Stearns claims that she can't plead the representations she relied on because "the exact text of the advertisements is in the custody and control of defendants and will be the

1  subject of discovery requests." (Opp'n 4:20–22.) This illustrates the dearth of Stearns'
2  fraudulent allegations. What advertising Stearns reviewed and relied on is within her own
3  knowledge—not within the custody and control of Defendants. Discovery will not aid Stearns
4  in pleading this essential element of fraud.
5       Likewise, Stearns alleges that she discovered mold growing on her bed eight years after
6  her purchase, in April 2008 (Compl. ¶ 52), but she fails to plead any facts whatsoever that
7  connects this mold growth to anything specific related to the Sleep Number® bed. There is no
8  mention of any design feature, material used, or anything else that would lead Stearns to
9  believe that mold began growing on her bed due to a defect in the bed, rather than simple
10 environmental factors. Under Stearns' theory, she could bring a lawsuit against food
11 companies or appliance manufacturers when mold grows on food in her refrigerator. If she
12 pulls up the carpet in her house and discovers mold, she can sue the carpet manufacturer. The
13 allegations in Stearns' complaint could be made against virtually any manufacturer regarding
14 any product. *Oestreicher v. Aleinware Corp.*, 544 F. Supp. 2d 964, 974 (N.D. Cal. 2008)
15 ("Indeed, allegations of this nature with respect to all prongs above could be made about any
16 alleged design defect in any manufactured product. The heightened pleading requirements of
17 Rule 9(b) were designed to avoid exactly this situation"). Stearns claims that she cannot plead
18 this information because "it is inconceivable that a lay person would have knowledge of the
19 actual design of the bed." (Opp'n 5:12–13.) But Stearns has custody and control of her own
20 bed, which she claims is defective, and diagrams of the Sleep Number® bed construction can
21 be found publicly on Select Comfort's website. Moreover, Stearns attempts to bring a
22 nationwide class action based upon her conclusion that all or most Select Comfort beds will
23 grow mold. She does this without offering any knowledge of the bed or citing any studies,
24 reports, investigations or anything else to support her bald theory. Stearns must articulate <u>some</u>
25 <u>basis</u> in fact sufficient for the Court to infer there is actually an "inherent defect" in the Sleep
26 Number® bed. *See, e.g., Oestreicher*, 544 F. Supp. 2d at 966 (explaining alleged design
27 defects as inadequate heat management system and placement of the air intake vent); *Hoey v.*
28 *Sony Elecs. Inc.*, 515 F. Supp. 2d 1099, 1101 (N.D. Cal. 2007) (describing in detail alleged

1  design defects).

2  In her responsive brief, Stearns illustrates her reliance on conclusion and speculation to 3 carry her complaint.  For example, Stearns alleges that she believes customers who complain of 4 mold to Select Comfort are offered a full refund. (Compl. ¶ 29.)[2]  Taken as true, there is 5 nothing in that allegation suggestive of a product defect or fraud and, as pointed out by 6 Defendants in their opening brief, it actually demonstrates that Stearns has no economic injury 7 related to her alleged product defect. [3]  *See Sprewell*, 266 F.3d at 988 ("We have held that a 8 plaintiff can—as Sprewell has done here—plead himself out of a claim by including 9 unnecessary details contrary to his claims"); *Carey v. Select Comfort Corp.*, No. 24CV 04- 10 015451, 2006 WL 871519, at *5 (Minn. Dist. Ct. Jan. 30, 2006) (dismissing purported 11 nationwide class action based on premise that mold will develop in bed in part because Plaintiff 12 acknowledged that "Select Comfort has offered to send out replacement pieces if mold forms" 13 and "there are no facts pled in the Complaint that the express warranty will not be honored by 14 Select Comfort.")  Stearns claims "[t]he allegations in the Complaint are that this policy was an 15 effort by defendants to conceal the defective nature of the product and this must be taken as 16 true." (Opp'n 3:27–28.)  She also argues that "[t]his policy is alleged to be part of a greater 17 fraudulent scheme in the concealment cause of action." (Opp'n 4:2–3.)  But these are classic 18 examples of unwarranted inference and pure speculation, and they should be ignored by the 19 Court.  *Sprewell*, 266 F.3d at 988.  In *Bell Atlantic*, the Supreme Court specifically analyzed a

---

[2] In her brief, Stearns concedes that she has received a refund check. (Opp'n 5:24–25.)  While not relative to this motion because merely the offer to issue a refund check is sufficient to defeat Stearns' claim of economic damages, Stearns actually requested this check from Select Comfort prior to filing her lawsuit and cashed the check after it was filed.

