\*\*E-Filed 10/1/08\*\*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MOLLY STEARNS,<br><br>　　　　　　　Plaintiff,<br><br>　　v.<br><br>SELECT COMFORT RETAIL CORPORATION, a Minnesota Corporation; BED BATH & BEYOND, INC. a New York Corporation,<br><br>　　　　　　　Defendants. | Case Number 08-2746 JF<br><br>ORDER[1] GRANTING MOTION TO DISMISS AND TO STRIKE WITH LEAVE TO AMEND<br><br>[re: docket no. 19] |

  Plaintiff Molly Stearns ("Stearns") brings this putative class action on behalf of all persons similarly situated who purchased a Sleep Number® bed designed, manufactured, distributed, and sold by Defendant Select Comfort Retail Corporation and its agents (collectively, "Select Comfort"). Select Comfort and Co-Defendant Bed, Bath, and Beyond ("BBB") move for dismissal of claims 2-6 of the complaint and to dismiss and strike all of the purported class claims. The Court has considered the briefing submitted by the parties as well as the oral

---

[1] This disposition is not designated for publication in the official reports.

arguments of counsel presented at the hearing on September 5, 2008.  For the reasons set forth below, the motion will be granted, with leave to amend.

## I. BACKGROUND

Select Comfort is a Minnesota corporation established in 1987 that designs, manufactures, and sells the Sleep Number® bed.  BBB, a New York corporation, leased retail space in certain stores to Select Comfort for the sale of the Sleep Number® bed.

Stearns purchased a Sleep Number® bed in 2000 through BBB. Stearns alleges that Select Comfort advertises throughout the United States that the Sleep Number® bed relieves back pain and improves sleep to facilitate a more satisfactory quality of life.  One advertisement in particular, found in the product manual that Stearns received with her bed, that states "[w]ith your new SELECT COMFORT® sleep system, a *perfect* night's sleep is not only possible, it can be yours forever. Starting tonight." (Compl. ¶ 18.) Stearns alleges that she purchased her Sleep Number® bed in reliance upon Select Comfort's advertising representations.

Stearns claims that on April 22, 2008, she discovered that mold contamination had developed inside of her Sleep Number® bed. She suffered severe pulmonary distress as a result of the mold growth, had a lung biopsy, and took numerous rounds of antibiotics.

Stearns is "informed and believes" that "at some point . . . [Select Comfort] became aware that the Sleep Number® bed was inherently defective and that it had a propensity to develop and incubate mold." (Compl. ¶ 26.) She alleges that after becoming aware of the inherent defect, Select Comfort failed to warn her and other purchasers and failed to recall the Sleep Number® mattress. Stearns claims that when a customer reports an incident of mold her bed to Select Comfort, the Company offers a full refund and requests that the customer return the defective bed to Select Comfort.  She alleges that "this procedure was part of a fraudulent scheme to keep the public at large from learning of the defective nature of the product and to destroy evidence and escape liability." (Compl. ¶ 29.)  Stearns claims that the Sleep Number® bed was redesigned in 2005 "specifically to address the continuing problems associated with the development of mold growth . . . in the Sleep Number® bed."  (Compl. ¶ 30.)

Stearns filed the instant action on April 25, 2008 on behalf of herself and "[a]ll original

2

purchasers and users of a Select Number® bed manufactured by Select Comfort between January 1, 1987 and December 31, 2005." (Compl. ¶ 34.)  She is "informed and believes" that class members have suffered allergies, asthma, and other pulmonary distress and/ or disease as a direct and proximate result of using the Sleep Number® bed.  Select Comfort and BBB move to dismiss Stearns' claims of Breach of Express Warranty, Breach of Implied Warranty, Concealment, Intentional Misrepresentation, and Negligent Misrepresentation, and all class claims, leaving only Stearns' individual claim for strict products liability.

## II.  LEGAL STANDARD

A motion pursuant to Rule 12(b)(6) to dismiss, the motion should be granted if the plaintiff fails to proffer "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. V. Twombly*, 127 S. Ct. 1955, 1974 (2007). Allegations of material fact must be taken as true and construed in the light most favorable to the nonmoving party. *Cahill v. Liberty Mut. Ins. Co.,* 80 F.3d 336, 337-38 (9th Cir. 1997); *see also Pareto v. FDIC* 139 F.3d 696,699 (9th Cir. 1998)**.**  However, the Court need not accept as true allegations that are conclusory, legal conclusions, unwarranted deductions of fact, or unreasonable inferences. *See Sprewell v. Golden State Warriors,* 266 F.3d 979, 988 (9th Cir. 2001).

