1  Robert M. Gagliasso, SBN 162082
   Andrew V. Stearns, SBN 164849
2  **BUSTAMANTE, O'HARA & GAGLIASSO**
   River Park Tower
3  333 W. San Carlos St., 8th Floor
   San Jose, California  95110
4  Telephone: (408) 977-1911
   astearns@loboinc.com
5
   Attorneys for Plaintiffs
6  MOLLY STEARNS, RUTH ROSE,
   DENNIS FULLER, DAN SCHLESINGER,
7  BONNIE FULLER, KAREN WILLIAMS
   and BRIAN WILLIAMS
8

9

10                    UNITED STATES DISTRICT COURT

11                    NORTHERN DISTRICT OF CALIFORNIA

12                         SAN JOSE DIVISION

13                              * * *

14  MOLLY STEARNS, individually and on        )   Case No. C08 02746 JF PVT
    behalf of all those similarly situated    )
15                                            )   **FIRST AMENDED CLASS ACTION**
                    Plaintiffs,               )   **COMPLAINT PURSUANT TO F.R.C.P**
16                                            )   **23(a) AND 23(b) FOR:**
    vs.                                       )   **(1) NEGLIGENCE;**
17                                            )   **(2) STRICT PRODUCTS LIABILITY;**
    SELECT COMFORT RETAIL                     )   **(3) VIOLATION OF MAGNUSSON-**
18  CORPORATION, a Minnesota Corporation;     )   **MOSS WARRANTY ACT;**
    BED BATH & BEYOND, INC., a New            )   **(4) BREACH OF EXPRESS**
19  York Corporation; THE SLEEP TRAIN,        )   **WARRANTY;**
    INC., a California Corporation, and DOES 1 )  **(5) BREACH OF IMPLIED**
20  through 50,000, inclusive,                )   **WARRANTY OF**
                                              )   **MERCHANTIBILITY;**
21                  Defendants.               )   **(6) BREACH OF IMPLIED**
                                              )   **WARRANTY OF FITNESS;**
22                                            )   **(7) CONCEALMENT;**
                                              )   **(8) INTENTIONAL**
23                                            )   **MISREPRESENTATION;**
                                              )   **(9) NEGLIGENT**
24                                            )   **MISREPRESENTATION;**
                                              )   **(10) UNFAIR COMPETITION;**
25                                            )   **(11) FALSE ADVERTISING;**
                                              )   **(12) VIOLATION OF SECTION 1 OF**
26                                            )   **THE SHERMAN ACT;**
                                              )   **(13) VIOLATION OF THE**
27                                            )   **CARTWRIGHT ACT;**
                                              )   **(14) VIOLATION OF THE**
28                                            )   **CALIFORNIA LEGAL REMEDIES**
    _____  )   **ACT;**

FIRST AMENDED CLASS ACTION COMPLAINT

|  | ) | **(15) VIOLATION OF THE** |
| 1 | ) | **RACKETEERING INFLUENCED AND** |
|  | ) | **CORRUPT ORGANIZATIONS ACT;** |
| 2 | ) | **(16) RICO CONSPIRACY; AND** |
| 3 | ) | **(17) VIOLATION OF THE CONSUMER** |
|  | ) | **PRODUCT SAFETY ACT.** |
| 4 | ) | |
|  | ) | |
| 5 | | **DEMAND FOR JURY TRIAL** |
|  | | **REQUEST FOR PUNITIVE DAMAGES** |

COME NOW PLAINTIFFS, INDIVIDUALLY AND ON BEHALF OF ALL THOSE

SIMILARY SITUATED, AND ALLEGE AS FOLLOWS:

## INTRODUCTION

1.    Plaintiff MOLLY STEARNS brings this action individually and on behalf of those

similarly situated pursuant to Federal Rules of Civil Procedure, Rule 23.  Plaintiff STEARNS is a

class representative for all others similarly situated who purchased a Sleep Number® bed designed,

manufactured, distributed and sold by defendant SELECT COMFORT RETAIL CORPORATION

and its agents.

2.    Plaintiff RUTH ROSE brings this action individually and on behalf of those similarly

situated pursuant to Federal Rules of Civil Procedure, Rule 23.  Plaintiff ROSE is a class

representative for all others similarly situated who purchased a Sleep Number® bed designed,

manufactured, distributed and sold by defendant SELECT COMFORT RETAIL CORPORATION

and its agents.

3.    Plaintiffs DENNIS and BONNIE FULLER, jointly, bring this action individually and

on behalf of those similarly situated pursuant to Federal Rules of Civil Procedure, Rule 23.

Plaintiffs FULLER are class representatives for all others similarly situated who purchased a Sleep

Number® bed designed, manufactured, distributed and sold by defendant SELECT COMFORT

RETAIL CORPORATION and its agents.

4.    Plaintiff DAN SCHLESINGER brings this action individually and on behalf of those

similarly situated pursuant to Federal Rules of Civil Procedure, Rule 23.  Plaintiff DAN

SCHLESINGER is a class representative for all others similarly situated who purchased a Sleep

Number® bed designed, manufactured, distributed and sold by defendant SELECT COMFORT

1 | RETAIL CORPORATION and its agents.

2 | 5. Plaintiff KAREN WILLIAMS brings this action individually and on behalf of those

3 | similarly situated pursuant to Federal Rules of Civil Procedure, Rule 23. Plaintiff K. WILLIAMS is

4 | a class representative for all others similarly situated who purchased a Sleep Number® bed

5 | designed, manufactured, distributed and sold by defendant SELECT COMFORT RETAIL

6 | CORPORATION and its agents.

7 | 6. Plaintiff BRIAN WILLIAMS brings this action individually and on behalf of those

8 | similarly situated pursuant to Federal Rules of Civil Procedure, Rule 23. Plaintiff B. WILLIAMS is

9 | a class representative for all others similarly situated who purchased a Sleep Number® bed

10 | designed, manufactured, distributed and sold by defendant SELECT COMFORT RETAIL

11 | CORPORATION and its agents.

12 | **JURISDICTION AND VENUE**

13 | 7. This Court has jurisdiction over this action pursuant to Defendants' Notice of

14 | Removal and Demand for Jury Trial, filed June 2, 2008

15 | 8. This Court has jurisdiction over this action pursuant to the Class Action Fairness Act

16 | of 2005 which provides for diversity jurisdiction when any class member and any defendant are of

17 | different states and the amount in controversy exceeds $5,000,000.

18 | 9. Plaintiffs seek damages on behalf of themselves and all others similarly situated under

19 | the laws of the United States of America and the State of California and the similar common and

20 | statutory law in effect for other states.

21 | 10. Defendant SELECT COMFORT RETAIL CORPORATION ("SELECT

22 | COMFORT") has sufficient minimum contacts with the State of California through the promotion,

23 | sale, marketing and/or distribution of its Sleep Number® bed to render the exercise of jurisdiction

24 | by the State of California permissible under traditional notions of fair play and substantial justice.

25 | 11. Defendant BED, BATH & BEYOND, INC. ("BBB") has sufficient minimum contacts

26 | with the State of California through the use of retail stores for the promotion, sale, marketing and/or

27 | distribution of its products to render the exercise of jurisdiction by the State of California

28 | permissible under traditional notions of fair play and substantial justice.

1       12.   Defendant THE SLEEP TRAIN, INC. ("SLEEP TRAIN") originally named herein as

2   DOE 1, is a California corporation and has sufficient minimum contacts with the State of California

3   to render the exercise of jurisdiction by the State of California permissible under traditional notions

4   of fair play and substantial justice.

5       13.   The amount in controversy is in excess of the jurisdictional minimums of this Court.

6       14.   Venue is proper in this Court because the acts upon which this action is based

7   occurred in part in the State of California.  The general public was damaged and subjected to

8   irreparable harm in this venue due to defendants' unfair, unlawful and deceptive business activities

9   in this State.  Further, defendants received substantial compensation and profits in this State.

10       **PARTIES**

11       15.   Plaintiff STEARNS, at all times relevant hereto, was an individual and a resident of

12   the State of California and purchased the Sleep Number® bed from Bed Bath & Beyond in 2000.

13       16.   Plaintiff ROSE, at all times relevant hereto, was an individual and a resident of the

14   State of California and purchased the Sleep Number® bed from SELECT COMFORT's retail store

15   in 1996.

16       17.   Plaintiffs FULLER, at all times relevant hereto, were individuals and residents of the

17   State of Florida and purchased the Sleep Number® bed from SELECT COMFORT's retail store in

18   1996.

19       18.   Plaintiff DAN SCHLESINGER, at all times relevant hereto, were individuals and

20   residents of the State of California and purchased the bed from SELECT COMFORT's internet

21   website in 1994.

22       19.   Plaintiff K. WILLIAMS, at all times relevant hereto, was an individual and a resident

23   of the State of California and purchased the Sleep Number® bed on February 10, 2004 from SLEEP

24   TRAIN.

25       20.   Plaintiff B. WILLIAMS, at all times relevant hereto, was an individual and a resident

26   of the State of California and purchased the Sleep Number® bed on February 10, 2004 from SLEEP

27   TRAIN.

28       21.   Plaintiffs are informed and believe and based thereon allege that defendant SELECT

1    COMFORT RETAIL CORPORATION, at all times relevant hereto, was a Minnesota corporation

2    duly authorized to do business and doing business within the State of California and in all states of

3    the United States of America.

4    22.  Plaintiffs are informed and believe and based thereon allege that SELECT

5    COMFORT's principle place of business is 9800 58th Avenue North, Minneapolis, Minnesota

6    55442.

7    23.  Plaintiffs are informed and believe and based thereon allege that defendant BED

8    BATH & BEYOND, INC., at all times relevant hereto, was a New York corporation duly

9    authorized to do business and doing business in the State of California.

10    24.  Plaintiffs are informed and believe and based thereon allege that BBB's principle

11    place of business is 650 Liberty Avenue, Union, New Jersey  07083.

12    25.  Plaintiffs are informed and believe and based thereon allege that SLEEP TRAIN,

13    INC. at all times relevant hereto, was a California corporation duly authorized to do business and

14    doing business in the State of California.

15    26.  Plaintiffs are informed and believe and based thereon allege that SLEEP TRAIN's

16    principle place of business in 8391 Auburn Boulevard, Citrus Heights, California  95610.

17    27.  Plaintiffs are informed and believe and based thereon allege that Defendants BBB and

18    SLEEP TRAIN were authorized retail distributors of products manufactured by defendant SELECT

19    COMFORT, including but not limited to the Sleep Number® bed.

20    28.  The true names and capacities, whether individual, corporate or otherwise of

21    defendant DOES 2 through 50,000, inclusive, are unknown to plaintiff, who therefore sues said

22    defendants by said fictitious names.  Plaintiffs are informed and believe and thereon allege that each

23    defendant sued herein under a fictitious name is responsible in some manner for the events and

24    occurrences referred to herein.  When the true names, capacities, and involvements of said

25    defendants are ascertained, plaintiffs will seek leave to amend the Complaint accordingly.

26    29.  Plaintiffs are informed and believe and thereon allege that at all times referred to

27    herein, each defendant, including DOES 2 through 50,000, inclusive, was the agent, distributor,

28    supplier, manufacturer, reseller, shipper, servant, employee, independent contractor, consultant, or

1 │ partner of each of the remaining defendants, and was acting within the scope of that agency,

2 │ employment, or relationship at all times relevant hereto.  Further, the acts of defendants, and each of

3 │ them, were ratified by said remaining defendants, and each of them.

4 │ **FACTUAL ALLEGATIONS**

5 │     30.  Plaintiffs are informed and believe and based thereon allege that beginning in 1987,

6 │ defendant SELECT COMFORT commenced design, manufacture, distribution and sale of its Sleep

7 │ Number® bed.

