1  PILLSBURY WINTHROP SHAW PITTMAN LLP
   VERNON H. GRANNEMAN (SBN 083532)
2    vernon.granneman@pillsburylaw.com
   DIANNE L. SWEENEY (SBN 187198)
3    dianne.sweeney@pillsburylaw.com
   2475 Hanover Street
4  Palo Alto, CA  94304-1114
   Telephone: (650) 233-4500
5  Facsimile: (650) 233-4545

6  OPPENHEIMER WOLFF & DONNELLY LLP
   ANDREW S. HANSEN (admitted *Pro Hac Vice*)
7    ahansen@oppenheimer.com
   HEIDI A. O. FISHER (admitted *Pro Hac Vice*)
8    hfisher@oppenheimer.com
   MEGHAN M. ANZELC (admitted *Pro Hac Vice*)
9    manzelc@oppenheimer.com
   Plaza VII, Suite 3300
10 45 South Seventh Street
   Minneapolis, MN  55402
11 Telephone: (612) 607-7000
   Facsimile: (612) 607-7100

12
   Attorneys for Defendants
13 SELECT COMFORT RETAIL CORPORATION,
   BED BATH & BEYOND, INC. and THE SLEEP TRAIN, INC.

14

15                   UNITED STATES DISTRICT COURT

16                  NORTHERN DISTRICT OF CALIFORNIA

17                          SAN JOSE DIVISION

18   ────────────────────────────────
                                       )
19  MOLLY STEARNS, individually and on ) Case No. C 08 02746 JF PVT
    behalf of all those similarly situated, )
20                                     )  **MEMORANDUM OF LAW IN**
                                       )  **SUPPORT OF MOTION TO**
21                          Plaintiffs, )  **DISMISS AND/OR STRIKE CLASS**
                                       )  **CLAIMS**
22          vs.                        )
                                       )
23  SELECT COMFORT RETAIL             )  Date:  February 13, 2009
    CORPORATION, a Minnesota Corporation; )  Time:  9:00 a.m.
24  BED BATH & BEYOND INC., a New York )  Ctrm: 3, 5th Floor
    Corporation; THE SLEEP TRAIN, INC., a )  Judge: Hon. Jeremy Fogel
25  California Corporation, and DOES 1 through )
    50,000, inclusive,                 )
26                                     )
                            Defendants. )
27  ────────────────────────────────

28

# TABLE OF CONTENTS

Page

MOTION AND NOTICE OF MOTION ........................................................................ 1

I. INTRODUCTION. ....................................................................................... 1

II. STATEMENT OF ISSUES. ........................................................................ 2

III. STATEMENT OF FACTS. .......................................................................... 2

    A. Defendants and the Sleep Number® bed. .......................................... 2

    B. Plaintiffs. ............................................................................................. 3

    C. General Allegations. ........................................................................... 5

IV. ARGUMENT. ............................................................................................. 6

    A. Pleading Standards. ............................................................................ 7

        1. Rule 12(b)(6). ......................................................................... 7

        2. Rule 9(b). ................................................................................ 7

    B. Plaintiffs' Entire Complaint Must Be Dismissed For Failure to Plead Any Legally Cognizable Injury. .......................................... 8

    C. The Economic Loss Doctrine Bars Plaintiffs' Negligence, Strict Products Liability, Negligent Misrepresentation, Intentional Misrepresentation and Concealment Claims. ...................................... 9

    D. Plaintiffs Fail to Plead a Breach of Warranty. ................................. 11

        1. Breach of Express Warranty. ................................................ 11

        2. Breach of Implied Warranties. ............................................. 12

            a. Implied Warranty of Fitness. ..................................... 12

            b. Implied Warranty of Merchantability. ...................... 12

        3. Magnuson-Moss Warranty Act. .......................................... 13

    E. Plaintiffs Fail to Satisfy the Heightened Pleading Standard of Rule 9(b). ......................................................................................... 14

        1. Defendants Made No Affirmative Misrepresentations of Fact. ............ 14

            a. None of Defendants' Alleged Affirmative Representations Are Actionable Statements. ................................................. 15

            b. Plaintiffs Fail To Allege with Particularity How the

1        Statements Are Fraudulent. ................................................................16

2        2.      Defendants Did Not Fraudulently Conceal Any Material Facts. ...........17

3     F.    Plaintiffs Fail to Plead RICO Claims. ...........................................................18

4     G.    Plaintiffs Fail to Plead Anti-Trust Claims. ...................................................19

5     H.    Plaintiffs Fail to Plead Consumer Protection Claims. ...................................21

6        1.      Plaintiffs Lack Standing For Injunctive Relief.......................................21

7        2.      Plaintiffs' Claims Are Time-Barred. .....................................................22

8        3.      Plaintiffs' Remaining UCL Claims Fail to State a Claim. .....................22

9           a.      Unlawful Business Practices. ..............................................23

10          b.      Unfair Business Practices. ..................................................23

11          c.      Plaintiffs Failed to Give Notice Required by the California
                        Consumer Legal Remedies Act. ........................................24

12    I.    The Consumer Product Safety Act. ..............................................................24

13    J.    The FAC Does Not Remedy the Deficiencies in the Class Allegations
           From the First Complaint and Should Be Stricken. .....................................25

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1      **TABLE OF AUTHORITIES**

2        <u>Cases</u>

3 *Alan Neuman Prod., Inc. v. Albright,*
   862 F.2d 1388, 1392 (9th Cir. 1988) ........................................................................ 19

4

 *Am. Suzuki Motor Corp. v. Super. Ct.,*
5   44 Cal. Rptr. 2d 526, 528 n.2 (Cal. Ct. App. 1995)............................................. 12, 13

6 *Andrade v. Pangborn Corp.,*
   No. C 02-3771, 2004 WL 2480708, at *23 (N.D. Cal. Oct. 22, 2004) ............... 8, 13

7

 *Anunziato v. eMachines, Inc.,*
8   402 F. Supp. 2d 1133, 1139 (C.D. Cal. 2005) ......................................................... 15

9 *Atherley v. MacDonald, Young & Nelson, Inc.,*
   298 P.2d 700, 709 (Cal. Ct. App. 1956) ................................................................... 9

10

 *Bailey v. Monaco Coach Corp.,*
11   350 F. Supp. 2d 1036, 1044 (N.D. Ga. 2004) .......................................................... 12

12 *Balistreri v. Pacifica Police Dep't.,*
   901 F.2d 696, 699 (9th Cir. 1988) ............................................................................ 7

13

 *Bell Atl. Corp. v. Twombly,*
14   127 S. Ct. 1955, 1974 (2007) .............................................................................. 7, 20

15 *Bernardo v. Planned Parenthood Fed'n of Am.,*
   9 Cal. Rptr. 3d 197, 222–24 (Cal. Ct. App. 2004) ................................................... 23

16

 *Cahill v. Liberty Mut. Ins. Co.,*
17   80 F.3d 336, 337–38 (9th Cir. 1996) ........................................................................ 7

18 *Canadian-Am. Oil Co. v. Delgado,*
   108 F.3d 1384, 1997 WL 121181, at *1 (9th Cir. 1997) .......................................... 19

19

 *Cattie v. Wal-Mart Stores, Inc.,*
20   504 F. Supp. 2d 939, 949 (S.D. Cal. 2007) ............................................................. 24

21 *Century Sur. Co. v. Crosby Ins., Inc.,*
   21 Cal. Rptr. 3d 115, 125 (Cal. Ct. App. 2004)....................................................... 15

22

 *Chin v. Chrysler Corp.,*
23   182 F.R.D. 448, 463 (D.N.J. 1998) ..................................................................... 9, 25

24 *Cipollone v. Liggett Group, Inc.,*
   505 U.S. 504, 525 (1992) ......................................................................................... 11

25

 *Clegg v. Cult Awareness Network,*
26   18 F.3d 752, 754–55 (9th Cir. 1994) ........................................................................ 7

27

28

*County of Santa Clara v. Atlantic Richfield Co.*,
40 Cal. Rptr. 3d 313, 318 (Cal. Ct. App. 2006)..................................................... 8, 10

*Daugherty v. Am. Honda Motor Co.*,
51 Cal. Rptr. 3d 118, 129–30 (Cal. Ct. App. 2006)................................................ 24

*Deitz v. Comcast Corp.*,
No. C 06-06352, 2006 WL 3782902, at *5 (N.D. Cal. Dec. 21, 2006)................... 21

*Dura Pharms, Inc. v. Broudo*,
544 U.S. 336, 343 (2005) ......................................................................................... 8

*Elliott v. Foufas*,
867 F.2d 877, 881 (5th Cir. 1989) .......................................................................... 19

*Fed. Savings and Loan Ins. Corp. v. Musacchio*,
695 F. Supp. 1053, 1063 (N.D. Cal. 1988)............................................................. 14

*Fricke-Parks Press, Inc. v. Fang*,
149 F. Supp. 2d 1175, 1182 (N.D. Cal. 2001)........................................................ 20

*Friends of the Earth, Inc. v. Laidlaw Envtl. Serv. (TOC), Inc.*,
528 U.S. 167, 180–81 (2000) ................................................................................... 8

*Glen Holly Entm't, Inc. v. Tektronix Inc.*,
343 F.3d 1000, 1005 (9th Cir. 2003) ..................................................................... 15

*Hahn v. Mirda*,
54 Cal. Rptr. 3d 527, 532 (Cal. Ct. App. 2007)................................................. 8, 17

*Harshbarger v. Philip Morris, Inc.*,
No. 02-05267, 2003 WL 23342396, at *5 (N.D. Cal. April 1, 2003) ..................... 22

*Hartless v. Clorox Co.*,
No. 06CV2705, 2007 WL 3245260, at *5 (S.D. Cal. Nov. 2, 2007) ...................... 23

*Holstein v. City of Chicago*,
149 F.R.D. 147, 148–49 (N.D. Ill. 1993) ................................................................. 9

*In re All Terrain Vehicle Litig.*,
979 F.2d 755, 757 (9th Cir. 1992)........................................................................... 25

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
536 F. Supp. 2d 1129, 1136 (N.D. Cal. 2008)........................................................ 20

