1

2                                                    **E-Filed 6/5/2009**

3

4

5

6

7

8          **IN THE UNITED STATES DISTRICT COURT**

           **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

9          **SAN JOSE DIVISION**

10

11

12

13

14   MOLLY STEARNS, et al.                    Case Number 08-2746 JF

15                        Plaintiffs,
                                              ORDER[1] GRANTING MOTION TO
16           v.                               DISMISS AND MOTION TO STRIKE
                                              WITH LEAVE TO AMEND
17   SELECT COMFORT RETAIL CORPORATION,
     a Minnesota Corporation; BED BATH &      [re: docket no. 40]
18   BEYOND, INC. a New York Corporation; and
     THE SLEEP TRAIN, a California Corporation,
19
                         Defendants.
20

21

22           Plaintiffs bring this putative class action on behalf of all persons similarly situated who

23   purchased a Sleep Number® bed designed, manufactured, distributed, and sold by Defendant

24   Select Comfort Retail Corporation ( "Select Comfort"), a Minnesota corporation.  Defendant The

25   Sleep Train, Inc. ("Sleep Train") is a California corporation that sells Sleep Number® beds in its

26   retail stores.  Bed Bath & Beyond ("BBB") is a New York corporation that at one time leased

27   _____

28       [1] This disposition is not designated for publication in the official reports.

1 space in certain of its stores to Select Comfort for the sale of Sleep Number® beds.  Defendants

2 move to dismiss the first amended complaint ("FAC") and to strike all of the purported class

3 claims.  For the reasons set forth below, the motion will be granted, with leave to amend.

## I. BACKGROUND

5     On April 25, 2008, Plaintiff Molly Stearns ("Stearns"), a California resident, filed a

6 complaint in Santa Clara Superior Court alleging that she had found mold on a Sleep Number®

7 bed purchased in 2000 at BBB.  The complaint alleged causes of action for strict product

8 liability, intentional misrepresentation, negligent misrepresentation, concealment, breach of

9 express warranty, and breach of implied warranty.  Stearns also sought to bring a class action on

10 behalf of all purchasers and users of Sleep Number® beds purchased between January 1, 1987

11 and December 31, 2005.  Defendants removed the action to this Court and then moved to dismiss

12 all claims except for the product liability claim and to strike all class allegations.  On October 1,

13 2008, the Court dismissed the complaint with leave to amend.  On October 30, 2008, Stearns and

14 additional named plaintiffs filed the operative FAC, amending their previous claims and adding a

15 new defendant (Sleep Train).  The FAC also includes new claims for relief based upon (1)

16 negligence; (2) violation of the Magnusson-Moss Warranty Act ("MMWA"); (3) unfair

17 competition pursuant to the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code

18 § 17200 *et seq.*; (4) false advertising pursuant to the California False Advertising Law ("FAL"),

19 Cal. Bus. & Prof. Code § 17500 *et seq.*; (5) violation of Section 1 of the Sherman Act; (6)

20 violation of California's Cartwright Act; (7) violation of the California Legal Remedies Act

21 ("CLRA"), Cal. Civ. Code § 1750; (8) violation of the Racketeering Influenced and Corrupt

22 Organizations Act ("RICO"), 18 U.S.C. § 1962c; (9) conspiracy in violation of RICO, 18 U.S.C.

23 § 1962d; and (10) violation of the Consumer Product Safety Act ("CPSA"), 15 U.S.C. 18 U.S.C.

24 § 2064, *et seq*.  In addition, the claim for breach of express warranty now is brought pursuant to

25 Uniform Commercial Code ("UCC") § 2-313.  The implied warranty claim has been bifurcated

26 into separate claims for breach of implied warranty of merchantability (UCC § 2-314) and breach

27 of implied warranty of fitness (UCC § 2-315).  In total, Plaintiffs presently assert seventeen

28 claims for relief.

The FAC alleges that Select Comfort offered Stearns a full refund after she complained in April 2008 about the alleged mold growth.  *See* FAC ¶¶ 58, 63.  Stearns accepted the refund.  *Id.* ¶ 190.  Plaintiff Ruth Rose ("Rose"), a California resident, purchased a Sleep Number® bed in 1996.  *Id.* ¶ 16.  Rose alleges that she discovered mold in her bed and called Select Comfort in May 2008.  *Id.* ¶ 60.  Select Comfort offered to repair the bed and install new parts, an offer which she refused when Select Comfort declined to offer a guarantee against future mold problems with the replacement parts.  *Id.* ¶¶ 60, 190.  Subsequently, Select Comfort provided a full refund for Rose's twelve-year-old bed.  *Id.* ¶ 190.  Plaintiffs Dennis and Bonnie Fuller (the "Fullers"), residents of Florida, allege that they purchased a Sleep Number® bed in 1996.  *Id.* ¶ 17.  After calling Select Comfort in 2008 regarding mold, the Fullers received a full refund for their twelve-year-old bed.  *Id.* ¶ 63.  Plaintiff Dan Schlesinger ("Schlesinger"), a California resident, alleges that he purchased a Sleep Number® bed in 1994.  *Id.* ¶ 18.  Schlesinger first called Select Comfort in 2004 regarding mold issues, and in response Select Comfort provided replacement parts.  *Id.* ¶¶ 45, 189.  Schlesinger alleges that these parts developed mold after he received them.  *Id.*  Schlesinger further alleges that when he reported the problem to Select Comfort, he was provided a full refund on his fourteen-year-old bed.  *Id.* ¶ 189.

Plaintiff K. Williams, a California resident, alleges she purchased a Sleep Number® bed on February 10, 2004 from Sleep Train.  *Id.* ¶ 19.  Plaintiff B. Williams, a California resident, alleges he purchased the same bed from Sleep Train on the same date.  *Id.* ¶ 20.  However, the FAC later clarifies that Plaintiff K. Williams purchased the Sleep Number® bed for her son, B. Williams, who started using his bed in February 2004.  *Id.* ¶¶ 130, 228, 229, 330.  K. Williams alleges that she called Select Comfort to report mold in B. Williams' bed in 2006 and 2007.  *Id.* ¶ 46. She further alleges that Select Comfort sent replacement parts to B. Williams.  *Id.*  K. Williams and B. Williams allege that the new parts developed mold and that K. Williams reported mold formation to Select Comfort and Sleep Train.  *Id.* ¶¶ 70, 146.[2]  K. Williams

---

[2] In a January 26, 2007 telephone call with Select Comfort, K. Williams requested a full refund so that she could buy a replacement bed.  *See* Hansen Decl. Ex. A; Peterson Decl. Ex. A. The substance of the telephone conversation also indicates that K. Williams was calling about

1  eventually received a refund for the bed. *Id.* ¶ 192. No Plaintiff alleges that he or she has

2  suffered any actual physical or emotional injuries.

3  ## II. LEGAL STANDARD

4      A complaint may be dismissed for failure to state a claim upon which relief can be

5  granted for one of two reasons:  (1) lack of a cognizable legal theory or (2) insufficient facts

6  under a cognizable legal theory. *See Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Robertson v.*

7  *Dean Witter Reynolds, Inc.*, 749 F.2d 530, 533-34 (9th Cir. 1984).  Allegations of material fact

8  must be taken as true and construed in the light most favorable to the nonmoving party. *Cahill v.*

9  *Liberty Mut. Ins. Co.,* 80 F.3d 336, 337-38 (9th Cir. 1997).  *See also Pareto v. FDIC*, 139 F.3d

10  696, 699 (9th Cir. 1998).  However, the Court need not accept as true allegations that are

11  conclusory, unwarranted deductions of fact, or unreasonable inferences. *See Sprewell v. Golden*

12  *State Warriors,* 266 F.3d 979, 988 (9th Cir. 2001).  *See also Bell Atl. Corp. v. Twombly*, 550 U.S.

13  544, 561 (2007) ("a wholly conclusory statement of [a] claim" will not survive motion to

14  dismiss).

15      On a motion to dismiss, the Court's review is limited to the face of the complaint and

16  matters judicially noticeable. *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir.

17  1986)*; N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). However, under

18  the "incorporation by reference" doctrine, the Court also may consider documents which are

19  referenced extensively in the complaint and which are accepted by all parties as authentic. *In re*

20  *Silicon Graphics, Inc. Sec. Litig.*, 183 F.3d 970, 986 (9th Cir.1999).  Leave to amend should be

21  granted unless it is clear that the complaint's deficiencies cannot be cured by amendment. *Lucas*

22  *v. Dep't of Corrs.*, 66 F. 3d 245, 248 (9th Cir. 1995).  When amendment would be futile,

23  dismissal may be ordered with prejudice. *Dumas v. Kipp*, 90 F.3d 386, 393 ( 9th Cir. 1996).

24  ## III. DISCUSSION

25  moisture in the bed, rather than mold. *See id.*  Defendants thus argue that any allegations made

26  by K. Williams must be stricken because they are clearly false.  Plaintiffs object to the audio file
   and the transcript of the telephone call on grounds of lack of foundation and hearsay.  While

27  Plaintiff's statements possibly are admissible as statements against interest, the Court need not

28  consider the substance of this telephone call to decide the instant motion.

