1

2                                                    **E-Filed 12/4/2009**

3

4

5

6

7                    IN THE UNITED STATES DISTRICT COURT

8               FOR THE NORTHERN DISTRICT OF CALIFORNIA

9                            SAN JOSE DIVISION

10

11

12

13   MOLLY STEARNS, et al.                  Case Number 08-2746 JF (PVT)

14                    Plaintiffs,
                                            ORDER[1] GRANTING MOTIONS TO
15          v.                              STRIKE AND DISMISS WITH
                                            LIMITED LEAVE TO AMEND
16   SELECT COMFORT RETAIL CORPORATION,
     a Minnesota Corporation; BED BATH &    [re: docket no. 64]
17   BEYOND, INC. a New York Corporation; and
     THE SLEEP TRAIN, a California Corporation,
18
19                    Defendants.

20

21          Plaintiffs, on behalf of themselves and all residents of California and Florida similarly

22   situated, assert various claims arising from the development of mold in beds designed,

23   manufactured, distributed and sold by Defendant Select Comfort Retail Corporation ( "Select

24   Comfort"), a Minnesota corporation.  Defendant The Sleep Train, Inc. ("Sleep Train") is a

25   California corporation that sells Sleep Number® beds in its retail stores.  Defendant Bed Bath &

26   Beyond ("BBB") is a New York corporation that at one time leased space to Select Comfort in

27   _____

28          [1] This disposition is not designated for publication in the official reports.

Case Number 08-2746 JF (PVT)
ORDER GRANTING MOTIONS TO STRIKE AND DISMISS WITH LIMITED LEAVE TO AMEND
(JFLC1)

1   some of its stores for the sale of Sleep Number® beds.  Defendants move to strike Plaintiffs'

2   newly-alleged individual claims for personal injuries and putative class allegations based upon

3   Florida Statute 501.202, et seq.  They also move to dismiss Plaintiffs' second amended complaint

4   ("SAC") in its entirety and to strike all of the purported class claims contained therein.  For the

5   reasons set forth below, both motions will be granted, with limited leave to amend.

## I.  BACKGROUND

### A. Procedural History

On April 25, 2008, Plaintiff Molly Stearns ("Stearns"), a California resident, filed a

complaint in the Santa Clara Superior Court alleging that she had found mold in a Sleep

Number® bed purchased at BBB in 2000.  The complaint alleged claims for strict product

liability, intentional misrepresentation, negligent misrepresentation, concealment, breach of

express warranty, and breach of implied warranty.  Stearns also sought to bring a class action on

behalf of all purchasers and users of Sleep Number® beds purchased between January 1, 1987

and December 31, 2005.  Defendants removed the action to this Court and then moved to dismiss

all of Stearns' claims except for the product liability claim and to strike the class allegations.  On

October 1, 2008, the Court dismissed the complaint with leave to amend.  In striking Stearns'

class claims, the Court noted the inherent difficulty of maintaining a class action arising from

alleged personal injuries.  Dkt. #28 at 11-12.  On October 30, 2008, Stearns and additional

named plaintiffs filed their first amended complaint ("FAC"), amending their previous claims

and adding a new defendant (Sleep Train).  The FAC also included new claims for relief based

upon (1) negligence; (2) violation of the Magnusson-Moss Warranty Act ("MMWA"); (3) unfair

competition pursuant to the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code

§ 17200 *et seq.*; (4) false advertising pursuant to the California False Advertising Law ("FAL"),

Cal. Bus. & Prof. Code § 17500 *et seq.*; (5) violation of Section 1 of the Sherman Act; (6)

violation of California's Cartwright Act; (7) violation of the California Consumers Legal

Remedies Act ("CLRA"), Cal. Civ. Code § 1750; (8) violation of the Racketeering Influenced

and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c); (9) conspiracy in violation of

RICO, 18 U.S.C. § 1962(d); and (10) violation of the Consumer Product Safety Act ("CPSA"),

2

15 U.S.C. § 2064, *et seq.* In addition, the claim for breach of express warranty was asserted expressly pursuant to Uniform Commercial Code ("UCC") § 2-313. The implied warranty claim was bifurcated into separate claims for breach of the implied warranty of merchantability (UCC § 2-314) and breach of the implied warranty of fitness (UCC § 2-315). In total, Plaintiffs asserted seventeen claims for relief, none of which included claims based upon personal injuries. On June 5, 2009, the Court granted Defendants' motion to dismiss with leave to amend in part. Leave to amend was limited expressly to Plaintiffs' claims based upon negligence, strict product liability, breach of express warranty, and violations of the MMWA and UCL. The Court also granted Defendants' motion to strike Plaintiffs' purported class claims. The Order stated clearly that Plaintiffs could "not add any new defendants, plaintiffs or claims for relief without leave of the Court." Dkt. #59 ("Order") at 29.

On July 6, 2009, Plaintiffs filed the operative SAC, asserting claims for negligence, strict product liability, breach of express warranty, and violations of the MMWA and UCL. The SAC also includes a new claim under Florida's unfair competition statute, and personal injuries once again are alleged as a basis for Plaintiffs' claims for negligence and strict product liability. Defendants filed the instant motion on September 18, 2009.

**B. General Allegations**

Select Comfort first began designing, manufacturing, distributing and selling Sleep Number® beds in 1987. SAC ¶ 29. A limited twenty-year warranty accompanied each Sleep Number® bed. *Id.* ¶¶ 29, 172. Plaintiffs allege that the Sleep Number® bed is defectively designed, causing it to develop mildew and mold. *Id.* ¶ 40. They claim that the bed's frame supports one or two air chambers, also known as bladders, that are surrounded by foam pieces known as inserts or toppers. *Id.* ¶¶ 39, 40. The inserts and toppers then are "enclosed by another level of foam and a cover which completes the enclosure." *Id.* ¶ 39. The bladders are covered with a canvas material that, along with the foam components, allegedly "absorb[s] moisture which is never naturally ventilated due in part to the construction of the bladder which is a piece of rubber or PVC sandwiched between two pieces of canvas." *Id.* Plaintiffs allege that the bed's design is "inherently defective" because it is "an encapsulated closed system that is not air

3

1  permeable." *Id.* ¶ 40.

2      According to Plaintiffs, moisture produced by human perspiration "collects on top of the

3  bladder and is absorbed and stored in the foam padding which acts as a sponge." *Id.*  Mold then

4  allegedly develops on the bladder and the foam and cannot be cleaned off, as it is found in an

5  enclosed area.  *Id.*  The SAC alleges that the "air migrates from the outside environment into the

6  bed and stops at the top of the vapor barrier (bladder) where it is then exhausted in contaminated

7  form into the outside environment – some of the spores become airborn[e] and migrate up

8  through the mattress cover and into the bedding."  *Id.*  Plaintiffs allege that mold does not

9  typically grow in other beds, because most "upholstered products...account for the need for

10  ventilation and provide breathable features to prevent exactly the scenario that the Sleep

11  Number® bed produces."  *Id.* ¶ 41.  Plaintiffs claim that Select Comfort has received thousands

12  of complaints related to mold growth in its Sleep Number® bed prior to and since 2004.  *Id.* ¶ 45.