[3] In her brief, Stearns claims for the first time that she may have additional damages for incidentals such as bedding costs and cleaning costs.  However, these allegations do not appear in her complaint nor is there any suggestion that Stearns cleaned her bed or disposed of any bedding.   Moreover, these types of incidental costs are insufficient on which to base a claim.  *See Thiedemann v Mercedes-Benz USA, LLC*, 872 A.2d 783, 795 (N.J. 2005) (finding that it was "unrealistic" to claim that gas burned while technicians attempted to diagnose problem with vehicle constituted a "loss").  Stearns also claims that issuing a refund for her purchase does not satisfy the benefit of her bargain for "this unique bed." (Opp'n 6:20–21.)  But Stearns forgets that Select Comfort also offers repair and replacement which, if Stearns so chose, would allow her to continue to use and enjoy her Select Comfort® bed. (Compl. Ex. A at 12.)

1  similar pleading attempt and warned against giving credence to "merely legal conclusions

2  resting on prior allegations." *Bell Atlantic*, 127 S. Ct. at 1970.

3      Likewise, Stearns' breach of warranty claims appear to rest on the faulty notion that she

4  is entitled to a perfect product that will never have a problem. The New Jersey Supreme Court

5  in *Thiedemann v. Mercedes-Benz USA, LLC*, 872 A.2d 783 (N.J. 2005) deftly articulated why

6  she is wrong:

> Essentially, what plaintiffs urge here is that they are entitled to a Mercedes-Benz motor vehicle without any flaws or glitches, without any reasonably-remediable problems, and without any of the ordinary tribulations of automobile ownership or lease: in other words, a perfect car unaffected by the laws of physics and common sense. Plaintiffs are not so entitled, and they may not seek legal remedies because of their unrealistic disappointment. If plaintiffs' position were to be sustained—that is, their subjective and intangible disenchantment be translated into legally recoverable damages—it would severely impair the working relationship among automobile manufacturers, distributors, and consumers and undermine the efficacy of the very warranties consumers have fought so hard to obtain and protect.

13  *Id.* at 789.

14      While failing to defend her inadequate complaint, Stearns plainly telegraphs her intent

15  to engage in a fishing expedition in the hopes that she can cobble together enough information

16  to weave a sufficient pleading and extract a substantial settlement: "Only discovery and an

17  investigation of all facts will reveal the true nature of the actions by defendants. Plaintiff is

18  entitled to investigate and collect evidence in support of her claims." (Opp'n 4:8–10.) Stearns

19  had the duty to investigate her claims <u>before</u> she brought a complaint. Fed. R. Civ. P. 11(b).

20  "[P]laintiffs cannot simply promise the court that once they have completed discovery,

21  something will turn up. Rather <u>before</u> they are permitted to proceed to discovery, plaintiffs

22  must have some factual basis for believing that a legal violation has actually occurred."

23  *Migdal v. Rowe Price-Fleming Intern., Inc.*, 248 F.3d 321, 328 (4th Cir. 2001) (emphasis

24  added); *see also Freeman v. Bechtel Constr. Co.*, 87 F.3d 1029, 1032 (8th Cir. 1996) (finding

25  plaintiffs' request to take discovery confirmed their "allegations were made without supporting

26  facts in the hope that they would be permitted to embark upon a classic fishing expedition. The

27  district court properly cut short that abuse of the liberal federal pleading rules by granting Rule

28  12(b)(6) dismissals.") As another California federal court has recently noted, "Federal judges

1  have better things to do, and the substantial subsidy of litigation (court costs do not begin to
2  cover the expense of the judiciary) should be targeted on those litigants who take the
3  preliminary steps to assemble a comprehensive claim." *Grosz*, 2007 Wl 4356624, at *2 (citing
4  *U.S. ex rel. Garst v. Lockheed-Martin Corp.*, 328 F.3d 374, 378 (7th Cir. 2003)).

5      **C.**    **THIS CASE CANNOT PROCEED AS A PURPORTED CLASS ACTION.**

6      The court should dismiss Stearns' second through sixth causes of action because Stearns
7  fails to state a claim under the applicable pleading rules. Therefore, she cannot purport to
8  represent a class based on those claims. There are also independent reasons why all of her class
9  allegations must be dismissed.

10      First, the only claim that will remain is Stearns' claim for personal injuries on a strict
11  liability theory. Defendants have not challenged the sufficiency of her pleading of that claim at
12  this time; however, Stearns' complaint shows an alarming dearth of any factual allegations
13  related to causation for both the alleged mold in her bed and for Stearns' alleged medical
14  injuries—something that she will be required to conclusively prove before she is entitled to any
15  recovery. That will require in-depth investigation into her personal health history, independent
16  medical examinations, the conditions of her home, and her use or abuse of the product, to name
17  only a few topics. Stearns cannot represent a class of people, most of whom will have no
18  health injuries at all, when this type of individual scrutiny is required.