## III. DISCUSSION

**A.  Fraud Claims**

**1. Application of State Law or Federal Law**

The parties disagree as to whether federal or state procedural law applies to this motion. Select Comfort points out that the action was removed properly to this Court on June 2, 2008, and after that, accordingly,  pursuant to the Class Action Fairness Act ("CAFA") (28 U.S.C. §§ 1332(d), 1453), federal law applies.  Rule 81(c)(1) of the Federal Rules of Civil Procedure instructs that "[the Federal Rules] apply to a civil action after it is removed from state court."[2]

---

[2]Select Comfort notes that Stearns' own cited case law confirms this point: "The Federal Rules of Civil Procedure, like other provisions of federal law, govern the mode of proceedings in federal court after removal." *Granny Goose Foods, Inc. V. Brotherhood of Teamsters & Auto Truck Drivers Local No. 70 of Alameda Cty.*, 415 U.S. 423, 437 (1974).

The Federal Rules of Civil Procedure require a heightened pleading standard for claims of fraud, requiring circumstances constituting fraud to be pled with particularity.[3] Fed. R. Civ. P. 9 (b). Select Comfort contends that Stearns' complaint fails to meet this standard.

In opposition, Stearns argues that because the complaint was filed in state court, California's pleading rules govern. Stearns claims that the Federal Rules of Civil Procedure apply only after removal,[4] and that unless the Court so orders, repleading is not necessary once the matter enters federal court. Citing a case from the Southern District of New York, Stearns argues that "[i]t is well established that the district court 'takes the [removed] action in the posture in which it existed when it is removed from a state court's jurisdiction and it must give effect to all actions and procedures accomplished in state court prior to removal." *Sun Forest Corp. V. Shvili* (SD NY 2001) 152 F.Supp.2d 367, 387. Under California's pleading rules, pleading on "information and belief"is sufficient to support a claim for fraud.

The Court agrees with Select Comfort that federal procedural law applies here. As Rule 81(c)(1) of the Federal Rules of Evidence plainly states, "[t]hese rules apply to a civil action once it is removed from state court." Fed. R. Civ. P. 81(c)(1); *see also Granny Goose Foods, Inc.,* 415 U.S. at 437; *Vess v. Ciba-Geigy Corp., USA,* 317 F.3d 1097, 1103 (9th Cir. 2003) ("It is established law, in this circuit and elsewhere, that Rule 9(b)'s particularity requirement applies to state-law causes of action."); *.Lopez v. GMAC Mortgage Corp.,* No. C 07-3911 CW, 2007 WL 3232448 at *4 (N.D. Cal. Nov. 1 2007) ("In a case removed to federal court, the pleading requirements for a claim of fraud are analyzed under Federal rule of Civil Procedure's 9(b)."). Consequently, Stearns's fraud claim must meet the particularity requirement of Rule 9(b).

---

[3] The Ninth Circuit requires that the "pleadings state precisely the time, place, and nature of the misleading statements, misrepresentations, and specific acts of fraud." *Kaplan v. Rose*, 49 F.3d 1363, 1370 (9th Cir. 1994).

[4] *See generally, Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers Local No. 70 of Alameda Cty.,* 415 U.S. 423.

Case No. 08-2746
ORDER GRANTING MOTION TO DISMISS AND TO STRIKE WITH LEAVE TO AMEND
(JFEX2)

**2. Intentional Misrepresentation (Claim 5)**

To state a claim for intentional misrepresentation under California law, Stearns must plead seven elements: (1) the defendant represented to the plaintiff that an important fact was true; (2) that representation was false; (3) the defendant knew that the representation was false when the defendant made it, or the defendant made the representation recklessly, and without regard for the truth; (4) the defendant intended that the plaintiff rely on the representation; (5) the plaintiff reasonably relied on the representation; (6) the plaintiff was harmed; and (7) the plaintiff's reliance on the representation was a substantial factor in causing that harm to the plaintiff. *Manderville v. PCG &S Group, Inc.*, 55 Cal. Rptr. 3d 59, 68 (Cal. Ct. App. 2007).