8 │     31.  Defendants, and each of them, created and implemented a uniform and comprehensive

9 │ plan to market, advertise and promote the Sleep Number® bed through carefully orchestrated and

10 │ uniform multi-media advertising campaigns using prime-time TV, national cable television,

11 │ infomercials, nationally syndicated drive-time radio and newspaper and by using celebrities

12 │ including, but not limited to, Lindsay Wagner, Paul Harvey, Rush Limbaugh, Sean Hannity, Delilah

13 │ and nine (9) other spokespersons. ***See Exhibit A, attached hereto and incorporated by reference***

14 │ ***herein.***

15 │     32.  SELECT COMFORT intended that the public at large would rely upon the

16 │ information and statements that were uniformly broadcast and published to the general public

17 │ through its detailed and comprehensive advertising and promotional campaign.

18 │     33.  Since 2002 the Sleep Number® bed by Select Comfort has been a national sponsor of

19 │ Nation Public Radio's Prairie Home Companion Show hosted by Garrison Keillor. ***See Exhibit A,***

20 │ ***attached hereto and incorporated by reference herein.***

21 │     34.  Defendant also advertised and promoted its Sleep Number® bed by entering into

22 │ agreements with Radisson Hotels & Resorts whereby each room would be furnished with Sleep

23 │ Number® beds; providing Sleep Number® beds to Ronald McDonald House Charities, Fisher

24 │ House Foundation and other health organizations; and entering into agreements with Winnebago

25 │ Industries to install the Sleep Number® bed in motor homes.

26 │     35.  The Sleep Number® bed by Select Comfort has been marketed as providing

27 │ "individualized, firmness, comfort and support to provide an ideal night's sleep." ***See Exhibit A,***

28 │ ***attached hereto and incorporated by reference herein.***

36.    Defendants' advertising and promotional materials also represented that the Sleep Number® bed relieves back pain and improves sleep quality to facilitate a more satisfactory quality of life. "With your new SELECT COMFORT® sleep system, a *perfect* night's sleep is not only possible, it can be yours forever.  Starting tonight."  Defendant's also marketed the Sleep Number bed by stating, "Your Sleep Number is key to a perfect night's sleep. ***See Exhibit A, attached hereto and incorporated by reference herein.***

37.    Plaintiffs are informed and believe and based thereon allege that SELECT COMFORT advertised its Sleep Number® bed in the same manner throughout the United States.

38.    SELECT COMFORT sold its Sleep Number® bed directly to the general public through retail stores, direct marketing, e-Commerce and wholesale.

39.    SELECT COMFORT also sold its Sleep Number® beds through third-party distributors/resellers.

40.    SELECT COMFORT authorized BBB to sell and promote the Sleep Number® bed at BBB's retail stores.

41.    SELECT COMFORT authorized SLEEP TRAIN to sell and promote the Sleep Number® bed at SLEEP TRAIN's retail stores.

42.    SELECT COMFORT authorized other third parties, known to it, and named herein as DOE defendants, to sell and promote the Sleep Number® bed.

43.    SELECT COMFORT provided a comprehensive training program to the salespeople who were to work at these retail distribution stores so that its advertising and promotional claims would be uniformly represented to potential and actual customers.

44.    Commencing at a date known only to defendants, but as early as 1996, defendants received complaints about mold growing in the Sleep Number® beds.

45.    Plaintiff DAN SCHLESINGER first called SELECT COMFORT, via the toll free number regarding mold in his bed in 2004.  SELECT COMFORT sent new foam and parts to SCHLESINGER.  These parts also developed mold.

46.    Plaintiff K. WILLIAMS complained to SELECT COMFORT, via the toll free number provided in the documents provided by SELECT COMFORT.  Plaintiffs K. WILLIAMS first called

1  SELECT COMFORT regarding mold in her son's bed in 2006 and 2007.  SELECT COMFORT

2  sent new foam and replacement parts to BRYAN WILLIAMS, the user of the bed.  These new parts

3  also developed mold.  Around the same date, K. WILLIAMS also called and reported mold

4  SELECT COMFORT and SLEEP TRAIN after the new parts developed mold.

5      47.  Defendants, and each of them, were on notice of the defective nature of the beds

6  based on the complaints by the abovementioned plaintiffs, members of the Class, as well as the

7  complaints of mold and replacement part mold featured in the media through television news

8  reports and print media.  In receiving said notice from the plaintiffs, the defendants breached the

9  Limited Warranty by not replacing the defective Sleep Number® bed in an adequate manner.

10      48.  SELECT COMFORT has received numerous complaints regarding the Sleep Number

11  bed during and prior to 2004.  Plaintiffs, and each of them, base this belief on the large volume of

12  complaints available through the internet and other media reports.  Further information regarding

13  these complaints would be more easily accessible through the defendants, and each of their

14  customer service departments.  ***See Exhibit B, attached hereto and incorporate by reference***

15  ***herein.***

16      49.  Defendants have also spent substantial amounts on refunds and replacement costs

17  since notice was provided of the inherent defect.

18      50.  As a result of said complaints, SELECT COMFORT continuously sent replacement

19  beds and replacement component parts to consumers complaining of mold and subsequently were

20  notified on numerous occasions, by consumers, that replacement parts and beds also incubated

21  mold, thus making any replacement futile and without purpose.

22      51.  At some point in time, known to defendants, and each of them, but not to plaintiffs,

23  defendants became aware that the Sleep Number® bed was inherently defective in that it developed

24  and incubated mold.

25      52.  After becoming aware of the inherent defect of the Sleep Number® bed, defendants,

26  and each of them failed, and continue to fail, to warn Plaintiffs and Class Members of the inherent

27  defect.

28      53.  After becoming aware of the inherent defect of the Sleep Number® bed, defendants,

1   and each of them failed, and continue to fail, to recall the beds or otherwise provide notice to

2   purchasers of the inherent defect.

3          54.   On or around 2005, after only two complaints of defective component parts,

4   including, but not limited to air pumps, were reported to SELECT COMFORT, the defendants

5   recalled the allegedly defective product and contacted all registered owners regarding this problem.

6   ***See Exhibit C, attached hereto and incorporated by reference herein.***

7          55.   In lieu of issuing a recall or notifying Class Members of the inherently defective

8   nature of the Sleep Number® bed, SELECT COMFORT instituted a policy to rescind the purchase

9   agreement for any person who called complaining of mold.  In addition to rescinding the purchase

10  agreement, the SELECT COMFORT response policy mandated that the moldy beds be returned to

11  it.  The cost for shipping was to be borne by the Class Member.  Since the institution of this action,

12  this policy has changed in ways known only to defendants.

13         56.   In lieu of issuing a recall or notifying Class Members of the inherently defective

14  nature of the Sleep Number® bed, SELECT COMFORT also consulted with and employed several

15  marketing, public relations and media relations experts, including Ogilvy PR, Carmichael Lynch

16  and Spong, and others unknown to the plaintiffs, to institute an aggressive campaign to combat the

17  complaints being waged by consumers complaining of mold.  This campaign included the

18  misrepresentation of the condition of the Sleep Number® bed and the intentional communication to

19  only those consumers who themselves contacted SELECT COMFORT regarding the mold in beds.

20  SELECT COMFORT's CEO stated that the company has been intentionally selective in

21  communicating with the public on the mold issue because it is in the best interests of the company

22  not to keep this issue in the media headlines. ***See Exhibit D, attached hereto and incorporated by***

23  ***reference herein.***

24         57.   Defendants, and each of them, instituted a standardized training program for all

25  employees of said defendants that included a script of what was to be said to those purchasers upon

26  inquiry of the Sleep Number® bed, as well as what was to be said to those purchasers that

27  complained either through the internet, customer service or otherwise about mold growth in the

28  Sleep Number® bed.  The same message regarding the Sleep Number® was issued to all plaintiffs

1  and class members whom relied on said representations when purchasing and contacting the

2  defendants, and each of them, regarding the defective product.

3      58.  Further in 2004 CEO Bill McLaughlin appealed to the mattress industry to conspire

4  against the public by not engaging in a debate on the merits of the Sleep Number® bed and the

5  inherent defect.

6      59.  In or around 2005, SELECT COMFORT redesigned the Sleep Number® bed to

7  specifically remedy the continuing problems associated with the development of mold within the

8  Sleep Number® bed.  Customer Service Representatives told plaintiff STEARNS in April 2008 that

9  the product was redesigned in 2005 to inhibit mold growth in response to complaints made to

10  SELECT COMFORT.

11      60.  When plaintiff ROSE called to complain to SELECT COMFORT of mold in May,

12  2008, she was informed by the Customer Service Representative that SELECT COMFORT was

13  aware of the mold problem but changed the design in 2005 to address the problem.  However, when

14  ROSE asked if SELECT COMFORT would guarantee the post 2005 beds would not incubate mold,

15  SELECT COMFORT refused to make such a guarantee.  As a result, she did not want any

16  replacement parts.

17      61.  When plaintiffs FULLER called the SELECT COMFORT Customer Service

18  Representative regarding mold in their bed in 2008, they were informed that SELECT COMFORT

19  was aware of the problem and made changes in the design in 2005.

20      62.  When plaintiff K. WILLIAMS contacted SELECT COMFORT regarding mold in the

21  bed in 2006 and 2007, she was informed that SELECT COMFORT knew about the mold problem

22  and that there was a design change in 2005 and around the same time K. WILLIAMS contacted

23  SLEEP TRAIN to notify them of the mold problem within the Sleep Number® bed.

24      63.  The express Limited Warranty provides for a scale reduction in price based on years

25  in service.  SELECT COMFORT's return policy as applied to plaintiffs STEARNS, ROSE and

26  FULLER, for beds experiencing mold growth is a full refund, contrary to the express Limited

27  Warranty and is a breach of the Limited Warranty in that the defendants are refusing to and are

28  unable to repair the defective product.

64.  Defendants, and each of them, are aware that the Sleep Number® bed has an inherent defect based on the prior complaints forcing a redesign, and based on the subsequent complaints that have been received by each of their customer service centers regarding newly purchased beds and replacements parts.

65.  SELECT COMFORT has received numerous complaints regarding the Sleep Number bed prior to and since 2004.  Plaintiffs, and each of them, base this belief on the large volume of complaints available through the internet and other media reports.  Further information regarding these complaints would be more easily accessible through the defendants, and each of their customer service departments. *See Exhibit B, attached hereto and incorporate by reference herein.*

66.  Defendants, and each of them, have failed to notify the general public of the inherent defect in an effort to protect their own profits from decline, the profits of their third-party retailers from decline and the mattress industry from scrutiny concerning the inherent defect.

67.  Defendants, and each of them, have implemented a systematic and strategic scheme to mitigate the dissemination of information regarding the defect to the general public and as has been stated by SELECT COMFORT employees, "the company is focusing on individual customers who have a complaint or concern," rather than notifying the entire public of the inherent defect. *See Exhibit E, attached hereto and incorporated by reference herein.*

68.  On September 6, 2004 in an article featured in *Furniture/Today*, SELECT COMFORT CEO Bill McLaughlin stated, "We [SELECT COMFORT] have intentionally been selective, rather than broad, in our public communication on the issue [mold reports] because we believe it is better for the mattress industry and ourselves not to keep this topic in the headlines, causing unnecessary concern for consumers"  McLaughlin also issued an appeal to the mattress industry to avoid engaging in a debate about whether certain types of beds are more likely to encounter mold problems. *See Exhibit D, attached hereto and incorporated by reference herein.*

69.  Defendants, and each of them, have consistently misrepresented since as late as 2004 that they have not received any complaints of mold, confirmed any cases of mold or been put on notice of mold since the redesign or refabrication of the Sleep Number® bed and that cases of mold

1  in the Sleep Number bed are rare. ***See Exhibit F, attached hereto and incorporated by reference***

2  ***herein.***

3      70.  Select Comfort has publicly stated that "there have been 0 confirmed cases of mold in

4  a Sleep Number® bed sold after the antimicrobial reformulation in 2005." In fact, Class members

5  and plaintiffs WILLIAMS, have obtained beds and replacement parts since the 2005 redesign and

6  the results are identical-mold incubation in the mattress. ***See Exhibit F, attached hereto and***

7  ***incorporated by reference herein.***

8      71.  Plaintiffs have each discovered mold in their respective Sleep Number® beds.