*In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541,
1548 (9th Cir. 1994) *superseded by statute on other grounds* ............................ 8, 17

*In re Phenylpropanolamine Prods. Liab. Litig.*,
214 F.R.D. 614, 622–23 (W.D. Wash. 2003)............................................................ 9

1  *In re Textainer P'ship Sec. Litig.,*
        No. C-05-0969, 2006 WL 1328851, at *5 n.2 (N.D. Cal. May 15,
2       2006)..........................................................................................................6

3  *Inter-Mark USA, Inc. v. Intuit, Inc.,*
        No. C-07-04178, 2008 WL552482, at *9–11 (N.D. Cal. Feb. 27,
4       2008)......................................................................................................15, 16

5  *Janda v. T-Mobile, USA, Inc.,*
        No. C 05-03729, 2008 WL 4847116, at *6 (N.D. Cal. Nov. 7, 2008) ....................24
6
7  *Jennings v. Emry,*
        910 F.2d 1434, 1438 (7th Cir. 1990) ..........................................................19

8  *Kaplan v. Rose,*
        49 F.3d 1363, 1370 (9th Cir. 1994), *cert. denied,* 516 U.S. 810
9       (1995) ......................................................................................................8, 16

10 *Karl Storz Endoscopy-Am., Inc. v. Surgical Tech., Inc.,*
        285 F.3d 848, 857 (9th Cir. 2002) ..............................................................22
11
12 *Khan v. Shiley Inc.,*
        266 Cal. Rptr. 106, 110 (Cal. Ct. App. 1990)...............................................8

13 *Khoury v. Maly's of California, Inc.,*
        17 Cal. Rptr. 2d 708, 712 (Cal. Ct. App. 1993)........................................24
14
15 *Klein v. Earth Elements, Inc.,*
        69 Cal. Rptr. 2d 623 (Cal. Ct. App. 1997)................................................23

16 *Korea Kumho Petrochem. v. Flexsys Am. LP,*
        No. C07-01057, 2007 WL 2318906, at *3–4 (N.D. Cal. Aug. 13,
17      2007).......................................................................................................20

18 *Korea Supply Co. v. Lockheed Martin Corp.,*
        63 P.3d 937, 943 (Cal. 2003)....................................................................21
19
20 *Laster v. T-Mobile USA, Inc.,*
        407 F. Supp. 2d 1181, 1196 (S.D. Cal. 2005) .........................................24

21 *Lazy Y Ranch Ltd. v. Behrens*
        546 F.3d 580, 588 (9th Cir. 2008) ....................................................5, 7, 17
22
23 *Lockheed Martin Corp. v. RFI Supply, Inc.,*
        No C 00-20002, 2006 WL 1525719, at *5 (N.D. Cal. May 30, 2006)....................22

24 *Long v. Hewlett-Packard Co.,*
        No. 06-02816, 2006 WL 4877691, at *4 (N.D. Cal. Dec. 21, 2006) ..................8, 11
25
26 *Long v. Hewlett-Packard Co.,*
        No. C 06-02816, 2007 WL 2994812, at *7–8 (N.D. Cal. July 27,
27      2007).......................................................................................................16

28

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555, 564 (1992) ....................................................... 21

*Manderville v. PCG & S Group, Inc.,*
    55 Cal. Rptr. 3d 59, 68 (Cal. Ct. App. 2007) ....................... 8, 15

*Marcelos v. Dominguez,*
    No. C 08-00056, 2008 WL 1820683, at *12 (N.D. Cal. April 21,
    2008) ........................................................................................ 23

*Marder v. Lopez,*
    450 F.3d 445, 448 (9th Cir. 2006) ............................................. 5

*Meinhold v. Sprint Spectrum, L.P.,*
    No. CIV. S-07-00456, 2007 WL 1456141, at *5 (E.D. Cal. May 16,
    2007) ........................................................................................ 21

*Meridian Project Sys., Inc. v. Hardin Constr. Co.,*
    404 F. Supp. 2d 1214, 1219 (E.D. Cal. 2005) ......................... 14

*Monticello v. Winnebago Indus. Inc.,*
    369 F. Supp. 2d 1350, 1356 (N.D. Ga. 2005) .......................... 13

*Nat'l Rural Telecommc'ns Coop. v. DirecTV, Inc.,*
    319 F. Supp. 2d 1059, 1074–75 (C.D. Cal. 2003) ................... 23

*NLFC, Inc. v. Devcom Mid-America, Inc.,*
    916 F. Supp. 751, 758 (N.D. Ill. 1996) ...................................... 6

*Norgart v. Upjohn Co.,*
    981 P.2d 79, 88 (Cal. 1999) ..................................................... 22

*Odom v. Microsoft Corp.,*
    486 F.3d 541, 547 (9th Cir. 2007) ........................................... 19

*Oestreicher v. Alienware Corp.,*
    544 F. Supp. 2d 964, 968, 974 n.9 (N.D. Cal. 2008) .......... passim

*Outboard Marine Corp. v. Super. Ct.,*
    124 Cal. Rptr. 852 (Cal. Ct. App. 1975) .................................. 24

*Pollard v. Saxe & Yolles Dev. Co.,*
    525 P.2d 88, 92 (Cal. 1974) ..................................................... 11

*Quach v. Cross,*
    No. CV0309627, 2004 WL 2860346, at *6 (C.D. Cal. Jun. 10, 2004) ................... 19

*Redwood Theatres, Inc. v. Festival Enter., Inc.,*
    908 F.2d 477, 482 n.3 (9th Cir. 1990) ...................................... 20

*Regents of the Univ. of Cal. v. Principal Fin. Group,*
    412 F. Supp. 2d 1037, 1045 (N.D. Cal. 2006) ......................... 15

*Religious Tech. Ctr. v. Wollersheim,*
    971 F.2d 364, 367 n.8 (9th Cir. 1992) ................................................................... 19

*Robinson Helicopter Co. v. Dana Corp.,*
    102 P.3d 268, 272–73 (Cal. 2004) ............................................................. 9, 10, 11

*Shamsian v. Atl. Richfield Co.,*
    132 Cal. Rptr. 2d 635, 648 (Cal. Ct. App. 2003) ............................................. 15

*Silicon Knights, Inc. v. Crystal Dynamics, Inc.,*
    983 F. Supp. 1303, 1315 (N.D. Cal. 1997) ...................................................... 14

*Snapp & Assocs. Ins. Servs., Inc. v. Malcolm Bruce Burlingame Robertson,*
    117 Cal. Rptr. 2d 331, 335 (Cal. Ct. App. 2002) ........................................... 22

*Sonic Auto., Inc. v. Galura,*
    961 So. 2d 961, 965–66 (Fla. Ct. App. 2007) .................................................. 9

*Southland Sod Farms v. Stover Seed Co.,*
    108 F.3d 1134, 1145 (9th Cir. 1997) ................................................................ 15

*Sprewell v. Golden State Warriors,*
    266 F.3d 979, 988 (9th Cir. 2001) .............................................................. 7, 17

*St. Clair v. Johnny's Oyster & Shrimp, Inc.,*
    76 F. Supp. 2d 773, 774–75 (S.D. Tex. 1999) .................................................. 7

*Stationary Eng'r Local 39 Health & Welfare Trust Fund v. Philip Morris, Inc.,*
    No. C-97-01519, 1998 WL 476265, at *9 (N.D. Cal. April 30, 1998) .................. 20

*Stickrath v. Globalstar,*
    527 F. Supp. 2d 992, 998 (N.D. Cal. 2007) ............................................. 14, 21

*Suzuki v. Hitachi Global Storage Tech.,*
    No. 06-07289, 2007 WL 2070263, at *5 (N.D. Cal. July 17, 2007) ...................... 15

*Vess v. Ciba-Geigy Corp.,*
    317 F.3d 1097, 1106–07 (9th Cir. 2003) .......................................................... 14

*Von Grabe v. Sprint PCS,*
    312 F. Supp. 2d 1285, 1304 (S.D. Cal. 2003) .................................................. 24

*White v. Lee,*
    227 F.3d 1214, 1242 (9th Cir. 2000) ................................................................ 21

<u>Statutes and Codes</u>

15 U.S.C. § 15(a) ..................................................................................................... 8, 20

15 U.S.C. § 2301 *et seq.* ...................................................................................... 13, 14

15 U.S.C. § 2304(b)(4)(e) .......................................................................................... 13

1    15 U.S.C. § 2310(e) ............................................................................ 14

2    18 U.S.C. § 1962(d) ............................................................................ 19

3    18 U.S.C. § 1964(c) ......................................................................... 8, 18

4    18 U.S.C. § 1962 ................................................................................ 18

5    Cal. Bus. & Prof. Code § 16750(a) .................................................. 8, 20

6    Cal. Bus. & Prof. Code § 17200 ........................................................ 14

7    Cal. Bus. & Prof. Code § 17208 ........................................................ 22

8    Cal. Bus. & Prof. Code § 17500 ........................................................ 14

9    Cal. Bus. & Prof. Code § 17535 .......................................................... 8

10   Cal. Bus. & Prof. Code § 17204 .......................................................... 8

11   Cal. Civ. Code § 1780(a) ...................................................................... 8

12   Cal. Civ. Code § 1783 ........................................................................ 22

13   Cal. Civ. Code §1782(a) ..................................................................... 24

14   Cal. U. Com. Code § 2607 .................................................................. 11

15   UCC § 2-315 ...................................................................................... 12

16                          <u>Rules and Regulations</u>

17   Federal Rule of Civil Procedure 9(b) ................................... 7, 14, 18, 19

18   Federal Rule of Civil Procedure 12(b)(6) .............................................. 7

19   Federal Rule of Civil Procedure 407 ................................................... 18

20

21

22

23

24

25

26

27

28

1

<u>**MOTION AND NOTICE OF MOTION**</u>

2   PLEASE TAKE NOTICE that on February 13, 2009 at 9:00 a.m. or as soon

3   thereafter as the matter may be heard in the courtroom of the Honorable Jeremy Fogel of the

4   above-entitled Court, located at 280 South First Street, San Jose, California, Defendants

5   Select Comfort Retail Corporation ("Select Comfort"), Bed, Bath & Beyond Inc. ("Bed Bath

6   & Beyond"), and Sleep Train, Inc. ("Sleep Train") shall move, and do move, the Court for an

7   Order granting dismissal in its favor and against all Plaintiffs and for an Order striking all

8   purported class claims.  This motion is made under Rules 12(b)(6), 9(b), and 23 of the

9   Federal Rules of Civil Procedure on the grounds Plaintiffs fail to state claims upon which

10  relief can be granted, fail to plead fraud with particularity, and fail to plead facts on which a

11  class action can be based.  This motion will be based on this Notice of Motion, the

12  Memorandum of Points and Authorities contained herein, all records and files in this action,

13  and all additional matters of which the Court may take judicial notice.