1    As set forth in this Court's prior order of October 1, 2008, Plaintiffs' allegations are

2    subject to the pleading requirements of the Federal Rules.  Order at 3, Oct. 1, 2008.  Accordingly,

3    the claims alleging fraud are subject to the heightened pleading requirements of Fed. R. Civ. P.

4    9(b).  *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103-04 (9th Cir. 2003) (if "the claim

5    is said to be "grounded in fraud" or to "sound in fraud," [then] the pleading of that claim as a

6    whole must satisfy the particularity requirement of Rule 9(b)."); *Kaplan v. Rose*, 49 F.3d 1363,

7    1370 (9th Cir. 1994) (claims based in fraud "must state precisely the time, place, and nature of

8    the misleading statements, misrepresentations, and specific acts of fraud.").  In addition, to have

9    standing under Article III, a plaintiff must plead an injury that is (1) concrete and particularized

10   rather than hypothetical; (2) fairly traceable to the challenged action; and (3) likely to be

11   redressed through a favorable decision.  *Friends of the Earth, Inc. v. Laidlaw Envtl. Serv. (TOC),*

12   *Inc.*, 528 U.S. 167, 180-81 (2000).

13       A.  Negligence and Strict Product Liability (claims 1 & 2)

14       To state a claim for negligence, a plaintiff must allege that the defendant owed a duty to

15   the plaintiff that subsequently was breached, and that such breach was the proximate cause of the

16   plaintiff's injury.  *See Ditto v. McCurdy*, 510 F.3d 1070, 1078 (9th Cir. 2007).  For a plaintiff to

17   prevail on a claim for strict product liability, he or she must show that "a manufacturer is or

18   should have been aware that a product is unreasonably dangerous absent a warning and [if] such

19   warning is feasible, the manufacturer will be held strictly liable if it fails to give an appropriate

20   and conspicuous warning." *Maneely v. Gen. Motors Corp.*, 108 F.3d 1176, 1179 (9th Cir. 1997).

21   "[R]ecovery under the doctrine of strict liability is limited solely to 'physical harm to person or

22   property.'" *Jimenez v. Sup. Ct.*, 29 Cal. 4th 473, 482 (2002) (quoting *Seely v. White Motor Co.*

23   63 Cal. 2d 9, 18 (1965)).

24       Defendants contend that the economic loss doctrine bars recovery by Plaintiffs on either

25   of the above claims because full refunds or replacement parts were provided to all of the named

26   Plaintiffs.  The Court notes that Plaintiffs would not be able to recover purely economic damages

27   under either theory irrespective of any refund because when "a purchaser's expectations in a sale

28   are frustrated because the product he bought is not working properly, his remedy is said to be in

5

1   contract alone, for he has suffered only 'economic' losses.'" *Robinson Helicopter Co., Inc. v.*

2   *Dana Corp.*, 34 Cal. 4th 979, 988 (2004) (citations omitted).  Thus, any damages related to

3   Plaintiffs' "disappointed" expectations or purely economic loss are not recoverable for either

4   claim.  *See id.* ("The economic loss rule requires a purchaser to recover in contract for purely

5   economic loss due to disappointed expectations, unless he can demonstrate harm above and

6   beyond a broken contractual promise."); *Jimenez*, 29 Cal. 4th at 482 ("Damages available under

7   strict product liability do not include economic loss, which includes 'damages for inadequate

8   value, costs of repair and replacement of the defective product or consequent loss of

9   profits—without any claim of personal injury or damages to other property.'") (citations

10  omitted).

11          Plaintiffs argue that they have alleged harm beyond any broken contractual promise, in

12  that they "have incurred and will continue to incur costs, among other things, [for] replacement

13  of their beds and investigative and repair costs, including, but not limited to, replacement of their

14  bedding, cleaning of their homes, replacement of HVAC components and/or systems,

15  replacement of carpet, repainting of room(s), environmental investigations and hazardous waste

16  disposal fees."  FAC ¶ 72.  However, this one paragraph of generalized allegations does not

17  identify which of the named plaintiffs suffered what harm and, more importantly, it makes no

18  distinction between harm already suffered and harm that may be suffered in the future.

19  "Appreciable" harm is an essential element of a claim for negligence.  *Aas v. Sup. Ct.*, 24 Cal.

20  4th 627, 646 (2000) (superseded by statute on other grounds) ("appreciable, nonspeculative,

21  present injury is an essential element of a tort cause of action.").  Accordingly, Plaintiffs'

22  negligence and strict product liability claims will be dismissed, with leave to amend.

23          B.  Warranty Claims

24                  1.  Breach of Express Warranty (UCC § 2-313) (claim 4)

25          An explicit promise by the seller with respect to the quality of the goods and that is part

26  of the bargain between the parties creates an express warranty "that the goods shall conform to

27  the affirmation or promise."  UCC § 2-313.  To plead a claim for breach of express warranty, the

28  buyer must allege that the seller "(1) made an affirmation of fact or promise or provided a

6

1  description of its goods; (2) the promise or description formed part of the basis of the bargain; (3)

2  the express warranty was breached; and (4) the breach caused injury to the plaintiff." *Blennis v.*

3  *Hewlett-Packard Co.*, No. C 07-00333, 2008 WL 818526, at *2 (N.D. Cal. Mar. 25, 2008)

4  (citation omitted).  Such a claim must describe the exact terms of the warranty, allege that buyer

5  reasonably relied on those terms, and that the breach of the warranty was the proximate cause of

6  the buyer's injury.  *See id.*  A buyer also must plead that notice of the alleged breach was

7  provided to the seller within a reasonable time after discovering the breach.  UCC § 2-607(3)(a).

8  *See also Pollard v. Saxe & Yolles Dev. Co.*, 12 Cal.3d 374, 380 (1974) ("The requirement of

9  notice of breach is…designed to allow the defendant opportunity for repairing the defective item,

10 reducing damages, avoiding defective products in the future, and negotiating settlements.").  The

11 buyer has the burden of showing that reasonable notice was provided.  *Cardinal Health 301, Inc.*

12 *v. Tyco Elecs. Corp.*, 169 Cal. App. 4th 116, 135 (2008).[3]

13      With respect to Plaintiff Stearns, the FAC contains no allegations as to when she

14 discovered the alleged mold growth or if notice of breach was provided to any of the Defendants.

15 The original complaint alleged that Stearns first discovered mold on April 22, 2008.  *See* Compl.

16 ¶ 52.  She filed the instant action three days later on April 25, 2008.  Even if Stearns had

17 provided notice during that seventy-two hour window, there would have been no opportunity for

18 Defendants to address the issue properly before Stearns filed suit.  Accordingly, the FAC fails to

19 allege that Stearns provided proper notice of the alleged breach.[4]  For the remaining named

20 Plaintiffs, notice is pled adequately because the FAC states that Select Comfort was notified of

21

22      [3] Timely notice of breach is not required where the buyers did not purchase the product
   from the manufacturer directly.  *See Sanders v. Apple Inc.*, No. C 08-1713, 2009 WL 150950, at

23 *8 (citing *Greenman v. Yuba Power Prods.*, 59 Cal.2d 57, 61 (1963)).  The FAC alleges that

24 three of the five named Plaintiffs purchased their Sleep Number® beds directly from Select
   Comfort.  FAC ¶¶ 15-18.  The remaining named Plaintiffs purchased their beds through a

25 retailer, Defendant Sleep Train.  *Id*. ¶¶ 19-20.

26      [4] Stearns's failure to provide notice is fatal to her individual claim.  *See Palmucci v.*

27 *Brunswick Corp.*, 710 A.2d 1045, 1047 (N.J. Sup. Ct. 1998) ("Since plaintiff did not abide by the
   requirements of the warranty in that he did not allow the manufacturer to use the remedy the

28 warranty permitted, he was not entitled to recovery under his breach of warranty claim.").

7

Case No. 08-2746
ORDER GRANTING MOTION TO DISMISS AND TO STRIKE WITH LEAVE TO AMEND
(JFLC1)

1    the alleged mold growth, and in each instance the seller attempted to remedy the issue through

2    replacement parts or a refund. *See* UCC § 2-607 Official Comment 4 ("The content of the

3    notification need merely be sufficient to let the seller know that the transaction is still

4    troublesome and must be watched.").

5        As to the remaining elements of the claim, the express warranty contains an affirmation

6    regarding "materials and workmanship," and the language of the warranty is incorporated by

7    reference into the FAC.  FAC Ex. G.  A copy of this express warranty was provided with every

8    purchase of a Sleep Number® bed, which satisfies the requirement that the warranty was a

9    component of the bargain between the parties. *See id.* ¶¶ 136, 141.  The express

10   warranty—which provided that Sleep Number® beds would be "free from defects in materials

11   and workmanship for a period of 20 years from the original purchase date"—allegedly was

12   breached when mold appeared on the beds. *See id.* Ex. G.  Thus, the only remaining issue is

13   whether the FAC alleges a cognizable injury.