13      Plaintiffs allege that in 2005, when Select Comfort made improvements to the Sleep

14  Number® bed, it allegedly applied mold inhibitors only to the "mattress covers" and not to the

15  air chambers and foam toppers of the bed. *Id.* ¶ 69.  This allegation is directly contradicted by

16  language found in Exhibit F (a Yahoo! Buzz article entitled, "The Real Deal," posted on June 8,

17  2008), which Plaintiffs themselves attached as an exhibit to the FAC.  FAC Ex. F at 47.   In this

18  article, Select Comfort represented publicly that, "All key components of the Sleep Number®

19  bed – including foam, air chambers, and fabrics – are treated with a proprietary anti-microbial

20  agent to deter the growth of mold, mildew, and bacteria." *Id.*

21      Select Comfort's limited warranty promises repair or replacement of a defective product

22  or component. SAC ¶ 34.  The language of the limited warranty indicates that repair or

23  replacement of the defective product or component is the "exclusive remedy, in lieu of all

24  incidental, special or consequential damages, including for negligence...Select Comfort will bear

25  no other damages or expenses."  *Id.*  Plaintiffs allege that Defendants are unable to repair the

26  defect and that replacements of the defective product only has led to replacement of one defective

27  part with another defective part. *Id.* ¶ 33.  While the limited warranty does not mention explicitly

28  the availability of a full refund for customers who have found mold in their beds, Select Comfort

4

in fact has offered, in addition to replacement components and replacement of the entire bed, a full refund at no charge to the customer.  FAC, Ex. B at 17 (indicating in an online customer complaint board that a customer who has an issue with mold is entitled to a full refund and providing the Select Comfort Customer Care phone number).  However, Plaintiffs now claim that Select Comfort "selectively enforces the terms of the warranty and provides refunds to customers in a selective manner and customarily only to those that complain and assert injury beyond the product itself and in some cases not at all." SAC ¶ 34.

### C. Individual Allegations

#### 1. Molly Stearns

Stearns alleges that she purchased a Sleep Number® bed in 2000 at BBB, that she discovered mold in her bed, contacted Select Comfort customer service in April 2008, and subsequently received a refund check from Select Comfort without having requested one.  The check did not include additional money for Stearns' alleged additional property damage or "associated costs with replacing the defective products." *Id.* ¶¶ 17, 56, 76 (including replacement bedding).  Stearns alleges that she suffered personal injuries as a result of the mold. *Id.* ¶¶ 85, 86, 106, 107 (describing, not individually, but generally as to Stearns, Dennis Fuller, Schlesinger, and Rose, "personal injuries to their pulmonary system including allergies, asthma and other pulmonary distress; and to their skin in the form of an allergic reaction").  Stearns asserts individual negligence and strict product liability claims stemming from her alleged injuries and purports to act as a California class representative with respect to Plaintiffs' warranty and unfair competition claims. *Id.* ¶¶ 121, 165- 225.

#### 2. Ruth Rose

Ruth Rose ("Rose"), a California resident, alleges that she bought a Sleep Number® bed in 1996 and that she called Select Comfort to complain of mold in her bed in May 2008. *Id.* ¶ 18, 46.  Rose was offered free replacement parts, but she rejected them when Select Comfort's customer service representative would not guarantee that the replacements would not incubate mold. *Id.* ¶ 46.  Select Comfort then provided Rose a full refund for her twelve-year-old bed, but it did not provide any additional compensation for other property damage allegedly caused by the

Case Number 08-2746 JF (PVT)
ORDER GRANTING MOTIONS TO STRIKE AND DISMISS WITH LIMITED LEAVE TO AMEND
(JFLC1)

1    mold.  *Id.* ¶ 47, 76 (including replacement bedding).  Rose also asserts that she suffered personal

2    injuries as a result of the mold in her bed. *Id.* ¶¶ 85, 86, 106, 107 (describing, not individually,

3    but generally as to Stearns, Dennis Fuller, Schlesinger, and Rose, "personal injuries to their

4    pulmonary system including allergies, asthma and other pulmonary distress; and to their skin in

5    the form of an allergic reaction").  Like Stearns, Rose asserts individual claims for negligence

6    and strict product liability based upon her alleged personal injuries and purports to act as a

7    California class representative with respect to Plaintiffs' warranty and unfair competition claims.

8    *Id.* ¶¶ 121; 165- 225.

9                        3. Dennis and Bonnie Fuller

10       Dennis and Bonnie Fuller ("the Fullers"), residents of Florida, allege that they purchased

11   a Sleep Number® bed in 1996.  *Id.* ¶ 19.  The Fullers contacted Select Comfort about mold in

12   their bed in 2008 and were provided a refund for their twelve-year-old bed, but they were not

13   compensated for additional property damage they allegedly sustained or for the costs of replacing

14   the defective products they requested.  *Id.* ¶¶ 48-49, 76, 89 (including the cost of replacement

15   bedding, a HVAC ("heating, ventilation, and air conditioning") replacement, and carpet cleaning

16   to mitigate the effect of mold contamination allegedly caused by the Sleep Number® bed).

17   Dennis Fuller also allegedly suffered physical injuries, although Bonnie Fuller did not.  *Id.* ¶¶ 85,

18   86, 106, 107 (describing, not individually, but generally as to Stearns, Dennis Fuller, Schlesinger,

19   and Rose, "personal injuries to their pulmonary system including allergies, asthma and other

20   pulmonary distress; and to their skin in the form of an allergic reaction").  Dennis Fuller brings

21   personal claims for negligence and strict liability premised upon his alleged personal injuries

22   (First and Second Causes of Action) and purports to act as a Florida class representative for

23   Plaintiffs' warranty and unfair competition claims. *Id.* ¶¶ 121, 165- 225.  Dennis Fuller's claims

24   also include a claim for violation of a Florida consumer protection statute that is referenced for

25   the first time in the SAC.  *Id.* ¶¶ 210-224.  Bonnie Fuller brings negligence and strict products

26   liability claims as a purported Florida class representative based upon her alleged economic

27   injuries.  *Id.* ¶¶ 119, 136-164.

28

                                            6

1             4. Dan Schlesinger

2       Dan Schlesinger ("Schlesinger"), a California resident, alleges that he purchased a Sleep

3 Number® bed in 1994. *Id.* ¶ 20. Schlesinger's factual allegations in the SAC are materially

4 inconsistent with his allegations in the FAC. In the FAC, Schlesinger alleged that he contacted

5 Select Comfort in *2004* and that he received replacement parts before the antimicrobial

6 reformulation conducted by Select Comfort in 2005. FAC ¶ 189. Schlesinger claimed that these

7 replacement parts subsequently developed mold and that when he reported this to Select

8 Comfort, he was provided a full refund on his fourteen-year-old bed. *Id.* The SAC alleges that

9 Schlesinger contacted Select Comfort in *2003*, that Select Comfort provided replacement parts

10 on two different occasions, that both sets of replacements developed mold, and that he *never*

11 received his requested refund. SAC ¶¶ 53-54, 90.