19      Even if any of Stearns' other claims go forward, they cannot be maintained as a class
20  action. Stearns makes many key concessions in her brief which are fatal to her purported class
21  claims and which cannot be cured by repleading. First, notwithstanding that she seeks to
22  represent every "original purchaser and user[s]" of a Sleep Number® bed" over almost a
23  twenty year period (Compl. ¶ 34), Stearns concedes that "not every member of the potential
24  class will have beds with mold." (Opp'n 1:25.) She also demonstrates that in her race to the
25  courthouse and her disregard for pleading standards, she brought claims that will not withstand
26  scrutiny in the hopes that if she throws enough at the Court, something will stick: "[T]he class
27  definition can be modified prior to class certification . . . the Complaint may need to be
28  amended prior to a motion for class certification or that the final determination of class

1 certification is dependant on a modification of the class.  For example, it is very common for a
2 Complaint to plead nationwide class action only to be certified as only a statewide class
3 action." (Opp'n 7:13–18.)  As discussed previously, this is improper pleading and should be
4 dismissed outright.
5       Moreover, Defendants detailed in their opening brief why Stearns' purported class
6 claims based on warranty and fraud fail.  Among other reasons, such claims depend on
7 individual proof of reliance.  While Stearns in unable to even plead what she personally relied
8 upon relative to her purchase of a Sleep Number® bed, she broadly claims that she is excused
9 from showing reliance because "SELECT COMFORT has a national advertising campaign
10 designed to entice people to purchase its Sleep Number bed." (Opp'n 2:6–7.)  Not only is this
11 such a generic statement that it would apply to any manufacturer of any product and cannot
12 substitute for pleading and proving individual reliance, but Stearns later concedes that
13 individual reliance will have to be proven—she just wants to skip over it in the determination
14 of liability and suggests that it can be proven during the <u>administration of the class *after*</u>
15 <u>judgment</u>.  (Opp'n 2:11–15) ("As part of the administration of the class after judgment, the
16 Class Members can establish whether they relied on certain forms of advertising,
17 representations of salespeople, word of mouth, or other meant to determine if there was reliance
18 upon statements by defendants.")  CAFA was enacted precisely to prevent such abuses.
19       Similarly, Stearns' "duty to warn" theory and her reference to her claim for injunctive
20 relief does not change the analysis.  Injunctive relief is simply a remedy to be considered after a
21 plaintiff proves her claim, not a cause of action itself.  *McDowell v. Watson*, 59 Cal. App. 4th
22 1155, 1159 (1997).  This remedy is inconsequential if Stearns fails to come forward with
23 enough facts to state her "entitlement to relief" and survive dismissal.  Likewise, Select
24 Comfort has no duty to warn customers of a perfectly safe product—and Stearns must first
25 allege sufficient facts from which to reasonably infer otherwise.  She has failed to do so.
26 Moreover, the complaint does not state that Plaintiff seeks an injunctive recall or specify that
27 Plaintiffs is seeking any injunctive relief.
28       Finally, Stearns' assertion that she could amend her complaint to add different claims

only serves to demonstrate that her present claims must be dismissed. Moreover, any attempt to bring additional claims would be futile for similar reasons.

### III.  **CONCLUSION**

Stearns has failed to state a claim on her claims two through six. Defendants respectfully request the Court dismiss these claims with prejudice. Defendants also request the Court strike all class allegations from her complaint. Stearns will not be left without a potential legal remedy for her alleged personal injury, and the parties and the Court can efficiently move forward to concentrate on resolving that claim.

Dated: August 22, 2008.

         PILLSBURY WINTHROP SHAW PITTMAN LLP

         By   */s/ Dianne L. Sweeney*
           Dianne L. Sweeney
           Attorneys for Defendants
           SELECT COMFORT RETAIL CORPORATION
           AND BED BATH & BEYOND INC.

Dated: August 22, 2008.

         OPPENHEIMER WOLFF & DONNELLY LLP

         By   */s/ Andrew S. Hansen*
           Andrew S. Hansen
           Attorneys for Defendants
           SELECT COMFORT RETAIL CORPORATION
           AND BED BATH & BEYOND INC.

I hereby attest that I have the concurrence of Andrew Hansen to file this document.

           */s/ Dianne L. Sweeney*
           Dianne L. Sweeney