Stearns argues that Select Comfort's advertising and promotional materials falsely represented that the Sleep Number® bed relieves back pain and improves sleep quality to facilitate a more satisfactory quality of life, for example, by stating that with the Sleep Number® bed, "a *perfect* night's sleep is not only possible, it can be yours forever." She further argues that she relied upon these statements in purchasing the bed. Finally, Stearns contends that she is "informed and believes" that Select Comfort redesigned the Sleep Number® bed specifically to address the continuing problems associated with mold growth, which demonstrates that Select Comfort knew that its representation was false.

Select Comfort points out that Stearns fails to meet her burden under Rule 9(b) as to the first element of a claim for intentional misrepresentation, because she fails to allege where Select Comfort made these representations, how they were false, or to whom, by whom, and when they were made. *See Kaplan,* 49 F.3d at 1370. With respect to the third element, the allegation that Select Comfort redesigned its bed in 2005 does not necessarily signify that Select Comfort had knowledge that the Sleep Number® bed had mold growth problems. Finally, Stearns fails to allege adequately the fifth element, reliance. Stearns fails to describe how she relied on representations made by Select Comfort. Additionally, as Select Comfort points out, the brochure Stearns references arrived with the bed, and therefore could not have been relied upon in purchasing the bed.

**3. Negligent Misrepresentation (Claim 6)**

To plead negligent misrepresentation in California, Stearns must allege: (1) the misrepresentation of a past or existing material fact; (2) without reasonable ground for believing it to be true; (3) with intent to induce another's reliance on the fact misrepresented; (4) justifiable reliance on the misrepresentation, and (5) resulting damage. *Century Sur. Co. V. Crosby Ins., Inc.,* 21 Cal. Rptr. 3d 115, 125 (Cal. Ct. App. 2004); *Shamsian v. Atl. Richfield Co.*, 132 Cal. Reptr. 2d 635,648 (Cal. Ct. App. 2003). Stearns points to Select Comfort's statement that the Sleep Number® bed would provide her with a "perfect night's sleep" as Select Comfort's material misrepresentation of a material fact. Stearns asserts that she reasonably relied upon these statements in making her purchase. She also states that at the time the Defendants made the representations, "they had no reason to believe they were true" because "they had already received complaints about the propensity of the product to become inundated with mold." (Compl. ¶ 93.).

As in the claim for intentional misrepresentation, Stearns fails to set forth the requisite details describing the context and nature of the misrepresentation. As argued by Select Comfort , "a negligent representation claim must be based on an actual representation, not an alleged omission." *Regents of the Univ. Of Cal.v. Principal Fin. Group,* 412 F.Supp.2d 1037, 1045 (N.D. Cal. 2006). Stearns likewise fails to allege the manner in which and to what extent she relied upon the misrepresentation.

**4. Concealment (Claim 4)**

The elements of an action for fraud and deceit based on concealment are: (1) the defendant concealed or suppressed a material fact, (2) the defendant was under a duty to disclose the fact to the plaintiff, (3) the defendant intentionally concealed or suppressed the fact with the intent to defraud the plaintiff, (4) the plaintiff was unaware of the fact and would not have acted as he did if he had known of the concealed or suppressed fact, and (5) as a result of the concealment or suppression of the fact, the plaintiff sustained damage. *Hahn v. Mirda*, 54 Cal. Rptr. 3d 527, 532 (Cal. Ct. App. 2007).

Stearns argues that Select Comfort intentionally concealed from the public that the Sleep