9      72.  As a result of the defendants' misconduct, and each of them, plaintiffs, and members

10  of the Class, have suffered actual damages in that the Sleep Number® beds are inherently defective

11  and have grown mold.  Plaintiffs and Class members have incurred and will continue to incur costs,

12  among other things, replacement of their beds and investigative and repair costs, including, but not

13  limited to, replacement of their bedding, cleaning of their homes, replacement of HVAC

14  components and/or systems, replacement of carpet, repainting of room(s), environmental

15  investigations and hazardous waste disposal fees.

16  **CLASS ACTION ALLEGATIONS**

17      73.  Plaintiffs bring this action on behalf of themselves and all persons similarly situated in

18  the United States as members of a proposed class pursuant to Federal Rules of Civil Procedure,

19  Rule 23.  This action satisfies the numerosity, commonality, typicality, adequacy, predominance

20  and superiority requirements of each of these provisions.  **The Nationwide Class is defined as:  All**

21  **original purchasers of a Select Number® bed manufactured by SELECT COMFORT**

22  **between January 1, 1987 and the present date whose beds contain mold.**

23      74.  Pursuant to Federal Rule of Civil Procedure 23(a), plaintiffs and Class members bring

24  this cause of action because (1) the class is so numerous that joinder of all members is

25  impracticable, (2) there are common questions of law or fact common to the class, (3) the claims or

26  defenses of the representative parties will fairly and adequately protect the interests of the class and

27  (4) the representative parties will fairly and adequately protect the interests of the class.

28

75.   Pursuant to Federal Rule of Civil Procedure Rule 23(b) the plaintiffs and Class Members allege that common questions of law or fact to the Class Members predominate over any questions affecting only individual members of the class and a class action is superior and manageable for the foregoing reasons: (1) the interests of the Class Members in individually controlling the prosecution of separate causes of action will not be injured; (2) the only cases filed outside of this class action have been filed recently by individual plaintiffs in this case and will not substantially affect this matter; (3) the forum is desirable for all involved in that most of the representative reside in the forum, all defendants are doing business in the forum and sales occurred within the forum; and (4) the management of the class action will not be difficult since all causes of action either arise out of federal law or involves state laws that are consistently similar.

76.   Pursuant to Federal Rule of Civil Procedure 11(b)(3), the plaintiffs and Class Members allege that to the best of their knowledge, information and belief, the factual contentions contain herein have evidentiary support and will likely have further evidentiary support after a reasonable opportunity for investigation or discovery.

77.   The class is quite numerous, making joinder of all members in one action impracticable.  Although the exact number of Class Members is unknown at this time, plaintiff is informed and believes and thereon alleges that this information is readily available to defendant SELECT COMFORT and can be identified through SELECT COMFORT's sales records, customer service complaint records, and warranty claims records and through public notification.

78.   There is a well defined community of interest among the members of the Class.  The claims of the representative plaintiffs are typical of the Class, in that plaintiffs, like all Class Members, purchased a Sleep Number® bed manufactured by SELECT COMFORT and their beds are infested with mold growth.

79.   The Class Members will all suffer damage in that they have incurred and/or will incur costs for, among other things: replacement of their beds, replacement of their bedding, cleaning of their homes, replacement of HVAC components and/or systems, replacement of carpet, repainting

1 | of room(s), environmental investigations, and hazardous waste disposal fees associated with the

2 | mold incubating in their Sleep Number® bed.

3 | 80. A class action is superior to other available methods for the fair and efficient

4 | adjudication of the controversy. Absent a class action, most members of the Class likely would find

5 | the cost of litigating their claims to be prohibitive, and would have no effective remedy at law.

6 | Because of the relatively small size of the individual Class Member's claims ($1,000.00 to

7 | $5,000.00), it is likely that only a few Class Members could afford to seek legal redress for

8 | defendants' misconduct. Absent a Class Action, Class Members will continue to incur damages and

9 | defendants' misconduct will continue without remedy. Class treatment of common questions of law

10 | and fact would also be superior to multiple individual actions or piecemeal litigation in that class

11 | treatment will conserve the resources of the courts and the litigants, and will promote consistency

12 | and efficiency of adjudication.

13 | 81. The factual basis of defendants' misconduct are common to all Class Members and

14 | represent a common thread of fraudulent, deliberate, malicious and negligent misconduct resulting

15 | in injury to the Class Members.

16 | 82. There are numerous questions of law and fact common to Class Members that

17 | predominate over any questions that may affect individual Class Members, including, without

18 | limitation the following:

19 |     a.  Is the Sleep Number® bed inherently defective?

20 |     b.  When did SELECT COMFORT know or should have known that the Sleep

21 |        Number® bed is inherently defective?

22 |     c.  When did SELECT COMFORT know that the Sleep Number® bed is subject to

23 |        mold incubation under normal use?

24 |     d.  Did SELECT COMFORT notify its distributors that the Sleep Number® bed is

25 |        subject to mold infestation under normal use?

26 |     e.  What did SELECT COMFORT do to notify owners of the Sleep Number® bed of

27 |        the inherent defect?

28 |     f.  Did SELECT COMFORT notify its distributors of the inherent defect in the Sleep

Number® bed?

g.  If so, when did it provide such notice?

h.  What did the distributors of the Sleep Number® bed do to notify their customers of the inherent defect in the Sleep Number® bed?

i.  Did any of SELECT COMFORT's distributors notify SELECT COMFORT of mold complaints from purchasers?

j.  Did the defendants conspire to prevent the public, the plaintiffs, Class Members from learning of the defective nature of the Sleep Number® bed?

k.  Did the defendants fraudulently represent the true condition of the Sleep Number® bed after redesigning the product and receiving complaints from the general public?

l.  Did the defendants continue to advertise and promote the Sleep Number® bed as safe and promote the effectiveness of the Limited Warranty with full knowledge that beds and replacement parts were defective?

m.  What damages have Class Members suffered?

83.  The claims of the representative plaintiffs are typical of the claims of the Class Members.  The representative plaintiffs purchased and/or used a Sleep Number® bed without knowledge of the inherently defective nature of the product.  Investigation revealed that the Sleep Number® bed was covered in mold.  Plaintiffs suffered injury in the form of property damage.

84.  The representative plaintiffs will fairly and adequately protect the interests of the Class.  Plaintiffs have retained counsel with substantial experience in litigating class action cases, involving defective products and defective home construction.  Plaintiffs and their counsel are committed to prosecuting this action vigorously on behalf of the Class, and have the financial resources to do so.  Neither plaintiffs nor their counsel have any interest contrary to or a disabling conflict with those of the Class they seek to represent.

85.  Plaintiffs and their counsel are entitled to recover attorney's fees as private attorney general for enforcing an important right affecting a large class of persons pursuant to 15 U.S.C. 2310(d)(2), Code of Civil Procedure §1021.5 and other statutory law.

1

**FIRST CAUSE OF ACTION**

2

**NEGLIGENCE**

3      86.   Plaintiffs hereby adopt and incorporate by reference all allegations set forth above as

4    though set forth fully herein.

5      87.   At all times herein mentioned, defendants, and each of them, had a duty to properly

6    manufacture, compound, test, inspect, package, label, distribute and market the Sleep Number®

7    bed.

8      88.   At all times herein mentioned, defendants, and each of them, knew, or in the exercise

9    of reasonable care should have known, that the Sleep Number® bed was a consumer product of

10   such a nature that if it was not properly manufactured, tested, inspected, packaged, labeled,

11   distributed and marketed for the use and purpose for which it was intended, it was likely to injure

12   those person(s) by whom it was used.

13     89.   Defendants, and each of them, so negligently and carelessly manufactured, tested,

14   inspected, packaged, labeled, distributed, recommended, displayed and sold the Sleep Number®

15   bed that the same was defective, contaminated, and dangerous product, and unsafe for the use and

16   purpose for which it was intended when used and applied as recommended by defendants, and each

17   of them.

18     90.   Plaintiffs, and the Class Members began using the Sleep Number® bed for the

19   purpose for which it was intended to be used, namely for sleeping on and laying on for rest.

20     91.   Because of the aforementioned negligence of the defendants, and each of them, in the

21   manufacture, testing, inspection, packaging, labeling, distribution, recommendation, display and

22   sale of said product, the plaintiff's Sleep Number® bed developed and incubated mold

23   contamination resulting in damages to the plaintiffs and Class

24     92.   As a direct and proximate result of the negligence of the defendants, and each of

25   them, in relation to the inherent defect, the plaintiffs and Class members have suffered damages for

26   those costs associated with the purchase and replacement of the Sleep Number® bed, investigation

27   and repair costs to their beds, the full nature of which is not yet known to the plaintiff, which will be

28   shown according to proof.

1    93.   Plaintiffs are informed and believe, and based thereon allege, that defendants, and

2    each of them, have recklessly caused great harm to plaintiffs and the Class with full knowledge of

3    the recklessness of their conduct. Plaintiffs are further informed and believe, and based thereon

4    allege, that defendants' conduct as alleged above was despicable, was carried on with a reckless

5    disregard of plaintiffs' rights, and subjected plaintiffs to undue hardship. Therefore, plaintiffs

6    should be awarded punitive and exemplary damages sufficient to punish defendants for engaging in

7    this conduct and to deter similar conduct on their part in the future

8         WHEREFORE, plaintiffs and Class Members pray for relief as hereinafter set forth.

9                              **SECOND CAUSE OF ACTION**

10                              **STRICT PRODUCTS LIABILITY**

11    94.   Plaintiffs hereby incorporate by reference Paragraphs 1 through 72 as though set forth

12    fully herein.

13    95.   The Sleep Number® bed design is inherently defective in that it is an encapsulated

14    closed system that is not air permeable. The materials used in the manufacturer of the Sleep

15    Number® bed are also defective in that they do not breathe adequately which leads to moisture

16    collecting inside the system. The mold spores multiply on the internal components since the

17    environment for fungus as a result of the design and manufacture defects is ideal; dark, moist and

18    damp.

19    96.   At all times relevant hereto defendant SELECT COMFORT was the designer,

20    manufacturer, wholesaler and retailer of the Sleep Number® bed.

21    97.   At all times relevant hereto defendant BBB was a retailer of the Sleep Number® bed.

22    98.   At all times relevant hereto defendant SLEEP TRAIN was a retailer of the Sleep

23    Number® bed.

24    99.   Plaintiff is informed and believes and based thereon alleges that defendants Does 2

25    through 50,000 were either designers, material suppliers, distributors, manufacturers, wholesalers

26    and/or retailers of the Sleep Number® bed.

27    100. Defendants, and each of them placed the Sleep Number® bed into the stream of

28    commerce.

FIRST AMENDED CLASS ACTION COMPLAINT

1    101. As a direct and proximate result of the design and manufacture of the Sleep Number®

2    bed, the product was defective when it was sold and delivered to Class Members.

3    102. Plaintiff is informed and believes and based thereon alleges that some time in 1996

4    and again in 2005, SELECT COMFORT changed or otherwise altered the design of the Sleep

5    Number® bed to address the mold infestation issues. Further information would be more easily

6    accessible through the defendants, and each of their, research and development and customer

7    service departments.

8    103. At no time prior to the discovery of mold in their Sleep Number® beds, did SELECT

9    COMFORT notify any of the plaintiffs or Class Members that their beds were inherently defective,

10    and subject to mold infestation from normal use and potentially hazardous to their health.

11    104. Plaintiff is informed and believes and thereon alleges that SELECT COMFORT did

12    not notify any Class Members that the product was inherently defective, and subject to mold

13    infestation from normal use.

14    105. It is not reasonably foreseeable for Class Members to expect that their Sleep

15    Number® bed would develop mold from normal use.

16    106. Defendants, and each of them, had a duty to warn Class Members of the inherent

17    defect in the product.

18    107. Defendants, and each of them, breached this duty to warn, thereby exposing Class

19    Members to additional damages.

20    108. As a direct and proximate result of the acts and/or omissions of defendants, and each

21    of them, plaintiffs, and Class Members, have suffered damage in an amount to be shown according

22    to proof.