14

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

15  **I.      INTRODUCTION.**

16  Plaintiff Molly Stearns, undeterred by the first dismissal, filed the First Amended

17  Complaint ("FAC") asserting numerous new claims, including RICO and antitrust violations,

18  while again alleging previously rejected fraud and warranty claims.  After using a dedicated

19  website since April 2008 to solicit additional plaintiffs for this lawsuit, Plaintiff Stearns is

20  now joined by four of Select Comfort's two million plus customers.  Plaintiffs, however, rely

21  on the same conclusory and otherwise insufficient allegations.  Further illustrating the futility

22  of this lawsuit, each named Plaintiff asked for and received a full refund of his or her

23  purchase price after years of use.  Therefore, the named Plaintiffs have not incurred any

24  damages—a necessity to maintaining this lawsuit.  For this and numerous other reasons

25  described below, this lawsuit should be dismissed with prejudice.

26

27

28

1   **STATEMENT OF ISSUES.**

2        1.        May Plaintiffs maintain any of their claims when they have no legally

3   cognizable injuries?

4        2.        Does the Economic Loss Doctrine bar Plaintiffs' tort claims?

5        3.        Do Plaintiffs' fraud claims meet the pleading standards of Federal Rule of

6   Civil Procedure 9(b)?

7        4.        May Plaintiffs bring a nationwide class action when the primary issue to be

8   determined necessarily requires an individualized inquiry, and the different laws of each

9   state will apply?

10   **III.      STATEMENT OF FACTS.**

11        **A.        Defendants and the Sleep Number® bed.**

12        Select Comfort is a Minnesota corporation that designs, manufactures, and sells the

13   Sleep Number® bed.  (FAC ¶¶ 21, 30.)  It has been in business since 1987 and has sold over

14   two million beds.  (FAC ¶ 30, Ex. A.)  Bed Bath & Beyond is a New York corporation that,

15   at one time, leased retail space in certain of its stores to Select Comfort for the sale of the

16   Sleep Number® bed.  (FAC ¶ 23.)  Sleep Train is a California corporation that has sold and

17   continues to sell Sleep Number® beds in its stores.  (FAC ¶¶ 25, 41.)

18        Unlike traditional innerspring mattresses, the Sleep Number Bed® uses proprietary

19   air-chamber technology that allows each side of the mattress to be adjusted to each user's

20   ideal level of comfort and support.  (FAC Ex. A.)  Clinical research has shown that people

21   who sleep on a Sleep Number® bed fall asleep faster and experience deeper sleep with fewer

22   disturbances than those sleeping on a traditional innerspring mattress.  (*Id.*)  The bed design

23   also provides more proper spinal alignment and relief from uncomfortable pressure points.

24   (*Id.*)  Select Comfort has received over 50,000 customer testimonials indicating that the

25   Sleep Number® bed has addressed their sleep problems.  (*Id.*)

26        Mold can form in any upholstered product or other household items under the right

27   environmental conditions.  (FAC Ex. B.)  Select Comfort, like many bedding manufacturers,

28

MEMORANDUM OF LAW IN SUPPORT OF MOTION TO
DISMISS AND/OR STRIKE CLASS CLAIMS
Case No. C 08 02746JF

1   has always treated parts of its Sleep Number® bed with an antimicrobial agent.  (FAC Exs.

2   B, F.)  In 2004, Select Comfort's data showed that mold-related issues accounted for "a

3   fraction of 1%" of its customers "at a cost of less than $200,000 annually."  (FAC Ex. D.)

4   Nonetheless, in 2005, as part of a continuing effort to improve its products, Select Comfort

5   took advantage of new technology to enhance its antimicrobial formulation.  (FAC Ex. F.)

6   Select Comfort knows of no confirmed cases of mold growth in Sleep Number® beds sold

7   after the reformulation.  (*Id.*)

8        Select Comfort supplies a Limited Warranty which provides for repair or replacement

9   of a defective product or component.  (FAC Exs. A, G.)  The Limited Warranty specifically

10  excludes "ALL INCIDENTAL, SPECIAL OR CONSEQUENTIAL DAMAGES,

11  INCLUDING FOR NEGLIGENCE . . . . Select Comfort will bear no other damages or

12  expenses."  (*Id.*)  In addition, for customers who complain of mold, Select Comfort offers

13  several options to meet the customer's needs or preferences, including replacing components

14  of the bed, replacing the entire bed, or even providing a full refund—all at no charge to the

15  customer.  (FAC Ex. B, p. 17 of 19.)

16  **B.      Plaintiffs.**

17       Plaintiff Stearns, a California resident, alleges that she purchased a Sleep Number®

18  bed in 2000 at Bed Bath & Beyond.  (FAC ¶ 15.)  Stearns alleges that she found mold in her

19  bed and that after contacting Select Comfort in May 2008, she received a full refund on her

20  eight-year-old bed.  (FAC ¶ 63.)  Stearns originally brought a lawsuit in April 2008, only

21  three days after allegedly discovering mold.  Her counsel also set up a litigation website

22  soliciting plaintiffs for this lawsuit.  Although the website has been operating for over eight

23  months, the only plaintiffs out of Select Comfort's two million plus customers are the

24  following four, all of whom had their problems addressed.

25       Plaintiff Rose alleges that she purchased a Sleep Number® bed in 1996.  (FAC ¶ 16.)

26  Rose alleges that she discovered mold in her bed and called Select Comfort in May 2008.

27  (FAC ¶ 60.)  She was offered a repair of her bed, including new replacement parts, but she

28

1    rejected that remedy. (FAC ¶¶ 60, 190). Consequently, Select Comfort provided a full

2    refund on her twelve-year-old bed. (FAC ¶¶ 63, 190.)

3        Plaintiffs Dennis and Bonnie Fuller, Florida residents, allege that they purchased a

4    Sleep Number® bed in 1996. (FAC ¶ 17.) After calling Select Comfort in 2008 regarding

5    mold, the Fullers received a full refund for their twelve-year-old bed. (FAC ¶ 63.)

6        Plaintiff Schlesinger, a California resident, alleges that he purchased a Sleep

7    Number® bed in 1994. (FAC ¶ 18.) Schlesinger alleges that he first called Select Comfort

8    in 2004, before the antimicrobial reformulation, and that Select Comfort provided

9    replacement parts to him. (FAC ¶¶ 45, 189.) Schlesinger alleges that these parts developed

10   mold after he received them. (*Id.*) Schlesinger further alleges that when he reported this to

11   Select Comfort, he was provided a full refund on his fourteen-year-old bed. (FAC ¶ 189.)

12       Plaintiff K. Williams, a California resident, alleges she purchased a Sleep Number®

13   bed on February 10, 2004 from Sleep Train. (FAC ¶ 19.) Plaintiff B. Williams, a California

14   resident, alleges he purchased the same bed from Sleep Train on the same date. (FAC ¶ 20.)

15   However, the FAC later clarifies that Plaintiff K. Williams purchased the Sleep Number®

16   bed <u>for</u> her son, B. Williams, who started "using" his bed in February 2004. (FAC ¶¶ 30,

17   228, 229, 330.)[1] K. Williams alleges that she called Select Comfort to report mold in B.

18   Williams' bed in 2006 and 2007. (FAC ¶ 46.) She alleges that Select Comfort sent

19   replacement parts to B. Williams. (*Id.*) K. Williams and B. Williams allege that the new

20   parts developed mold and that "K. WILLIAMS also called and reported mold (sic) SELECT

21   COMFORT and SLEEP TRAIN after the new parts developed mold." (FAC ¶¶ 46, 70.)

22   This allegation must be rejected. According to the recorded customer service call that is

23   relied upon in the FAC, K. Williams called Select Comfort on January 26, 2007 to demand a

24   full refund for her son's bed because he allegedly had moisture—not mold—on the bed and

25

26   _____

27   [1] Consequently, B. Williams does not even fall within Plaintiffs' class definition which
     requires members of the class to be "all original purchasers" and cannot be a class
28   representative. (FAC ¶ 73.)

1   K. Williams wanted to buy a different bed.  (Hansen Decl. Ex. A; Peterson Decl. Ex. A.)[2]

2   Although the call makes clear that the new parts sent to B. Williams fully repaired the bed

3   and did not develop mold, K. Williams nonetheless received a refund for the bed.  (FAC ¶

4   192.)  None of the Plaintiffs allege that they suffered any actual injuries.

5           **C.        General Allegations.**

6           Plaintiffs reference several Sleep Number® bed advertisements containing general

7   statements relating to the comfort of the bed.  (FAC ¶¶ 35, 36, 220, 240, 273.)  Plaintiffs

8   allege that after hearing or viewing certain of these advertisements, they each purchased

9   Sleep Number® beds.  The FAC contains no facts alleging that any of these statements are

10  false.  None of these statements relate to mold in any way.

11          Plaintiffs allege that Select Comfort received "numerous" complaints about mold

12  prior to and since 2004.  (FAC ¶ 65.)  However, they concede that this allegation is

13  extrapolated from a handful of unverified, anonymous, disgruntled consumer posts found on

14  the internet.  (*Id.*)  Other documents attached to the complaint state that as of 2004, Select

15  Comfort reported that mold-related complaints accounted for just a fraction of 1% of all

16  customers.  (FAC Ex. D.)