14       It is undisputed that Defendants provided replacement parts (some of which allegedly also

15   were defective) and ultimately offered a full refund to all of the named Plaintiffs, which they

16   accepted.  Nonetheless, Plaintiffs contend that they were entitled to a remedy in addition to

17   refund or repair, namely "a non-defective bed for twenty years per the warranty terms."  Opp.

18   Mot. at 3.  Plaintiffs acknowledge that the express warranty states that "repair or replacement" is

19   the "exclusive remedy" for any product that is deemed to be "defective." *See* FAC Ex. G.  Under

20   UCC § 2-719(1)(b), "[r]esort to a remedy as provided is optional unless the remedy is expressly

21   agreed to be exclusive, in which case it is the sole remedy."  However, "[w]here circumstances

22   cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as

23   provided in this code."  UCC § 2-719(2).  Plaintiffs contend that the failure of an essential

24   purpose of the warranty agreement—to provide a non-defective bed for a period of twenty

25   years—means that they are entitled to the remedy of their choosing. *See id.*; *RRX Indus., Inc. v.*

26   *Lab-Con, Inc.*, 772 F.2d 543, 547 (1985) ("Under the Code, a plaintiff may pursue all of the

27   remedies available for breach of contract if its exclusive or limited remedy fails of its essential

28   purpose.").

8

"A limited remedy fails of its essential purpose when the circumstances existing at the time of the agreement have changed so that enforcement of the limited remedy would essentially leave plaintiff with *no remedy at all*." *Computerized Radiological Servs., Inc. v. Syntex Corp.*, 595 F. Supp. 1495, 1510 (E.D.N.Y. 1984), *aff'd in part and rev'd in part*, 786 F.2d 72 (2d Cir. 1986) (emphasis added). This theory often is raised where a buyer seeks a refund or rescission of the original agreement, but the seller insists that repair is the only available remedy. *See, e.g.*, *Gavaldon v. DaimlerChrysler Corp.*, 32 Cal. 4th 1246, 1259-65 (2004). The instant case presents the relatively unusual circumstance where the manufacturer offered repair or replacement goods, and when that remedy proved unsatisfactory, full refunds were provided and accepted—yet the buyers still seek a replacement product. The Court is not convinced that California law provides Plaintiffs with any right to a defect-free bed in addition to the full refund. California's Song-Beverly Consumer Warranty Act describes the appropriate remedy for breach of an express warranty:

> [I]f the manufacturer or its representative in this state does not service or repair the goods to conform to the applicable express warranties after a reasonable number of attempts, the manufacturer shall either replace the goods or reimburse the buyer in an amount equal to the purchase price paid by the buyer, less that amount directly attributable to use by the buyer prior to the discovery of the nonconformity.

Cal. Com. Code § 1793.2(d)(1). The statute does not provide for the "double recovery" that Plaintiffs seek. *See also Marr Enters., Inc. v. Lewis Refrigeration Co.*, 556 F.2d 951, 955 (9th Cir. 1977) ("if the seller did not replace the defective parts, the purchaser was entitled to refund of the purchase price…mere failure to replace or repair would not cause the court to read in the general remedy provisions of the UCC [due to failure of essential purpose].").[5]

---

[5] In addition, certain Plaintiffs refused repair when Sleep Train allegedly could not guarantee that any repairs would be free of future defects during the twenty-year term of the limited express warranty. "Where the buyer refuses to permit replacement, or repair or correction of defects or does not fulfill any requirements regarding such repair or replacement, the seller cannot be held liable for breach of warranty." 77A Corpus Juris Secundum ("CJS") Sales § 478 (2008). *See also Bros. v. Hewlett-Packard Co.*, No. C-06-02254, 2007 WL 485979, at *4 (N.D. Cal. Feb. 12, 2007) ("replacement or repair of malfunctioning components during the life of the warranty is exactly what the Limited Warranty provides…[defendant] could not have

9

1    A remedy for breach of an express warranty should provide the buyer with the

2    "substantial value of the bargain." *See* UCC § 2-719 Official Comment 1.  Here, a full refund of

3    the purchase price provides substantially the same value as the non-defective bed for which the

4    parties initially bargained.  Moreover, when Plaintiffs accepted the refund, they essentially

5    modified the terms of the express warranty and the remedies available for breach.  *See* UCC § 2-

6    719 Official Comment 2 ("parties are left free to shape their remedies to their particular

7    requirements and reasonable agreements limiting or modifying remedies are to be given effect.").

8    Not surprisingly, most courts have refused to recognize Plaintiffs' theory of remedy.  *See*, *e.g.*,

9    *Evans Indus., Inc. v. Int'l Bus. Machs. Co.*, No. Civ. A. 01-0051, 2004 WL 241701, at *8 (E.D.

10   La. Feb. 6, 2004) (a "'back-up' remedy of repayment prevents a limited remedy of repair from

11   failing of its essential purpose."); *Ritchie Enters. v. Honeywell Bull, Inc.*, 730 F. Supp. 1041,

12   1049 (D. Kan. 1990) ("refund of the purchase price prevents a limited remedy from failing of its

13   essential purpose") (citation omitted); *Arcata Graphics Co. v. Heidelberg Harris, Inc.*, 874

14   S.W.2d 15, 19 (Tenn. App. 1993) ("Under Tennessee law, the availability of a refund remedy

15   will prevent a repair remedy from failing of its essential purpose.").

16   Without deciding whether Plaintiffs ever could assert such a theory successfully, the

17   Court noted that Plaintiffs may be entitled to "any incidental and consequential damages" for a

18   breach of an express warranty, *see* UCC § 2-714, which may include "injury to person or

19   property proximately resulting from any breach of warranty."  UCC § 2-715(2)(b).  *See also*

20   *Garlock Sealing Techs., LLC v. NAK Sealing Techs. Corp.*, 148 Cal. App. 4th 937, 955 (2007)

21   (discussing analogous provisions of Cal. Com. Code §§ 2714 & 2715).  In the instant case, the

22   express warranty excludes recovery of "special or consequential damages."  FAC Ex. G.  The

23   enforceability of such an exclusion is addressed in the California Commercial Code, which

24   provides in pertinent part that:

25              Consequential damages may be limited or excluded unless the
             limitation or exclusion is unconscionable.  Limitation of
26           consequential damages for injury to the person in the case of
             consumer goods is invalid unless it is proved that the limitation is

27

28   breached the Limited Warranty by acting in conformance with it.").

Case No. 08-2746
ORDER GRANTING MOTION TO DISMISS AND TO STRIKE WITH LEAVE TO AMEND
(JFLC1)

1

2

> not unconscionable.  Limitation of consequential damages where
> the loss is commercial is valid unless it is proved that the limitation
> is unconscionable.

3  Cal. Com. Code § 2719(3).  The only conceivable consequential damages pled in the FAC relate

4  to property damage.  As discussed previously, Plaintiffs must allege additional details with

5  respect to that damage.  In addition, Plaintiffs must allege facts that would make the exclusion

6  provision in the express warranty inapplicable.[6]  Accordingly, the motion to dismiss the claim for

7  breach of express warranty will be granted, with leave to amend.

8                    2.  Breach of Implied Warranty of Fitness (UCC 2-315) (claim 6)

9          Under UCC § 2-315, an implied warranty of fitness for a particular purpose exists if at the

10  time of contracting the seller knows or has reason to know that the buyer is relying on the seller's

11  skill or judgment to select or to furnish suitable goods for certain purpose.  *Am. Suzuki Motor*

12  *Corp. v. Super. Ct.*, 37 Cal. App. 4th 1291, 1295 n.2 (Cal. Ct. App. 1995).  Thus, the following

13  elements must be shown to prevail on a claim for breach of an implied warranty of fitness:  (1) at

14  the time of purchase the buyer intended to use the goods for a particular purpose; (2) at the time

15  of purchase, the manufacturer or seller had reason to know of this particular purpose; (3) the

16  buyer relied on the manufacturer or seller to use its skill or judgment to select goods suitable for

17  the particular purpose; and (4) at the time of purchase, the manufacturer or seller had reason to

18  know that the buyer relied on such skill and judgment.  *Harlan v. Roadtrek Motorhomes, Inc.*,

19  No. 07-CV-0686, 2009 WL 928309, at *8 (S.D. Cal. Apr. 2, 2009) (citing *Keith v. Buchanan*,

20  173 Cal. App. 3d 13, 25 (1985)).  "A 'particular purpose' differs from the ordinary purpose for

21  which the goods are used in that it envisages a specific use by the buyer which is peculiar to the

22  nature of his business whereas the ordinary purposes for which goods are used are those

23  envisaged in the concept of merchantability and go to uses which are customarily made of the

24  goods in question."  *Am. Suzuki*, 37 Cal. App. 4th at 1295 n.2.  *See also* UCC § 2-315, Official

25  Comment 2 ("For example, shoes are generally used for the purpose of walking upon ordinary

26

27          [6] As currently plead, Plaintiffs' claim of failure of the essential purpose of the limited
repair or replacement warranty would not enable Plaintiffs to recover consequential damages.
28  *See S.M. Wilson & Co. v. Smith Intern., Inc.*, 587 F.2d 1363, 1375 (9th Cir. 1978).