12             5. Karen and Bryan Williams

13       Karen Williams, a California resident, alleges she purchased a Sleep Number® bed from

14 Sleep Train for her son, Bryan Williams, on February 10, 2004. *Id.* ¶¶ 21, 22. Bryan Williams, a

15 California resident, was the user of the bed. *Id.* Karen Williams states that she contacted Select

16 Comfort to complain about mold in Bryan Williams' bed in 2006 and 2007 and that replacement

17 parts were sent to Bryan Williams. *Id.* ¶ 50. The Williamses allege that the new parts developed

18 mold and that "K. Williams also called and reported mold to Select Comfort and Sleep Train

19 after the new parts developed mold, mildew, and wetness." *Id.* Defendants contend that this

20 allegation is demonstrably false based upon a recorded customer service call dated January 26,

21 2007, during which Karen Williams requested a refund for Bryan Williams' bed but made no

22 mention of mold. MTS at 7, citing Order n. 2 (clarifying that the Court need not consider the

23 substance of the telephone call to decide the instant motion, but recognizing that in the call Karen

24 Williams was talking about moisture in the bed rather than mold). The SAC also alleges that

25 Karen Williams sent a letter, with return receipt requested, to Lisa Riedesel and Bill McLaughlin,

26 the CEO of Select Comfort, on May 14, 2007, complaining of the mold issues in her son's bed,

27 the outstanding "need for a recall notice to be sent out to all those with Sleep Number® beds,"

28 and documenting several telephone calls to Select Comfort about the need for a recall. SAC ¶

1    51.  Karen Williams alleges that she requested a refund in writing and was refused both a refund

2    and reimbursement for related expenses totaling $32,000.  *Id.* ¶¶ 51, 52.

3        Select Comfort allegedly redesigned the Sleep Number® bed in 2005 to inhibit mold

4    growth in response to customer complaints.  *Id.* ¶ 69.  Plaintiffs argue that Defendants thus were

5    on notice of the defect in the beds.  Plaintiffs claim that Select Comfort nonetheless continued to

6    distribute defective replacement beds and parts to consumers who had mold in their beds.  *Id.* ¶¶

7    57, 58.  Moreover, when Select Comfort learned of the defect that caused the mold growth,

8    Defendants allegedly did not provide notice to the public or any warning to Plaintiffs of the

9    defect.  *Id.* ¶¶ 60-61.  Plaintiffs assert that putative class members and the named plaintiffs have

10   "obtained replacement parts since the 2005 redesign and the results are identical-mold incubation

11   in the internal components."  *Id.* ¶ 72.  Plaintiffs allege specifically that "Schlesinger, Rose, and

12   Williams have each told Select Comfort that mold growth has occurred in their beds since the

13   2005 reformulation," but that Select Comfort continues to claim that "there have been 0

14   confirmed cases of mold in a Sleep Number® bed sold after the antimicrobial reformulation in

15   2005." *Id.*

16       Each named plaintiff claims to have removed or replaced his or her defective bed.  Each

17   claims to have suffered consequential damages in the form of the cost of replacement bedding,

18   including sheets, pillows, comforters, and blankets ("replacement bedding").  *Id.* ¶ 76.  Plaintiffs

19   contend that the cost of replacement bedding is property damage independent of the defective

20   products themselves, and that no plaintiff has received compensation for this damage.  In

21   addition, all Plaintiffs allege that they suffered damages in the form of shipping and handling

22   costs for the original bed and replacement parts.  *Id.* ¶ 77.

23                              **II.  LEGAL STANDARD**

24       A complaint may be dismissed for failure to state a claim upon which relief can be

25   granted for one of two reasons:  (1) lack of a cognizable legal theory or (2) insufficient facts

26   under a cognizable legal theory.  *See Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Robertson v.*

27   *Dean Witter Reynolds, Inc.*, 749 F.2d 530, 533-34 (9th Cir. 1984).  Allegations of material fact

28   must be taken as true and construed in the light most favorable to the nonmoving party.  *Cahill v.*

8

1    *Liberty Mut. Ins. Co.,* 80 F.3d 336, 337-38 (9th Cir. 1997); *see also Pareto v. FDIC*, 139 F.3d

2    696, 699 (9th Cir. 1998).  However, the Court need not accept as true allegations that are

3    conclusory, unwarranted deductions of fact, or unreasonable inferences.  *See Sprewell v. Golden*

4    *State Warriors,* 266 F.3d 979, 988 (9th Cir. 2001); *see also Bell Atl. Corp. v. Twombly*, 550 U.S.

5    544, 561 (2007) ("a wholly conclusory statement of [a] claim" will not survive motion to

6    dismiss).

7            On a motion to dismiss, the Court's review is limited to the face of the complaint and

8    matters judicially noticeable.  *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir.

9    1986)*; N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983).  However, under

10   the "incorporation by reference" doctrine, the Court also may consider documents which are

11   referenced extensively in the complaint and which are accepted by all parties as authentic.  *In re*

12   *Silicon Graphics, Inc. Sec. Litig.*, 183 F.3d 970, 986 (9th Cir.1999).  Leave to amend should be

13   granted unless it is clear that the complaint's deficiencies cannot be cured by amendment.  *Lucas*

14   *v. Dep't of Corrs.*, 66 F. 3d 245, 248 (9th Cir. 1995).  When amendment would be futile,

15   dismissal may be ordered with prejudice.  *Dumas v. Kipp*, 90 F.3d 386, 393 (9th Cir. 1996).

16                                              **III.  DISCUSSION**

17           **A. Newly-Alleged Claims**

18           "Under Federal Rule of Civil Procedure 12(f), a court may strike a pleading or any

19   portion of a pleading that is "redundant, impertinent, or scandalous." Fed. R. Civ. P. 12(f).  In its

20   order on June 5, 2009, this Court expressly limited Plaintiffs' leave to amend to claims for

21   negligence, strict product liability, breach of express warranty, and violations of the MMWA and

22   UCL.  Order at 29.  The Court also stated clearly that "Plaintiffs shall not add any new

23   defendants, plaintiffs or claims for relief without leave of the Court." *Id.*; *see also* Fed. R. Civ.

24   P. 15(a)(2) (after a response is filed, a party may amend its pleadings "only by leave of court or

25   by written consent of the adverse party"); *Serpa v. SBC Telecommunications, Inc.*, No. 03-4223,

26   2004 WL 2002444, at *3 (N.D. Cal. Sep. 7, 2004) (striking a newly-asserted claim that was

27   outside the scope of the court's previous order's leave to amend).  While it is true that the SAC

28   does not add new claim *headings*, Plaintiffs in fact assert new claims for personal injuries within

                                                   9

their negligence and strict liability claims, *see* SAC ¶¶ 85-86, 106-09 (describing, not

individually, but generally as to Stearns, Dennis Fuller, Schlesinger, and Rose, "personal injuries

to their pulmonary system including allergies, asthma and other pulmonary distress; and to their

skin in the form of an allergic reaction"); as well as violation of an entirely new statute, Florida

Statute 501.202, et seq., within their UCL claim.  SAC ¶¶ 210-221.  The new allegations are

material additions rather than amendments and should not have been asserted without leave of

court.[2]  Order at 6, 29 (addressing the FAC's deficient general allegations of property damages

beyond any broken contractual promise found in paragraph 72 and providing leave to amend so

that Plaintiffs may identify which of the named plaintiffs suffered what harm and to make a

distinction between harm already suffered and harm that may be suffered in the future); *see also*

Order at 24-27 (dismissing the FAC's UCL claim and providing leave to amend so that Plaintiffs

may articulate more clearly the basis for the alleged violation).