1   Number® bed was "inherently defective" and had a propensity to grow mold, resulting in
2   potential personal injury to those who came into contact with the mold. (Compl. ¶¶ 72, 74.).
3   Stearns asserts that as a result of Select Comfort's knowledge and expertise with respect to the
4   Sleep Number® bed, and the potential dangers associated with the normal use of the product,
5   Select Comfort owed a duty to warn consumers of these harmful health effects.  Stearns is
6   "informed and believes" that Select Comfort instead concealed the defect by agreeing to pay any
7   purchaser who complained about the Sleep Number® bed the full amount of the purchase price,
8   as long as the bed was returned to Select Comfort. This policy, she contends, goes beyond the
9   Limited Warranty offered by Select Comfort upon purchase and suggests that Select Comfort
10  wished to destroy the evidence and avoid a recall of Sleep Number® beds.  (Compl. ¶¶ 78-83.).
11          Stearns fails to plead any facts upon which her "information and belief" with respect to
12  Select Comfort's refund practice is based.  Further, return of a defective product has been
13  recognized by courts as a standard business practice, serving many legitimate business purposes.
14  *See In re Phenylpropanolamine (PPA) Prods. Liab. Litig.,* 214 F.R.D. 614, 622 (W.D. Wash
15  2003); *Owen v. Gen. Motors Corp.,* 2008 WL 2756547, at *4 (8th Cir. July 17, 2008) (finding
16  GM's "Special Policy" relating to certain defects is "nothing more" than a voluntary offer to pay
17  for repairs beyond warranty requirements).
18  **B. Warranty Claims**
19          **1. Breach of Express Warranty (Claim 2)**
20          Stearns alleges that Select Comfort provides an express Limited Warranty with the Sleep
21  Number® bed, which warrants to the original purchaser that the Select Comfort sleep system
22  will be free from defects in material and workmanship for a period of twenty years.  Because the
23  "materials and or workmanship of the . . . bed are inherently defective," and consumers have
24  been damaged as a result, Stearns alleges that Select Comfort has breached its express warranty.
25          Under California law, Stearns must allege: (1) the exact terms of the warranty; (2)
26  reasonable reliance; (3) a breach of warranty which proximately causes plaintiff's injury. *Long v.*
27  *Hewlett-Packard Co.*, No. C 06-02816 JW, 2006 WL 4877691, at *4. Stearns also must plead
28  that she provided pre-suit notice to Select Comfort, pursuant to California Commercial Code, §

7

2607.

Stearns' claim for breach of express warranty fails because she does not allege reasonable reliance under the second element on the terms of the warranty, nor does she sufficiently demonstrate that there has been a breach of the warranty according to the terms of the contract under the third element.  Significantly, Stearns fails to allege that she attempted to invoke her Limited Warranty (thus providing pre-suit notice to Select Comfort) or that Select Comfort has refused to remedy the alleged product defect pursuant to the terms of the Limited Warranty.

**2. Breach of Implied Warranty (Claim3)**

Stearns alleges that Select Comfort breached the implied warranty of fitness and merchantability by designing, manufacturing, and selling a product that was inherently defective and not of merchantable quality nor fit for its intended purpose.

To state a claim for breach of the implied warranty of fitness and merchantability, a plaintiff must allege that:

> (1) at the time of the purchase, the defendant was in the business of selling the product, (2) the product was not of the same quality as those generally accepted in the trade, or was not fit for the ordinary purposes for which the product is used, or did not conform to the quality established by the parties' prior dealings or by usage of the trade; (3) the plaintiff took reasonable steps to notify the defendant within a reasonable time that the product did not have the expected quality; (4) the plaintiff was harmed; and (5) the failure of the product to have the expected quality was a substantial factor in causing the plaintiff's harm.

*Andrade v. Pangborn Corp.,* No. C 02-3771 PVT, 2004 WLl 2480708 at *23 (N.D. Cal. Oct. 22, 2004).

Stearns fails to allege that she took reasonable steps to notify the defendant within a reasonable amount of time that the product did not have the expected quality (unless filing this suit and serving Select Comfort qualifies as "notice")**.**  To proceed with this claim, Stearns must allege that she met the notice requirement.

**C. Class Allegations**

Stearns purports to initiate a nationwide class action,  naming as plaintiffs "all original purchasers and users of a Sleep Number® bed manufactured by SELECT COMFORT between January 1, 1987 and December 31, 2005." (Compl. ¶ 34.).  Select Comfort urges the Court to

dismiss all class claims in this action and to strike all allegations relating to such claims from the complaint.