23    109. Plaintiffs are informed and believe, and based thereon allege, that defendants, and

24    each of them, have deliberately caused and have intended to cause great harm to plaintiffs and the

25    Class with full knowledge of the wrongfulness of their conduct.  Plaintiffs are further informed and

26    believe, and based thereon allege, that defendants' conduct as alleged above was despicable, was

27    carried on with a willful and conscious disregard of plaintiffs' rights, and subjected plaintiffs to

28    undue hardship.  Therefore, plaintiffs should be awarded punitive and exemplary damages sufficient

1 | to punish defendants for engaging in this conduct and to deter similar conduct on their part in the
2 | future.

3 |      110. Pursuant to 15 U.S.C. §2310(d)(2) plaintiffs are entitled to recover their fees and costs
4 | associated with bringing the present action.

5 |      111. Pursuant to 15 U.S.C. §2310(e), by virtue of bringing this action, plaintiffs hereby
6 | demand that defendants, and each of them, cure the failure to warn Class Members and issue a
7 | recall of the inherently defective product.

8 |      WHEREFORE, plaintiffs and Class Members pray for relief as hereinafter set forth.

9 | **THIRD CAUSE OF ACTION**

10 | **VIOLATION OF MAGNUSSON-MOSS WARRANTY ACT v. SELECT COMFORT**

11 |      112. Plaintiffs hereby incorporate by reference Paragraphs 1 through 72 as though set forth
12 | fully herein.

13 |      113. The Sleep Number® bed is a "consumer product" as defined in 15 U.S.C. §2301(1).

14 |      114. Plaintiffs and Class Members are "consumers" as defined in 15 U.S.C. §2301(3).

15 |      115. Defendants are "suppliers" as defined in 15 U.S.C. §2301(4).

16 |      116. SELECT COMFORT is a "warrantor" as defined in 15 U.S.C. §2301(5).

17 |      117. The SELECT COMFORT Limited Warranty is a "written warranty" as defined in 15
18 | U.S.C. §2301(6).

19 |      118. The Magnusson-Moss Warranty Act applies to the SELECT COMFORT Limited
20 | Warranty.

21 |      119. The Limited Warranty issued by SELECT COMFORT states the Sleep Number® bed
22 | will be "free from defects in material and workmanship for a period of twenty years from the
23 | original purchase date."

24 |      120. The Limited Warranty provides that SELECT COMFORT will "repair or
25 | replace…the defective product or component…"

26 |      121. The Limited Warranty provides that repair or replacement is the exclusive remedy for
27 | the purchaser.

28 | //

1    122. The Sleep Number® bed is a unique patented product manufactured exclusively by

2  SELECT COMFORT.

3    123. The plaintiffs and Class Members reasonably relied on the Limited Warranty when

4  purchasing the product, since the warranty is advertised and promoted by the defendants.  Plaintiffs

5  and Class Members would not have purchased the Sleep Number bed were it not for the

6  representations and  guarantees of replacement, freedom from defects and remedies provided for in

7  the Limited Warranty and said representations became a part of the basis for the bargain.

8    124. Plaintiffs and Class Members attempted on numerous occasions to invoke the Limited

9  Warranty by notifying the defendants and allowing them to attempt to remedy the alleged defect.

10  The replacements and repairs as provided for in the Limited Warranty exhibit identical defects as

11  the original Sleep Number® bed and thus defendants have refused to remedy the defect and have

12  made continued replacements futile.

13    125. Defendants, and each of them, were given the opportunity on multiple occasions to

14  provide a limited repair remedy and failed in its essential purpose of producing a bed free of mold.

15    126. SELECT COMFORT breached the Limited Warranty by not repairing, replacing or in

16  any way remedying the defective product.

17    127. Defendants, and each of them, were given the opportunity on multiple occasions to

18  provide a limited repair remedy and failed in its essential purpose of producing a bed free of mold.

19    128. By rescinding the purchase agreement and paying purchasers the purchase price for

20  the Sleep Number® bed, defendants have prevented Class Members from being able to use their

21  Sleep Number® bed for a period of twenty (20) years.

22    129. As a direct and proximate result of the acts and/or omissions of SELECT COMFORT,

23  plaintiffs and Class Members have suffered damages which will be shown according to proof.

24    130. Pursuant to 15 U.S.C. §2310(d)(2) plaintiffs are entitled to recover their fees and costs

25  associated with bringing the present action.

26    131. Pursuant to 15 USC §2310(e), by virtue of bringing this action, plaintiffs hereby

27  demand that defendants, and each of them, cure the failure to warn Class Members and issue a

28  recall of the inherently defective product.

1    WHEREFORE, plaintiffs and Class Members pray for relief as hereinafter set forth.

2                              **FOURTH CAUSE OF ACTION**

3               **BREACH OF EXPRESS WARRANTY UNDER UCC §2-313**

4          132. Plaintiffs hereby incorporate by reference Paragraphs 1 through 72 as though set forth

5    fully herein.

6          133. Plaintiffs are "consumers" as defined in Uniform Commercial Code §2-103(1)(c).

7          134. The Sleep Number® is a "good" as defined in Uniform Commercial Code §2-

8    103(1)(k).

9          135. Defendants, and each of them, are "sellers" as defined in Uniform Commercial Code

10   §2-103(1)(o).

11         136. Defendant SELECT COMFORT provides an express Limited Warranty with each

12   Sleep Number® bed purchase.  Said Limited Warranty has remained the same for many years.

13   ***Attached hereto as Exhibit "G" and made a part hereof is an example  of said Limited Warranty***

14   ***("Limited Warranty").***

15         137. The Sleep Number® bed is a unique good.

16         138. Defendants advertise the unique benefits of the Sleep Number® bed and that its

17   unique patented product is different from all other beds.

18         139. The Limited Warranty is an express warranty as defined in Uniform Commercial

19   Code §2-313.

20         140. The Limited Warranty provides that "Select Comfort Corporation ("Select Comfort")

21   warrants to the original purchaser that their Select Comfort sleep system (mattress and/or

22   foundation) will be free from defects in material and workmanship for a period of twenty (20) years

23   from the original purchase date."

24         141. The plaintiffs and Class Members reasonably relied on the Limited Warranty

25   advertised and promoted by defendants when purchasing the product. Plaintiffs and Class Members

26   would not have purchased the Sleep Number bed were it not for the representations and guarantees

27   of replacement, freedom from defects and remedies provided for in the Limited Warranty and said

28   representations became a part of the basis for the bargain.

1   142. The Limited Warranty provides that SELECT COMFORT will "repair or

2   replace...the defective product or component..."

3   143. The Limited Warranty provides that repair or replacement is the exclusive remedy for

4   the purchaser.

5   144. Implicit in the Limited Warranty is that the plaintiffs would be able to enjoy the use of

6   their Sleep Number® bed with its unique properties for a period of twenty (20) years.

7   145. The materials and or workmanship of the Sleep Number® bed are inherently defective

8   causing the bed to incubate mold resulting in damage to Class Members.

9   146. Plaintiffs, and each of them, discovered mold in their Sleep Number® beds within the

10  twenty (20) year Limited Warranty period.

11  147. Plaintiffs' Sleep Number® beds failed within the twenty (20) year warranty period.

12  148. Plaintiffs and Class Members attempted on numerous occasions to invoke the Limited

13  Warranty by notifying the defendants and allowing them to attempt to remedy the alleged defect.

14  The replacements and repairs as provided for in the Limited Warranty exhibit identical defects as

15  the original Sleep Number® bed and thus defendants have refused to remedy the defect and have

16  made continued replacement futile.

17  149. Defendants, and each of them, were given the opportunity on multiple occasions to

18  provide a limited repair remedy and failed in its essential purpose of producing a bed free of mold.

19  150. SELECT COMFORT breached the Limited Warranty by not fully repairing, replacing

20  or in any way remedying the defective product.

21  151. By rescinding the purchase agreement and paying purchasers the purchase price for

22  the Sleep Number® bed, defendants have prevented Class Members from being able to use their

23  Sleep Number® bed for a period of twenty (20) years.

24  152. As a direct and proximate result of the acts and/or omissions of SELECT COMFORT,

25  plaintiffs and Class Members have suffered damages which will be shown according to proof.

26  //

27  //

28  //

WHEREFORE, plaintiffs and Class Members pray for relief as hereinafter set forth.

## FIFTH CAUSE OF ACTION

### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

### UCC §2-314

153. Plaintiffs hereby incorporate by reference Paragraphs 1 through 72 as though set forth fully herein.

154. The Limited Warranty provides "**ANY IMPLIED WARRANTIES APPLICABLE TO THIS PRODUCT, INCLUDING ANY WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE, ARE LIMITED IN DURATION TO THE DURATION OF THIS WRITTEN LIMITED WARRANTY.**" *See Exhibit G, attached hereto and incorporated by reference herein.*.

155. The foregoing language evidences an intent that both express and implied warranties would apply to the Sleep Number® bed.

156. The implied warranty of merchantability applies for twenty (20) years pursuant to the express terms of the Limited Warranty.

157. Defendants are "sellers" as that term is defined in UCC §2-103(1)(o).

158. The Sleep Number® bed is a "good" as defined in UCC §2-103(1)(k).

159. Plaintiffs are "consumers" as defined in UCC §2-103(1)(c).

160. Defendants and plaintiffs entered into "consumer contracts" regarding the Sleep Number® bed as defined in UCC §2-103(1)(d).

161. Defendants represented to plaintiffs and Class Members that the Sleep Number® bed conformed with the literature provided on and with the Sleep Number® bed as part of its uniform advertising and promotional campaign set forth above.

162. Defendants represented to plaintiffs and Class Members that the Sleep Number® bed was fit for its ordinary purpose, i.e., a sleeping surface for sleeping and laying on for rest.

163. Defendants, and each of them, impliedly warranted that the Sleep Number® bed was of merchantable quality, free from material defect and would have positive health consequences to plaintiffs when used as intended for a period of twenty (20) years.

FIRST AMENDED CLASS ACTION COMPLAINT

164. Plaintiffs notified defendants, and each of them, shortly after identifying the mold that the Sleep Number® bed was not of merchantable quality or free from material defects by contacting Select Comfort and notifying them of the mold defect.

165. Plaintiffs notified defendants, and each of them, that the product was not of merchantable quality or free from material defects, through subsequent notifications that the replacement parts and/or replacement beds provided did not alleviate the mold incubation defect, thus causing further replacements/repairs to be futile in their purpose and constituting a refusal to remedy the defect.

166. Defendants, and each of them, breached these implied warranties by designing, manufacturing, distributing and selling a product that was inherently defective and not of merchantable quality nor fit for its intended purpose.

167. In reality, the Sleep Number® bed design is inherently defective in that it is an encapsulated closed system that is not air permeable. The materials used in the defective manufacturer of the Sleep Number® bed do not breathe adequately which leads to moisture collecting inside the system.  The mold spores multiply on the internal components since the environment for fungus is ideal; dark, moist and damp.

168. The foregoing acts and/or omission by defendants constitute a breach of UCC §2-314.

169. As a direct and proximate result of the purchase and proper use of the inherently defective product, plaintiffs and Class Members have been damaged in an amount to be shown according to proof.

WHEREFORE, plaintiffs and Class Members pray for relief as hereinafter set forth.

**SIXTH CAUSE OF ACTION**

**BREACH OF IMPLIED WARRANTY OF FITNESS**

**UCC §2-315**

170. Plaintiffs hereby incorporate by reference Paragraphs 1 through 72 as though set forth fully herein.

171. The Limited Warranty provides "**ANY IMPLIED WARRANTIES APPLICABLE TO THIS PRODUCT, INCLUDING ANY WARRANTIES OR MERCHANTABILITY AND**

1 | **FITNESS FOR A PARTICULAR PURPOSE, ARE LIMITED IN DURATION TO THE**

2 | **DURATION OF THIS WRITTEN LIMITED WARRANTY.**" *See Exhibit G, attached hereto*

3 | *and incorporated by reference herein.*

4 | 172. The foregoing language evidences an intent that both express and implied warranties

5 | would apply to the Sleep Number® bed.