17          Likewise, after the Court found the first Complaint lacked any factual basis for the

18  broad, unspecified allegation that the Sleep Number bed® was defectively designed,

19  Plaintiffs again turned to the internet.  (FAC ¶ 184.)  They now allege that the Sleep

20  Number® bed is defectively designed because it is an "encapsulated closed system that is not

21  air permeable" and that materials used "do not breathe adequately which leads to moisture

22

---

23  [2] On a Rule 12 motion, the Court can consider allegations in the complaint, all documents
    attached to the complaint, and all documents on which the complaint necessarily relies.
24  *See Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006).  Plaintiffs specifically allege and
    rely upon a phone call to Select Comfort's customer service and the contents of the phone
25  conversation.  Accordingly, the Court can consider the entire contents of that phone
    conversation on this Rule 12 motion.  *See Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588
26  (9th Cir. 2008).  A verified recording of the customer service call is being submitted
    conventionally, and a verified transcript is being submitted as an attachment to the
27  Declaration of Kathleen Peterson as Exhibit A.  *See also*, Declaration of Mary McDuffie at
    ¶ 3 and Declaration of Andrew Hansen at ¶¶ 2-3.
28

1    collecting inside the system." (*Id.*)  This allegation is nothing more than a plagiarized

2    recitation of a self-serving advertisement designed by a competitor of Select Comfort.

3    (Hansen Decl. Ex. B.)  Moreover, Plaintiffs allege that Select Comfort redesigned the bed in

4    2005 "to specifically remedy the continuing problems associated with the development of

5    mold within the Sleep Number® bed."  (FAC ¶ 59.)  However, Plaintiffs do not plead how

6    this allegedly defective "encapsulated closed system" design was changed, and in fact, it was

7    not.  Rather, the antimicrobial agent used in the bed was upgraded by reformulating it with

8    new technology.  (FAC Ex. F.)  This undercuts Plaintiffs' theory that the bed is defectively

9    designed.

10       Plaintiffs also allege that Defendants "concealed" the fact that mold can grow on the

11   Sleep Number® Bed.  (FAC ¶¶ 201–05.)  However, they concede that Select Comfort

12   provides this information in its assembly and warranty documentation "which specifically

13   addresses mold growth and what action to take in case mold is found."  (FAC ¶ 198; Hansen

14   Decl. Ex. C.)  This information is also on Select Comfort's website.  (Hansen Decl. Ex. E.)

15   Moreover, Plaintiffs rely on numerous documents illustrating Select Comfort's public

16   discussions about mold, including articles, internet posts, and publicly filed SEC documents,

17   negating Plaintiff's allegations of concealment.  (FAC Exs. A, D, E, F, H.)

18   **IV.    ARGUMENT.**

19       Notwithstanding Plaintiffs' staggering seventeen causes of action, the allegations in

20   the FAC fail to state a claim for relief and this action must be dismissed with prejudice.  The

21   first complaint was based primarily upon information and belief and was dismissed.  It

22   appears that Plaintiffs simply deleted those reference to information and belief and otherwise

23   left the same unsupported allegations intact.  The FAC is still inadequate.  *NLFC, Inc. v.*

24   *Devcom Mid-America, Inc.*, 916 F. Supp. 751, 758 (N.D. Ill. 1996) (deleting "information

25   and belief" references without more, does not change fact that amended complaint is still

26   based on information and belief); *In re Textainer P'ship Sec. Litig.*, No. C-05-0969, 2006

27   WL 1328851, at *5 n.2 (N.D. Cal. May 15, 2006) (same).  Purported new allegations in the

28

1    FAC are based on "inherently untrustworthy" internet postings[3] or are contradicted by

2    documents attached to the FAC or upon which it relies.  Accordingly, Plaintiffs offer no facts

3    to support any of its causes of action in this kitchen-sink FAC.

4         **A.    Pleading Standards.**

5              **1.    Rule 12(b)(6).**

6         A motion to dismiss should be granted if the plaintiff fails to proffer "enough facts to

7    state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 127 S. Ct.

8    1955, 1974 (2007).  Dismissal can be based on the lack of a cognizable legal theory or the

9    absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica*

10   *Police Dep't.*, 901 F.2d 696, 699 (9th Cir. 1988).  While allegations of material fact are taken

11   as true and construed in the light most favorable to the nonmoving party, *Cahill v. Liberty*

12   *Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996), the court need not accept as true

13   allegations that are conclusory, legal conclusions, unwarranted deductions of fact or

14   unreasonable inferences.  *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.

15   2001); *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754–55 (9th Cir. 1994).  Where a

16   written instrument attached to the complaint contradicts an allegation contained in the

17   complaint, the court need not accept the allegation as true.  *Lazy Y Ranch*, 546 F.3d at 588;

18   Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is part

19   of the pleading for all purposes.")

20             **2.    Rule 9(b).**

21        A plaintiff alleging fraud must satisfy a heightened pleading standard requiring

22   circumstances constituting fraud be pled with particularity.  Fed. R. Civ. P. 9(b).

23   Specifically, "[t]he pleadings must state precisely the time, place, and nature of the

24   _____

25   [3] Factual allegations based on internet postings are "inherently untrustworthy" and cannot be
     used to avoid dismissal. *St. Clair v. Johnny's Oyster & Shrimp, Inc.*, 76 F. Supp. 2d 773,

26   774–75 (S.D. Tex. 1999) (finding internet a "catalyst for rumor, innuendo, and
     misinformation."); *see also Oestreicher v. Alienware Corp.*, 544 F. Supp. 2d 964, 968, 974

27   n.9 (N.D. Cal. 2008) (dismissing complaint despite allegations of consumer complaints on
     internet.)

28

1   misleading statements, misrepresentations, and specific acts of fraud." *Kaplan v. Rose*, 49

2   F.3d 1363, 1370 (9th Cir. 1994), *cert. denied*, 516 U.S. 810 (1995). In addition, plaintiffs

3   must "set forth an explanation as to why the statement or omission complained of was false

4   and misleading." *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994)

5   *superseded by statute on other grounds.* A plaintiff seeking to state a claim for fraud must

6   also plead scienter, "set[ting] forth facts from which an inference of scienter could be

7   drawn." *Oestreicher*, 544 F. Supp. 2d at 968 (internal citation omitted).

8       **B.      Plaintiffs' Entire Complaint Must Be Dismissed For Failure to Plead Any
9               Legally Cognizable Injury.**

10          Each of Plaintiffs' claims requires Plaintiffs to plead they have a legally cognizable

11   injury caused by Defendants' conduct. *See Khan v. Shiley Inc.*, 266 Cal. Rptr. 106, 110 (Cal.

12   Ct. App. 1990) (products liability); *County of Santa Clara v. Atlantic Richfield Co.*, 40 Cal.

13   Rptr. 3d 313, 318 (Cal. Ct. App. 2006) (negligence); *Manderville v. PCG & S Group, Inc.*,

14   55 Cal. Rptr. 3d 59, 68 (Cal. Ct. App. 2007) (fraud); *Hahn v. Mirda*, 54 Cal. Rptr. 3d 527,

15   532 (Cal. Ct. App. 2007) (concealment); *Long v. Hewlett-Packard Co.*, No. 06-02816, 2006

16   WL 4877691, at *4 (N.D. Cal. Dec. 21, 2006) (express warranty); *Andrade v. Pangborn

17   Corp.*, No. C 02-3771, 2004 WL 2480708, at *23 (N.D. Cal. Oct. 22, 2004) (implied

18   warranty); 18 U.S.C. § 1964(c) (RICO); 15 U.S.C. § 15(a) (Sherman Act); Cal. Bus. & Prof.

19   Code § 16750(a) (Cartwright Act); Cal. Bus. & Prof. Code §§ 17204, 17535 (UCL and

20   FAL); Cal. Civ. Code § 1780(a) (CLRA).

21          To have standing to bring a claim under Article III, Plaintiffs must plead an injury

22   that is (1) concrete, particularized, and actual rather than conjectural and hypothetical; (2)

23   fairly traceable to the challenged action; and (3) likely, as opposed to merely speculative, to

24   be redressed by a favorable decision. *Friends of the Earth, Inc. v. Laidlaw Envtl. Serv.

25   (TOC), Inc.*, 528 U.S. 167, 180–81 (2000). Plaintiffs have failed to do so, and each of their

26   claims must be dismissed. *See Dura Pharms, Inc. v. Broudo*, 544 U.S. 336, 343 (2005)

27   (complaints that fail to allege an injury must be dismissed at Rule 12 stage).

28

1    Each Plaintiff alleges finding mold in his or her Sleep Number® bed.  However, each

2    of them also elected to receive a full refund—some for twelve- and fourteen-year-old beds—

3    which has made them whole.  This and other districts hold that when a customer is offered or

4    has received a full purchase price refund, there is no injury.  *See In re Phenylpropanolamine*

5    *Prods. Liab. Litig.*, 214 F.R.D. 614, 622–23 (W.D. Wash. 2003) (remedy already existed

6    through manufacturer's refund program); *Chin v. Chrysler Corp.*, 182 F.R.D. 448, 463

7    (D.N.J. 1998) (no useful remedy the court could fashion since individuals could receive

8    refunds through manufacturer); *Sonic Auto., Inc. v. Galura*, 961 So. 2d 961, 965–66 (Fla. Ct.

9    App. 2007) (excluding from class individuals who received a refund); *Holstein v. City of*

10   *Chicago*, 149 F.R.D. 147, 148–49 (N.D. Ill. 1993) (dismissing claim because plaintiff was

11   made whole by refund of towing fees).

12   Plaintiffs' hypothetical damages (FAC ¶ 72) do not save their claims because the

13   FAC does not plead facts to support that any of the Plaintiffs have <u>actually incurred</u> these

14   costs and the law does not allow claims for remote, conjectural, or speculative damages.  *See*

15   *Atherley v. MacDonald, Young & Nelson, Inc.*, 298 P.2d 700, 709 (Cal. Ct. App. 1956).

16   Moreover, the contract between the parties specifically excludes these types of damages.

17   (FAC Exs. A, G) (excluding all "incidental, special or consequential damages, including for

18   negligence").  Because Plaintiffs have failed to plead any legally cognizable injury, their

19   entire FAC must be dismissed.