Case No. 08-2746
ORDER GRANTING MOTION TO DISMISS AND TO STRIKE WITH LEAVE TO AMEND
(JFLC1)

1   ground, but a seller may know that a particular pair was selected to be used for climbing

2   mountains.")

3        In the instant case, Plaintiffs have not alleged a "specific use" that is "peculiar" to their

4   business or their intended use of the beds.  Despite Plaintiffs' conclusory arguments to the

5   contrary, the FAC merely reiterates that the beds did not perform their ordinary function, *i.e.*,

6   providing a comfortable sleep environment without causing undue harm to their health.  *See* FAC

7   ¶¶ 179-84.  These are ordinary expectations regarding a bed, *see Harlan*, 2009 WL 928309, at

8   *9, and there are no allegations indicating that Plaintiffs specifically selected the beds because of

9   a representation by any of the Defendants that the products were particularly mold-resistant.

10  Based on the totality of Plaintiffs' allegations, it does not appear that Plaintiffs' could amend this

11  claim to cure the defects in their pleading.  Accordingly, the claim for breach of the implied

12  warranty of fitness will be dismissed without leave to amend.[7]

13        ### 3.  Breach of Implied Warranty of Merchantibility (UCC § 2-314) (claim 5)

14        "Merchantability" generally has been construed as a requirement that a product conforms

15  to its ordinary and intended use.  *See, e.g., Hauter v. Zogarts*, 14 Cal. 3d 104, 117-18 (1975).

16  Under UCC § 2-314(2), products are merchantable if they

17              (a) Pass without objection in the trade under the contract
                description; and
18
                (b) In the case of fungible goods, are of fair average quality within
19              the description; and

20              (c) Are fit for the ordinary purposes for which such goods are used;
                and
21
                (d) Run, within the variations permitted by the agreement, of even
22              kind, quality and quantity within each unit and among all units
                involved; and
23
                (e) Are adequately contained, packaged, and labeled as the
24

25        [7] Plaintiffs' implied warranty claims against Select Comfort based on purchases made
26  through retailers (rather than Select Comfort directly) also may barred because under those
    circumstances there was no direct vertical privity between Plaintiffs and Select Comfort.  *See*
27  *Clemens*, 534 F.3d at 1023 ("a plaintiff asserting breach of [implied] warranty claims must stand
    in vertical contractual privity with the defendant…an end consumer…who buys from a retailer is
28  not in privity with a manufacturer.").

Case No. 08-2746
ORDER GRANTING MOTION TO DISMISS AND TO STRIKE WITH LEAVE TO AMEND
(JFLC1)

agreement may require; and

    (f) Conform to the promises or affirmations of fact made on the container or label if any.

This implied warranty does not "impose a general requirement that goods precisely fulfill the expectation of the buyer. Instead, it provides for a minimum level of quality." *Am. Suzuki*, 37 Cal. App. 4th at 1295 (citation omitted). The mere manifestation of a defect by itself does not constitute a breach the implied warranty of merchantability. Instead, there must be a fundamental defect that renders the product unfit for its ordinary purpose. *See id.* At the same time, this does not mean the alleged defect must preclude any use of the product at all. *See Isip v. Mercedes-Benz USA, LLC*, 155 Cal. App. 4th 19, 26 (2007) ("We reject the notion that merely because a vehicle provides transportation from point A to point B, it necessarily does not violate the implied warranty of merchantability. A vehicle that smells, lurches, clanks, and emits smoke over an extended period of time is not fit for its intended purpose.").

      In the instant case, the FAC sufficiently alleges that the Sleep Number® beds purchased by the named Plaintiffs did not conform to expectations regarding ordinary use. As in *Isip*, the fact that a person still may sleep on a moldy bed does not bar as a matter of law a claim for breach of the implied warranty of merchantability. *See* 155 Cal. App. 4th at 26. However, to allege a *prima facie* case Plaintiffs also must allege a cognizable harm. *See Andrade v. Pangborn Corp.*, No. C 02-3771, 2004 WL 2480708, at *23 (N.D. Cal. Oct. 22, 2004) (claim for breach of implied warranty must allege that plaintiff "was harmed, and…the failure of the product to have the expected quality was a substantial factor in causing the plaintiff's harm."). As discussed previously, the generalized allegations set forth in ¶ 72 of the FAC are insufficient to meet this pleading requirement. In addition, the duration of the implied warranty is "[no] less than 60 days nor more than one year following the sale of new consumer goods to a retail buyer." Cal. Civ. Code § 1791.1(c). *See also Tietsworth Sears, Roebuck and Co.*, No. C 09-00288, 2009 WL 1363548, at *3 (N.D. Cal. May 14, 2009) ("The duration of the implied warranty of merchantability is coextensive with an express warranty, but in no case is shorter than sixty days or longer than one year following sale of the goods."); *Atkinson v. Elk Corp. of Texas*, 142 Cal.

13

1  App. 4th 212, 230 (2006) ("duration of the implied warranty of merchantability under California

2  law is limited to one year.").  In the instant case, mold was not discovered until at least several

3  years after the purchase of the beds by any of the Plaintiffs.  Again, it does not appear from the

4  totality of the allegations that Plaintiffs can cure the defect in their pleading.  Accordingly,

5  Plaintiffs' claims for breach of the implied warranty of merchantability are barred and the motion

6  to dismiss with respect to such allegations will be granted, without leave to amend.

7            4.  Violation of Magnusson-Moss Act (claim 3)

8         The FAC alleges that the breach of the express warranty also constituted a violation of the

9  MMWA.  *See* FAC ¶ 117-19.  For limited written warranties and implied warranties, the

10  MMWA provides a federal cause of action for state warranty claims.  *Monticello v. Winnebago*

11  *Indus. Inc.*, 369 F. Supp. 2d 1350, 1356 (N.D. Ga. 2005).  However, it does not expand the rights

12  under those claims, and dismissal of the state law claims requires the same disposition with

13  respect to an associated MMWA claim.  *See id.  See also Clemens v. DaimlerChrysler Corp.*,

14  534 F.3d 1017, 1022 (9th Cir. 2008) ("disposition of the state law warranty claims determines the

15  disposition of the Magnusson-Moss Act claims."); *Daugherty v. Am. Honda Motor Co., Inc.*, 144

16  Cal. App. 4th 824, 833 (2006) ("the trial court correctly concluded that failure to state a warranty

17  claim under state law necessarily constituted a failure to state a claim under Magnusson-Moss.").

18  Accordingly, the motion to dismiss the MMWA claim will be granted with leave to amend with

19  respect to Plaintiff's claim for breach of express warranty.[8]

20       C.  Fraud Claims

21            1.  Concealment (claim 7)

22         The elements of an action for fraud and deceit based on concealment are: (1) the

23  defendant concealed or suppressed a material fact; (2) the defendant was under a duty to disclose

24  the fact to the plaintiff; (3) the defendant intentionally concealed or suppressed the fact with the

25  _____

26  [8] The MMWA also provides that no private action may be brought unless the defendant is
first "afforded a reasonable opportunity to cure such failure to comply" and in the case of a

27  purported class action, "such reasonable opportunity will be afforded by the named plaintiffs and
they shall at that time notify the defendant they are acting on behalf of the class." 15 U.S.C. §

28  2310(e).  The FAC does not allege that Plaintiffs provided the required notification prior to filing
suit.

Case No. 08-2746
ORDER GRANTING MOTION TO DISMISS AND TO STRIKE WITH LEAVE TO AMEND
(JFLC1)

1   intent to defraud the plaintiff; (4) the plaintiff was unaware of the fact and would not have acted

2   as he did if he had known of the concealed or suppressed fact; and (5) as a result of the

3   concealment or suppression the plaintiff sustained damage.  *Hahn v. Mirda*, 147 Cal. App. 4th

4   740, 748 (2007).  Allegations of concealment are subject to the heightened pleading requirements

5   of Rule 9(b).  *Oestreicher v. Alienware Corp.*, 544 F. Supp. 2d 964, 974 (N.D. Cal. 2008).

6        Plaintiffs argue that the FAC meets the heightened pleading required for a claim based in

7   fraud because it alleges that (1) the Sleep Number® beds had an "inherent" design defect; (2)

8   Defendants were aware of this defect and purposefully concealed it from the public; (3)

9   Defendants had a duty to disclose this defect; and (4) as a result, Plaintiffs suffered damages in

10  amount to be demonstrated at trial.  FAC ¶¶ 192-216.  However, Plaintiffs' conclusory

11  allegations do not come close to satisfying the pleading requirements of Rule 9(b), as they are not

12  based on well-pleaded facts and often are contradictory.  For example, the fact that Select

13  Comfort offered a full refund does not support the theory that it had a plan to deceive Plaintiffs

14  by somehow placating Plaintiffs and other potential litigants.  Just as conclusory is the allegation

15  that the return policy is probative of an intent to destroy evidence of the defect.  As stated in this

16  Court's prior order, "return of a defective product has been recognized by courts as a standard

17  business practice, serving many legitimate business purposes."  Order at 7.  In any event, there

18  are no allegations that Defendants *asked* any of the named Plaintiffs to return their beds.