### B.  Warranty Claims

#### 1.  Breach of Express Warranty (UCC § 2-313)

Plaintiffs' breach of express warranty claim is brought on behalf of a purported class

represented by Stearns, Dennis Fuller, Schlesinger, Rose, Karen Williams, Bryan Williams[3] and

Bonnie Fuller.  SAC ¶ 121.  An explicit promise by the seller with respect to the quality of goods

---

[2]  In addition, Stearns may have waived her right to assert personal injury claims by omitting such claims from the FAC after having asserted them in her original complaint. *London v. Coopers & Lybrand,* 644 F.2d 811, 814 (9th Cir. 1981).  While a number of courts have criticized the *London* rule as "formalistic," *see Davis v. TXO Production Corp.,* 929 F.2d 1515, 1517-18 (10th Cir. 1991),  the rule is well-established in the Ninth Circuit. *See Loux v. Rhay,* 375 F.2d 55, 57 (9th Cir. 1967) ("The amended complaint supersedes the original, the latter being treated thereafter as nonexistent.");  *King v. Atiyeh,* 814 F.2d 565, 567 (9th Cir. 1987) ("All causes of action alleged in an original complaint which are not alleged in an amended complaint are waived."); *see also Nelson v. Capital One Bank*, 206 F.R.D. 499, 501-02 (N.D. Cal. 2001) ("[c]onsolidated complaint . . . supersedes the original complaint"); *Lindner Dividend Fund, Inc. v. Ernst & Young,* 880 F. Supp. 49 (D. Mass. 1995) (holding that a consolidated class action complaint superseded earlier complaints).

[3]  Bryan Williams cannot represent a class of purchasers who entered into a warranty agreement because he was not the purchaser of his bed.

Case Number 08-2746 JF (PVT)
ORDER GRANTING MOTIONS TO STRIKE AND DISMISS WITH LIMITED LEAVE TO AMEND
(JFLC1)

1    that is part of the bargain between the parties creates an express warranty "that the goods shall

2    conform to the affirmation or promise." UCC § 2-313. To plead a claim for breach of express

3    warranty, the buyer must allege that the seller "(1) made an affirmation of fact or promise or

4    provided a description of its goods; (2) the promise or description formed part of the basis of the

5    bargain; (3) the express warranty was breached; and (4) the breach caused injury to the plaintiff."

6    *Blennis v. Hewlett-Packard Co.*, No. C 07-00333, 2008 WL 818526, at *2 (N.D. Cal. Mar. 25,

7    2008) (citation omitted). Such a claim must describe the exact terms of the warranty, allege that

8    buyer reasonably relied on those terms, and that the breach of the warranty was the proximate

9    cause of the buyer's injury. *See id.* A buyer also must plead that notice of the alleged breach was

10    provided to the seller within a reasonable time after discovering the breach. UCC § 2-607(3)(a);

11    *see also Pollard v. Saxe & Yolles Dev. Co.*, 12 Cal.3d 374, 380 (1974) ("The requirement of

12    notice of breach is…designed to allow the defendant opportunity for repairing the defective item,

13    reducing damages, avoiding defective products in the future, and negotiating settlements."). The

14    buyer has the burden of showing that reasonable notice was provided. *Cardinal Health 301, Inc.*

15    *v. Tyco Elecs. Corp.*, 169 Cal. App. 4th 116, 135 (2008).[4]

16                              **A. Pre-Suit Notice**

17       A buyer must plead that notice of the alleged breach was provided to the seller within a

18    reasonable time after discovering the breach. UCC § 2-607(3)(a); *see Pollard,* 12 Cal.3d at 380.

19    Defendants contend that the Court already has determined that Stearns failed to provide pre-suit

20    notice, and that this determination is fatal to Stearns' express warranty claim in the SAC. MTS

21    at 15, citing Order at 7, n. 4 (concluding that Stearns did not provide adequate opportunity for

22    Select Comfort to address her concerns as the original complaint alleged that she first discovered

23

24                  

25       [4] Timely notice of breach is not required where the buyers did not purchase the product from the manufacturer directly. *See Sanders v. Apple Inc.*, No. C 08-1713, 2009 WL 150950, at

26    *8 (N.D. Cal. Jan. 21, 2009), citing *Greenman v. Yuba Power Prods.*, 59 Cal.2d 57, 61 (1963).

27    The SAC alleges that five of the seven named Plaintiffs purchased their Sleep Number® beds directly from Select Comfort. SAC ¶¶ 17-18. The remaining named Plaintiffs purchased their

28    beds through Sleep Train, a retailer. *Id.* ¶ 21.

Case Number 08-2746 JF (PVT)
ORDER GRANTING MOTIONS TO STRIKE AND DISMISS WITH LIMITED LEAVE TO AMEND
(JFLC1)

1  mold on April 22, 2008, only three days before the filing of that complaint in state court). While

2  the SAC now omits the date when Stearns first discovered mold, it indicates that she first

3  contacted Select Comfort some time in April 2008. The generalized nature of Stearns' amended

4  allegations makes it even less clear whether notice was provided before Stearns filed her original

5  complaint in the Santa Clara Superior Court. For this reason, Stearns once again has failed to

6  allege a viable express warranty claim.

7      Defendants also contend that Karen Williams did not provide adequate notice to Select

8  Comfort that her replacement parts had developed mold. Reply at 7, citing Order at 3, n. 2

9  (noting but not relying upon or determining the admissibility of a January 26, 2007 telephone call

10  with Select Comfort, in which Karen Williams called about moisture in the bed, but made no

11  mention of mold). In the SAC, Karen Williams alleges that she called Select Comfort to

12  complain about the design defect in 2007, that she also called to complain in 2006, that she

13  "communicated by U.S. Mail, return receipt requested, to Lisa Riedesel and CEO Bill

14  McLaughlin of Select Comfort on May 14, 2007 and advised Select Comfort of the mold issues

15  involving the bed she purchased for her son and the need for a recall notice to be sent out to all

16  those with Sleep Number® beds," and that she called Select Comfort to complain when the new

17  foam and replacement parts sent to Bryan Williams developed mold. SAC ¶¶ 50-51. Defendants

18  point out that the May 14 letter is not attached to the SAC and that there is no allegation that

19  Karen Williams received proof of delivery. On a motion to dismiss pursuant to Fed. R. Civ. P.

20  12(b)(6), the Court generally must assume that Plaintiffs' allegations are true. Nonetheless,

21  Plaintiffs still fail to allege when Karen Williams or Bryan Williams complained to Select

22  Comfort about the allegedly defective *replacement parts*. While it is apparent that Select

23  Comfort was provided notice of and indeed attempted to cure the original defect about which

24  Karen Williams complained, it still is unclear from the SAC whether Select Comfort was

25  provided with adequate notice and opportunity to cure the subsequent defect in the replacement

26  parts.

27      Notice is pled adequately as to the remaining named Plaintiffs. The SAC alleges that

28  Select Comfort was notified of the alleged mold growth, and that in each instance the seller

12

1    attempted to remedy the issue through replacement parts or a refund.  *See* UCC § 2-607 Official

2    Comment 4 ("The content of the notification need merely be sufficient to let the seller know that

3    the transaction is still troublesome and must be watched.")