**1. Legal Standard**

A plaintiff seeking to bring a class action must satisfy both Rules 23(a) and 23(b) of the Federal Rules of Civil Procedure.  Under Rule 23(a), Stearns must show that: (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties will fairly and adequately protect the interests of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.  Fed. R. Civ. P. 23(a).  In addition, Stearns must demonstrate that one of the requirements of Rule 23(b) is met. Since Stearns requests mainly monetary damages, she must satisfy the requirements of Rule 23(b)(3), requiring a finding that questions of law or fact common to purported class members predominate over any questions affecting only individual members and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. *See* Fed. R. Civ. P. 23(b)(3).  Facts pertinent to these findings include: (a) the class members' interest in individually controlling the prosecution or defense of separate actions; (b) the extent and nature of any litigation concerning the controversy already begun by or against class members; (c) the desirability or undesirability of concentrating the litigation of the claims in a particular forum; and (d) the likely difficulties in managing a class action. *Id.*

Under Rule 23, the plaintiff has the burden of making a prima facie showing that the requirements are met.  However, Rule 11(b)(3) only requires that by submitting a pleading, a party certifies that to the best her knowledge, information, and belief, the factual contentions have evidentiary support or will likely have evidentiary support after a reasonable opportunity for further investigation or discovery. Thus, if Stearns' pleading demonstrates that after discovery, she will have evidentiary support for her class action allegations, her pleading is sufficient.

**2. Requirements of Rule 23(a)**

    **a. Is the Class so Numerous that Joinder of all Members is Impracticable?**

Stearns alleges that number of class members is "quite numerous," including every

9

person who has purchased a Sleep Number® bed between January 1, 1987 and December 31, 2005. (Compl. ¶ 35.). Stearns is "informed and believes" that Select Comfort had received many complaints about mold growth in customers' beds. She states that the exact number of class members is not known at this time, but that she is "informed and believes" that this information is readily available to Select Comfort and can be identified through Select Comfort's sale records, customer service complaint records, and warranty claims.

Select Comfort argues, and Stearns concedes in her opposition brief, that "not every member of the purported class will have beds with mold." (Opp'n 1:25.). Further, in representing all original purchasers of the Sleep Number® bed between 1987 and 2005, the purported class would include individuals who already have received a remedy from Select Comfort. In California, the statute of limitations for fraudulent concealment claims in personal injury actions is one year from when a plaintiff first suspects or should suspect that her injury was caused by wrongdoing.[5] *Nodine v. Shiley Inc.,* 240 F.3d 1149, 1153 (9th Cir. 2001). As presently defined, there is insufficient information to permit a determination as to the size of the class claim.

### b. Are there Questions of Law or Fact Common to the Class?

There appear to be many questions of law and fact common to the class, including whether the Sleep Number® bed is inherently defective, when Select Comfort knew or should have known that the Sleep Number® bed was inherently defective, whether Select Comfort notified its distributors that the Sleep Number® bed was subject to mold infestation and was potentially harmful to users' health, and the steps Select Comfort and its distributors took to notify owners of the Sleep Number® bed of the inherent defects and health dangers. (Compl. ¶ 39 (a-j).).

### c. Are the Claims and Defenses of the Representative Parties Typical of the Claims or Defenses of the Class?

Stearns' claims appear to be typical of the claims of the class members, as the class is defined. She states that she purchased a Sleep Number® bed without knowledge of the inherently

---

[5] Cal.Civ.Proc.Code § 340(3). Stearns argues that the correct statute of limitations is two years, citing to Cal. Civ. Proc. Code § 335.1. However this provision applies to assault, battery, or injury as a result of a wrongful act of another, and therefore, does not apply here.

defective nature of the product, investigation revealed that the Sleep Number® bed was covered in mold, and she suffered personal injury. Compl. ¶ 40.

### d. Will the representative party fairly and adequately protect the interests of the class?

Stearns alleges in her complaint that she is able to fairly and adequately protect the interests of the Class, stating that she has retained counsel with substantial experience in litigating class actions cases involving defective products, and that she and counsel are "committed to prosecuting this action vigorously on behalf of the class." (Compl. ¶ 41.). Further, she notes that she has the financial resources to do so. *Id.* In light of the nature of this action, it appears that Stearns is similarly situated to other potential plaintiffs, and that her interests would not conflict with or disable the interests of other potential Class Members.