6 | 173. The implied warranty of fitness applies for twenty (20) years pursuant to the express

7 | terms of the Limited Warranty.

8 | 174. Defendants are "sellers" as that term is defined in UCC §2-103(1)(o).

9 | 175. The Sleep Number® bed is a "good" as defined in UCC §2-103(1)(k).

10 | 176. Plaintiffs are "consumers" as defined in UCC §2-103(1)(c).

11 | 177. Defendants and plaintiffs entered into "consumer contracts" regarding the Sleep

12 | Number® bed as defined in UCC §2-103(1)(d).

13 | 178. Defendants represented to plaintiffs and Class Members that the Sleep Number® bed

14 | was fit for its ordinary purpose, i.e., a sleeping surface for sleeping and laying on for rest.

15 | 179. Defendants represented to plaintiffs and Class Members that the Sleep Number® bed

16 | conformed with the literature provided on and with the Sleep Number® bed as part of its uniform

17 | advertising and promotional campaign set forth above.

18 | 180. Defendants, and each of them, impliedly warranted that the Sleep Number® bed was

19 | fit for its intended purpose, free from material defect and would have positive health consequences

20 | to plaintiffs when used as intended.

21 | 181. Plaintiffs notified defendants, and each of them, shortly after identifying the mold,

22 | that the Sleep Number® bed was not fit for its particular purpose or free from material defects by

23 | contacting Select Comfort and notifying them of the mold defect.

24 | 182. Plaintiffs notified defendants, and each of them, that the product was not fit for its

25 | particular purpose or free from material defects, through subsequent notifications that the

26 | replacement parts and/or replacement beds provided did not alleviate the mold incubation defect,

27 | thus causing further replacements/repairs to be futile in their purpose and constituting a refusal to

28 | remedy the defect.

1      183. Defendants, and each of them, breached these implied warranties by designing,

2  manufacturing, distributing and selling a product that was inherently defective and not of

3  merchantable quality nor fit for its intended purpose.

4      184. In reality, the Sleep Number® bed design is inherently defective in that it is an

5  encapsulated closed system that is not air permeable. The materials used in the defective

6  manufacturer of the Sleep Number® bed do not breathe adequately which leads to moisture

7  collecting inside the system. The mold spores multiply on the internal components since the

8  environment for fungus is ideal; dark, moist and damp.

9      185. The foregoing acts and/or omission by defendants constitute a breach of UCC §2-315.

10      186. As a direct and proximate result of the purchase and proper use of the inherently

11  defective product, plaintiffs and Class Members have been damaged in an amount to be shown

12  according to proof.

13     WHEREFORE, plaintiffs and Class Members pray for relief as hereinafter set forth.

14              **SEVENTH CAUSE OF ACTION**

15                    **CONCEALMENT**

16      187. Plaintiffs hereby incorporate by reference Paragraphs 1 through 72 as though set forth

17  fully herein.

18      188. When plaintiff STEARNS contacted SELECT COMFORT to complain of mold in

19  April 2008, she was informed by the Customer Service Representative that SELECT COMFORT

20  was aware of the mold issue but that the beds had been redesigned to address this in 2005.

21      189. Plaintiff SCHLESINGER first called SELECT COMFORT regarding mold in his bed

22  in 2004. SELECT COMFORT sent new foam and parts to SCHLESINGER. These new parts also

23  developed mold. SCHLESINGER reported this problem and was subsequently given a refund.

24      190. When plaintiff ROSE called to complain to SELECT COMFORT of mold in May,

25  2008, she was informed by the Customer Service Representative that SELECT COMFORT was

26  aware of the mold problem but changed the design in 2005 to address the problem. However, when

27  ROSE asked if SELECT COMFORT would guarantee the post 2005 beds would not get mold,

28  SELECT COMFORT refused to make such a guarantee. As a result, she did not want replacement

1    parts and SELECT COMFORT issued her a refund.

2         191. When plaintiff K. WILLIAMS contacted SELECT COMFORT regarding mold in her

3    son's bed in 2006 and 2007, she was informed that SELECT COMFORT knew about the mold

4    problem and that there was a design change in 2005.

5         192. In several of the foregoing instances, SELECT COMFORT could not perform under

6    Limited Warranty and therefore rescinded the purchase agreement by giving plaintiffs a refund.

7    Plaintiffs are informed and believe and thereon allege that the refund procedure is in furtherance of

8    the concealment. The policy of rescission was created by SELECT COMFORT to prevent plaintiffs

9    from taking legal action such as the filing of this lawsuit.

10        193. Plaintiffs are informed and believe and thereon allege that other people have been

11   paid off or otherwise convinced not to bring an action against SELECT COMFORT for mold found

12   in their Sleep Number® beds. In particular, in 2004, Sue Grote was paid an unknown sum in

13   exchange for never talking about mold in her Sleep Number® bed again.

14        194. Information regarding the policies and actions taken by SELECT COMFORT to

15   conceal its liability and defective product is in the exclusive control and custody of SELECT

16   COMFORT, including, but not limited documents and names of potential witnesses.

17        195. Defendants, and each of them, stated that they have not received any complaints of

18   mold, confirmed any cases of mold or been put on notice of mold since the redesign or refabrication

19   of the Sleep Number® bed. *See Exhibit F, attached hereto and incorporated by reference herein.*

20        196. Defendants, and each of them, have instituted an aggressive marketing campaign and

21   made misrepresentations of the condition of the Sleep Number bed, as outline above, in an effort to

22   prevent the media and consumer protection groups from notifying the public of the inherent defect,

23   solely for the purpose of securing its market share and continued profits.

24        197. Defendants, and each of them, have sought out disgruntled customers on the internet

25   in an effort to discredit their complaints and allegations concerning the defective product and have

26   created a website of their own (beds.com) to allegedly provide a forum for passionate customers.

27   *See Exhibit B, attached hereto and incorporated by reference herein.*

28        198. Since 2005, Defendants, and each of them, provide information within their assembly

1 and warranty documentation which specifically addresses mold growth and what action to take in
2 case mold is found.

3      199. This notification has been provided because mold is in fact not rare and occurs in
4 Select Number beds more than rarely as a result of the inherent defect.

5      200. No such information has been provided to purchasers who predate this change.

6      201. Defendants, and each of them, intentionally concealed from the public at large that the
7 Sleep Number® bed was inherently defective.

8      202. Defendants, and each of them, intentionally concealed from the public at large that the
9 Sleep Number® bed was subject to unreasonable mold infestation.

10      203. Defendants, and each of them, willfully concealed the true facts. The true facts were
11 that the Sleep Number® bed grows molds resulting in potential personal injury to individuals who
12 come into contact with the mold.

13      204. In reality, the Sleep Number® bed design is inherently defective in that it is an
14 encapsulated closed system that is not air permeable. The materials used in the defective
15 manufacturer of the Sleep Number® bed do not breathe adequately which leads to moisture
16 collecting inside the system. The mold spores multiply on the internal components since the
17 environment for fungus is ideal; dark, moist and damp.

18      205. Defendants, and each of them, intentionally concealed facts and information
19 concerning the mold defect from the public at large in an effort to protect their market share and to
20 insulate the mattress industry in general from scrutiny. *See Exhibit D, attached hereto and*
21 *incorporated by reference herein.*

22      206. As a result of their knowledge and expertise about the Sleep Number® bed and the
23 damages associated with the normal use of the product, defendants, and each of them, owed a duty
24 to Class Members to warn them of inherent defect of the product that allows it to incubate mold.

25      207. Defendants, and each of them, breached this duty, and have continued to breach this
26 duty, by failing to warn Class Members and by failing to recall the Sleep Number® bed.

27      208. On or around 2005, after only two complaints of defective replacement parts,
28 including, but not limited to air pumps, were reported to SELECT COMFORT, the defendants

1  recalled the allegedly defective product and contacted all registered owners regarding this problem.

2  *See Exhibit C, attached hereto and incorporated by reference herein.*

3  209. By not providing notice, plaintiffs and Class Members have continued to use the Sleep

4  Number® bed to their detriment, causing additional long term health consequences.

5  210. Plaintiffs are informed and believe and based thereon allege that defendants, and each

6  of them, instituted a method and procedure in furtherance of their concealment by agreeing to pay

7  any purchaser who complained about the Sleep Number® bed the full amount of the purchase price

8  so long as the bed was returned to SELECT COMFORT. Further information would be more easily

9  accessible through the defendants and each of them.

10  211. By having the Class Members return their Sleep Number® bed, defendants, and each

11  of them intentionally concealed and destroyed evidence adverse to the Class Members' interest.

12  212. By having the Class Members return their contaminated Sleep Number® bed,

13  defendants subjected numerous other individuals to mold contamination, including, but not limited

14  to shipping handlers and its employees who received the products from the Class Members.

15  213. The express Limited Warranty provides for a scale reduction in price based on years

16  in service. SELECT COMFORT's return policy as applied to plaintiffs STEARNS, ROSE and

17  FULLER, for beds experiencing mold growth is a full refund, contrary to the express Limited

18  Warranty and is a breach of the Limited Warranty in that the defendants are refusing to and are

19  unable to repair the defective product.

20  214. The failure to disclose the true facts was performed intentionally and with the intent to

21  induce reliance upon purchasers and to avoid having to pay money by means of a recall or other

22  action to remove the defective products from the market.

23  215. As a direct and proximate result of the acts and/or omissions of defendants, and each

24  of them, plaintiffs, and Class Members, have suffered damage in an amount to be shown according

25  to proof.

26  216. Plaintiffs are informed and believe, and based thereon allege, that defendants, and

27  each of them, have deliberately caused and have intended to cause great harm to plaintiffs and the

28  Class with full knowledge of the wrongfulness of their conduct. Plaintiffs are further informed and

1   believe, and thereon allege, that defendants' conduct as alleged above was despicable, was carried

2   on with a willful and conscious disregard of plaintiffs' rights, and subjected plaintiffs to undue

3   hardship.  Therefore, plaintiffs should be awarded punitive and exemplary damages sufficient to

4   punish defendants for engaging in this conduct and to deter similar conduct on their part in the

5   future.

6              WHEREFORE, plaintiffs and Class Members pray for relief as hereinafter set forth.

7                                **EIGHTH CAUSE OF ACTION**

8                              **INTENTIONAL MISREPRSENTATION**

9              217. Plaintiffs hereby incorporate by reference Paragraphs 1 through 72 as though set forth

10   fully herein.

11             218. Defendants, and each of them, marketed, advertised and sold the Sleep Number® bed

12   representing that this bed would provide plaintiffs and Class Members with a perfect night's sleep.

13   "A Sleep Number® bed represents an ideal level of mattress comfort, firmness and support;

14   Everyone has a Sleep Number; Knowing your Sleep Number is key to a perfect night's sleep." *See*

15   *Exhibit A, attached hereto and incorporated by reference herein.*

16             219. Defendants, and each of them, marketed, advertised and promoted the Sleep

17   Number® bed representing that the bed came with a Limited Warranty which ensured consumers

18   that the Sleep Number® would be "free from defects and material workmanship for twenty years."

19   *See Exhibit G, attached hereto and incorporated by reference herein.*

20             220. Plaintiff STEARNS relied upon advertising through celebrities Rush Limbaugh and

21   Lee Rodgers on KGO Radio.  Plaintiff is informed and believes that these individuals were paid to

22   endorse the Sleep Number® bed.  Statements made by these individuals included but were not

23   limited to "waking up well rested and refreshed," a user would receive the "perfect nights sleep,"

24   that they had "never had a better nights sleep."

25             221. In reliance upon the advertising representations made by SELECT COMFORT, as

26   part of its uniform and concerted advertising and promotional campaign, plaintiff STEARNS

27   purchased her Sleep Number® bed in 2000.  She purchased the bed through BBB.