20       **C.      The Economic Loss Doctrine Bars Plaintiffs' Negligence, Strict Products
                  Liability, Negligent Misrepresentation, Intentional Misrepresentation**
21       **        and Concealment Claims.**

22   "The economic loss rule requires a purchaser to recover in contract for purely

23   economic loss due to disappointed expectations, unless he can demonstrate harm above and

24   beyond a broken contractual promise." *Robinson Helicopter Co. v. Dana Corp.*, 102 P.3d

25   268, 272–73 (Cal. 2004).  It applies to actions in tort and bars claims unless Plaintiffs allege

26   personal injury or property damage <u>other than</u> to the product itself. *Id*. at 273.  California

27   strictly applies this doctrine to products liability and negligence actions. *Atl. Richfield Co.*,

28

1    40 Cal. Rptr. 3d at 335 ("economic loss alone without physical injury, does not amount to

2    the type of damage that will cause a negligence or strict liability cause of action to accrue").

3    It also bars fraud claims unless the fraud is completely independent of the contract and based

4    on "affirmative intentional misrepresentations." *Robinson Helicopter Co.*, 102 P.3d at 273,

5    276 (announcing "narrow" exception for certain fraud claims).

6          Here, Plaintiffs have alleged no personal physical injuries.  The only property

7    damage that Plaintiffs have alleged is damage to their Sleep Number® beds due to mold

8    growth, which must be remedied through the warranty.  Plaintiffs have alleged several

9    categories of hypothetical economic damages alleging that "Plaintiffs and Class members

10   have incurred and will continue to incur <u>costs</u>, among other thing, replacement of their beds

11   and <u>investigative and repair costs</u>, including, but not limited to, replacement of their bedding,

12   cleaning of their homes, replacement of HVAC components and/or systems, replacement of

13   carpet, repainting of room(s), environments investigations and hazardous waste disposal

14   fees. (FAC ¶ 72) (emphasis added).  Absent, however, is any allegation that any Plaintiff has

15   actually suffered physical injury to other property due to Defendants alleged actions.

16   Moreover, the California Court of Appeal rejected a similar attempt to avoid the economic

17   loss doctrine, rejecting claims that plaintiffs suffered physical injury when lead paint

18   deteriorated and "contaminated" their property requiring them to "pay for abatement

19   programs" and that they "have been forced to expend, are expending, and will expend money

20   to inspect and test [their buildings] for Lead and to demolish, refurbish, or otherwise remedy

21   the harmful effects of these properties." *See Atl. Richfield*, 40 Cal. Rptr. 3d at 335–36.

22   Therefore, Plaintiffs' strict liability, negligence, negligent misrepresentation, and

23   concealment claims are barred.

24         Further, as will be discussed in detail *infra*, Plaintiffs have pointed to no independent

25   affirmative intentional misrepresentations of fact on which they relied to bring Plaintiffs'

26   intentional fraud claims within the exception to the economic loss doctrine. *Robinson*

27   *Helicopter Co.*, 102 P.3d at 273, 276.  Indeed, Plaintiffs' fraud claims are not independent of

28

1   their warranty claims, but are an obvious attempt to bootstrap a fraud claim onto their

2   warranty claims.  Both claims are based on the alleged presence of a design defect in the

3   Sleep Number® bed.  *See id.* at 274 (to establish exception, fraud must be intentional,

4   affirmative, and completely independent from contract).  Therefore, Plaintiffs' intentional

5   representation claim is also barred.

6   **D.      Plaintiffs Fail to Plead a Breach of Warranty.**

7   **1.      Breach of Express Warranty.**

8        Plaintiffs fail to state a claim for breach of express warranty.  An express warranty is

9   contractual in nature.  *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 525 (1992); *see also*

10  *Long*, 2006 WL 4877691, at *4.  To plead a breach of express warranty under California law,

11  Plaintiffs must allege (1) the exact terms of the warranty; (2) reasonable reliance; and (3) a

12  breach of warranty which proximately causes the plaintiff's injury.  *Id.* at *4.  Plaintiffs must

13  also plead that they provided pre-suit notice to Select Comfort of the alleged breach.  Cal. U.

14  Com. Code § 2607.

15       Here, Plaintiffs merely allege that the Limited Warranty provides that a bed "will be

16  free from defects in material and workmanship for a period of twenty years from the original

17  purchase date." (FAC ¶ 14.)  They allege that Defendants have breached the warranty

18  because a defect arose. (FAC ¶¶ 146–48.)  But this is a simplistic, and incorrect, view of the

19  law.  "A manufacturer's liability for breach of an express warranty derives from, and is

20  measured by, the terms of that warranty."  *Cipollone*, 505 U.S. at 525.  Therefore, Select

21  Comfort does not breach its Limited Warranty until it <u>refuses</u> to perform its legal obligations

22  under the contract.  *See Pollard v. Saxe & Yolles Dev. Co.*, 525 P.2d 88, 92 (Cal. 1974)

23  (stating that breach of warranty claim requires notice, the purpose of which is to allow the

24  defendant opportunity to repair the defective item, reduce damages, avoid defective products

25  in the future, and negotiate settlements).  However, Plaintiffs allege that when they called

26  Defendants to report an issue, they were sent replacement parts and/or given a full refund.

27  None of the Plaintiffs allege that they requested repair or replacement and were refused.

28

1    Further, to the extent the remedy given by Defendants was deemed inadequate and a breach,

2    Plaintiffs were obligated to give Defendants notice of the alleged breach before bringing suit.

3    *See, e.g., Bailey v. Monaco Coach Corp.*, 350 F. Supp. 2d 1036, 1044 (N.D. Ga. 2004) (after

4    defendant repaired defects, plaintiff was required to give presuit notice of any remaining

5    alleged defects). None of the Plaintiffs did so nor gave Defendants an opportunity to cure the

6    perceived breach with an alternate remedy.  Therefore, their claims must be dismissed for

7    failure to provide pre-suit notice.

8            Finally, Plaintiffs also failed to plead reasonable reliance on the warranty.  They

9    could not reasonably rely on a perfect product with no possibilities of a defect because the

10   warranty itself advises that defects might occur.  (FAC Exs. A, G.)

11           **2.      Breach of Implied Warranties.**

12                   **a.      Implied Warranty of Fitness.**

13           Under UCC § 2-315, an implied warranty of fitness for a particular purpose exists

14   where the seller at the time of contracting has reason to know (a) any particular purpose for

15   which goods are required, and (b) that the buyer is relying on the seller's skill or judgment to

16   select or to furnish suitable goods for such purpose.  *Am. Suzuki Motor Corp. v. Super. Ct.*,

17   44 Cal. Rptr. 2d 526, 528 n.2 (Cal. Ct. App. 1995).  "A 'particular purpose' differs from the

18   ordinary purpose for which the goods are used in that it envisages a specific use by the buyer

19   which is peculiar to the nature of his business whereas the ordinary purposes for which

20   goods are used are those envisaged in the concept of merchantability and go to uses which

21   are customarily made of the goods in question."  *Id.*  Plaintiffs have failed to identify a

22   "particular purpose" for their beds.  Instead, they allege that Defendants represented the

23   Sleep Number® bed was fit for its "ordinary purpose" and its "intended purpose."  (FAC ¶¶

24   178, 180.)  Therefore, this claim fails.  *See id.* (rejecting claim because plaintiffs failed to

25   identify any "particular purpose" for which they purchased product).

26                   **b.      Implied Warranty of Merchantability.**

27           The implied warranty of merchantability arises by operation of law.  *Id.* at 529.  "It

28

1   does not 'impose a general requirement that goods precisely fulfill the expectation of the

2   buyer. Instead, it provides for a minimum level of quality.'" *Id.* A mere defect in a product

3   does not breach this implied warranty; rather, the defect must be so basic that it renders the

4   product unfit for its ordinary purpose. *Id.* To plead a breach of the implied warranty of

5   merchantability, a plaintiff must adequately allege that:

6           (a) at the time of the purchase, the defendant was in the business of selling
            the product, (b) the product was not of the same quality as those generally
7           acceptable in the trade, or was not fit for the ordinary purposes for which
            the product is used, or did not conform to the quality established by the
8           parties' prior dealings or by usage of trade, (c) the plaintiff took reasonable
            steps to notify the defendant within a reasonable time that the product did
9           not have the expected quality, (d) the plaintiff was harmed, and (e) the
            failure of the product to have the expected quality was a substantial factor in
10          causing the plaintiff's harm.

11  *Andrade*, 2004 WL 2480708, at *23.

12          Plaintiffs fail to plead that their beds were not of merchantable quality at the time of

13  purchase, *i.e.*, that they were not fit for use as a bed. Indeed, each Plaintiff satisfactorily

14  used his or her bed as a bed for years, in some cases twelve and fourteen years, prior to

15  requesting a refund from Select Comfort. Plaintiffs have also failed to plead that Sleep

16  Number® beds are not of the same quality as other beds generally acceptable in the trade in

17  that they have not pled that other beds will not grow mold under the same environmental

18  conditions. Finally, Plaintiffs failed to plead they provided adequate notice to Defendants.

19          **3.      Magnuson-Moss Warranty Act.**

20          Plaintiffs claim a violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et*

21  *seq.* ("MMWA"). For limited warranties, as in this case, the majority of the MMWA's

22  provisions do not apply. 15 U.S.C. § 2304(b)(4)(e). Rather, for limited written warranties

23  and implied warranties, the MMWA provides a federal cause of action for state warranty

24  claims. *Monticello v. Winnebago Indus. Inc.*, 369 F. Supp. 2d 1350, 1356 (N.D. Ga. 2005).

25  However, it does not expand the rights under those claims, and if they would be dismissed

26  under state law, then any claims under the MMWA must also be dismissed. *See id.*

27          The MMWA contains a heightened notice requirement which is a condition

28

MEMORANDUM OF LAW IN SUPPORT OF MOTION TO
DISMISS AND/OR STRIKE CLASS CLAIMS
Case No. C 08 02746JF

1   precedent to maintaining a cause of action.   It provides that no private action may be

2   brought under the MMWA unless the defendant is first "afforded a reasonable opportunity to

3   cure such failure to comply" and in the case of a purported class action, "such reasonable

4   opportunity will be afforded by the named plaintiffs and they <u>shall at that time</u> notify the

5   defendant they are acting on behalf of the class." 15 U.S.C. § 2310(e) (emphasis added).