19  Likewise, any allegations with respect attempted repairs or implementation of a new design are

20  inadmissible for the purpose of establishing the elements of the claim.  *See* Fed. R. Evid. 407.

21       The FAC also fails to plead that Defendants owed a duty to plaintiffs to disclose the

22  inherent defect, and there are no allegations suggesting that Defendants knew the actual cause of

23  the mold.  If anything, the exhibits attached to the FAC are inconsistent with to Plaintiffs'

24  concealment claim, as they contain statements indicating that Select Comfort was aware of a

25  possible mold problem, disclosed this potential issue in its public filings, and extended offers of

26  repair or refund in order to alleviate customer complaints.  FAC Exs. B & H.

27       The Court concludes that dismissal of the concealment claim is proper.  Plaintiffs cannot

28  point to any set of specific facts that support their theory of an unlawful conspiracy.  At best, it

15

appears that Select Comfort was aware of a mold issue and arguably may have not acted as urgently as possible to remedy the defect. Such allegations are insufficient to state a claim for fraudulent concealment. *See Oestreicher*, 544 F. Supp. 2d at 974 ("allegations of this nature with respect to all prongs [of a claim of concealment] could be made about any alleged design defect in any manufactured product. The heightened pleading requirements of Rule 9(b) were designed to avoid exactly this situation."). Plaintiffs previously were granted leave to amend this claim to present a viable theory for relief and still have not come close to doing so. Accordingly, the concealment claim will be dismissed without leave to amend.

### 2. Intentional Misrepresentation

To state a claim for intentional misrepresentation under California law, a plaintiff must plead seven elements with particularity: (1) the defendant represented to the plaintiff that an important fact was true; (2) that representation was false; (3) the defendant knew that the representation was false when the defendant made it, or the defendant made the representation recklessly and without regard for the truth; (4) the defendant intended that the plaintiff rely on the representation; (5) the plaintiff reasonably relied on the representation; (6) the plaintiff was harmed; and (7) the plaintiff's reliance on the representation was a substantial factor in causing that harm to the plaintiff. *Manderville v. PCG & S Group, Inc.*, 146 Cal. App. 4th 1486, 1498 (2007).

Plaintiffs allege that Defendants intentionally made false representations concerning the reliability, maintenance, and comfort of Select Comfort® beds. However, not all false statements are a basis for an affirmative fraud claim. In the instant case, Plaintiffs point to advertising slogans such as "Your Sleep Number is key to a perfect night's sleep," statements indicating that Sleep Number beds provide "an ideal level of bed comfort, firmness and support," and promises that a user would never have "a better nights sleep." FAC ¶¶ 218, 220. Because such statements are "mere puffery," they are insufficient to support Plaintiffs' intentional misrepresentation claim.

"The distinguishing characteristics of puffery are vague, highly subjective claims as opposed to specific, detailed factual assertions." *Haskell v. Time, Inc.*, 857 F. Supp. 1392, 1399

16

1  (E.D. Cal. 1994) (citing *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv., Inc.*, 911 F.2d

2  242, 246 (9th Cir. 1990)).  One test to determine if a statement is only puffery is to inquire

3  whether a reasonable consumer would consider the statement to be true.  *See id.*; *McKinniss v.*

4  *Sunny Delight Beverages Co.*, No. CV 07-02034, 2007 WL 4766525, at *5 (C.D. Cal. Sept. 4,

5  2007) ("Statements that amount to puffery are not actionable because no reasonable consumer

6  relies on puffery.").  An alleged misrepresentation can be found to be puffery as a matter of law

7  on a motion to dismiss.  *Newcal Indus., Inc. v. Ikon Office Solution*, 513 F.3d 1038, 1053 (9th

8  Cir. 2008); *Haskell*, 857 F. Supp. at 1399.

9    All of the alleged misstatements at issue here are highly subjective.  No reasonable

10  consumer would believe that a Sleep Number® bed miraculously would deliver the elusive

11  "perfect night's sleep."  Numerous other courts have arrived at the same conclusion.  *See*, *e.g.*,

12  *Stickrath v. Globalstar, Inc.*, 527 F. Supp. 2d 992, 998 (N.D. Cal. 2007) ("terms such as 'high

13  quality,' 'reliable,' 'high performance,' and 'latest technology' are non-actionable puffery");

14  *Anunziato v. eMachines, Inc.*, 402 F. Supp. 2d 1133, 1140 (C.D. Cal. 2005) ("the phrase 'latest

15  technology' is non-actionable puffery"); *Summit Tech., Inc. v. High-Line Med. Instruments, Co.*,

16  933 F. Supp. 918, 931 (C.D. Cal. 1996) ("statement that the used [products] are 'perfectly

17  reliable' is mere puffery").  *See also City of Monroe Employees Ret. Sys. v. Bridgestone Corp.*,

18  399 F.3d 651, 671 (6th Cir. 2005) (finding statement that products were "the best" in world

19  non-actionable puffery).

20    Plaintiffs argue that the representation that the beds would be "maintenance free" and that

21  a purchaser would receive "constant and wear free support night after night" are not puffery

22  because they are inconsistent with the fact that the beds need to be cleaned periodically.  *See*

23  FAC ¶ 226.  However, no product is ever maintenance-free, s*ee Summit Tech*, 933 F. Supp. at

24  931, and no consumer reasonably could have that expectation  The allegations also do not cite

25  any representations regarding specific performance characteristics.  *See Cook*, 911 F.2d at 246

26  (discussing with approval district court ruling where statement that "far brighter than any lamp

27  ever before offered for home movies" was held to be not actionable but representation that

28  product had "35,000 candle power and 10-hour life" was).

17

1   Nor do Plaintiffs provide sufficient specificity as to the precise "time, place and nature of

2   the misleading statements, misrepresentations, and specific acts of fraud." *Kaplan*, 49 F.3d at

3   1370; *Stickrath v. Globalstar, Inc.*, 527 F. Supp. 2d 992, 998 (N.D. Cal. 2007) ("Although

4   Plaintiffs identify specific comments from Defendant's website …they fail to specify the time

5   frame during which these comments appeared.").  Merely stating that a purchaser heard a

6   statement and then purchased a product in a particular year is not sufficient. *See id.*  Because

7   Plaintiffs have had a reasonable opportunity to plead an adequate claim but have failed to do so,

8   their claim for intentional misrepresentation will be dismissed without leave to amend.

9                        3.  Negligent Misrepresentation

10   The elements of a claim for negligent misrepresentation under California law are:  (1) a

11   misrepresentation of a material fact; (2) without reasonable grounds for believing it to be true; (3)

12   intent to induce reliance; (4) justifiable reliance; and (5) resulting damage.  *Glen K. Jackson, Inc.*

13   *v. Roe*, 273 F.3d 1192, 1200 n.2 (9th Cir. 2001).  Negligent misrepresentation is a claim based in

14   fraud and thus is subject to the heightened pleading requirements of Fed. R. Civ. P. 9(b).  *See*

15   *Neilson v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d 1101, 1141 (C.D. Cal. 2003) ("It is

16   well-established in the Ninth Circuit that both claims for fraud and negligent misrepresentation

17   must meet Rule 9(b)'s particularity requirement").  As with a claim for intentional

18   misrepresentation, statements amounting to mere puffery are not actionable.  *See Glen Holly*

19   *Ent,'t Inc. v. Tektronix Inc.*, 343 F.3d 1000, 1015 (9th Cir. 2003).  In addition, any allegations

20   that reference statements made in the express warranty—and that are alleged elsewhere in

21   Plaintiffs' claim for breach of contract—cannot form the basis of an negligence claim.  *Robinson*

22   *Helicopter*, 34 Cal. 4th at 990 ("If every negligent breach of a contract gives rise to tort damages

23   the limitation would be meaningless, as would the statutory distinction between tort and contract

24   remedies.").

25   Because it is based on the same statements as Plaintiffs' intentional misrepresentation

26   claim, and thus is insufficient for the same reasons discussed previously, the claim for negligent

27   misrepresentation will be dismissed without leave to amend.  *See Glen Holly*, 343 F.3d at 1016

28   (no viable claim without "justifiable reliance").

18

1       D. Antitrust

2           1.  Sherman Act § 1 (claim 12)

3           Section 1 of the Sherman Act prohibits "[e]very contract, combination…or conspiracy, in

4    restraint of trade."  15 U.S.C. § 1.  Thus, a successful claim under Section 1 requires (1) an

5    agreement that (2) unreasonably restrains trade and (3) has an effect on interstate or foreign

6    commerce.  *See*, *e.g.*, *Tanaka v. Univ. of S. Cal.*, 252 F.3d 1059, 1062 (9th Cir. 2001). At the

7    pleading stage the plaintiff only need allege facts that, if true, would establish the three elements

8    of a Section 1 claim.  *See Twombly*, 127 S. Ct. at 1964-66.