4                               **B.  Select Comfort's Limited Warranty**

5                                          **1. Breach**

6          "A manufacturer's liability for breach of an express warranty derives from, and is

7    measured by, the terms of that warranty." *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 525

8    (1992).  The express warranty at issue here provided that Sleep Number® beds would be "free

9    from defects in materials and workmanship for a period of 20 years from the original purchase

10   date." Order at 8, citing FAC Ex. G.  In its June 5 Order, the Court held that because Defendants

11   offered repair or replacement goods, and when that remedy proved unsatisfactory provided full

12   refunds to all named Plaintiffs,  the buyer was provided with the "substantial value of the

13   bargain" and thus suffered no cognizable injury.  Order at 8-10; *See* UCC § 2-719 Official

14   Comment 1; *see also Marr Enters., Inc. v. Lewis Refrigeration Co.*, 556 F.2d 951, 955 (9th Cir.

15   1977) ("if the seller did not replace the defective parts, the purchaser was entitled to refund of the

16   purchase price...mere failure to replace or repair would not cause the court to read in the general

17   remedy provisions of the UCC [due to failure of essential purpose]").  Moreover, when the

18   named Plaintiffs accepted the refund, they essentially modified the terms of the express warranty

19   and the remedies available for breach.  *See* UCC § 2-719 Official Comment 1 ("parties are left

20   free to shape their remedies to their particular requirements and reasonable agreements limiting

21   or modifying remedies are to be given effect.")

22         Plaintiffs Schlesinger and Karen Williams now allege that their request for a refund was

23   refused.  While the FAC was silent as to whether Williams received a refund, it stated explicitly

24   that Schlesinger did in fact receive a refund from Select Comfort when he complained about

25   mold.  Plaintiffs offer no explanation for this directly contradictory statement of material fact as

26   to Schlesinger or newly-alleged fact as to Williams.  In both cases, Select Comfort's failure to

27   provide a refund or repair the mold found in the customers' beds would constitute a potential

28   breach of the warranty if proper notice and an opportunity to cure was provided.  However, as

                                                13

1    discussed above, *see supra* III.B.1A, there still are no allegations by Karen Williams or Bryan

2    Williams as to when or if Karen Williams provided adequate notice of the mold that developed

3    in the replacement parts.  In addition, Schlesinger fails to allege an actionable warranty claim at

4    all because he claims to have discovered the mold in his bed in 2003, well outside the four-year

5    limitations period.  Cal. Com. Code § 2725; SAC ¶ 53.

6         Defendants also raise a new legal argument.  They contend that the Limited Warranty

7    contains a condition precedent to Select Comfort's warranty obligation, which is that "the

8    original purchaser must deliver the defective product or component to a Select Comfort service

9    center prior to such expiration at the original purchaser's expense."  FAC Ex. A.  Defendants

10   point out that the SAC contains no allegations that any plaintiff complied with this condition.

11   However, just as it may be concluded that Plaintiffs' waived their right to a replacement under

12   the warranty when they accepted the refund, Select Comfort may be considered to have waived

13   the purported condition precedent when it provided full refunds or replacement parts upon the

14   receipt of Plaintiffs' complaints.  *See* UCC § 2-719 Official Comment 1 ("parties are left free to

15   shape their remedies to their particular requirements and reasonable agreements limiting or

16   modifying remedies are to be given effect.")

17                    **2. Special or Consequential Damages**

18        Finally, the express warranty excludes recovery for "special or consequential damages."

19   FAC Ex. G.  The enforceability of such an exclusion is addressed in the California Commercial

20   Code, which provides in pertinent part that:

21              Consequential damages may be limited or excluded unless
                the limitation or exclusion is unconscionable.  Limitation of
22              consequential damages for injury to the person in the case of
                consumer goods is invalid unless it is proved that the limitation is
23              not unconscionable.  Limitation of consequential damages where
                the loss is commercial is valid unless it is proved that the limitation
24              is unconscionable.

25   Cal. Com. Code § 2719(3).

26        "Unconscionability has both a procedural and a substantive element."  *Aron v. U-Haul*

27   *Co. of California,* 143 Cal.App.4th 796, 808, 49 Cal.Rptr.3d 555 (2006), citing *Armendariz v.*

28   *Foundation Health Psychcare Services, Inc.* 24 Cal.4th 83, 114, 99 Cal.Rptr.2d 745, 6 P.3d 669

                                        14

1   (2000). The procedural element of unconscionability focuses on two factors: oppression and

2   surprise. *Id.* (internal citation omitted). Oppression arises from an inequality of bargaining power

3   which results in no real negotiation and an absence of meaningful choice. *Id.* (internal quotation

4   and citation omitted). Surprise involves the extent to which the supposedly agreed-upon terms of

5   the bargain are hidden in a prolix printed form drafted by the party seeking to enforce the

6   disputed terms. *Id.* (internal quotation and citation omitted).  The substantive element of

7   unconscionability focuses on the actual terms of the agreement and evaluates whether they create

8   overly harsh or one-sided results as to shock the conscience.  *Id.* (internal quotation and citation

9   omitted).  There must be a showing of both elements at the time the contract is made.  *See*

10  *Avinelis v. BASF Corp.*, No. CV F 08-0618, 2008 WL 4104277, at *6 (E.D. Cal. Sep. 3, 2008),

11  citing *Am. Software, Inc. v. Ali*, 54 Cal. Rptr. 2d 477, 480 (Cal. Ct. App. 1996).

12      Plaintiffs argue that the limited warranty is unconscionable because it does not provide

13  for a refund on its face and the right to a refund is available only after a customer discovers a

14  defect and makes a complaint.  They assert that the warranty is procedurally unconscionable

15  because consumers have no bargaining power with respect to the warranty at the time of purchase

16  and substantively unconscionable because refunds are provided selectively.  Plaintiffs attempt to

17  characterize Select Comfort's business policy of providing a refund upon a customer request,

18  when a repair or replacement is either refused or not possible, as a "surprise" and as a "secret

19  warranty" program.  However, the Court concluded in its June 5 Order that Select Comfort's

20  conduct is consistent with California public policy as expressed in the Song-Beverly Consumer

21  Warranty Act:

22          [I]f the manufacturer or its representative in this state does not service or repair
            the goods to conform to the applicable express warranties after a reasonable
23          number of attempts, the manufacturer shall either replace the goods or reimburse
            the buyer in an amount equal to the purchase price paid by the buyer, less tat
24          amount directly attributable to sue by the buyer prior to the discovery of the
            nonconformity.
25
    *See* Cal. Com.Code § 1793.2(d)(1).  Given the fact that Select Comfort's policy is
26
    consistent with California law, Plaintiffs' arguments lack merit.  Plaintiffs themselves allege that
27
    Select Comfort provided a full refund to at least some consumers without discounting the refund
28

                                            15

1    based on present value, regardless of how long the consumer had owned an allegedly defective

2    bed.

3         Nor do Plaintiffs allege any facts that would support a conclusion that the consequential

4    damages limitation of the express warranty is substantively unconscionable.  All of Plaintiffs'

5    alleged damages, such as the cost of replacing bedding, shipping and handling costs for

6    replacement beds and parts, and the replacement of the HVAC system, are incidental and

7    consequential.  Because Plaintiffs have not shown that the Limited Warranty is unconscionable,

8    the warranty as such excludes recovery for anything beyond the cost of the bed itself.  Plaintiffs

9    also fail to provide sufficient detail with respect to the alleged damages to their bedding and the

10   Fullers' HVAC system, such as the reasons the bedding and HVAC system needed to be replaced

11   and the approximate cost of such replacement.