### 3. Requirements of 23(b)

Stearns asserts that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. She states that, absent a class action, most of the proposed class members likely would find the cost of litigating their claims to be prohibitive, and would have no effective remedy at law: "because of the relatively small size of the individual class members' claims, it is likely that only a few class members could afford to seek legal redress." (Compl. ¶ 42.). The class members will continue to incur damages and defendant's misconduct will continue unless a class action is initiated. Finally, Stearns asserts that class treatment of common questions of law and fact would be superior to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the courts and the litigants, and will promote consistency and efficiency of adjudication.

Select Comfort argues that Stearns may not base a nationwide class action on individual personal injury claims. Under a strict products liability analysis for personal injury, each individual plaintiff must prove injury, causation, and damages. This means that "each individual's right to recovery depends on facts particular to that individual," and individual scrutiny will be

required for each plaintiff.[6] *Kennedy v. Baxter Healthcare Corp.*, 50 Cal. Rptr. 2d 744, 743-44 (Cal. Ct. App. 1996) ("As the California Supreme Court has observed class actions for personal injuries in mass tort litigation present a multitude of problems."). *See Zinser v. Accufix Research Inst.*, 253 F.3d 1180, 1186 (9th Cir. 2001) ("Our circuit has recognized the potential difficulties of 'commonality' and 'management' inherent in certifying products liability class actions."). Additionally, individual inquiry will have to be made of each Class Member to determine when his or her statute of limitations began to run, going through nearly twenty years of Sleep Number® bed purchasers.

Moreover, since Stearns purports to bring a nationwide class action, these individual inquiries are multiplied by the differing state laws that may or may not apply. Differing state laws would make adjudication of class claims difficult with respect to the effect of contributory negligence on a plaintiff's strict liability and negligence-based claims, as well as on the issue of whether economic losses are recoverable in a products liability action and the availability of punitive damages.

Finally, because of the many differences in state laws, both fraud and warranty claims are difficult to maintain on a nationwide basis. *See Cole v. Gen. Motors Corp.*, 484 F.3d 717, 724-30 (5th Cir. 2007) (discussing at length why warranty claims are inappropriate for class treatment); *Castano v. Am. Tabacco Co.*, 84 F.3d 734, 745 (5th Cir. 1996) ("a fraud class action cannot be certified when individual reliance is an issue.").

In light of the foregoing, it is not at all clear that a nationwide class action is the "superior" method for adjudication of rights. Accordingly, the class allegations will be denied with leave to

---

[6] Select Comfort argues that it the Court will have to examine distinct issues of each class member, some of which include: (1) whether each class member's bed has mold; (2) what caused the mold growth; (3) environmental factors that may affect whether mold grows such as climate, humidity, and the presence or absence of air conditioning; (4) condition of the home the bed is kept in;(5) medical history of each class member, including allergies and pre-existing health conditions; (7) use factors, such as whether pets sleep on the bed or users wet the bed; (8) whether the purchaser followed the product instructions; (9) the amount and duration of the potential exposure to mold; (10) when he or she first discovered the mold growth; (11) whetherhe or she previously contacted Select Comfort customer service, and the issues addressed.

amend. The Court urges Stearns to consider whether a more narrowly defined class might be appropriate.

### IV.  ORDER

The motion to dismiss or to strike is GRANTED WITH LEAVE TO AMEND. Any amended complaint shall be filed within thirty (30) days of the date of this order.

DATED: September 30, 2008

_____
JEREMY FOGEL
United States District Judge

1  This Order has been served upon the following persons:

3  Andrew S. Hansen ahansen@oppenheimer.com

4  Andrew Vinson Stearns astearns@loboinc.com

5  Dianne L. Sweeney dianne@pillsburylaw.com, al.guzman@pillsburylaw.com,
6  janice.hall@pillsburylaw.com, louis.santaana@pillsburylaw.com, meri@pillsburylaw.com

7  Heidi A.O. Fisher hfisher@oppenheimer.com

8  Meghan M. Anzelc manzelc@oppenheimer.com

9  Vernon H. Granneman vernon.granneman@pillsburylaw.com, david.tull@pillsburylaw.com,
   meri@pillsburylaw.com

11 Robert M. Gagliasso
   Bustamante O'Hara & Gagliasso
12 River Park Tower
   333 W. San Carlos Street
13 8th Floor
   San Jose, CA 95110

14

Case No. 08-2746
ORDER GRANTING MOTION TO DISMISS AND TO STRIKE WITH LEAVE TO AMEND
(JFEX2)