28             222. Plaintiff ROSE relied upon advertising in her local newspaper and on television,

1  specifically television ads by celebrity Lindsey Wagner. ROSE relied upon statements by Ms.

2  Wagner that she would receive a "perfect nights sleep," "wake up without back pain," "wake up

3  refreshed," and that each person could control their own comfort level. ROSE purchased her bed

4  from the Thousand Oaks Select Comfort Retail Store where the salesman told her that the bed

5  would allow her to "wake up refreshed; without back pain; and a perfect night's sleep."

6      223. In reliance upon the advertising representations made by SELECT COMFORT, as

7  part of its uniform and concerted advertising and promotional campaign, plaintiff ROSE purchased

8  her Sleep Number® bed in 1996.

9      224. Plaintiffs FULLER had heard about the Sleep Number® bed before they purchased it

10 and walked through their local shopping mall and saw signs stating the "perfect nights sleep" and

11 "wake up refreshed." The salesman at the Select Comfort Retail Store echoed these advertisements

12 and stated the FULLERS would wake up refreshed and sleep better than they currently were. They

13 would "be able to have a very solid, restful nights sleep" and the bed would "eliminate back pain."

14     225. In reliance upon the advertising representations made by SELECT COMFORT, , as

15 part of its uniform and concerted advertising and promotional campaign, plaintiffs FULLER

16 purchased their Sleep Number® bed in 1996.

17     226. Prior to purchasing their bed, plaintiff SCHLESINGER requested information directly

18 from SELECT COMFORT. In these materials, SELECT COMFORT represented that the bed

19 would be maintenance free and that a purchaser would receive constant and wear free support night

20 after night.

21     227. In reliance upon the advertising representations made by SELECT COMFORT, as

22 part of its uniform and concerted activities and promotional campaign, plaintiff SCHLESINGER

23 purchased his Sleep Number® bed in 1994.

24     228. Plaintiff K. WILLIAMS purchased the Sleep Number® bed for her son, BRYAN

25 WILLIAMS.

26     229. BRYAN WILLIAMS requested his mother purchase and accompanied K.

27 WILLIAMS to SLEEP TRAIN where she purchased the bed for him after he saw television

28 advertisements stating that the bed would help provide back support and a better night's sleep.

230. In reliance upon the advertising representations made by SELECT COMFORT, as part of its uniform and concerted advertising and promotional campaign to BRYAN WILLIAMS and K. WILLIAMS, K. WILLIAMS purchased a Sleep Number® bed in February 2004 for her son.

231. In reliance upon the advertising representations made by SELECT COMFORT, as part of its uniform and concerted advertising and promotional campaign, plaintiff BRYAN WILLIAMS started using his Sleep Number® bed in February 2004.

232. At the time defendants made these representations, they knew they were not true. The true facts were that the product was inherently defective and could cause damage to Class Members.

233. The representations were false in that SELECT COMFORT knew that the bed was not free from defects, did not provide a perfect or ideal night's sleep and since SELECT COMFORT took concerted action to prevent the public from becoming aware of the inherently defective nature of the Sleep Number® bed.

234. Defendants, and each of them, intentionally concealed facts and information concerning the mold defect from the public at large in an effort to protect their market share and to insulate the mattress industry in general from scrutiny. ***See Exhibit D, attached hereto and incorporated by reference herein.***

235. The plaintiffs and Class Members reasonably and justifiably relied on the representations of safety and freedom from defects provided by the defendants when purchasing the product. Plaintiffs and Class Members would not have purchased the Sleep Number bed were it not for the representations and guarantees of an ideal night's sleep, freedom from defects and replacement remedies provided by said representations which became a part of the basis for the bargain – all representations that are made a part of the uniform, comprehensive advertising and promotional campaign implemented by SELECT COMFORT. The plaintiffs' and Class Members' reliance on the representations hereinabove referenced was a substantial factor in causing the harm to the plaintiffs' and said harm would not have occurred absent the misrepresentations made by the defendants' and each of them.

236. The Sleep Number® bed was not and does not provide the perfect or ideal night's sleep, but rather, was and is very dangerous when put to its intended purpose and when used as

1  instructed by defendants.

2  237. As a direct and proximate result of the purchase and proper use of the inherently

3  defective product, plaintiffs and Class Members have been damaged in an amount to be shown

4  according to proof.

5  238. Plaintiffs are informed and believe, and based thereon allege, that defendants, and

6  each of them, have deliberately caused and have intended to cause great harm to plaintiffs and the

7  Class with full knowledge of the wrongfulness of their conduct. Plaintiffs are further informed and

8  believe, and thereon allege, that defendants' conduct as alleged above was despicable, was carried

9  on with a willful and conscious disregard of plaintiffs' rights, and subjected plaintiffs to undue

10  hardship. Therefore, plaintiffs should be awarded punitive and exemplary damages sufficient to

11  punish defendants for engaging in this conduct and to deter similar conduct on their part in the

12  future.

13  WHEREFORE, plaintiffs and Class Members pray for relief as hereinafter set forth..

14  ### NINTH CAUSE OF ACTION

15  ### NEGLIGENT MISREPRSENTATION

16  239. Plaintiffs hereby incorporate by reference Paragraphs 1 through 72 as though set forth

17  fully herein.

18  240. Defendants, and each of them, marketed, advertised and sold the Sleep Number® bed

19  representing that this bed would provide plaintiffs and Class Members with a perfect night's sleep.

20  "...a *perfect* night's sleep is not only possible, it can be yours forever. Starting tonight." *See,*

21  *Exhibit A, attached hereto and incorporated by reference herein.*

22  241. At the time defendants made these representations, they had no reason to believe they

23  were true. Defendants had already received complaints about the product becoming inundated with

24  mold.

25  242. At the time defendants made these statements they knew or should have known that

26  they were false and that the true facts were that the product was inherently defective and could

27  cause Class Members to incur damages.

28  243. Defendants, and each of them, marketed, advertised and promoted the Sleep

1    Number® bed representing that the bed came with a Limited Warranty which ensured consumers

2    that the Sleep Number® would be "free from defects and material workmanship for twenty years."

3    ***See Exhibit G, attached hereto and incorporated by reference herein.***

4         244. Plaintiff STEARNS relied upon advertising through celebrities Rush Limbaugh and

5    Lee Rodgers on KGO Radio. Plaintiff is informed and believes that these individuals were paid to

6    endorse the Sleep Number® bed. Statements made by these individuals included but were not

7    limited to "waking up well rested and refreshed," a user would receive the "perfect nights sleep,"

8    that they had "never had a better nights sleep."

9         245. In reliance upon the advertising representations made by SELECT COMFORT, as

10   part of its uniform and concerted advertising and promotional campaign, plaintiff STEARNS

11   purchased her Sleep Number® bed in 2000. She purchased the bed through BBB.

12        246. Plaintiff ROSE relied upon advertising in her local newspaper and on television,

13   specifically television ads by celebrity Lindsey Wagner. ROSE relied upon statements by Ms.

14   Wagner that she would receive a "perfect nights sleep," "wake up without back pain," "wake up

15   refreshed," and that each person could control their own comfort level. ROSE purchased her bed

16   from the Thousand Oaks Select Comfort Retail Store where the salesman told her that the bed

17   would allow her to "wake up refreshed; without back pain; and a perfect night's sleep."

18        247. In reliance upon the advertising representations made by SELECT COMFORT, as

19   part of its uniform and concerted advertising and promotional campaign, plaintiff ROSE purchased

20   her Sleep Number® bed in 1996.

21        248. Plaintiffs FULLER had heard about the Sleep Number® bed before they purchased it

22   and walked through their local shopping mall and saw signs stating the "perfect nights sleep" and

23   "wake up refreshed." The salesman at the Select Comfort Retail Store echoed these advertisements

24   and stated the FULLERS would wake up refreshed and sleep better than they currently were. They

25   would "be able to have a very solid, restful nights sleep" and the bed would "eliminate back pain."

26        249. In reliance upon the advertising representations made by SELECT COMFORT, as

27   part of its uniform and concerted advertising and promotional campaign, plaintiffs FULLER

28   purchased their Sleep Number® bed in 1996.

250. Prior to purchasing their bed, plaintiff SCHLESINGER requested information directly from SELECT COMFORT. In these materials, SELECT COMFORT represented that the bed would be maintenance free and that a purchaser would receive constant and wear free support night after night.

251. In reliance upon the advertising representations made by SELECT COMFORT, as part of its uniform and concerted activities and promotional campaign, plaintiff SCHLESINGER purchased his Sleep Number® bed in 1994.

252. Plaintiff K. WILLIAMS purchased the Sleep Number® bed for her son, BRYAN. WILLIAMS.

253. BRYAN WILLIAMS requested his mother purchase and accompanied K. WILLIAMS to SLEEP TRAIN where she purchased the bed for him after he saw television advertisements stating that the bed would help provide back support and a better night's sleep.

254. In reliance upon the advertising representations made by SELECT COMFORT, as part of its uniform and concerted advertising and promotional campaign to BRYAN WILLIAMS and K. WILLIAMS, K. WILLIAMS purchased a Sleep Number® bed in February 2004 for her son.

255. In reliance upon the advertising representations made by SELECT COMFORT, as part of its uniform and concerted advertising and promotional campaign, plaintiff B. WILLIAMS started using his Sleep Number® bed in February 2004.

256. The Plaintiffs and Class Members reasonably and justifiably relied on the representations of safety and freedom from defects provided by the defendants when purchasing the product. Plaintiffs and Class Members would not have purchased the Sleep Number bed were it not for the representations and guarantees of an ideal night's sleep, freedom from defects and replacement remedies provided by said representations which became a part of the basis for the bargain – all representations that are made a part of the uniform, comprehensive advertising and promotional campaign implemented by SELECT COMFORT.

257. The Sleep Number® bed was not going to provide the perfect night's sleep, but rather, was very dangerous when put to its intended purpose and when used as instructed by defendants.

258. As a direct and proximate result of the purchase and proper use of the inherently

1   defective product, plaintiffs and Class Members have been damaged in an amount to be shown

2   according to proof.

3       WHEREFORE, plaintiffs and Class Members pray for relief as hereinafter set forth.

4                       **TENTH CAUSE OF ACTION**

5                       **UNFAIR COMPETITION**

6          **(California Business and Professions Code §17200)**

7       259. Plaintiffs hereby incorporate by reference Paragraphs 1 through 72, Paragraphs 188

8   through 215, and Paragraphs 218 through 237, as though set forth fully herein.

9       260. The conduct alleged herein is a "business practice" within the meaning of Cal. Bus. &

10   Prof. Code §§ 17200, *et seq.*

11       261. By reason of the foregoing conduct, defendants have engaged in unlawful and unfair

12   business practices, as defined by Cal. Bus. & Prof. Code §§ 17200, *et seq.*

13       262. Defendants', and each of their, conduct in manufacturing, designing, engineering,

14   fabricating, assembling, constructing, testing, examining, distributing and/or marketing the Sleep

15   Number® bed throughout the United States for sale to members of the general public was an unfair,

16   unlawful and/or fraudulent business practice.

17       263. Defendants' actions of willful concealment, intentional and negligent

18   misrepresentations and breach of express and implied warranties as described above constitute

19   unfair, unlawful and fraudulent business practices and acts.

20       264. Defendants' policy of rescinding the purchase agreements and refusing to honor the

21   terms of the Limited Warranty constitutes an unfair, unlawful and fraudulent business practice and

22   act.

23       265. Defendants conduct complained of herein constitutes an unlawful business practice

24   within the meaning of Cal. Bus. & Prof. Code §§ 17200, *et seq.,* in that the conduct violates federal,

25   state, statutory, regulatory, or common law, including but not limited to the Sherman Act and

26   Cartwright Act as alleged herein.

27       266. Defendants' anticompetitive and unlawful conduct as described herein violates the

28   unlawful and unfair prong of the Cal. Bus. & Prof. Code §§ 17200, *et seq.,* independent of the

1 causes of action asserted herein. Defendants' conduct offends public policy and is immoral,

2 unethical, oppressive, unscrupulous and substantially injurious to consumers. Any justification for

3 the alleged conduct is outweighed by the consequences and harm to Plaintiffs and Class Members.