6   Plaintiffs failed to notify Defendants that the full refund was not acceptable warranty

7   compliance and afford them an opportunity to comply prior to filing this action, nor that

8   Plaintiffs were acting on behalf of a class.  Accordingly, the MMWA claim is barred.

9         **E.**       **Plaintiffs Fail to Satisfy the Heightened Pleading Standard of Rule 9(b).**

10         Rule 9(b)'s heightened pleading standard applies to allegations of fraud and

11  allegations that are grounded in fraud, including Plaintiffs' false misrepresentation,

12  concealment, and negligent misrepresentation causes of action. *Vess v. Ciba-Geigy Corp.*,

13  317 F.3d 1097, 1106–07 (9th Cir. 2003); *Meridian Project Sys., Inc. v. Hardin Constr. Co.*,

14  404 F. Supp. 2d 1214, 1219 (E.D. Cal. 2005); *Oestreicher*, 544 F. Supp. 2d at 968, 974;

15  *Silicon Knights, Inc. v. Crystal Dynamics, Inc.*, 983 F. Supp. 1303, 1315 (N.D. Cal. 1997);

16  *Fed. Savings and Loan Ins. Corp. v. Musacchio*, 695 F. Supp. 1053, 1063 (N.D. Cal. 1988).

17  Plaintiffs also assert causes of action under California's consumer protection statutes: the

18  Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 ("UCL"), the False Advertising

19  Law, Bus. & Prof. Code § 17500 ("FAL"), and the California Consumer Legal Remedies Act

20  ("CLRA"). A claim under the UCL, FAL, or CLRA that is "grounded in fraud" must also,

21  as a whole, satisfy Rule 9(b)'s heightened pleading standard. *Vess*, 317 F.3d at 1103–04.

22  Plaintiffs explicitly incorporate their intentional misrepresentation and concealment

23  allegations into their UCL, FAL, and CLRA claims. Therefore, these claims must also satisfy

24  Rule 9(b). *See Stickrath v. Globalstar*, 527 F. Supp. 2d 992, 998 (N.D. Cal. 2007) (finding

25  plaintiff's UCL and CLRA claims were grounded in fraud).

26         **1.**      **Defendants Made No Affirmative Misrepresentations of Fact.**

27         Plaintiffs' intentional misrepresentation, negligent misrepresentation, and CLRA

28

1    claims require that Defendants made false representations to Plaintiffs that Defendants knew

2    to be false when made, the Defendants intended that the plaintiff rely on the representation

3    and that Plaintiffs reasonably relied on them, and that such representations caused harm to

4    plaintiff. *Manderville*, 55 Cal. Rptr. 3d at 68 (fraud); *Century Sur. Co. v. Crosby Ins., Inc.*,

5    21 Cal. Rptr. 3d 115, 125 (Cal. Ct. App. 2004) (negligent misrepresentation); *Shamsian v.*

6    *Atl. Richfield Co.*, 132 Cal. Rptr. 2d 635, 648 (Cal. Ct. App. 2003) (negligent

7    misrepresentation); *Regents of the Univ. of Cal. v. Principal Fin. Group*, 412 F. Supp. 2d

8    1037, 1045 (N.D. Cal. 2006) (requiring negligent representation claims to be based on an

9    actual representations, not omissions); *Suzuki v. Hitachi Global Storage Tech.*, No. 06-

10    07289, 2007 WL 2070263, at *5 (N.D. Cal. July 17, 2007).  Similarly, all of Plaintiffs'

11    consumer protection claims based on alleged misrepresentations also require that Defendants

12    made a specific statement that tends to mislead. *Inter-Mark USA, Inc. v. Intuit, Inc.*, No. C-

13    07-04178, 2008 WL 552482, at *9–11 (N.D. Cal. Feb. 27, 2008).

14                              **a.    None of Defendants' Alleged Affirmative Representations**
                                       **Are Actionable Statements.**
15

16              A statement is not actionable if it is a "puffing" statement.  "Generalized, vague, and

17    unspecified assertions constitute 'mere puffery' upon which a reasonable consumer could not

18    rely, and hence are not actionable." *Anunziato v. eMachines, Inc.*, 402 F. Supp. 2d 1133,

19    1139 (C.D. Cal. 2005) (quoting *Glen Holly Entm't, Inc. v. Tektronix Inc.*, 343 F.3d 1000,

20    1005 (9th Cir. 2003)).  "Product superiority claims that are vague or highly subjective" are

21    puffery. *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1145 (9th Cir. 1997).

22    Only "misdescriptions of specific or absolute characteristics of a product are actionable." *Id.*

23    In other words, to be actionable, the statements must be factually verifiable. *Inter-Mark*,

24    2008 WL 552482, at *10.  District courts resolve whether a statement is puffery as a matter

25    of law when considering a motion to dismiss for common law fraud and statutory causes of

26    action. *Oestreicher*, 544 F. Supp. 2d at 973.

27              Plaintiffs allege that Select Comfort made general, puffing statements in its

28

1   advertising: "individualized, firmness, comfort and support to provide an ideal night's

2   sleep." (FAC ¶ 35); relieves back pain and improves sleep quality to facilitate a more

3   satisfactory quality of life (FAC ¶ 36); "With your new SELECT COMFORT® sleep

4   system, a *perfect* night's sleep is not only possible, it can be yours forever.  Starting tonight."

5   (FAC ¶¶ 36, 240, 273);[4] "Your Sleep Number is key to a perfect night's sleep." (FAC ¶ 36);

6   "waking up well rested and refreshed," "perfect nights sleep," "never had a better nights

7   sleep." (FAC ¶ 220); "perfect nights sleep, "wake up without back pain," wake up

8   refreshed," and that each person could control their own comfort level (FAC ¶ 220.)

9        These are exactly the highly subjective, unverifiable statements of product superiority

10  that are found to be non-actionable puffery.[5]  *See Oestreicher*, 544 F. Supp. 2d at 973

11  (finding as puffery: "superb, uncompromising quality," "faster, more powerful, and more

12  innovative than competing machines," "higher performance," "longer battery life," "richer

13  multimedia experience," "faster access to data");  *Inter-Mark*, 2008 WL 552482, at *10

14  (finding as puffery: "increased functionality," "new enhancements . . . allow your clients

15  with larger, growing businesses to run their businesses more efficiently and flexibly,"

16  improved speed and capacity").  Accordingly, none of the statements identified by Plaintiffs

17  support any of their claims.

18            **b.      Plaintiffs Fail To Allege with Particularity How the
               Statements Are Fraudulent.**
19

20        Even if any of the statements were actionable, Plaintiffs were required to "state

21  precisely the time, place, and nature of the misleading statements, misrepresentations, and

22  specific acts of fraud." *Kaplan*, 49 F.3d at 1370.  They fail to do so.  Plaintiffs plead nothing

---

23  [4] This statement has already been rejected by this Court as the basis for a fraud action.  Order
24  Granting Motion to Dismiss and to Strike with Leave to Amend (Docket Entry ("D.E.")
     28, Oct. 1, 2008) at 5.

25  [5] Plaintiffs also cite to the warranty statement that the bed would be "free from defects and
26  material workmanship for twenty years." (FAC ¶ 219.) However, this court has rejected
     warranty statements as the basis for a misrepresentation because such statements do not
27  support an inference of falsity at the time made. *See, e.g., Long v. Hewlett-Packard Co.*,
     No. C 06-02816, 2007 WL 2994812, at *7–8 (N.D. Cal. July 27, 2007).

28

1   more than they reviewed these statements in various advertisements, but they don't indicate

2   when they were made or how they were false. *In re Glenfed, Inc. Sec. Litig.*, 42 F.3d at 1548

3   (plaintiffs must explain why statements were false or misleading). Nor do they allege any

4   facts to support scienter with respect to these statements. Indeed, the FAC includes and

5   refers to contradictory documents such as clinical research reports that supply the basis for

6   the truth of these statements, undercutting any inference of falsity and scienter. (FAC Ex. A

7   at 9; Hansen Decl. Ex. D.)[6]

8           **2.**        **Defendants Did Not Fraudulently Conceal Any Material Facts.**

9         To base a fraud claim on concealment, Plaintiffs must plead that Defendants

10   intentionally concealed or suppressed a material fact that they were under a duty to disclose,

11   that Plaintiffs were unaware of the fact, and would not have acted as he did if he had known

12   of the fact. *Hahn*, 54 Cal. Rptr. 3d at 532. Plaintiffs allege that Defendants concealed that

13   Sleep Number® beds have an alleged propensity to grow mold. However, Plaintiffs plead

14   no actual facts to support this theory.

15         Plaintiffs fail to plead why Defendants had any duty to disclose the commonly-

16   known fact that mold can grown on upholstered products, just as they have failed to allege

17   that they were previously unaware of this fact. *See Oestreicher,* 544 F. Supp. 2d at 970–71.

18   To the extent that Plaintiffs suggest Defendants had a duty to disclose that Sleep Number®

19   beds have a unique propensity to allow mold growth, Plaintiffs offer no facts from which to

20   infer that theory is true. Indeed, documents incorporated into the FAC state that only a

21   negligible fraction of all Sleep Number® customers have reported mold, not only negating

22   the allegation that there exists an inherent product defect, but also negating any possible duty

23   to disclose a "material" fact. This speculative pleading is based purely on "unwarranted

24   deduction of fact," *Sprewell,* 266 F.3d at 988, and does not satisfy Rule 9(b).

25         Plaintiffs also point to a "redesign" of the Sleep Number® bed in 2005, suggesting

26   _____

27   [6] Plaintiffs attached portions of Select Comfort's website to their FAC. (FAC Ex. I.)
    Accordingly, the Court may consider other portions of that same website that contradict
    allegations in the FAC. *See Lazy Y Ranch*, 546 F.3d at 588.

28

1    that its previous design was defective.  However, this theory has been expressly and

2    universally rejected by the courts and is the basis of Federal Rule of Evidence 407, which

3    states that such measures are "not admissible to prove negligence, culpable conduct, a defect

4    in a product, a defect in a product's design, or a need for a warning or instructions."  Fed. R.