9           The FAC alleges there was an agreement among Defendants to conceal the alleged defect

10   or in the alternative a conspiracy to restrain competition by gaining an unfair advantage because

11   the beds in fact were defective as compared to the products offered by competitors.  *See* FAC ¶¶

12   285-288.  There are multiple flaws in this premise, several of which are fatal to the claim.  As an

13   initial matter, the allegation does not satisfy the minimal pleading requirements for a § 1 claim

14   because there is no description of the "specific time, place, or person involved in the alleged

15   conspiracies."  *Twombly*, 550 U.S. at 565 n.10.  Plaintiffs also fail to define a relevant market.

16   "Failure to identify a relevant market is a proper ground for dismissing a Sherman Act claim."

17   *Tanaka*, 252 F.3d at 1063.

18          There is no requirement that a relevant market for purposes of a Section 1 claim be pled

19   with specificity.  *Newcal Indus., Inc. v. Ikon Office Solution*, 513 F.3d 1038, 1045 (9th Cir.

20   2008).  Thus, Plaintiffs' allegations are not deficient for purposes of a Rule 12(b)(6) motion so

21   long as the description of the alleged market is not inadequate as a matter of law.  *See id.*

22   However, there are several threshold requirements for legal sufficiency.  For example, the

23   relevant market must be defined by the products or producers, not its consumers.  *Id*.  In addition,

24   the relevant market must "encompass the product at issue as well as all economic substitutes for

25   the product."  *Id*.  In other words, the relevant market should be defined by the reasonable

26   interchangeability between the product and its substitutes.  *See id.*  When alerted to this

27   deficiency at the hearing for oral argument, Plaintiffs represented that the relevant market was

28   that for Sleep Number® beds or beds sold by Select Comfort.  Such an allegation clearly is

19

1    inadequate as it assumes that there are no substitutes for Select Comfort beds, a fungible good.

2    "[A] company does not violate the Sherman Act by virtue of the natural monopoly it holds over

3    its own product." *TV Commc'n Network, Inc. v. Turner Network Television, Inc.*, 964 F.2d 1022,

4    1025 (10th Cir. 1992) (citing *U.S. v. E. I. du Pont de Nemours & Co.*, 351 U.S. 377, 393 (1956)).

5            Most critically, Plaintiffs have alleged no cognizable antitrust injury.  "The Ninth Circuit

6    has identified four requirements for antitrust injury: (1) unlawful conduct, (2) causing an injury

7    to the plaintiff, (3) that flows from that which makes the conduct unlawful, and (4) that is of the

8    type the antitrust laws were intended to prevent."  *In re Dynamic Random Access Memory*

9    *(DRAM) Antitrust Litigation*, 536 F. Supp. 2d 1129, 1136 (N.D. Cal. 2008) (citing *Am. Ad*

10   *Mgmt., Inc. v. Gen. Tel. Co. of Cal.*, 190 F.3d 1051, 1055 (9th Cir. 1999)).  The antitrust laws are

11   intended to prevent harm to competition manifested as higher prices, lower output, or decreased

12   quality in the products within a defined market. *See Am. Ad Mgmt.*, 190 F.3d at 1055.  Not every

13   harm to a consumer constitutes an antitrust injury. *See Atl. Richfield Co. v. USA Petroleum Co.*,

14   495 U.S. 328, 343 ("The antitrust injury requirement ensures that a plaintiff can recover only if

15   the loss stems from a competition-reducing aspect or effect of the defendant's behavior.").

16   Injuries that are derivative from the alleged conduct or where causation is highly speculative are

17   not an appropriate basis for an antitrust claim. *See Am. Ad Mgmt.*, 190 F.3d at 1055.

18           In the instant case, there are no allegations of an agreement with competitors that would

19   result in harm to competition.  Even if there were such an agreement, the alleged injury suffered

20   by Plaintiffs—defective beds and potentially some quantum of peripheral harm to property—is a

21   derivative and indirect injury.  Viewing the allegations in the FAC as true, it is apparent that the

22   alleged injury could have been caused only by a defective part, not by any agreement to restrain

23   competition.  This fact precludes Plaintiffs from stating a viable antitrust claim. *See Toscano v.*

24   *PGA Tour, Inc.*, 201 F. Supp. 2d 1106, 1119 (E.D. Cal. 2002) ("the mere appearance of an

25   antitrust injury in a lawsuit otherwise notable for its absence of a direct connection between

26   plaintiff and injury is insufficient as a matter of law to establish antitrust standing.).  Plaintiffs'

27   attempt to wedge an antitrust claim into a case grounded on alleged common-law tort and breach

28   of contract claims will be dismissed, without leave to amend.

1

2.  Cartwright Act (claim 13)

2      "California's Cartwright Act, Cal. Bus. & Prof. Code 16700-16770, is patterned after the

3   Sherman Act.  California courts look to federal case law interpreting the Sherman Act for

4   guidance in interpreting the Cartwright Act."  *Big Bear Lodging Ass'n v. Snow Summit, Inc.*, 182

5   F.3d 1096, 1101 n.2 (9th Cir. 1999).  Accordingly, Plaintiffs' antitrust claim under state law also

6   will be dismissed without leave to amend.

7      E.  RICO (claims 15 and 16)

8      "To state a claim under § 1962(c), a plaintiff must allege '(1) conduct (2) of an enterprise

9   (3) through a pattern (4) of racketeering activity.'"  *Odom v. Microsoft Corp.*, 486 F.3d 541, 547

10  (9th Cir. 2007) (quoting *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985).  These

11  elements also must be alleged adequately in order for a plaintiff to maintain a cause of action for

12  conspiracy to commit a RICO violation.  *Neibel v. Trans World Assurance Co.*, 108 F.3d 1123,

13  1127 (9th Cir. 1997).  Plaintiffs' RICO claim is grounded on alleged misrepresentations with

14  respect to the propensity of Sleep Number® beds to develop mold and an ongoing campaign by

15  Defendants to withhold information about the mold problem from the general public.  *See* FAC ¶

16  330.  Accordingly, the claim is subject to the pleading requirements of Rule 9(b).  *See Alan*

17  *Neuman Prods., Inc. v. Albright*, 862 F.2d 1388, 1392 (9th Cir. 1988).  The FAC fails to set forth

18  a cognizable RICO claim in several respects.

19     RICO defines "enterprise" to include "any individual, partnership, corporation,

20  association, or other legal entity, and any union or group of individuals associated in fact

21  although not a legal entity."  18 U.S.C. § 1961(4).  An enterprise need not be exclusively

22  criminal in nature to come under the auspices of RICO.  *U.S. v. Turkette*, 452 U.S. 576, 580-81

23  (1981).  Instead, an enterprise need only be an "ongoing organization, formal or informal," so

24  long as the organization functions as a "continuing unit."  *Odom*, 486 F.3d at 552 (quoting

25  *Turkette*, 452 U.S. at 583).  Plaintiffs appear to allege that the Defendants Sleep Train, Select

26  Comfort, and BBB formed an enterprise with the purpose of misleading the public about Sleep

27  Number® beds.  *See* FAC ¶ 324.  However, the FAC is devoid of allegations as to how this

28  enterprise operated, when it operated, and what structure was in place for executing the purpose

21

1   of the enterprise.  Nor does the FAC provide any information about Select Comfort and BBB that

2   would support their involvement in any enterprise.  Such an omission is fatal to the claim.  *See*

3   *Izenberg v. ETS Servs.*, *LLC*, 589 F. Supp. 2d 1193, 1203 (C.D. Cal. 2008) (allegations focusing

4   on one defendant are insufficient to satisfy enterprise element of RICO claim).

5          Plaintiffs also fail to adequately allege "a pattern of racketeering activity."  In order to

6   allege the existence of a "pattern" of racketeering activity, the plaintiff must allege at least two

7   predicate acts, or two instances of such activity.  *Bowen v. Oistead*, 125 F.3d 800, 806 (9th Cir.

8   1997).  The alleged racketeering activity here is a "public relations and media campaign" to

9   mislead the general public.  However, no additional details are provided with respect to when the

10  statements were made, how the statements misled the public, and intent behind the alleged

11  misstatements other than the conclusory allegation that Defendants intended to mislead the

12  public.  *See* FAC ¶ 330.  This scarcity of substantive allegations requires dismissal.  *See Savage*

13  *v. Council on American-Islamic Relations, Inc.*, No. C 07-6076, 2008 WL 2951281, at *14 (N.D.