12                   **2. Violation of Magnusson-Moss Act**

13        The SAC alleges that Defendants' breach of the express warranty also constituted a

14   violation of the MMWA.  *See* SAC ¶ 165-83.  While the MMWA provides a federal cause of

15   action for state warranty claims*, Monticello v. Winnebago Indus. Inc.*, 369 F. Supp. 2d 1350,

16   1356 (N.D. Ga. 2005), it does not expand the rights available under such warranties, and

17   dismissal of the state law claims requires the same disposition with respect to an associated

18   MMWA claim.  *See id.  See also Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022 (9th

19   Cir. 2008) ("disposition of the state law warranty claims determines the disposition of the

20   Magnusson-Moss Act claims."); *Daugherty v. Am. Honda Motor Co., Inc.*, 144 Cal. App. 4th

21   824, 833 (2006) ("the trial court correctly concluded that failure to state a warranty claim under

22   state law necessarily constituted a failure to state a claim under Magnusson-Moss.")  The

23   MMWA also provides that no private action may be brought unless the defendant first is

24   "afforded a reasonable opportunity to cure such failure to comply" and in the case of a purported

25   class action, "such reasonable opportunity will be afforded by the named plaintiffs and they shall

26   at that time notify the defendant they are acting on behalf of the class." 15 U.S.C. § 2310(e).

27   While the SAC contains allegations that the named Plaintiffs contacted Select Comfort about

28   mold in their beds, Plaintiffs once again have failed to allege that they provided adequate notice

                                     16

to Select Comfort that they were acting on behalf of the class prior to filing suit.

## C. Negligence and Strict Products Liability

### 1. Individual Claims

#### A. Personal Injuries

As discussed above, *see supra* III.A, the Court will strike all allegations of personal injury from the SAC, without prejudice to Plaintiffs' right to seek leave of court to allege personal injury claims.

#### B. Property Damage

To state a claim for negligence, a plaintiff must allege that the defendant owed a duty to the plaintiff that subsequently was breached, and that such breach was the proximate cause of the plaintiff's injury. *See Ditto v. McCurdy*, 510 F.3d 1070, 1078 (9th Cir. 2007). To prevail on a claim for strict product liability, a plaintiff must show that "a manufacturer is or should have been aware that a product is unreasonably dangerous absent a warning and [if] such warning is feasible, the manufacturer will be held strictly liable if it fails to give an appropriate and conspicuous warning." *Maneely v. Gen. Motors Corp.*, 108 F.3d 1176, 1179 (9th Cir. 1997). "[R]ecovery under the doctrine of strict liability is limited solely to 'physical harm to person or property." *Jimenez v. Sup. Ct.*, 29 Cal. 4th 473, 482 (2002), quoting *Seely v. White Motor Co.*, 63 Cal.2d 9, 18 (1965).

Defendants contend that the economic loss doctrine bars recovery of economic damages on either theory because full refunds or replacement parts were provided to all of the named Plaintiffs. As discussed previously, when "a purchaser's expectations in a sale are frustrated because the product he bought is not working properly, his remedy is said to be contract alone, for he has suffered only 'economic' losses.'" *Robinson Helicopter Co., Inc. v. Dana Corp.*, 34 Cal. 4th 979, 988 (2004) (citations omitted). Thus, any damages related to Plaintiffs' "disappointed" expectations or purely economic loss are not recoverable pursuant to either claim. *See id.* ("The economic loss rule requires a purchaser to recover in contract for purely economic loss due to disappointed expectations, unless he can demonstrate harm above and beyond a broken contractual promise.") *Jimenez*, 29 Cal. 4th at 482 ("Damages available under strict

1    product liability do not include economic loss, which includes 'damages for inadequate value,

2    costs of repair and replacement of the defective product or consequent loss of profits – without

3    any claim of personal injury or damages to other property.") (citations omitted).

4        Plaintiffs argue that they have alleged harm beyond a broken promise, and that they

5    suffered property damage because they needed to purchase replacement bedding.  SAC ¶¶ 39-42,

6    76, 144, 160 (identifying replacement bedding as sheets, pillows, comforters, and blankets).

7    However, while Plaintiffs allege that mold migrates from the bed into the "bedding" and that

8    each Plaintiff has purchased replacement bedding, the SAC does not explain who had to replace

9    what bedding, why the presence of mold in a particular bed necessitated that the bedding for that

10   bed be replaced, or approximately how much the replacement cost.

11       The Fullers allege that they had to replace their HVAC system.  However, beyond a

12   conclusory allegation of causation, Plaintiffs do not offer any explanation of how, when or why

13   the mold in the Fullers' bed forced them to replace their HVAC.[5]  *Id.* ¶89, 110.  The Fullers do

14   not claim that they notified Select Comfort of the need to replace their HVAC system in 2008,

15   when they complained of mold in their Sleep Number® bed.  *Id.*  Plaintiffs' allegations

16   regarding the costs of shipping and handling for their beds and any replacement parts relate to the

17   product itself and thus are subject to the economic loss rule. *Id.* ¶¶ 77, 145, 161.

18                          **2. Purported Class Claims**

19       Plaintiffs' Third and Fourth Causes of Action for negligence and strict product liability

20   are asserted on behalf of "Class I" plaintiffs, defined as "[a]ll persons located within California

21   and Florida who used the Sleep Number® bed by Select Comfort from January 1, 1987 through

22   the present and whose beds contain mold."  *Id.*  ¶ 116.  The proposed class representatives for

23   these claims are California resident Karen Williams and Florida resident Bonnie Fuller.

24       These claims are facially defective as currently pled.  First, as noted previously, Karen

25   ───────────────

26   [5] Even if the Fullers' had a valid negligence claim for property damage notwithstanding
     the economic loss rule, Defendants argue that this Court has no interest in a dispute between the

27   Fullers, who are residents of Florida, and Select Comfort Retail Corporation, a Minnesota
     corporation.  28 U.S.C. § 1391(a).  Defendants also contend that the Fullers' claims are unique

28   and inappropriate for class treatment.

1  Williams cannot serve as a representative of this class because the SAC alleges not that she used

2  the bed, but that she purchased the bed that was used subsequently by her son Bryan Williams.

3  *Id.* ¶ 21.

4        Second, the Class alleges property damage in the form of shipping and replacement costs,

5  in addition to the cost of replacement bedding.  The shipping and replacement costs are

6  connected to the product itself and are plainly barred by the economic loss rule.  *Id.* ¶¶ 145, 161.

7  The allegations with respect to replacement bedding do not explain why the bedding had to be

8  replaced or what the cost of the replacement was.  The latter omission is important, because *de*

9  *minimis* damage claims in cases of this kind have been rejected by courts both in California and

10  elsewhere.  MTS at 13, citing *County of Santa Clara v. Atl. Richfield*, 40 Cal. Rptr. 3d 313, 335-

11  36; *Theideman v. Mercedes-Benz USA, LLC*, 872 A.2d 783, 795 (N.J. 2005), *Frank v. Daimler*

12  *Chrysler Corp.*, 292 A.D.2d 118, 120, 127 (N.Y. 2002).  Plaintiffs argue in their opposition that

13  the cost of replacement bedding is more than *de minimis*, but there are no such allegations in the

14  SAC.  Finally, as discussed above, consequential damages are barred by the express limitations

15  of the warranty.

16                **3. Unreasonably Dangerous**

17        Plaintiffs claim that the Sleep Number® bed is unreasonably dangerous based upon the

18  personal injuries alleged in the SAC.  Because the Court will strike the relevant personal injury

19  allegations, this aspect of Plaintiffs' claims is subject to dismissal without prejudice.