4      267. The defendants' conduct constitutes unfair business practice within the meaning of

5 Cal. Bus. & Prof. Code §§ 17200, *et seq.*

6      a. The consumer injury resulting from the defendants' malfeasance is substantial;

7      b. This injury to consumers is not outweighed by any countervailing benefits to

8         consumers or competition; and

9      c. Consumers could not reasonably have avoided the injury herein since by invoking

10         the limited warranty and relying on the representations, they attempted to allow for

11         remedy of the defect and relied on the representations of safety.

12      268. Plaintiffs and Class Members have been injured and suffered actual damages and loss

13 of property as a direct and proximate result of defendants' unfair, unlawful and/or fraudulent

14 business acts and practices.

15      269. Plaintiffs seek injunctive relief compelling defendants to recall the Sleep Number®

16 beds manufactured between 1987 and the present date and to provide notice to all Class Members of

17 the inherently defective condition of these Sleep Number® beds.

18      270. As a direct and proximate result of the purchase and proper use of the inherently

19 defective product, plaintiffs and Class Members have been damaged in an amount to be shown

20 according to proof. Defendants have been unjustly enriched by plaintiffs' payment of

21 consideration in the purchase of the bed. As such, plaintiffs and Class Members are entitled to

22 restitution of all consideration paid to defendants, and each of them.

23      271. By bringing this action, plaintiffs are entitled to attorneys' fees and costs as private

24 attorney general.

25 //

26 //

27 //

28 //

1    WHEREFORE, plaintiffs and Class Members pray for relief as hereinafter set forth.

2                              **ELEVENTH CAUSE OF ACTION**

3                                  **FALSE ADVERTISING**

4                    **(California Business and Professions Code §17500)**

5    272. Plaintiffs hereby incorporate by reference Paragraphs 1 through 72, Paragraphs 188

6    through 216, and Paragraphs 218 through 238, as though set forth fully herein.

7    273. Defendants, when they marketed, advertised and sold the beds to plaintiffs they

8    represented that plaintiffs and Class Members would receive the perfect night's sleep. "...a *perfect*

9    *night's sleep is not only possible, it can be yours forever. Starting tonight." See Exhibit A,*

10   *attached hereto and incorporated by reference herein.*

11   274. Not only does the bed not provide a perfect or ideal nights sleep, but the incubation of

12   mold in the bed has caused plaintiffs and Class Members to suffer injury.

13   275. Defendants' description of the bed and its benefits were false, misleading and likely to

14   deceive plaintiffs and other reasonable consumers. Defendants' conduct therefore constitutes

15   deceptive or misleading advertising.

16   276. Plaintiffs seek injunctive relief compelling defendants to recall the Sleep Number®

17   beds manufactured between 1987 and the present date and to provide notice to all Class Members of

18   the inherently defective condition of these Sleep Number® beds.

19   277. As a direct and proximate result of the purchase and proper use of the inherently

20   defective product, plaintiffs and Class Members have been damaged in an amount to be shown

21   according to proof. Defendants have been unjustly enriched by plaintiffs' and Class Members'

22   payment of consideration in the purchase of the bed. As such, plaintiffs and Class Members are

23   entitled to restitution of all consideration paid to defendants, and each of them.

24   278. Plaintiffs are informed and believe, and based thereon allege, that defendants, and

25   each of them, have deliberately caused and have intended to cause great harm to plaintiffs and the

26   Class with full knowledge of the wrongfulness of their conduct. Plaintiffs are further informed and

27   believe, and thereon allege, that defendants' conduct as alleged above was despicable, was carried

28   on with a willful and conscious disregard of plaintiffs' rights, and subjected plaintiffs to undue

1  hardship.  Therefore, plaintiffs should be awarded punitive and exemplary damages sufficient to

2  punish defendants for engaging in this conduct and to deter similar conduct on their part in the

3  future.

4      279. By bringing this action, plaintiffs are entitled to attorneys' fees and costs as private

5  attorney general.

6      WHEREFORE, plaintiffs and Class Members pray for relief as hereinafter set forth.

7                          **TWELVETH CAUSE OF ACTION**

8                    **VIOLATION OF THE SHERMAN ACT**

9                          **(15 U.S.C. Section 1)**

10     280.  Plaintiffs hereby incorporate by reference Paragraphs 1 through 72, Paragraphs 188

11 through 215, and Paragraphs 218 through 237, as though set forth fully herein.

12     281. The providing of mattresses and bedding services is a relevant product as defined

13 under the Sherman Act. *See 15 U.S.C. §1*

14     282. Defendant SELECT COMFORT operates 478 company owned retail stores in 47

15 States and sells their Sleep Number® beds 891 retail partners (including BBB and SLEEP TRAIN)

16 located in 34 States and Canada. *See Exhibit H, attached hereto and incorporated by reference*

17 *herein.*

18     283. SELECT COMFORT is the leading manufacturer of individualized automated control

19 air mattresses and has over 50% of the market share for this product. SELECT COMFORT is the

20 leading U.S. Bedding retailer for the last 7 years, according to the *Top-25 Bedding Retailers* report

21 in the August 13, 2007 edition of *Furniture/Today*. *See Exhibit I, attached hereto and*

22 *incorporated by reference herein.*

23     284.  Defendants, and each of them, have continually engaged in an unlawful combination

24 and conspiracy in unreasonable restraint of trade and commerce in violation of §1 of the Sherman

25 Act. *See 15 U.S.C. §1.*

26     285.  The combination and conspiracy has consisted of a continuing agreement,

27 understanding and concert of action among the defendants, and each of them, the substantial terms

28 of which have been to prevent and limit communication regarding the inherently defective nature of

1  the Sleep Number® bed to the general public.

2      286. This agreement is for the purposes of benefiting the defendants and each of their,

3  market shares and with the purpose of preventing competition in the mattress industry by

4  misrepresenting and concealing the true nature of the Sleep Number® bed and its inherent defect.

5      287. The defendants, and each of them, further agreed to a collusive agreement to engage

6  in unfair business conduct by restraining trade with the object of preventing competition.

7      288.  Upon information and belief, defendants entered into the conspiracy, and acted in

8  furtherance of their conspiracy, with the bad faith intent to harm competition and mislead the public

9  regarding the inherently defective nature of the Sleep Number® bed.

10      289.  The defendants' conspiracy and conduct in furtherance of their conspiracy has had a

11  direct and substantial effect on interstate trade and commerce.

12      290. The Plaintiffs and Class members have been injured by way of the unlawful

13  conspiracy described more fully herein, by way of relying on the misrepresentations when

14  purchasing and continuing to use the Sleep Number® beds, by the defendant's efforts to suppress

15  the true nature of the defective product and by the costs associated with the purchase and return of

16  defective products.

17      291. These unlawful purposes have individually and collectively placed restraints on trade

18  and inhibited competition by allowing for the continued increase in market share for mattresses and

19  components.

20      292. The defendants' conspiracy unreasonably restrains competition in relevant markets

21  and violates Section 1 of the Sherman Act under the Rule of Reason.

22      293. The defendants, and each of them, are liable for damages in an amount to be proven at

23  trial, including without limitation, the costs associated with the products purchase and replacement,

24  a direct result of the conspiracy, which damages should be trebled pursuant to 15 U.S.C. §15(a) plus

25  interest, costs and expenses, and attorneys' fees.

26  //

27  //

28  //

FIRST AMENDED CLASS ACTION COMPLAINT

1  WHEREFORE, plaintiffs and Class Members pray for relief as hereinafter set forth.

2  **THIRTEENTH CAUSE OF ACTION**

3  **VIOLATION OF THE CARTWRIGHT ACT**

4  **(California Business and Professions Code §16700)**

5  294. Plaintiffs hereby incorporate by reference Paragraphs 1 through 72, Paragraphs 188

6  through 215, and Paragraphs 218 through 237, as though set forth fully herein.

7  295. Defendants, and each of their actions, as described above constitute an unreasonable

8  restraint of trade or commerce throughout California and the United States in violation of the

9  Cartwright Act, §§16720, *et seq* of the California Business and Professions Code.

10  296. As described above, defendants, and each of them, are involved in the sale of

11  mattresses and bedding components to the general public in the State of California and the rest of

12  the United States.

13  297. Defendant SELECT COMFORT operates 478 company owned retail stores in 47

14  States and sells their Sleep Number® beds 891 retail partners (including BBB and SLEEP TRAIN)

15  located in 34 States and Canada. *See Exhibit H, attached hereto and incorporated by reference*

16  *herein.*

17  298. SELECT COMFORT is the leading manufacturer of individualized automated control

18  air mattresses and has over 50% of the market share for this product. SELECT COMFORT is the

19  leading U.S. Bedding retailer for the last 7 years, according to the *Top-25 Bedding Retailers* report

20  in the August 13, 2007 edition of *Furniture/Today*. *See Exhibit I, attached hereto and*

21  *incorporated by reference herein.*

22  299. Beginning at a time unknown to the Plaintiffs and Class, but no later than 2004

23  defendants, and each of them, entered into an agreement to prevent and suppress dissemination of

24  the inherent mold defect in the Sleep Number® bed in an effort to protect their individual and

25  collective market shares in restraint of trade and commerce and in violation of California Business

26  and Professions Code §16720.

27  300. These violations of the aforementioned code consisted, without limitation, of a

28  continuing agreement, understanding and concert of action to prevent the general public from

1  receiving information regarding the inherent defect causing incubation of mold in the Sleep Number

2  bed.

3       301. The combination and conspiracy has consisted of a continuing agreement,

4  understanding and concert of action among the defendants, and each of them, the substantial terms

5  of which have been to prevent and limit communication and knowledge regarding the inherently

6  defective nature of the Sleep Number® bed to the general public.

7       302. This agreement is for the purposes of benefiting the defendants and each of their,

8  market shares and with the purpose of preventing competition in the mattress industry by

9  misrepresenting and concealing the true nature of the Sleep Number® bed and its inherent defect.

10       303. The defendants, and each of them, further agreed to a collusive agreement to engage

11  in unfair business conduct by restraining trade with the object of preventing competition.

12       304. Upon information and belief, defendants entered into the conspiracy, and acted in

13  furtherance of their conspiracy, with the bad faith intent to harm competition and mislead the public

14  regarding the inherently defective nature of the Sleep Number bed.

15       305. The defendants' conspiracy and conduct in furtherance of their conspiracy has had a

16  direct and substantial effect on interstate trade and commerce.

17       306. The Plaintiffs and Class members have been injured by way of the unlawful

18  conspiracy described more fully herein, by way of relying on the misrepresentations when

19  purchasing and continuing to use the Sleep Number® beds, by the defendant's efforts to suppress

20  the true nature of the defective product and by the costs associated with the purchase and return of

21  defective products.

22       307. These unlawful purposes have individually and collectively placed restraints on trade

23  and inhibited competition by allowing for the continued increase in market share for mattresses and

24  components.

25       308. The defendants' conspiracy unreasonably restrains competition in relevant markets

26  and violates the Cartwright Act under the Rule of Reason.

27       309. The defendants, and each of them, are liable for damages in an amount to be proven at

28  trial, including without limitation, the costs associated with the products purchase and replacement,

1  a direct result of the conspiracy, which damages should be trebled pursuant to 15 U.S.C. 15(a) plus

2  interest, costs and expenses, and attorneys' fees.

3      WHEREFORE, plaintiffs and Class Members pray for relief as hereinafter set forth.

**FOURTEENTH CAUSE OF ACTION**

**VIOLATION OF CALIFORNIA CONSUMER LEGAL REMEDIES ACT**

**(California Civil Code §1750)**

7      310. Plaintiffs hereby incorporate by reference Paragraphs 1 through 72, Paragraphs 188

8  through 216, and Paragraphs 218 through 238, as though set forth fully herein.