5    Civ. P. 407; *see also* advisory committee notes (recognizing "social policy of encouraging

6    people to take, or at least not discourage them from taking, steps in furtherance of added

7    safety.")  Further, Plaintiffs allege that the design defect that caused mold growth is an

8    "encapsulated closed system" (FAC ¶ 204), but that design has not changed.  Plaintiffs

9    cannot survive a motion to dismiss by merely alleging in conclusory fashion that a defect

10   exists and then pleading fraud because the alleged defect was not disclosed.  As this district

11   recently noted, "allegations of this nature … could be made about any alleged design defect

12   in any manufactured product.  The heightened pleading requirements of Rule 9(b) were

13   designed to avoid exactly this situation."  *Oestreicher*, 544 F. Supp. 2d at 974.  Moreover,

14   many documents attached to the FAC illustrate Select Comfort's public discussions

15   regarding mold, negating any inference of concealment.

16       Finally, Plaintiffs persist in alleging that Defendants actively concealed the alleged

17   defect by offering full refunds to its consumers in exchange for return of the beds.  Plaintiffs

18   plead no facts to support this allegation, and it is wholly conclusory and entirely unfounded.

19   Indeed, this Court has already rejected this allegation.  Order (D.E. 28) at 7.  Moreover, this

20   allegation is belied by the fact that none of the Plaintiffs alleged that they returned their beds,

21   but they all received refunds.

22       **F.    Plaintiffs Fail to Plead RICO Claims.**

23       To state a claim under RICO, Plaintiffs were required to allege (1) an injury to

24   business or property by reason of (2) a substantive violation of one or more subsections of §

25   1962.  18 U.S.C. §§ 1962, 1964(c).  To state a substantive claim under RICO, Section

26   1962(c), Plaintiffs were required to allege (1) conduct (2) of an enterprise (3) through a

27   pattern (4) of racketeering activity.  *Odom v. Microsoft Corp.*, 486 F.3d 541, 547 (9th Cir.

28

1   2007).  Plaintiffs fail to satisfy any of these pleading requirements.

2          To avoid dismissal, a complaint must allege specific facts, not mere conclusory

3   allegations, which establish the existence of an enterprise.  *See Canadian-Am. Oil Co. v.*

4   *Delgado*, 108 F.3d 1384, 1997 WL 121181, at *1 (9th Cir. 1997) (citing *Elliott v. Foufas*,

5   867 F.2d 877, 881 (5th Cir. 1989)) (holding allegations such as "defendants associated

6   together" and "consensually agreed" to commit racketeering activities were insufficient to

7   plead an enterprise).  Apart from simply using the word "enterprise," the FAC fails to allege

8   a single specific fact demonstrating an enterprise exists. (FAC ¶¶ 324, 327.)

9          Similarly, the FAC fails to properly allege any racketeering activity, let alone a

10  pattern of racketeering activity.  The FAC vaguely refers to a "pattern of racketeering

11  activity" and "use of U.S. mails, and private and commercial interstate carriers, and the use

12  of wires" and cites to 18 U.S.C. §§ 1341 and 1342. (FAC ¶¶ 328–30.)  Such vague and

13  conclusory allegations are insufficient to establish a racketeering activity or a pattern. *Quach*

14  *v. Cross*, No. CV0309627, 2004 WL 2860346, at *6 (C.D. Cal. Jun. 10, 2004) (citing

15  *Jennings v. Emry*, 910 F.2d 1434, 1438 (7th Cir. 1990)) ("conclusory allegations that various

16  statutory provisions have been breached are of no consequence if unsupported by proper

17  factual allegations.")  Plaintiffs were required to enunciate how the conclusory predicate acts

18  alleged qualify as "racketeering activity" under § 1961.  *Id.* at *5.

19         Plaintiffs' allegations must also state a claim for violation of the mail and wire fraud

20  statutes.  *Alan Neuman Prod., Inc. v. Albright*, 862 F.2d 1388, 1392 (9th Cir. 1988) (specifics

21  of time, place, or nature of alleged communications are required).  Such claims must also

22  satisfy Rule 9(b).  *Id.*  The FAC fails to allege any facts to establish these elements, let alone

23  specific facts.

24         Where a plaintiff has failed to allege the requisite substantive elements of RICO, a

25  RICO conspiracy claim under 18 U.S.C. § 1962(d) cannot stand.  *Religious Tech. Ctr. v.*

26  *Wollersheim*, 971 F.2d 364, 367 n.8 (9th Cir. 1992).

27         **G.       Plaintiffs Fail to Plead Anti-Trust Claims.**

28

1    To establish an antitrust violation, Plaintiffs were required to allege (1) an agreement,

2  conspiracy, or combination among two or more persons or distinct business entities; (2)

3  which is intended to harm or unreasonably restrain competition; and (3) which actually

4  causes injury to competition, beyond the impact on the claimant.[7] *See Fricke-Parks Press,*

5  *Inc. v. Fang,* 149 F. Supp. 2d 1175, 1182 (N.D. Cal. 2001).  Plaintiffs must allege injuries to

6  "business or property" to state an antitrust claim. 15 U.S.C. § 15(a); Cal. Bus. & Prof. Code

7  § 16750(a); *Stationary Eng'r Local 39 Health & Welfare Trust Fund v. Philip Morris, Inc.,*

8  No. C-97-01519, 1998 WL 476265, at *9 (N.D. Cal. April 30, 1998).

9    Plaintiffs fail to adequately plead any of the substantive elements of an antitrust

10  claim.  The FAC contains no factual allegations of an agreement, conspiracy, or combination

11  among Defendants.  Stating an antitrust claim under Section 1 of the Sherman Act (and also

12  the Cartwright Act) "requires a complaint with enough factual matter (taken as true) to

13  suggest that an agreement was made." *Bell Atl. Corp. v. Twombly,* 127 S. Ct. 1955, 1965

14  (2007).  Merely stating words like "agreement" or "conspiracy" are conclusory and are

15  insufficient to state a claim. *See id.* at 1966, 1970, n.10 (noting complaint alleged no specific

16  time, place, or person involved in the alleged conspiracies.)  The FAC's allegations of an

17  agreement or conspiracy are exactly the same as those rejected in *Twombly.*  (FAC ¶¶ 284–

18  89, 299–305).

19    Finally, not only have Plaintiffs failed to plead any legally cognizable injury, but they

20  have failed to allege an antitrust injury, which is required to have standing to bring an anti-

21  trust claim. *See In re Dynamic Random Access Memory (DRAM) Antitrust Litig.,* 536 F.

22  Supp. 2d 1129, 1136 (N.D. Cal. 2008); *Korea Kumho Petrochem. v. Flexsys Am. LP,* No.

23  C07-01057, 2007 WL 2318906, at *3–4 (N.D. Cal. Aug. 13, 2007).

24

25  _____

[7] The Cartwright Act is patterned after the Sherman Act, and federal cases interpreting the
26  Sherman Act are applicable to the Cartwright Act. *Redwood Theatres, Inc. v. Festival
    Enter., Inc.,* 908 F.2d 477, 482 n.3 (9th Cir. 1990). Therefore, Defendants will address
27  Plaintiffs' Cartwright Act and Sherman Act claims together.

28

1      **H.     Plaintiffs Fail to Plead Consumer Protection Claims.**

2          In addition to failing to plead these fraud-based claims with particularity, there are

3  several other reasons they must be dismissed.

4            **1.     Plaintiffs Lack Standing For Injunctive Relief.**

5          Plaintiffs have no present injuries so they are not entitled to restitution.  They also

6  bring claims for injunctive relief.  Where a plaintiff seeks prospective relief, he or she must

7  establish that there is "a likelihood of future injury." *White v. Lee*, 227 F.3d 1214, 1242 (9th

8  Cir. 2000). "Past exposure to illegal conduct does not in itself show a present case or

9  controversy regarding injunctive relief if unaccompanied by any continuing, present adverse

10  effects." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 564 (1992).

11          Plaintiffs cannot demonstrate that they have standing to seek injunctive relief.

12  Plaintiffs have received a full refund.  No likelihood of future injury therefore exists.

13  Plaintiffs do not allege that they currently use their beds, that they will use their beds in the

14  future, or that they will purchase another bed at any time.  Plaintiffs' claims for injunctive

15  relief must therefore be dismissed.  *See Stickrath*, 527 F. Supp. 2d at 997 (dismissing claim

16  for injunctive relief under UCL and CLRA because Plaintiffs did not allege they currently

17  subscribed to defendant's service or would in the future and any injury allegedly suffered

18  appeared to lie solely in the past); *Meinhold v. Sprint Spectrum, L.P.*, No. CIV. S-07-00456,

19  2007 WL 1456141, at *5 (E.D. Cal. May 16, 2007) (dismissing  UCL and FAL claims

20  because defendant refunded roaming charges plaintiff complained about).

21          Because Plaintiffs have no standing to obtain an injunction, Plaintiffs cannot recover

22  restitution because it is ancillary relief to an injunction under the UCL and FAL.  *Deitz v.*

23  *Comcast Corp.*, No. C 06-06352, 2006 WL 3782902, at *5 (N.D. Cal. Dec. 21, 2006).

24  Injunctive relief and restitution are the only remedies available under the UCL, FAL, and the

25  CLRA when brought without notice. *Id.*; *Korea Supply Co. v. Lockheed Martin Corp.*, 63

26  P.3d 937, 943 (Cal. 2003).  Therefore, there is no relief Plaintiffs could recover.

27

28

1        **2.   Plaintiffs' Claims Are Time-Barred.**

2        A UCL claim must be "commenced within four years after the cause of action

3   accrued." Cal. Bus. & Prof. Code § 17208.  Courts are split on whether a three or four-year

4   statute of limitations applies to FAL claims. *See Harshbarger v. Philip Morris, Inc.*, No. 02-

5   05267, 2003 WL 23342396, at *5 (N.D. Cal. April 1, 2003).  A claim brought under the

6   CLRA "shall be commenced not more than three years from the date of the commission of

7   such method, act, or practice." Cal. Civil Code § 1783.  The statute of limitations for a given

8   cause of action begins to run when the cause of action accrues, which is either when the

9   wrongful act is done or when the wrongful result occurs.  *Norgart v. Upjohn Co.*, 981 P.2d

10  79, 88 (Cal. 1999). The discovery rule does not apply to Plaintiffs' claims.  *See Karl Storz*

11  *Endoscopy-Am., Inc. v. Surgical Tech., Inc.*, 285 F.3d 848, 857 (9th Cir. 2002); *Snapp &*

12  *Assocs. Ins. Servs., Inc. v. Malcolm Bruce Burlingame Robertson*, 117 Cal. Rptr. 2d 331, 335

13  (Cal. Ct. App. 2002); *Lockheed Martin Corp. v. RFI Supply, Inc.*, No C 00-20002, 2006 WL

14  1525719, at *5 (N.D. Cal. May 30, 2006); *Harshbarger*, 2003 WL 23342396, at *7; *but cf.*

15  *Grisham v. Philip Morris USA, Inc.*, 151 P.3d 1151, 1157 n.7 (Cal. 2007).