14  Cal. July 25, 2008) (RICO claim based in fraud requires that a plaintiff "specifically alleg[e] the

15  time and place of the misrepresentation, manner of misrepresentation, and parties to the

16  misrepresentation.") (citing *Schreiber Distrib. Co. v. ServWell Furniture Co.*, 806 F.2d 1393,

17  1401 (9th Cir.1986)).  *See also Graf v. Peoples*, No. CV 07-4731, 2008 WL 4189657, at *6

18  (C.D. Cal. Sept. 4, 2008) ("'shotgun' pleading is insufficient to plead a RICO claim.").  A

19  cognizable RICO claim also requires a "a concrete financial loss."  *Izenberg*, 589 F. Supp. 2d at

20  1204.  Prospective injuries do not satisfy this requirement.  *Id.*  The generalized allegations of ¶

21  72 of the FAC thus fail to meet the pleading requirements of Rule 9(b).  *See id.*

22         Plaintiffs previously were afforded an opportunity to amend their complaint with respect

23  to their allegations of fraudulent concealment—which in many respects overlaps with their RICO

24  theory—and as discussed above they again have failed to assert particularized allegations

25  regarding Defendants' fraudulent conduct.  In light of this fundamental defect, as well as

26  numerous additional shortcomings in the RICO claim as currently pled, the RICO claim will be

27  dismissed, without leave to amend.  Because Plaintiffs have failed to plead a viable claim for

28  relief under § 1962(c), their conspiracy claim also will be dismissed without leave to amend.  *See*

22

1  *Howard v. Am. Online Inc.*, 208 F.3d 741, 751 (9th Cir. 2000) ("Plaintiffs cannot claim that a

2  conspiracy to violate RICO existed if they do not adequately plead a substantive violation of

3  RICO.").

4      F.  CLRA (claim 14)

5      The CLRA requires that written notice be provided to the seller at least thirty days prior

6  to commencement of an action seeking damages.  Cal. Civ. Code § 1782(a).  *See also Sanbrook*

7  *v. Office Depot, Inc.*, No. C-07-05938, 2008 WL 1994884, at *3 (N.D. Cal. May 5, 2008) ("This

8  section requires the notice to be in writing and be sent certified or registered mail, return receipt

9  requested, to the place where the transaction occurred or to the person's principal place of

10  business within California.").  Failure to provide such notice prior will result in dismissal of the

11  claim with prejudice.  *Cattie v. Wal-Mart Stores, Inc.*, 504 F. Supp. 2d 939, 950 (S.D. Cal. 2007).

12      The FAC does not allege that Stearns or any of the other named Plaintiffs provided

13  written notice of their CLRA claim, which seeks "damages in an amount to be proven at trial."

14  FAC ¶ 317.  In an attempt to avoid this deficiency, Plaintiffs argue that Select Comfort was

15  aware of customer complaints and thus had sufficient notice of the impending CLRA claim.

16  Even assuming that Select Comfort was put on notice, the CLRA does not provide that notice

17  may be provided on behalf of the aggrieved consumer by third parties, and Plaintiffs cite no

18  support for this proposition.  The CLRA claim will be dismissed without leave to amend.

19      G.  CPSA (claim 17)

20      Plaintiffs' CPSA claim alleges that Defendants failed to report a defect to the Consumer

21  Product Safety Commission.  FAC ¶¶ 341-42.  However, no private right of action exists under

22  the CPSA.  *In re All Terrain Vehicle Litig.*, 979 F.2d 755, 757 (9th Cir. 1992).  Plaintiffs argue

23  that the FAC sufficiently alleges a claim for relief under the CPSA because "there are several

24  FTC rules related to mold which suggest that both rules and orders of the commission have been

25  violated."  Opp. at 21.  Contrary to Plaintiffs' assertion, however, the FAC contains no reference

26  to any FTC rule or regulation, and they have not cited any case authority that supports their

27  position.  Accordingly, the CPSA claim will be dismissed without leave to amend.

28

1    H.  FAL (claim 11)

2        Plaintiffs allege that Defendants violated the FAL by making the following statement: "a

3    perfect night's sleep is not only possible, but can be yours forever.  Starting tonight."  FAC ¶

4    273.  The proposed remedies for this allegedly false and deceptive statement are (1) injunctive

5    relief in the form of a recall of all Sleep Number beds purchased between 1987 and the present,

6    as well as notice to all potential class members of the defect; (2) restitution of all consideration

7    paid to Plaintiffs; (3) "punitive and exemplary damages" to deter future misconduct; and (4)

8    attorneys' fees and costs.  *Id.* ¶¶ 276-279.

9        "[G]eneralized and vague statements of product superiority" are not actionable under the

10   FAL.  *Oestreicher*, 544 F. Supp. at 973.  *See also Anunziato*, 402 F. Supp. 2d at 1139

11   ("Generalized, vague, and unspecified assertions constitute 'mere puffery' upon which a

12   reasonable consumer could not rely, and hence are not actionable.") (quoting *Glen Holly*, 343

13   F.3d at 1005.  As discussed previously, the statements at issue in the instant case amount to no

14   more than mere puffery because they are generalized assertions and not easily verifiable as fact.[9]

15   *See Cook*, 911 F.2d at 246 ("The common theme that seems to run through cases considering

16   puffery in a variety of contexts is that consumer reliance will be induced by specific rather than

17   general assertions.").  Accordingly, the FAL claim will be dismissed without leave to amend.

18   I.  UCL (claim 10)

19       The UCL prohibits "any unlawful, unfair or fraudulent business act or practice and unfair,

20   deceptive, untrue or misleading advertising."  Cal. Civ. Code § 17200.  Accordingly, "[a]n act

21   can be alleged to violate any or all of the three prongs of the UCL—unlawful, unfair, or

22   fraudulent."  *Berryman v. Merit Prop. Mgmt., Inc*., 152 Cal. App. 4th 1544, 1554 (2007).

23       1.  "Unlawful" Business Practices

24       For an action based upon an allegedly unlawful business practice, the UCL "borrows

25   violations of other laws and treats them as unlawful practices that the unfair competition law

26   makes independently actionable."  *Cel-Tech Communications, Inc. v. Los Angeles Cellular Tel.*

27

28       [9] Additional alleged misstatements include representations that a user would "wak[e] up
     well rested and refreshed" and receive the "perfect night's sleep."  FAC ¶ 220.

Case No. 08-2746
ORDER GRANTING MOTION TO DISMISS AND TO STRIKE WITH LEAVE TO AMEND
(JFLC1)

1   *Co.*, 20 Cal. 4th 163, 180 (1999).  *See also Farmers Ins. Exchange v. Superior Court*, 2 Cal. 4th

2   377, 383 (1992).  However, such allegations "must state with reasonable particularity the facts

3   supporting the statutory elements" of the alleged violation.  *Silicon Knights, Inc. v. Crystal*

4   *Dynamics, Inc.*, 983 F. Supp. 1303, 1316 (N.D. Cal. 1997) (quoting *Khoury v. Maly's of Cal.,*

5   *Inc.*, 14 Cal. App. 4th 612, 619 (1993)).  As discussed previously, Plaintiffs' antitrust, RICO,

6   CLRA, CPSA, FAL, misrepresentation, and concealment claims are subject to dismissal without

7   leave to amend, and thus those alleged violations cannot form the basis of a derivative UCL

8   claim going forward.  *See id.*  Nor may Plaintiffs' negligence or product liability claims

9   constitute predicate acts for a UCL claim.  *See Hartless v. Clorox Co.*, No. 06-CV-2705, 2007

10  WL 3245260, at *5 (S.D. Cal. Nov. 2, 2007) (common-law claims cannot form basis for UCL

11  claim).  Accordingly, Plaintiffs fail to state a claim under the "unlawful" prong of the UCL.

12                    2. "Fraudulent" Business Practices

13          A UCL claim predicated on an act of fraud is subject to the heightened pleading standards

14  of Rule 9(b).  *Vess*, 317 F.3d at 1103-04.  As discussed previously, Plaintiffs have failed to plead

15  acts of fraud with sufficient particularity.

16                    3. "Unfair" Business Practices

17          A claim for unfair business practices may be grounded upon a violation of a statute.  For

18  example, misleading statements may form the basis for either a UCL and FAL claim.  *See*

19  *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995).  To state such a claim, a plaintiff must

20  show only that "members of the public are likely to be deceived."  *Id.* ( citations and internal

21  quotation omitted).  Unverifiable or generalized statements are not actionable, for as with claims

22  of intentional misrepresentation, such statements "are not actionable because no reasonable

23  consumer relies on puffery."  *Stickrath v. Globalstar, Inc.*, 527 F. Supp. 2d 992, 998 (N.D. Cal.

24  2007) (quoting *Williams v. Gerber Prods. Co.*, 439 F. Supp. 2d 1112, 1115 (S.D. Cal. 2006)).  In

25  the instant case, a UCL claim predicated upon the Select Comfort's advertising is not actionable

26  because the alleged misrepresentations amount to no more than mere puffery.  *See Oestreicher*,

27  544 F. Supp. 2d at 973.