20      **D.  UCL**

21        California's UCL prohibits "any unlawful, unfair or fraudulent business act or practice

22  and unfair, deceptive, untrue or misleading advertising."  Cal. Bus. & Prof. Code § 17200.

23  Accordingly, "[a]n act can be alleged to violate any or all of the three prongs of the

24  UCL—unlawful, unfair, or fraudulent."  *Berryman v. Merit Prop. Mgmt., Inc.*, 152 Cal.App.4th

25  1544, 1554 (2007).

26            1.  "Unlawful" Business Practices

27        For an action based upon an allegedly unlawful business practice, the UCL "borrows

28  violations of other laws and treats them as unlawful practices that the unfair competition law

19

1  makes independently actionable." *Cel-Tech Communications, Inc. v. Los Angeles Cellular Tel.*

2  *Co.*, 20 Cal. 4th 163, 180 (1999); *see also Farmers Ins. Exchange v. Superior Court*, 2 Cal. 4th

3  377, 383 (1992).  However, such allegations "must state with reasonable particularity the facts

4  supporting the statutory elements" of the alleged violation.  *Silicon Knights, Inc. v. Crystal*

5  *Dynamics, Inc.*, 983 F. Supp. 1303, 1316 (N.D. Cal. 1997), quoting *Khoury v. Maly's of Cal.,*

6  *Inc.*, 14 Cal. App. 4th 612, 619 (1993).  Plaintiffs' negligence and product liability claims may

7  not constitute predicate acts for a UCL claim.  *See Hartless v. Clorox Co.*, No. 06-CV-2705,

8  2007 WL 3245260, at *5 (S.D. Cal. Nov. 2, 2007) (common-law claims cannot form the basis for

9  a UCL claim).  Accordingly, only Plaintiffs' warranty claims could serve as a predicate for the

10  "unlawful" prong, and these claims are insufficient for the reasons discussed above.  *See supra*

11  III.B.

12              2.  "Unfair" Business Practices

13       Plaintiffs also allege a "standalone" UCL claim, *see* SAC ¶¶ 214-225, accusing

14  Defendants of unfair business practices.  "[A] practice may be deemed unfair even if not

15  specifically proscribed by some other law."  *Cel-Tech*, 20 Cal. 4th at 180.  First, Plaintiffs argue

16  that their allegations satisfy the elements of an unfair business practices claim under *Camacho v.*

17  *Automobile Club of Southern California*, 142 Cal. App. 4th 1394 (2006), in which the court

18  stated that a viable claim for relief may exist if the following conditions are met:  "1) the

19  consumer injury must be substantial; (2) the injury must not be outweighed by any countervailing

20  benefits to consumers or competition; and (3) it must be an injury that consumers themselves

21  could not reasonably have avoided."  *Id.* at 1403.  However, Plaintiffs must set forth more than

22  conclusory allegations that mirror the elements of the claim.  Plaintiffs' sole allegation as to the

23  "substantial" nature of the injury is the following:

24       [D]efendants' malfeasance is substantial in that plaintiffs are unable to determine
         or even identify the mold without taking apart the product. Further, plaintiffs have
25       not been notified to inspect in the event mold has occurred. This failure to notify
         has resulted in property damage and confusion amongst consumers. Mold in
26       particular has unique properties and is hazardous which makes its permanent
         removal difficult and often time impossible.

27       SAC ¶ 216.

28

                                              20

1    This allegation fails to satisfy the "substantial injury" element of an unfair business

2    practices claim under *Camacho.*  First, Plaintiffs allege that Defendants' "malfeasance," rather

3    than their own injuries, is substantial.  Second, the precise nature of Defendants' malfeasance is

4    unclear.  Finally, Plaintiffs' injuries, to the extent they are addressed in the allegations, appear to

5    be property damage and confusion.  While property damage might be substantial, Plaintiffs do

6    not explain how their damage in this case meets that definition.  Although the injury allegations

7    of Plaintiffs' other claims are incorporated by reference into their UCL claim, *see* Opp. Mot. at

8    21, it is not the Court's responsibility or Defendants' to determine which of Plaintiffs' many

9    factual allegations are meant to apply to the UCL claims.[6]

10   Plaintiffs cite additional authority for their argument that "an 'unfair' business practice

11   occurs when it offends an established public policy or when the practice is immoral, unethical,

12   oppressive, unscrupulous or substantially injurious to consumers." Opp Mot. at 22, citing *State*

13   *Farm Fire & Casualty Co. v. Superior Court*, 45 Cal. App.4th 1093, 1104 (1996).  However,

14   Plaintiffs offer no meaningful analysis as to how the allegations of the SAC satisfy the elements

15   of a UCL claim pursuant to this authority.

16   ### 3.  Statute of Limitations

17   Defendants contend that the UCL claim is barred by the statute of limitations.  A claim

18   for relief brought pursuant to the UCL must be "commenced within four years after the cause of

19   action accrued."  Cal. Bus. & Prof. Code § 17208; *see also Harshbarger v. Phillip Morris, Inc.*,

20   2003 WL 23342396, at *5 (N.D. Cal. April 1, 2003).  According to the SAC, all of the named

21   Plaintiffs purchased their Sleep Number® bed more than four years prior to the filing of the

22   instant action.  Courts have arrived at different conclusions as to when a UCL claim accrues.

23   *Compare Rambus Inc. v. Samsung Elecs. Co.*, Nos. C-05-02298 & C-05-00334, 2007 WL 39374,

24   at *3 (N.D. Cal. Jan. 4, 2007) ("[plaintiff] cannot rely upon the discovery rule for its Section

25

26   _____

27   [6] Plaintiffs allege that they have paid for shipping costs for the product and replacement parts the manufacturer knew were defective at the time of purchase.  SAC ¶ 220.  However,

28   Plaintiffs do not allege with any particularity that this injury was substantial or indicate the cost incurred by any particular plaintiff.

21

1    17200 claim"); *Snapp & Assocs. Ins. Servs., Inc. v. Malcolm Bruce Burlingame Robertson*, 96

2    Cal. App. 4th 884, 891 (2002) ("The 'discovery rule,' which delays accrual of certain causes of

3    action until the plaintiff has actual or constructive knowledge of facts giving rise to the claim,

4    does not apply to unfair competition actions.  Thus, 'the statute begins to run…irrespective of

5    whether plaintiff knew of its accrual, unless plaintiff can successfully invoke the equitable tolling

6    doctrine.'") (citation omitted), *with Mass. Mut. Life Ins. Co. v. Superior Court*, 97 Cal. App. 4th

7    1282, 1295 (2002) (statute of limitations for a UCL claim "will probably run from the time a

8    reasonable person would have discovered the basis for a claim").

9           This Court need not determine now whether or not the discovery rule applies to Plaitniffs'

10   UCL claims, because Plaintiffs fail to allege when any of the individual plaintiffs actually

11   discovered the mold in their Sleep Number® bed.[7]  SAC ¶¶ 46, 48, 50, 51, 53, 55 (indicating

12   when Plaintiffs contacted Select Comfort regarding the mold in their bed, but providing no date

13   as to when Plaintiffs discovered the mold).  Absent allegations as to the time and manner of

14   discovery and their inability to have discovered the defect earlier, Plaintiffs' claims under the

15   UCL are time-barred.  *Rambus Inc. v. Samsung Elecs. Co*, No. 05-02298, 2007 WL 39374, at *3

16   (N.D. Cal. Jan. 4, 2007).