9      311. The California Consumers Legal Remedies Act, Civil Code §1750, *et seq.,* ("CLRA")

10 outlines a statutory scheme prohibiting various deceptive practices in connection with the conduct

11 of a business providing goods, property or services primarily for personal, family or household

12 purposes.

13     312. The Sleep Number® bed falls within the definition of a good primarily for personal,

14 family or household purposes.

15     313. The defendants, and each of them, are a "business" as defined under the CLRA.

16     314. The CLRA applies to the defendants' actions and conduct, as more fully described

17 herein, because it extends transactions that are intended to result, or which have resulted, in the sale

18 or lease of goods or services to consumers.

19     315. The marketing, advertising, promoting and sales representations, by the defendants

20 and each of them, violate the CLRA in that the defendants, and each of them used deceptive

21 representations in connections with goods; representing that the goods or services have

22 characteristics, uses or benefits which they do not have; and by representing that goods are of a

23 particular standard or quality of which they are not.

24     316. Plaintiffs are informed and believe, and based thereon allege, that defendants, and

25 each of them, have deliberately caused and have intended to cause great harm to plaintiffs and the

26 Class with full knowledge of the wrongfulness of their conduct. Plaintiffs are further informed and

27 believe, and thereon allege, that defendants' conduct as alleged above was despicable, was carried

28 on by with a willful and conscious disregard of plaintiffs' rights, and subjected plaintiffs to undue

1  hardship. Therefore, plaintiffs should be awarded punitive and exemplary damages sufficient to

2  punish defendants for engaging in this conduct and to deter similar conduct on their part in the

3  future.

4        317. The defendants, and each of them, are liable for damages in an amount to be proven at

5  trial, including without limitation, the costs associated with the products purchase and replacement,

6  a direct result of the unlawful and deceptive conduct alleged herein, costs and expenses, and

7  attorneys' fees.

8        WHEREFORE, plaintiffs and class members pray for relief as hereinafter set forth.

9  **FIFTEENTH CAUSE OF ACTION**

10  **VIOLATION OF RACKETEERING INFLUENCED**

11  **AND CORRUPT ORGANIZATIONS ACT ("RICO")**

12  **(18 U.S.C. §1962c)**

13        318. Plaintiffs hereby incorporate by reference Paragraphs 1 through 72, Paragraphs 188

14  through 215, and Paragraphs 218 through 237, as though set forth fully herein.

15        319. Plaintiffs, and each of them, plead this cause of action against the defendants, and

16  each of them for violation of the Racketeering Influenced and Corrupt Organizations Act – 18

17  U.S.C. §1962(c) ("RICO").

18        320. Defendants, and each of them, have violated RICO through a pattern and practice of

19  fraudulent activities, to prevent information from being provided to the general public and to

20  fraudulently sell an inherently defective product to consumers. These activities are and were done

21  to protect its own corporate interests as well as each of those individuals and businesses that benefit

22  and are complicit in its fraudulent activities.

23        321. As set forth above, the defendants, and each of them have engaged in a systematic

24  effort to quash any information to the public relating to the defective nature of the Sleep Number®

25  bed and have consistently made fraudulent representations of fact regarding the Sleep Number®

26  bed.

27        322. Defendants, and each of them, are corporations capable of holding a legal or

28  //

1    beneficial interest in property, and therefore are "person(s)" as within the meaning of 15 U.S.C.

2    §1961(3).

3         323. Defendants, and each of them, are aware of the inherent defect of the Sleep Number®

4    bed and despite such knowledge have continued to misrepresent and sell the defective product with

5    reckless disregard for the health and safety of the consumer.

6         324. Defendants, and each of them, have unlawfully, knowingly, and intentionally

7    conducted and are continuing to conduct an enterprise referred to herein as "Sleep Number

8    Enterprise". The common purpose of the Sleep Number Enterprise is to prevent fair, lawful and

9    aggressive competition in the market for mattresses and to prevent information related to the

10   inherently defective nature of the product from being disseminated to the general public so as to

11   insulate the profits and sales of the defective product.

12        325. Defendants, and each of them, have employed a military style marketing, advertising

13   and public relations campaign to circumvent the public's attempts to bring the inherently defective

14   products nature to the consumers attention.

15        326.  Defendants, and each of their, actions and conduct in furtherance have harmed the

16   general public by keeping a defective product on the market that should be recalled.

17        327. The Sleep Number Enterprise constitutes a RICO enterprise within the meaning of 18

18   U.S.C. §1961(4) that is engaged in, or the activities of which affect interstate commerce or foreign

19   commerce.

20        328. Defendants, and each of them, have conducted the activities of the Sleep Number

21   Enterprise through a pattern of racketeering activity in furtherance of their ongoing scheme to

22   eliminate fair, lawful and aggressive competition and to harm consumers by preventing and selling

23   a product of which they are aware is inherently defective.  This pattern of racketeering activity

24   includes the use of U.S. mails, and private and commercial interstate carriers, and the interstate use

25   of wires (including the internet), to devise and execute a scheme to defraud and to obtain money or

26   property by means of false and fraudulent pretenses, representations, and promises,

27        329. Defendants, and each of them, have unlawfully, knowingly, and intentionally engaged

28   in racketeering activities indictable under the Federal Mail Fraud Statute, 18 U.S.C. §1341, and the

1  Federal Wire Fraud Statute, 18 U.S.C. §1342, and have therefore unlawfully, fraudulently and

2  intentionally engaged in predicate acts of racketeering within the meaning of 18 U.S.C.§

3  1961(1)(B).

4        330. Defendants, and each of them, unlawfully, knowingly, and intentionally used the U.

5  S. mails, private or commercial interstate carriers, and interstate wires, in furtherance of their

6  scheme to defraud consumers regarding the inherently defective and dangerous nature of the Sleep

7  Number® bed, including, but not limited to, the following:

8          a.  Instituting an aggressive public relations and media campaign so as to prevent notice

9             to the public of the inherent defect in the Sleep Number® bed.

10          b.  Furthering the misrepresentation that all mattresses have the potential to have mold,

11             that mold is rare in Sleep Number® beds, and that the Sleep Number® bed is less

12             prone to mold since it is able to be opened and cleaned, despite the fact that mold

13             cannot be cleaned.

14          c.  Misrepresenting to the general public that since the original mold report, no reports

15             of moldy beds have been found in Sleep Number® beds.

16          d.  Rescinding the limited warranty agreements by requesting return of the moldy beds

17             and returning the purchase price after efforts to remedy the defect became futile and

18             failed.

19        331. Each of the foregoing acts of racketeering by the defendants in furtherance of the

20  Sleep Number Enterprise, was lawfully, fraudulently, and intentionally related, continuous and a

21  pattern of conduct to prevent the consumers of the United States from knowing the true extent of the

22  inherent defect which causes mold to incubate in the Sleep Number® bed, which was directed to the

23  general public and continued over a substantial period of time.  It remains the common purpose of

24  the Sleep Number Enterprise to suppress information and keep said information from reaching the

25  general public by misrepresentation and concealment of the true facts of the Sleep Number® bed

26  and to insulate its market share and competition in the mattress industry.

27        332. As a direct and proximate result of the defendants, and each of their, participation in

28  and conduct of the Sleep Number® bed through a pattern of racketeering in violation of 18 U.S.C.

1  §1962(c), the plaintiffs have been injury to property.  Plaintiffs and Class members have sustained

2  damages and will continue to accrue and sustain damages in the future on an ongoing and

3  continuous basis.  All damages will shown according to proof at time of trial.

4          WHEREFORE, plaintiffs and Class Members pray for relief as hereinafter set forth.

5                          **SIXTEENTH CAUSE OF ACTION**

6                              **RICO CONSPIRACY**

7                              **(18 U.S.C. §1962d)**

8          333.  Plaintiffs hereby incorporate by reference Paragraphs 1 through 72, Paragraphs 188

9  through 215, Paragraphs 218 through 237, and Paragraphs 319 through 332 as though set forth fully

10  herein.

11          334. This is a cause of action for conspiracy to undertake the Sleep Number Enterprise in

12  violation of 18 U.S.C. §1962(d).

13          335. Defendants and each of them, have unlawfully, fraudulently and intentionally,

14  conspired together to plan and perpetuate a fraudulent scheme to carry out the common purpose of

15  prevent the consumers of the State of California and the United States from knowing the true extent

16  of the inherent defect which causes mold to incubate in the Sleep Number® bed, to suppress

17  information from reaching the general public by misrepresentation and concealment of the true facts

18  of the Sleep Number® bed through various false advertising and public relations methods, and to

19  insulate its and its retailers' market shares and competition in the mattress industry and to conduct

20  other illegal activities in furtherance of their scheme to defraud consumers.

21          336. As a direct and proximate result of the defendant's wrongful actions described herein,

22  Plaintiffs and Class members have sustained injuries as provide for above, and will continue to

23  accrue and sustain damage in the future on an ongoing and continuous basis.

24  //

25  //

26  //

27  //

28  //

1    WHEREFORE, plaintiffs and Class Members pray for relief as hereinafter set forth.

2    **SEVENTEENTH CAUSE OF ACTION**

3    **VIOLATION OF THE CONSUMER PRODUCT SAFETY ACT**

4    **(15 U.S.C. §2064, *et seq.*)**

5    337. Plaintiffs hereby incorporate by reference Paragraphs 1 through 72 as though set forth

6    fully herein.

7    338. Plaintiffs on behalf of themselves and the Class Members bring this count pursuant to

8    15 U.S.C. §2310 *et seq.*

9    339. Defendants defective Sleep Number® bed constitutes a "Substantial Product Hazard"

10   as defined under 15 U.S.C. §2064 *et seq.*

11   340. Defendants have negligently and/or recklessly produced and willfully concealed the

12   defective nature of the Sleep Number® bed, as well as the defective nature of the replacement parts,

13   have caused plaintiffs, Class Members and the general public from unreasonable risk of injury

14   which has and will occur as a result of the design, construction and materials used in connection

15   with the mold incubation defect in the Sleep Number® bed.

16   341. The defective bed involves a violation of the Consumer Product Safety Act (15 U.S.C.

17   §2064, *et seq.)* in that it involves a "Consumer Product" as defined under and 15 U.S.C. §2052

18   which falls within the protections of the aforementioned Act. According to this standard,

19   manufacturers who obtain information that reasonably supports the conclusion that their product

20   creates an unreasonable risk of serious injury must *immediately* inform the Consumer Product

21   Safety Commission of the defect.

22   342. The defendants, and each of them, have not as of this date informed the Commission

23   of the inherent defect in the Sleep Number® bed causing it to incubate mold.

24   343. The defendants and each of them were aware of the defective nature of the Sleep

25   Number® bed and willfully concealed such information from the Consumer Product Safety

26   Commission, Plaintiffs, Class Members and the General Public.

27   344. As a direct and proximate result of the defendants' breach of the Consumer Product

28   Safety Act, plaintiffs and the entire Class are entitled to the remedies prayed for above and

1  recapitulated in the relief requested below.

2      WHEREFORE, plaintiffs and Class Members pray for relief as hereinafter set forth.

3      **PRAYER FOR RELIEF ON ALL CAUSES OF ACTION**

4      WHEREFORE, plaintiffs pray for relief as follows:

5      1.    For general and special damages according to proof;

6      2.    For consequential damages;

7      3.    For costs of suit incurred herein;

8      4.    For punitive and exemplary damages;

9      5.    For attorneys' fees and costs;

10      6.    For pre- and post-judgment interest as allowed by law;

11      7.    For all injunctive relief in the form of a product recall providing Class Members with

12      notice of the inherently defective nature of the product; and

13      8.    For such other and further relief as this Court deems proper

14      **JURY DEMAND**

15  Plaintiffs hereby demand a trial by jury.

16

17  DATE: October 30, 2008               BUSTAMANTE O'HARA & GAGLIASSO

18

19                            /S/

20                            ROBERT M. GAGLIASSO
                          Counsel of Record for Plaintiffs

21

22

23

24

25

26

27

28

FIRST AMENDED CLASS ACTION COMPLAINT