16       Based on Plaintiffs' UCL, FAL, and CLRA allegations, the wrongful result occurred

17  when Plaintiffs' purchased their beds.  Any other date or event would be irrelevant because

18  damages are not recoverable under the UCL, FAL, and CLRA in this case. *See*

19  *Harshbarger*, 2003 WL 23342396, at *6–7 (rejecting plaintiff's claim that his UCL and FAL

20  causes of action accrued when he was diagnosed with lung cancer, because damages are not

21  recoverable; finding that plaintiff's claims accrued at the latest time defendants sold

22  cigarettes to plaintiff).  Here, more than four years have passed since each Plaintiff

23  purchased his or her bed.  (FAC ¶¶ 15–20.)  Plaintiffs' claims are therefore barred.

24       **3.   Plaintiffs' Remaining UCL Claims Fail to State a Claim.**

25       A UCL claim may be based on fraudulent, unlawful, or unfair business practices.  As

26  previously discussed, Plaintiffs have failed to state a UCL claim based on fraudulent

27  behavior.  They also fail to state a claim for "unlawful" or "unfair" business practices.

28

MEMORANDUM OF LAW IN SUPPORT OF MOTION TO
DISMISS AND/OR STRIKE CLASS CLAIMS
Case No. C 08 02746JF

1                    **a.**      **Unlawful Business Practices.**

2          Plaintiffs assert an unlawful business practices claim under the UCL on three bases,

3  all of which fail to state a claim.  First, Plaintiffs base their claim on Defendants' alleged

4  violations of common law. (FAC ¶¶ 262–64.)  A UCL unlawful business practices claim

5  cannot be based on common law violations.  *Nat'l Rural Telecommc'ns Coop. v. DirecTV,*

6  *Inc.*, 319 F. Supp. 2d 1059, 1074–75 (C.D. Cal. 2003); *Hartless v. Clorox Co.*, No.

7  06CV2705, 2007 WL 3245260, at *5 (S.D. Cal. Nov. 2, 2007) (citing *Klein v. Earth*

8  *Elements, Inc.*, 69 Cal. Rptr. 2d 623 (Cal. Ct. App. 1997)).  Even if common law violations

9  could state a claim under the unlawful prong of the UCL, those claims must be dismissed

10  and therefore, Plaintiffs' derivative UCL claims must also be dismissed.

11          Second, Plaintiffs' allege a derivative UCL claim based on Defendants' alleged

12  violations of the Sherman Act and Cartwright Act. (FAC ¶ 265.)  Because Plaintiffs fail to

13  state a claim for violation of the Sherman Act and Cartwright Act, their derivative UCL

14  claim must also be dismissed.  Third, Plaintiffs allege Defendants violated the unlawful

15  prong of the UCL because "Defendants' conduct offends public policy..." (FAC ¶ 266.)  To

16  state a claim, Plaintiffs were required to allege a specific statute.  *See Marcelos v.*

17  *Dominguez*, No. C 08-00056, 2008 WL 1820683, at *12 (N.D. Cal. April 21, 2008).

18  Plaintiffs' reference to an unspecified and generalized public policy is insufficient.

19                    **b.**      **Unfair Business Practices.**

20          Plaintiffs also appear to base their UCL claim on the unfair business practices prong

21  of the UCL. (FAC ¶¶ 266, 267.)  California courts are split on what must be alleged to state a

22  claim.  *See Bernardo v. Planned Parenthood Fed'n of Am.*, 9 Cal. Rptr. 3d 197, 222–24 (Cal.

23  Ct. App. 2004).  Some courts hold that to state a claim, a plaintiff must allege a legislative or

24  public policy "tethered" to a specific constitutional, statutory, or regulatory provision

25  allegedly violated by the defendant.  *Id.* at 223–24.  Other courts hold that a plaintiff must

26  demonstrate that the consumer injury is substantial, is not outweighed by any countervailing

27  benefits to consumers or to competition, and is not an injury the consumers themselves could

28

1   reasonably have avoided.  *See Daugherty v. Am. Honda Motor Co.*, 51 Cal. Rptr. 3d 118,

2   129–30 (Cal. Ct. App. 2006).

3          Plaintiffs fail to state a claim under either test.  The only statutory provisions Plaintiff

4   cites to are the Sherman Act and the Cartwright Act. (FAC ¶ 265.)  Plaintiffs fail to state a

5   claim under those Acts.  Plaintiffs' other allegations are vague, generalized references to an

6   unnamed public policy and are not tethered to any specific provision. (FAC ¶¶ 266, 267.)

7   Under the other test, Plaintiffs do no more than state the three factors of the test in a

8   conclusory fashion (FAC ¶ 267), which is insufficient to state a claim under the applicable

9   pleading standard.  *Khoury v. Maly's of California, Inc.*, 17 Cal. Rptr. 2d 708, 712 (Cal. Ct.

10  App. 1993).  Moreover, as discussed above, Plaintiffs have suffered no injury.  Therefore,

11  Plaintiffs cannot establish that they have suffered a "substantial" injury not outweighed by

12  benefits to consumers or competition.  Plaintiffs' unfair business practices claim under the

13  UCL must be dismissed.

14          **c.**      **Plaintiffs Failed to Give Notice Required by the California**
                       **Consumer Legal Remedies Act.**
15

16          Under California Civil Code section 1782(a), Plaintiffs were required to give notice

17  to Defendants at least thirty days before commencing an action for damages under the

18  CLRA. Compliance with this requirement is necessary to state a claim. *Cattie v. Wal-Mart*

19  *Stores, Inc.*, 504 F. Supp. 2d 939, 949 (S.D. Cal. 2007) (citing *Outboard Marine Corp. v.*

20  *Super. Ct.*, 124 Cal. Rptr. 852 (Cal. Ct. App. 1975)).  Plaintiffs explicitly seek damages yet

21  failed to give the notice required by the CLRA. (FAC ¶ 317, Prayer for Relief at ¶¶ 1, 2, 4.)

22  Plaintiffs' CLRA claim must therefore be dismissed with prejudice. *See id.* at 950; *Janda v.*

23  *T-Mobile, USA, Inc.*, No. C 05-03729, 2008 WL 4847116, at *6 (N.D. Cal. Nov. 7, 2008);

24  *Laster v. T-Mobile USA, Inc.*, 407 F. Supp. 2d 1181, 1196 (S.D. Cal. 2005); *Von Grabe v.*

25  *Sprint PCS*, 312 F. Supp. 2d 1285, 1304 (S.D. Cal. 2003).

26          **I.      The Consumer Product Safety Act.**

27          Plaintiffs bring a cause of action under the Consumer Product Safety Act ("CPSA"),

28

1    purporting to claim that Defendants have violated the CPSA because Defendants have

2    allegedly failed to report a defect to the Consumer Product Safety Commission. (FAC ¶¶

3    341–42.) Plaintiffs' claim must be dismissed because no private right of action exists under

4    the CPSA. *In re All Terrain Vehicle Litig.*, 979 F.2d 755, 757 (9th Cir. 1992).

5    **J.     The FAC Does Not Remedy the Deficiencies in the Class Allegations**
         **From the First Complaint and Should Be Stricken.**

6

7              To the extent that any of Plaintiffs' claims survive this motion, the Court should

8    strike the class allegations. The court dismissed the class allegations in the first Complaint

9    because "each individual plaintiff must prove injury, causation, and damages." *Stearns*,

10   Order at 11. Although Plaintiffs have dropped any claims of personal injury, these same

11   issues must be scrutinized for all current claims, as well as the central issue relating to if,

12   how, and why mold grew in each Plaintiff's bed. (*See id.* n.6.) Moreover, the Court

13   recognized that both warranty and fraud claims present issues of individual reliance which

14   preclude class treatment. (*Id.* at 12.) The Court specifically noted that maintaining this

15   action as a nationwide class action is not a "superior" method for adjudication of rights in

16   this case and urged Plaintiff to consider a more narrowly defined class. (*Id.* at 12–13.)

17   Plaintiffs refused to narrow their claims, and instead added claims, now totaling a mind-

18   boggling seventeen causes of action mostly based on fraud and warranty hoping that

19   "something might stick." Plaintiffs also refused to narrow the class from a purported

20   nationwide class.

21            The new Plaintiffs—who have all received full refunds—superbly illustrate why a

22   class action is not superior in this case. They show that the Defendants' current response to

23   product issues already provides a full remedy to each purported class member, so there is no

24   useful remedy this Court could fashion in a class action. *E.g., Chin*, 182 F.R.D. at 463 (no

25   class necessary because no useful remedy the court could fashion since individuals could

26   receive refunds through manufacturer). Accordingly, the Court should strike all class

27   allegations from any claims that might remain after dismissal.

28

1   Dated:  1/6/09

2                                   PILLSBURY WINTHROP SHAW PITTMAN LLP

3                                   By _____

4                                        Dianne L. Sweeney
                                         Attorneys for Defendants
5                                        SELECT COMFORT RETAIL CORPORATION
                                         AND BED BATH & BEYOND, INC.
6
    Dated: 1/6/09
7
                                    OPPENHEIMER WOLFF & DONNELLY LLP
8
                                    By _____
9
                                         Andrew S. Hansen
10                                       Attorneys for Defendants
                                         SELECT COMFORT RETAIL CORPORATION
11                                       AND BED BATH & BEYOND, INC.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28