28          Plaintiffs also allege a "standalone" UCL claim, *see* FAC ¶¶ 266-67, accusing Defendants

                                                25

of unfair business practices.  "[A] practice may be deemed unfair even if not specifically proscribed by some other law." *Cel-Tech*, 20 Cal. 4th at 180.  Plaintiffs' allegations appear to mirror the elements of an unfair business practices claim as set forth in *Camacho v. Automobile Club of Southern California*, 142 Cal. App. 4th 1394 (2006), in which the court stated that a viable claim for relief may exist if the following conditions are met:  "1) the consumer injury must be substantial; (2) the injury must not be outweighed by any countervailing benefits to consumers or competition; and (3) it must be an injury that consumers themselves could not reasonably have avoided."  *Id.* at 1403.  However, Plaintiffs must set forth more than conclusory allegations that mirror the elements of the claim.  In addition, it is unclear from the FAC whether the alleged "malfeasance" refers to the advertising statements, some species of fraud, or an unfair business practice that actually meets the *Camacho* test.  Accordingly, the motion to dismiss will be granted, with leave to amend so as to enable Plaintiffs to set forth more clearly their theory of liability under the UCL.  *See Anderson v. Dist. Bd. of Trustees of Cent. Fl. Comm. Coll.*, 77 F.3d 364, 367(11th Cir. 1996) ("Experience teaches that, unless cases are pled clearly and precisely, issues are not joined, discovery is not controlled, the trial court's docket becomes unmanageable, the litigants suffer, and society loses confidence in the court's ability to administer justice.").

### 4.  Available Remedies

A UCL action is equitable in nature, and damages cannot be recovered.  *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1144 (2003).  A plaintiff may obtain restitution and/or injunctive relief against unfair or unlawful practices in order to protect the public and restore to the parties in interest money or property taken by means of unfair competition.  *State v. Altus Fin., S.A.*, 36 Cal. 4th 1284, 1303 (2005).  In their UCL claim, Plaintiffs seek "restitution of all consideration paid to defendants" and "injunctive relief compelling defendants to recall the Sleep Number® bends manufactured between 1987 and the present date and provide notice to all Class Members of the inherently defective condition of these Sleep Number® beds."  FAC ¶¶ 269-70.  As set forth above, the FAC alleges that all named Plaintiffs have received restitution.  However, Plaintiffs still may seek injunctive relief if they have suffered a cognizable injury due to Defendants' conduct.  *See White v. Trans Union, LLC*, 462 F. Supp. 2d 1079, 1083-84 (C.D.

26

1    Cal. 2006) (some form of injury-in-fact confers standing under UCL).  The FAC contains

2    generalized allegations with respect to property damage, *see* FAC ¶ 72, and as discussed

3    previously Plaintiffs will be granted leave to amend those allegations to provide a greater degree

4    of particularity.

5                        5.  Statute of Limitations

6            Defendants also argue that the UCL claim is barred by the statute of limitations.  A claim

7    for relief brought pursuant to the UCL must be "commenced within four years after the cause of

8    action accrued."  Cal. Bus. & Prof. Code § 17208.  *See also Harshbarger v. Phillip Morris, Inc*.,

9    2003 WL 23342396, at *5 (N.D. Cal. April 1, 2003).  According to the FAC, all of the named

10   Plaintiffs purchased their Sleep Number® bed more than four years prior to the filing of the

11   instant action.  Courts have arrived at different conclusions as to when the cause of action

12   accrues.  *Compare Rambus Inc. v. Samsung Elecs. Co.*, Nos. C-05-02298 & C-05-00334, 2007

13   WL 39374, at *3 (N.D. Cal. Jan. 4, 2007) ("[plaintiff] cannot rely upon the discovery rule for its

14   Section 17200 claim"); *Snapp & Assocs. Ins. Servs., Inc. v. Malcolm Bruce Burlingame

15   Robertson*, 96 Cal. App. 4th 884, 891 (2002) ("The 'discovery rule,' which delays accrual of

16   certain causes of action until the plaintiff has actual or constructive knowledge of facts giving

17   rise to the claim, does not apply to unfair competition actions.  Thus, 'the statute begins to

18   run…irrespective of whether plaintiff knew of its accrual, unless plaintiff can successfully invoke

19   the equitable tolling doctrine.'") (citation omitted), *with Mass. Mut. Life Ins. Co. v. Superior

20   Court*, 97 Cal. App. 4th 1282, 1295 (2002) (statute of limitations for a UCL claim "will probably

21   run from the time a reasonable person would have discovered the basis for a claim").  Because

22   the underlying basis for Plaintiffs' UCL claim is unclear and presumably will be better described

23   in a subsequent amended pleading, Court will defer its determination as to the applicability of

24   the statute of limitations.

25           J.  Class claims

26           Under Fed. R. Civ. P. 23, a district court has "broad discretion" in determining whether to

27   certify a class.  *See Dukes v. Wal-Mart, Inc.*, 509 F.3d 1168, 1176 (9th Cir. 2007).  A plaintiff

28   seeking to bring a class action has the burden of showing that: (1) the class is so numerous that

                                        27

1   joinder of all members is impracticable; (2) there are questions of law or fact common to the

2   class; (3) the claims or defenses of the representative parties will fairly and adequately protect the

3   interests of the class; and (4) the representative parties will fairly and adequately protect the

4   interests of the class.  Fed. R. Civ. P. 23(a); *Dukes*, 509 F.3d at 1176.  If the plaintiff

5   demonstrates that these four requirements have been satisfied, then he or she must also show

6   "that the action is maintainable under Rule 23(b)(1), (2), or (3)."  *Amchem Prods., Inc. v.*

7   *Windsor*, 521 U.S. 591, 614 (1997).  *See also Wiener v. Dannon Co., Inc*., 255 F.R.D. 658, 668

8   (C.D. Cal. 2009).

9        The FAC defines the purported class as "[a]ll original purchasers of a Select Comfort®

10   bed manufactured by SELECT COMFORT between January 1, 1987 and the present date whose

11   beds contain mold."  FAC ¶ 73.  At oral argument, and in response to Defendants' valid

12   contention that a nationwide class would be overly ambitious in light of the discrepancies in

13   applicable state laws and the individualized circumstances of each bed purchaser, Plaintiffs

14   represented that they would be willing to limit the class to California residents.  This concession

15   would eliminate the Fullers as class plaintiffs because are Florida residents.  In addition, Plaintiff

16   B. Williams arguably is not an "original" purchaser, as it is alleged that his mother, Plaintiff K.

17   Williams, purchased the bed in question.  *See* FAC ¶¶ 228-29.  These deficiencies would require

18   denial of class certification based on the present state of the pleadings.

19        Moreover, the elements of proof with respect to the property damage alleged in ¶ 72 of

20   the FAC likely will vary significantly among class members, depending on when the bed was

21   purchased (and whether any anti-fungal measures were included in the product) and the

22   surrounding environmental conditions.  The amount of damage incurred also will vary.  Some

23   class members only may require a new bed or a refund, while others conceivably may have

24   suffered extensive property damage from the spread of mold.  Plaintiffs have not shown how

25   these potentially diverging interests would be addressed in a broadly defined class.

26        In addition, "Article III requires that the representative or named plaintiff must share the

27   same injury or threat of injury."  *DuPree v. U.S.*, 559 F.2d 1151, 1153 (9th Cir. 1977).  *See also*

28   *Sosna v. Iowa*, 419 U.S. 393, 403 (1975) ("A litigant must be a member of the class which he or

28

1  she seeks to represent at the time the class action is certified").  In the instant case, it is not yet

2  clear whether any of the named Plaintiffs have set forth a cognizable claim under any of their

3  numerous legal theories.  Accordingly the motion to strike will be granted, without prejudice to

4  Plaintiffs seeking class certification in an amended pleading.

5                                    **IV.  ORDER**

6         Good cause therefor appearing, the motion to dismiss or strike is GRANTED with leave

7  to amend only with respect to Plaintiffs' claims for negligence, strict product liability, breach of

8  express warranty, and violations of the MMWA and UCL.  Any amended complaint shall be

9  filed within thirty (30) days of the date of this order.  Plaintiffs shall not add any new defendants,

10  plaintiffs or claims for relief without leave of the Court.

11

12  IT IS SO ORDERED.

13

14

15

16  DATED: June 5, 2009

17

18                                    _____

19                                    JEREMY FOGEL
                                      United States District Judge

20

21

22

23

24

25

26

27

28

Case No. 08-2746
ORDER GRANTING MOTION TO DISMISS AND TO STRIKE WITH LEAVE TO AMEND
(JFLC1)

This Order has been served upon the following persons:

Andrew Scott Hansen      ahansen@oppenheimer.com

Andrew Vinson Stearns      astearns@loboinc.com, icamarena@loboinc.com, lmoniz@loboinc.com, sberki@loboinc.com

Dianne L. Sweeney      dianne@pillsburylaw.com, al.guzman@pillsburylaw.com, janice.hall@pillsburylaw.com, louis.santaana@pillsburylaw.com, meri@pillsburylaw.com

Heidi A.O. Fisher      hfisher@oppenheimer.com

Jennifer Hutcheson McCune      jmccune@jzsw.com

Meghan M Anzelc      manzelc@oppenheimer.com

Vernon H. Granneman      vernon.granneman@pillsburylaw.com, david.tull@pillsburylaw.com, meri@pillsburylaw.com

Wendy L. Wilcox      wwilcox@jzsw.com

Robert M. Gagliasso
Bustamante O'Hara & Gagliasso
River Park Tower
333 W. San Carlos Street
8th Floor
San Jose, CA 95110

30