17                                    4.  Available Remedies

18          A UCL action is equitable in nature, and damages cannot be recovered.  *Korea Supply*

19   *Co. v. Lockheed Martin Corp*., 29 Cal. 4th 1134, 1144 (2003).  A plaintiff may obtain restitution

20   and/or injunctive relief against unfair or unlawful practices in order to protect the public and

21   restore to the parties in interest money or property taken by means of unfair competition.  *State v.*

22   *Altus Fin., S.A.*, 36 Cal. 4th 1284, 1303 (2005).  Here, Plaintiffs seek restitution for the "payment

23   of consideration in the purchase of the bed, shipping costs for defective replacement parts and

24   fees for disposal to Select Comfort."  SAC ¶ 224.  As just discussed, Schlesinger's UCL claim

25   appears to be time-barred.  Karen Williams is the only other named plaintiff who claims that she

26

27          [7] According to the SAC, Plaintiff Schlesinger called Select Comfort to complain about
     mold in 2003, meaning that he must have discovered the mold outside of the limitations period.
28   SAC ¶ 53.

                                              22

1  did not receive a refund upon request, and Williams' allegations to this effect in the SAC are

2  inconsistent with the FAC.

3  **E.  Class claims**

4      The SAC defines two purported classes.  Class I asserts claims for negligence and product

5  liability and includes: "all persons located within California and Florida who used the Sleep

6  Number® bed by Select Comfort from January 1, 1987 through the present and whose beds

7  contain mold," *Id.* ¶ 116.  Class II asserts breach of express warranty and violations of the

8  MMWA and UCL and includes: " all persons located within California and Florida who

9  purchased a Sleep Number® bed by Select Comfort from January 1, 1987 through the present

10  and whose beds contain mold." *Id.* ¶ 120.  Class I excludes "any persons claiming personal injury

11  arising from the negligence and strict product liability claims against defendants." *Id.* ¶ 117.

12  "Where the complaint demonstrates that a class action cannot be maintained on the facts alleged,

13  a defendant may move to strike class allegations prior to discovery." *Sanders v. Apple, Inc.* No.

14  08-1713, 2009 WL 150950, at *9 (N.D. Cal. Jan. 1, 2009).  Although Plaintiffs contend that

15  Defendants' motion to strike is premature, it is procedurally proper to strike futile class claims at

16  the outset of litigation to preserve time and resources.

17      A plaintiff seeking to bring a class action has the burden of showing that: (1) the class is

18  so numerous that joinder of all members is impracticable; (2) there are questions of law or fact

19  common to the class; (3) the claims or defenses of the representative parties are typical of the

20  claims or defenses of the class; and (4) the representative parties will fairly and adequately

21  protect the interests of the class.  Fed. R. Civ. P. 23(a); *see Dukes v. Wal-Mart, Inc.*, 509 F.3d

22  1168, 1176 (9th Cir. 2007).  If the plaintiff demonstrates that these four requirements have been

23  satisfied, then he or she must also show "that the action is maintainable under Rule 23(b)(1), (2),

24  or (3)." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997); *see also Wiener v. Dannon

25  Co., Inc.*, 255 F.R.D. 658, 668 (C.D. Cal. 2009).

26  **1. Predominance of individual issues**

27      Defendants contend that in the instant case individual issues will predominate and the

28  action will become unmanageable.  They point to the differing claims of property damage even

23

among named plaintiffs, including the Fullers' unique claim that they had to replace their HVAC system. They suggest that such claims inevitably will raise issues of causation that are individualized and do not lend themselves well to class treatment.

Second, Defendants contend that substantial statute of limitations issues complicate the claims of both Class I and Class II. This argument is persuasive. The proposed classes encompass individuals who purchased their mattresses as long as twenty years ago, with no limitation as to when such individuals may have discovered mold in their Sleep Number® beds. Even if such a limitation were incorporated in accordance with California's delayed discovery rule, there still would have to be an individualized inquiry as to each plaintiff's circumstances. Plaintiffs do not respond to this concern in their opposition papers.

Next, Defendants suggest that warranty claims generally are considered improper for class treatment. *Cole v. Gen. Motors Corp.*, 484 F.3d 717, 724-30 (5th Cir. 2007). They contend that such claims involve elements that are individual to each purported class member, such as the provision of notice, an opportunity to cure, and reliance. This contention also is persuasive, especially given the varying allegations as to notice provided by the named plaintiffs in the SAC.

Finally, Defendants contend that Plaintiffs' attempt to maintain individual claims and two separate classes will lead to a complicated and unworkable class scheme, "making the class action vehicle not 'superior' in this case." MTS at 24, citing Fed. R. Civ. P. 23(b)(3). The Court finds this argument the least convincing of Defendants' concerns.

## 2. Plaintiffs as Class Representatives

Defendants also contend that the named plaintiffs are not "typical" of the purported class they represent. They point out that Schlesinger's claims, as presently alleged, are barred by the statute of limitations; that Bryan Williams purports to represent a class of purchasers even though he did not purchase a Sleep Number® bed; and that Karen Williams purports to represent a class of users even though she never used the bed she purchased for her son. SAC ¶¶ 21-22, 119. Plaintiffs do not respond to this argument.

Defendants also assert that Plaintiffs will not fairly and adequately protect the class's interests. They point out that four of the named plaintiffs assert individual claims based upon

24

1   personal injuries, yet the SAC expressly excludes persons who have suffered such injuries from

2   its purported class action claims.  Defendants suggest that Plaintiffs have made this strategic

3   decision to improve their prospects for class certification while at the same time maintaining

4   their own personal interests in obtaining recovery for personal injuries, and that the named

5   Plaintiffs' interests thus are antagonistic to those of the rest of the class.  *Krueger v. Wyeth, Inc.*,

6   No. 03cv2496, 2008 WL 481956, at *3 (S.D. Cal. Feb. 19, 2008) (finding plaintiff inadequate as

7   a class representative because of claim-splitting and concluding that "claim splitting constitutes a

8   compelling reason to deny class certification").

9          Finally, "Article III requires that the representative or named plaintiff must share the same

10  injury or threat of injury."  *DuPree v. U.S.*, 559 F.2d 1151, 1153 (9th Cir. 1977)*, see also Sosna

11  v. Iowa*, 419 U.S. 393, 403 (1975) ("A litigant must be a member of the class which he or she

12  seeks to represent at the time the class action is certified").  In the instant case, it is not yet clear

13  whether any of the named Plaintiffs can state a cognizable claim under any of their numerous

14  legal theories.  Accordingly the motion to strike will be granted, without prejudice to Plaintiffs

15  seeking class certification based upon an amended pleading.

16                                   **IV.  ORDER**

17         Good cause therefor appearing, the motion to strike Plaintiffs' newly-alleged claims and

18  class allegations is GRANTED as set forth herein.  Plaintiffs may seek leave of Court to plead

19  these new claims.  The motion to dismiss is GRANTED, with leave to amend only with respect

20  to Plaintiffs' previously-asserted claims for negligence, strict product liability, breach of express

21  warranty, and violations of the MMWA and UCL.  Any amended complaint shall be filed within

22  thirty (30) days of the date of this order.  Plaintiffs shall not add any new defendants, plaintiffs or

23  claims for relief without leave of Court.

24         IT IS SO ORDERED.

25         DATED: December 4, 2009

26

27                                         _____

28                                         JEREMY FOGEL
                                           United States District Judge